B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Organic Power LLC | DEFENDANTS<br>US Small Business Administration and Jovita Corranza<br>as Administrator of the US Small Business Administration |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Rafael Gonzalez Valiente, Godreau & Gonzalez Law, 1806<br>Mcleary St. San Juan, PR 00911; 787.726.0077 | ATTORNEYS (If Known) |

| PARTY (Check One Box Only)<br>□ Debtor          □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor       □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>□ Debtor          □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor       □ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint for Declaratory Judgment, Mandamus and Injunctive Relief

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
   actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
   (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court
   if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand  $ |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR | | BANKRUPTCY CASE NO. | |
| DISTRICT IN WHICH CASE IS PENDING | | DIVISION OFFICE | NAME OF JUDGE<br>Eduard A. Godoy |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | | |
| DATE<br>26 - 4 - 2020 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Rafael Gonzalez Valiente | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In Re:<br><br>Organic Power, LLC.,<br>Debtor.<br>_____ | Bankr. Case No.: 19-01789(ESL)<br><br>Chapter 11<br>_____ |
| ORGANIC POWER, LLC.<br>Plaintiff<br><br>v.<br><br>The U.S. Small Business Administration and Jovita Carranza, solely as the Administrator of the U.S. Small Business Administration,<br><br>Defendant | Adv. Proceeding. No. |

**COMPLAINT FOR DECLARATORY JUDGMENT, WRIT OF MANDAMUS, AND
INJUNCTIVE RELIEF**

**TO THE HONORABLE COURT:**

**COME NOW,** Organic Power, LLC. ("OP" or "Debtor"), through the undersigned counsel very respectfully avers and prays as follows:

## I.   INTRODUCTION

1. Under the Coronavirus Aid, Relief, and Economic Security Act, H.R. 748 (the "CARES Act"), Congress and the President temporarily added a new program entitled the "Paycheck Protection Program" to the SBA's 7(a) Loan Program (hereinafter referred to as the "PPP").

2. The PPP and its associated benefits are intended to provide economic relief to small businesses nationwide who are adversely impacted under the Coronavirus Disease 2019 ("COVID-19") Emergency Declaration issued by President Donald Trump on March 13, 2020.

3. This is an action against the SBA under the Administrative Procedure Act, 5 U.S.C. §701 *et seq.* and section 525 of the United States Bankruptcy Code, 11 U.S.C. §525, seeking: (a) declaratory judgment that the SBA's implementation of the PPP is unlawful, discriminatory against prospective borrowers who are debtors in bankruptcy, and beyond its statutory authority; (b) a writ of mandamus under 28 U.S.C. § 1361 to compel the SBA the remove its disqualification of bankruptcy debtors as viable applicants from all PPP applications, including the PPP Official SBA Form 2484 (the "PPP Application"); and (c) an order enjoining the SBA from denying the Plaintiff a loan under the PPP based on the Plaintiff's status as a chapter 11 debtor.

4. It is germane to point out that other Bankruptcy Courts have already ruled that bankruptcy debtors that meet all other requirements for the PPP Loan are entitled to receive the PPP Loan. See, *In re Asteria Education, Inc.,*

Dkt. 129, Case No. 20-50169 (Bankr. W.D. Tex., April 8, 2020). ("In the context of the CARES Act or the Interim Final Rules, as they apply to the Debtor, there is no such prohibition with regard to debtor under Chapter 11 of title 11 being the recipient of a loan under the revised SBA 7(a) program known as the PPP or under the EIDL program portions of the CARES Act."); See also, Temporary Restraining Order, *In re Hidalgo County Emergency Service*, Case No. 19-20497; *Hidalgo County Emergency Service Foundation v. Jovita Carranza in her capacity as Administrator of the U.S. Small Business Administration*, Dkt. 18, Adv. Proc. 20-02006 (Bankr. S.D. Tex., April 25, 2020).

## II.  THE PARTIES

5.  Organic Power, LLC., is a limited liability corporation existing under the laws of the Commonwealth of Puerto Rico with principal offices in Vega Alta, Puerto Rico; created on October 26th, 2012. Its resident agent is Miguel Pérez Valdés. Its physical address is Sabanera de Dorado, 3 Camino del Turpial, Dorado, Puerto Rico; and the telephone number is 787.333.0280.

6.  The SBA is an agency of the United States of America whose central office is located at 409 Third Street, S.Q., Washington DC 20416.

### III.   JURISDICTION AND VENUE

7.   The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D). Jurisdiction is also proper under the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.

8.   Declaratory and injunctive relief is sought consistent with 5 U.S.C. § 706 and as authorized in 28 U.S.C. § 2201 and 2202.

9.   Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and (e)(1) and 28 U.S.C. § 1409(a).

10.  The Debtor states that it consents to the bankruptcy court hearing and determining all claims and issues in this adversary proceeding and entering final orders and judgments on all claims including money judgments as appropriate, subject to review under 28 U.S.C. § 158.

### IV.   FACTUAL BACKGROUND

11.  On April 1, 2019 (the "Petition Date"), Plaintiff filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States

Bankruptcy Court for the District of Puerto Rico, commencing the case captioned *In Organic Power, LLC*, Case No. 19-01789 (the "Chapter 11 Case").

12. Since the Petition Date, the Plaintiff has been operating as a Debtor-in-Possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

13. On March 27, 2020 the President of the United States signed into law the CARES Act, S. 3548, 116th Cong. (2020). The CARES Act is intended to, among other things, provide stimulus to the economy by distributing approximately $2.3 trillion to various industries, programs, and individuals.

14. The PPP is set forth in Title I of the CARES Act and is a temporary, short-term program, and amends Section 7(a) of the Small Business Act (15 U.S.C. § 636(a)), the regulatory scheme through which the SBA guarantees covered loans.

15. The PPP allows lenders to give federally guaranteed loans to small businesses to cover payroll during the period of February 15, 2020 through June 30, 2020, as well as other expenses including payments of interest on mortgages, rent, utilities and interest on other debt.

16. No collateral or personal guarantees are required to

receive a PPP loan.

17.  Neither the SBA nor lenders charge any fees for the PPP loan.

18.  The loan has very favorable terms in that it matures in 2 years and carries an interest rate of 1%.

19.  Further, the PPP loan may be fully forgiven if the funds are used for payroll costs, interest on mortgages, rent, and utilities, and certain other conditions are met as set forth in the CARES Act.

20.  Limited liability corporations like Plaintiff are eligible to receive funding under the PPP.

21.  The PPP loan pool, however, is limited in size and the PPP is administered on a first-come-first-served basis.

22.  To date, Congress has authorized up to $349 billion to the PPP. Additional funding has been allocated to the PPP and will be available soon. Accordingly, the PPP contains a finite amount of money. Congress has reached a deal to allocate additional funds to the PPP.

23.  The demand for the PPP program has been overwhelming.

24.  On April 16, 2020, the SBA announced that the $349

billion authorized for the PPP had been exhausted.

25. The CARES Act grants the SBA emergency rule making authority and charges the SBA to issue regulations to carry out certain of the programs contemplated in the CARES Act, including the PPP. *See,* CARES Act, section 1114.

26. On April 2, 2020, the SBA issued an interim final rule (the "First Interim Rule") providing guidance on, among other things, the eligibility requirements to receive a loan under the PPP.

27. The First Interim Rule adopts the ineligibility standards set forth in section 120.110, title 13 of the Code of Federal Regulations ("CFR 120.110"), as further described in SBA's Standard Operating Procedure 50-10, Subpart B, Chapter 2 ("SOP 50-10"). *See* First Interim Rule, 2(c) ("Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and further described further in SBA's Standard Operating Procedure").

28. The SOP 50-10 provides that a "Small Business Applicant" must, among other things: be an operating business; be located in the United States; be small (as defined by the SBA); and demonstrate the need for the desired credit. *See* SOP 50-10, pg. 85.

29.  The SOP 50-10 also provides that the businesses listed in CFR 120.110 are not eligible for an SBA loan. *Bankruptcy debtors are not the listed as an ineligible business in CFR 120.110*. Nothing else in the SOP 50-10 makes the Plaintiff ineligible for a PPP loan.

30.  Notwithstanding the foregoing, on April 2, 2020, the SBA issued the PPP Loan Application that purports to disqualify bankruptcy debtors from participation in the PPP. A true and correct copy of the PPP Application is attached hereto as Exhibit A.

31. Official SBA Form 2484, which is the Lender Application Form – Paycheck Protection Program Loan Guaranty ("PPP Lender Application"), states that the PPP loan cannot be approved unless the applicant certifies that neither the applicant nor any owner is presently involved in any bankruptcy. A true and correct copy of the PPP Lender Application is attached hereto as Exhibit B.

32. On April 4, 2020, the SBA issued a supplemental interim final rule (the "Second Interim Rule") further providing guidance on the PPP. *The Second Interim Rule does not provide that bankruptcy debtors are ineligible for the PPP loan*. Defendants implemented the PPP in a manner that unlawfully excludes debtors in bankruptcy.

33. Nothing in the CARES Act, SBA Regulations, SOP 50-10, the First Interim Rule or the Second Interim Rule authorizes or permits the SBA to exclude debtors in bankruptcy from the PPP.

34. Plaintiff, like many other businesses, has been financially affected by the COVID- 19 pandemic in ways that could not have been foreseen.

35. On March 19, 2020, the Governor of Puerto Rico instituted a quarantine/total closure order for Puerto Rico (the "Quarantine Order").

36. Pursuant to the Quarantine Order, only governmental essential services and gas, health and food commercial businesses may open and or attend their offices. Only those citizens who are attending those listed services may leave their residences.

37. On March 26th, 2020, the governor extended the quarantine/total closure until April 12th, 2020.

38. Again, on April 11th, 2020, the governor extended the lockdown until May 6th, 2020.

39. Plaintiff relies on, as its primary source of income, its daily basis operations.

40.  Because all non-essential businesses have been ordered to close, Plaintiff is experiencing a significant decrease in revenue and anticipates that for as long as the "stay at home" order remains in effect, it will struggle to continue making payroll.

41.  The Plaintiff falls in the categories of businesses that Congress intended to benefit from the PPP to alleviate some of its payroll difficulties when it passed the CARES Act.

42.  However, when Plaintiff sought to apply for the PPP, it discovered that the Application would "not be approved" because Plaintiff is presently involved in a bankruptcy. In fact, the Application was "hard-coded" to answer "No" to the bankruptcy question (Question No. 1). Plaintiff submitted a supplemental statement with its Application correcting the hard-coded answer to Question No. 1.

43.  Plaintiff is requesting this credit on an unsecured basis in accordance with § 364(a) of the Bankruptcy Code and is not required to seek additional authorization from the Bankruptcy Court.

## V.   COUNT I: Administrative Procedure Act – Exceeds Statutory Authority

44. Plaintiff hereby incorporates each and every allegation contained in foregoing paragraphs with the same force and effect as though fully set forth herein.

45. Under the APA, courts must "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

46. Defendants may only exercise authority conferred by statute.

47. The SBA issued the First Interim Rule which provides guidance on, among other things, the eligibility requirements to receive a loan under the PPP. The First Interim Rule adopts the ineligibility standards set forth in CFR 120.110, as further described in SOP 50-10.

48. SOP 50-10 provides that a "Small Business Applicant" must, among other things: be an operating business; be located in the United States; be small (as defined by the SBA); and demonstrate the need for the desired credit. *See* SOP 50-10, p. 85.

49. SOP 50-10 also states that the businesses listed in CFR 120.110 are not eligible for an SBA loan.

50.  Bankruptcy debtors are not the listed as an ineligible business in CFR 120.110.

51.  Notwithstanding the foregoing, the SBA issued the PPP Application, which purports to disqualify bankruptcy debtors from participation in the PPP. *See* Exhibit A.

52.  Further, the SBA issued the PPP Lender Application, which states that the PPP loan cannot be approved unless the applicant certifies that neither the applicant nor any owner is presently involved in any bankruptcy. *See* Exhibit B.

53.  The SBA issued the Second Interim Rule, which further provides guidance on the PPP. The Second Interim Rule does not provide that bankruptcy debtors are ineligible for the PPP loan.

54.  Defendants implemented the PPP in a manner that unlawfully excludes debtors in bankruptcy.

55.  Nothing in the CARES Act, SBA Regulations, SOP 50-10, the First Interim Rule, or the Second Interim Rule authorizes or permits the SBA to exclude debtors in bankruptcy from the PPP.

56.  Defendants' implementation of the PPP in a manner that

causes debtors in bankruptcy, including Plaintiff, to be ineligible is therefore "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of the APA. 5 U.S.C. § 706(2)(C).

57. The SBA has made a final determination with respect to the issuance of the PPP Application and the PPP Lender Application.

58. There are no administrative appeals or remedies available to Plaintiff to seek review of the SBA's determination to issue the PPP Application and the PPP Lender Application.

59. Defendants' violation of the APA causes ongoing and irreparable harm to Plaintiff.

60. Plaintiff is entitled to a declaratory judgment that Defendants' implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiff, to be ineligible is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of the APA.

61. Plaintiff is entitled to preliminary and permanent injunctive relief enjoining Defendants from denying

Plaintiff a loan under the PPP based on the Plaintiff's status as a chapter 11 debtor.

62. Plaintiff is likely to succeed on the merits of its claims against the SBA.[1]

63. Plaintiff will suffer immediate and irreparable harm as a result of the unlawful debtor disqualification criteria because the PPP offers applicants guaranteed loans that are not otherwise obtainable in the private marketplace, the PPP funds have been exhausted, and will be rapidly depleted even after Congress additional funding.

64. Without a PPP loan, the Plaintiff will be forced to lay-off or furlough essential employees, which will have a permanent effect on the Plaintiff's bankruptcy estate and alter how the Chapter 11 Case will be administered.

65. Further, the balance of the hardships weighs heavily in favor of the issuance of injunctive relief.

66. Plaintiff has no adequate remedy at law.

---

[1] Bankruptcy Courts in other jurisdictions have already ruled that bankruptcy debtors are entitled to PPP loans and that the SBA exceeded its authority in not providing said loans to debtors. See, In re Asteria Education, Inc., Dkt. 129, Case No. 20-50169 (Bankr. W.D. Tex., April 8, 2020), supra; See also, In re Hidalgo County Emergency Service, Case No. 19-20497; Hidalgo County Emergency Service Foundation v. Jovita Carranza in her capacity as Administrator of the U.S. Small Business Administration, Dkt. 18, Adv. Proc. 20-02006 (Bankr. S.D. Tex., April 25, 2020). supra.

### VI.   COUNT II: Administrative Procedure Act – Arbitrary and Capricious

67. Plaintiff hereby incorporates each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

68. The APA provides that courts must "hold unlawful and set aside" agency action that is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

69. The SBA issued the First Interim Rule, which provides guidance on, among other things, the eligibility requirements to receive a loan under the PPP. The First Interim Rule adopts the ineligibility standards set forth in CFR 120.110, as further described in SOP 50-10.

70. SOP 50-10 provides that a "Small Business Applicant" must, among other things: be an operating business; be located in the United States; be small (as defined by the SBA); and demonstrate the need for the desired credit. *See* SOP 50-10, pg. 85.

71. SOP 50-10 also provides that the businesses listed in CFR 120.110 are not eligible for an SBA loan. Bankruptcy debtors are not the listed as an ineligible business in CFR 120.110.

72. Notwithstanding the foregoing, the SBA issued the PPP Application that purports to disqualify bankruptcy debtors from participation in the PPP. *See* Exhibit A.

73. Further, the SBA issued the PPP Lender Application, which states that the PPP loan cannot be approved unless the applicant certifies that neither the applicant nor any owner is presently involved in any bankruptcy. *See* Exhibit B.

74. The SBA issued the Second Interim Rule, which further provides guidance on the PPP. The Second Interim Rule does not provide that bankruptcy debtors are ineligible for the PPP loan.

75. Defendants implemented the PPP in a manner that unlawfully excludes debtors in bankruptcy.

76. Nothing in the CARES Act, SBA Regulations, SOP 50-10, the First Interim Rule or the Second Interim Rule authorizes or permits the SBA to exclude debtors in bankruptcy from the PPP.

77. Defendants' implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiff, to be ineligible is therefore "arbitrary, capricious, [or] an

abuse of discretion" in violation of the APA. 5 U.S.C. § 706(2)(A).

78. The SBA has made a final determination with respect to the issuance of the PPP Application and the PPP Lender Application.

79. There are no administrative appeals or remedies available to Plaintiff to seek review of the SBA's determination to issue the PPP Application and the PPP Lender Application.

80. Defendants' violation of the APA causes ongoing harm to Plaintiff.

81. Plaintiff is entitled to a declaratory judgment that Defendants' implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiff, to be ineligible is "arbitrary, capricious, [or] an abuse of discretion" in violation of the APA.

82. Further, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining Defendants from denying Plaintiff a loan under the PPP based on the

Plaintiff's status as a chapter 11 debtor.[2]

83.  Plaintiff is likely to succeed on the merits of its claims against the SBA.

84.  Plaintiff will suffer immediate and irreparable harm as a result of the unlawful debtor disqualification criteria because the PPP offers applicants guaranteed loans that are not otherwise obtainable in the private marketplace, the PPP funds have been exhausted, and will be rapidly depleted even after Congress additional relief. Without a PPP loan, the Plaintiff may be forced to lay off or furlough essential employees which will have a permanent effect on the Plaintiff's bankruptcy estate and alter how the Chapter 11 Case will be administered.

85.  Further, the balance of the hardships weighs heavily in favor of the issuance of injunctive relief.

86.  Plaintiff has no adequate remedy at law.

## VII. COUNT III: Violation of 11 U.S.C. § 525 –

---

[2] Bankruptcy Courts in other jurisdictions have already ruled that bankruptcy debtors are entitled to PPP loans and that the SBA exceeded its authority in not providing said loans to debtors.  See, In re Asteria Education, Inc., Dkt. 129, Case No. 20-50169 (Bankr. W.D. Tex., April 8, 2020), supra; See also, In re Hidalgo County Emergency Service, Case No. 19-20497; Hidalgo County Emergency Service Foundation v. Jovita Carranza in her capacity as Administrator of the U.S. Small Business Administration, Dkt. 18, Adv. Proc. 20-02006 (Bankr. S.D. Tex., April 25, 2020). supra.

**Discriminatory Treatment of Chapter 11 Debtor**

87. Plaintiff hereby incorporates each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

88. Section 525(a) of the Bankruptcy Code provides in relevant part that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to . . . a person that is or has been a debtor under this title." 11 U.S.C. §525(a). This list is illustrative rather than exhaustive.

89. The PPP is a government program designed to provide relief to small businesses affected by COVID-19.

90. The SBA is denying Plaintiff the benefits provided by the PPP through the debtor in bankruptcy disqualification sections in the PPP Application and PPP Lender Application in violation of section 525(a) of the Bankruptcy Code.

91. Plaintiff is not being denied access to the PPP because of its creditworthiness. In fact, the PPP was enacted to provide relief to struggling small businesses without regard to their creditworthiness. Plaintiff is being denied access to the PPP Loan based solely on its

status as bankruptcy debtor.

92. But for the debtor in bankruptcy disqualification sections in the PPP Application and PPP Lender Application, Plaintiff is otherwise eligible for a PPP loan.

93. As such, the debtor in bankruptcy disqualification sections in the PPP Application and PPP Lender Application are interfering with Plaintiff's ability to obtain a "fresh start" and its ability to retain its employees many of whom are crucial to the Plaintiff's business as going concerns.

94. Through the bankruptcy disqualification sections in the PPP Application and PPP Lender Application, Defendants have discriminated against chapter 11 debtors generally, and Plaintiff in particular, in violation of Section 525(a) of the Bankruptcy Code.

95. Defendants' violation causes ongoing harm to Plaintiff.

96. Plaintiff is entitled to a declaratory judgment that Defendants' implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiff, to be ineligible is unlawful and discriminatory against debtors in bankruptcy in violation of Section 525(a) of the Bankruptcy Code.

97. Further, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining Defendants from denying Plaintiff a loan under the PPP based on the Plaintiff's status as a chapter 11 debtor.

98. Plaintiff is likely to succeed on the merits of their claims against the SBA.[3]

99. Plaintiff will suffer immediate and irreparable harm as a result of the unlawful debtor disqualification criteria because the PPP offers applicants guaranteed loans that are not otherwise obtainable in the private marketplace, the PPP funds are exhausted, and will be rapidly depleted even after Congress enacts further relief.

100. Without a PPP loan, the Plaintiff may be forced to lay off or furlough essential employees which will have a permanent effect on the Plaintiff's bankruptcy estate and alter how the Chapter 11 Case will be administered.

101. Further, the balance of the hardships weighs heavily in favor of the issuance of injunctive relief.

---

[3] Bankruptcy Courts in other jurisdictions have already ruled that bankruptcy debtors are entitled to PPP loans and that the SBA exceeded its authority in not providing said loans to debtors. See, In re Asteria Education, Inc., Dkt. 129, Case No. 20-50169 (Bankr. W.D. Tex., April 8, 2020), supra; See also, In re Hidalgo County Emergency Service, Case No. 19-20497; Hidalgo County Emergency Service Foundation v. Jovita Carranza in her capacity as Administrator of the U.S. Small Business Administration, Dkt. 18, Adv. Proc. 20-02006 (Bankr. S.D. Tex., April 25, 2020). supra.

102. Plaintiff has no adequate remedy at law.

**VIII.   COUNT IV: MANDAMUS UNDER 28 U.S.C. §1361**

103. Plaintiff hereby incorporates each and every allegation contained in foregoing paragraphs with the same force and effect as though fully set forth herein.

104. The Defendants have the non-discretionary duty to comply with the CARES Act and the provisions of the PPP to apply criteria to the PPP that are substantively and/or procedurally valid and to avoid imposing criteria to the PPP that are substantively and/or procedurally *ultra vires.*

105. Plaintiff is entitled to a writ of mandamus under 28 U.S.C. §1361 to compel the SBA to the remove from all PPP applications, including the PPP Application and the PPP Lender Application its disqualification of bankruptcy debtors as viable applicants because SBA acted beyond its statutory authority in implementing such disqualifying factors.

**IX.  PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A. For a declaratory judgment that Defendants' implementation of the PPP in a manner that causes debtors

in bankruptcy, including Plaintiff, to be ineligible is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of the APA;

B. For entry of preliminary and permanent injunctive relief enjoining Defendants from denying Plaintiff a loan under the PPP based on Plaintiff's status as a chapter 11 debtor;

C. For a declaratory judgment that Defendants' implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiff, to be ineligible is "arbitrary, capricious, [or] an abuse of discretion" in violation of the APA; and (b) preliminary and permanent injunctive relief enjoining Defendants from denying Plaintiff a loan under the PPP based on Plaintiff's status as a chapter 11 debtor;

D. For a declaratory judgment that Defendants' implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiff, to be ineligible is unlawful and discriminatory against debtors in bankruptcy in violation of Section 525(a) of the Bankruptcy Code; and (b) preliminary and permanent injunctive relief enjoining Defendants from denying Plaintiff a loan under the PPP based on Plaintiff's status as a chapter 11 debtor;

E. For entry of a writ of mandamus under 28 U.S.C. §1361 to compel the SBA to remove from all PPP applications, including the PPP Application and the PPP Lender Application its disqualification of bankruptcy debtors as viable applicants because SBA acted beyond its statutory authority in implementing such disqualifying factors; and

F. All other relief as may be just and proper.

Respectfully submitted,

On this 27th day of April of 2020.

/s/ Rafael A. Gonzalez Valiente

*USDC#* 225209
*Counsel for Plaintiff*

**Godreau & González Law**
PO Box 9024176
San Juan, Puerto Rico 00902-4176
Tel : (787)726-0077
rgv@g-glawpr.com

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br>ORGANIC POWER, LLC.,<br>DEBTOR. | Bankr. Case No.: 19-01789(ESL)<br><br>Chapter 11 |
| ORGANIC POWER, LLC.<br>Plaintiff<br><br>v.<br><br>The U.S. Small Business Administration and Jovita Corranza, solely as the Administrator of the U.S. Small Business Administration,<br><br>Defendant | Adv. Proceeding. No. |

### UNSWORN STATEMENT MIGUEL PEREZ

I, MIGUEL E. PÉREZ VALDEZ of legal age, married, president of Organic Power LLC and resident of Dorado, Puerto Rico hereby state under penalty of perjury that:

1.    My personal circumstances are as set forth above. I am the president of Organic Power LLC.

2.    Debtor filed a voluntary petition on April 1st, 2019. *See Dkt. 1.*

3.    Debtor currently operates a business of manufacturing of animal feed, recycling of organic waste and generating electricity with propane gas.

4.    Organic Power became the economic victim of coronavirus, which led to the shutdown of normal life in Puerto Rico.

5.    On March 11, 2020, the World Health Organization officially declared that COVID-19, had become a global pandemic.

6.    On March 19, 2020, the Governor of Puerto Rico instituted a quarantine/total closure order for Puerto Rico (the "Quarantine Order").

7.    That pursuant to the Quarantine Order, only governmental essential services and gas, health and food commercial businesses may open and or attend their offices. Only those citizens who are attending those listed services may leave their residences.

8.    On March 26th, 2020, the governor extended the quarantine/total closure until April 12th, 2020.

9.    Again, on April 11th, 2020, the governor extended the lockdown until May 6th, 2020.

10.    Plaintiff relies on, as its primary source of income, its daily basis operations.

11.    Because all non-essential businesses have been ordered to close, Plaintiff is experiencing a decrease in revenue and anticipates that for as long as the "stay at home" order remains in effect.

12.    In order to maintain payroll and pay business expenses, I looked to apply for a PPP loan on behalf of Organic Power.

13.    The loan application said that "the loan will not be approved" if the applicant is "presently involved in any bankruptcy". See PPP Borrower Application Form, attached as Exhibit A to Plaintiff complaint.

14.   If approved for a PPP loan, Organic Power will use the funds to pay it day to day expenses and payroll.

15.   On April 14, 2020, we submitted a PPP Loan request to Banco Popular de Puerto Rico.

16.   Banco Popular told us that Organic Power did not qualify because we are currently in bankruptcy since the SBA Loan Application specifically excludes bankruptcy debtors. (See Attached email from Banco Popular de Puerto Rico).

17.   On April 24th, 2020, Oriental Bank rejected the application because Organic Power was "presently involved in any bankruptcy". (See Attached email from Oriental Bank).

18.   Oriental Bank based their reply[1] on the fact that SBA loan application forms do not permit businesses involved in bankruptcy to be considered for said loans. See Exhibit A and B to Plaintiff Complaint. (Borrowers Application Form and Lender Application Form – Paycheck Protection Program Loan Guaranty).

19.   I declare under penalty of perjury that the foregoing is true and correct.

In San Juan, Puerto Rico, this 24th day of April of 2020.

Miguel E. Pérez Valdez

---

[1] See Attached Email – Response from Oriental Bank to PPP Loan Application.

**From:**     Miguel Perez
**To:**        Lcdo. Rafael Gonzalez; ka@o-olawpr.com
**Subject:**  FW: Urgente CARES Act: Chapter 11 Bankruptcy Opportunities for Small Businesses
**Date:**     Sunday, April 26, 2020 10:54:39 AM
**Attachments:** image003.png
                image004.png

Saludos Rafael

Te incluyo correo enviado por BPPR sobre status de solicitud PPP SBA.

Cordialmente,

**Miguel Perez,**
Presidente



787 661-9196
mperez@PRrenewables.com
**www.PRrenewables.com**

Please consider the environment before printing this email.
CONFIDENTIALITY NOTICE - This electronic mail message, including any attachments, are confidential and are intended for the exclusive
use of the addressee. Any other person is strictly prohibited from disclosing, distributing, forwarding or reproducing them without the
prior written authorization of the sender. If the addressee cannot be reached or is unknown to you, please immediately inform the
sender by return electronic mail and delete this electronic mail message and any attachments and destroy all copies.

---

**From:** Manuel Olivera Negron <Manuel.Olivera@popular.com>
**Sent:** Friday, April 24, 2020 5:13 PM
**To:** Miguel Perez <mperez@prrenewables.com>
**Subject:** RE: Urgente CARES Act: Chapter 11 Bankruptcy Opportunities for Small Businesses

Saludos:

La solicitud fue radicada e incluí la información enviada por usted anteriormente sobre quiebra.

**Manuel Olivera Negrón**
Branch Manager
Vega Baja Branch
T: 787-858-1331, ext. 151547| C. 787-391-0434

_manuel.olivera@popular.com_

 **POPULAR.**

**From:** Miguel Perez <mperez@prrenewables.com>
**Sent:** Friday, April 24, 2020 4:49 PM
**To:** Manuel Olivera Negron <Manuel.Olivera@popular.com>; MANUEL OLIVERA
<emanu1026@gmail.com>
**Subject:** FW: Urgente CARES Act: Chapter 11 Bankruptcy Opportunities for Small Businesses

[CAUTION: External Email]

Saludos Manuel,

Favor de ver y compartir el correo que adjunto a continuación con los oficiales del Banco que
entiendas pertinente en relación a la radicación de PPP de Organic Power y su estatus en capítulo 11
reestructuración. Creo que esto ayuda a eliminar cualquier escollo para que pueda participar en este
tan importante programa. Tan pronto el Lcdo tenga copia de los casos bajo consideración te los hago
llegar.

Por favor confírmame recibo y estoy disponible para hablar sobre este asunto a tu conveniencia.

Gracias y que tengas excelente fin de semana,

Cordialmente,

**Miguel Perez,**
Presidente



787 661-9196
mperez@PRrenewables.com
**www.PRrenewables.com**

Please consider the environment before printing this email.
CONFIDENTIALITY NOTICE - This electronic mail message, including any attachments, are confidential and are intended for the exclusive
use of the addressee. Any other person is strictly prohibited from disclosing, distributing, forwarding or reproducing them without the
prior written authorization of the sender. If the addressee cannot be reached or is unknown to you, please immediately inform the
sender by return electronic mail and delete this electronic mail message and any attachments and destroy all copies.

**From:** Rafael A. Gonzalez Valiente <rgv@g-glawpr.com>
**Sent:** Friday, April 24, 2020 3:32 PM
**To:** Miguel Perez <mperez@prrenewables.com>
**Subject:** Re: CARES Act: Chapter 11 Bankruptcy Opportunities for Small Businesses

Saludos.

Tomo la oportunidad para informale que ya hay varias decisiones enTribunales de Quiebras en jurisdicciones de varios estados indicando que deudores en quiebras si cualifican para prestamos bajo el PPP.

Etaremos compartiendo estas con ustedes durante la tarde de hoy. Pero le indico que estaremos radicando frente la Tribunal de Quiebras local una solicitud similar durante el fin de semana.

Gracias.
Rafael A. Gonzalez Valiente, Esq.
Sent from my iPhone

CONFIDENTIALITY NOTE: This communication and any attachments included herein contain information that belongs to POPULAR, INC., its subsidiaries and/or affiliates, that may be confidential, legally privileged and/or a trade secret. Its unauthorized disclosure, copying or distribution is strictly prohibited. If you have received this communication in error please delete or destroy it and notify the sender immediately. Neither POPULAR, INC. nor its subsidiaries or affiliates will be liable for any damages resulting from any modification or falsification of an e-mail that is originated by us. Moreover, although precautions have been taken to ensure that the data included herein is free from viruses or other malicious content, we cannot assure that such is indeed the case and disclaim any responsibility attributable thereto.

| | |
|---|---|
| **From:** | Rafael A. Gonzalez Valiente |
| **To:** | Jory sfoster; LcdaAlonso |
| **Subject:** | Fwd: CARES Act: Chapter 11 Bankruptcy Opportunities for Small Businesses |
| **Date:** | Saturday, April 25, 2020 6:31:43 PM |
| **Attachments:** | image001.png |
| | image003.png |

*Rafael A. González Valiente, Esq.*
Sent from my iPad

Begin forwarded message:

> **From:** Christian Jetter <cjetter@orientalbank.com>
> **Date:** April 24, 2020 at 3:25:47 PM AST
> **To:** Miguel Perez <mperez@prrenewables.com>
> **Cc:** "Rafael A. Gonzalez Valiente" <rgv@g-glawpr.com>
> **Subject: Re: CARES Act: Chapter 11 Bankruptcy Opportunities for Small Businesses**
>
>
> Estimado Don Miguel:
>
> Me contestaron respecto a la solicitud. El formulario de SBA indica específicamente que si el negocio está en quiebra, no se podrá considerar para el incentivo. Es una condición de SBA no de los Bancos, incluyendo a Oriental.
>
> Atentamente,
>
> CHristian Jetter

> **From:** Miguel Perez <mperez@prrenewables.com>
> **Sent:** Friday, April 24, 2020 11:12 AM
> **To:** Christian Jetter <cjetter@orientalbank.com>
> **Cc:** Rafael A. Gonzalez Valiente <rgv@g-glawpr.com>
> **Subject:** FW: CARES Act: Chapter 11 Bankruptcy Opportunities for Small Businesses
>
> CAUTION: This email originated from outside of Oriental. Do not click links or open attachments unless you recognize the sender and know the content is safe.
>
> Estimado Christian,
>
> Me dio mucho gusto en saludarte y me alegro que todos se encuentren bien dentro de la realidad que vivimos post COVID-19.
>
> Para tu información, Organic Power ha seguido operando de forma ininterrumpida durante toque de queda y el cierre de comercios ordenado por el Gobierno. Nuestros servicios son críticos para la empresas que servimos principalmente en el área de manufactura y la cadena de alimentaria. Estamos empleando 20 personas. El total de costos de nómina para el 2019 según parámetros del CARES Act fue $639,689 y luego de los ajustes y deducciones cualificamos para un préstamo PPP de $129,500. Te incluyo para tu información la hoja de cálculo. Para nosotros es crítico recibamos esta ayuda para aumentar la viabilidad de nuestro plan de reestructuración que presentaremos en su momento y que estamos positivo que contara con el apoyo del banco. Es importante también recalcar el hecho que seguiremos operando y que al nivel de operación que estamos cumpliremos con los parámetros para que el préstamo sea condonado.
>
> Solicite el préstamo con el BPPR pero me han indicado que no pueden procesarlo por encontrarme en quiebra. Tome unos Webseminar directamente con SBA y específicamente indicaron que solo los clientes en capítulo de liquidación o que no se encuentren operando no cualifican. Fueron específico en indicar que compañía en proceso de reorganización y las cuales estuvieran operando y cumplieran con los demás requisitos cualificarían. Este es nuestro caso.
>
> Comparto contigo correo electrónico que sobre este asunto me envió nuestro abogado en la corte de quiebra el Lcdo Rafael Gonzalez-Valiente donde indica lo siguiente:

Good afternoon Miguel,

I attach a copy of an article detailing how the Cares Act (the law that creates the PPP Program) specifically makes reference to certain Bankrupt Entities.

We have read the Cares Act and the Rules created by the SBA to deal with the PPP program. Neither the Act nor the Rules state that bankrupt entities are to be excluded from the PPP Program.

On the other hand, Sec. 525 of the Bankruptcy Code specifically prohibits a discrimination against a debtor in bankruptcy solely on the basis that he/it is in bankruptcy. Specifically, 11 USC 525 states in its pertinent part that "*a governmental unit may not deny*, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such *a grant to, discriminate with respect to such a grant against*, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title [11 USCS §§ 101 et seq.] or *a bankrupt or a debtor under the Bankruptcy Act* or another person with whom such bankrupt or debtor has been associated, *solely because such bankrupt or debtor is or has been a debtor under this title [11 USCS §§ 101 et seq.]*".

Therefore, neither the SBA nor any agent of the SBA (in this case the Banks acting in representation of the SBA) may deny a Debtor the PPP loan solely on the basis that the applicant or its owner are in Bankruptcy.

Thank you,
*Rafael A. González Valiente, Esq.*

**G|G**
**GOOREAU & GONZALEZ**
L E W . L L E

P.O Box 9024176,
San Juan, PR 00902-4176
Tel. (787) 726-0077

Christian respetuosamente solicito que El Oriental acoja mi solicitud de préstamo de PPP y la presente a SBA. De esta forma podemos separar los fondos antes que se agoten y esperar por la decisión de SBA. No tengo duda que esta acción protege los intereses de ambos, Organic Power y Oriental. Tengo todo el paquete preparado para solicitar el PPP. Por favor verifica internamente en el Banco si acogen mi petición para enviarte información y poderla procesar a tiempo. Estamos contra el reloj. Muchas gracias por tu diligencia en este asunto.

Cordialmente,

**Miguel Perez,**
Presidente

**Organic** **Organic**
POWER.. FUEL..

787 661-9196
mperez@PRrenewables.com
www.PRrenewables.com

Please consider the environment before printing this email.
CONFIDENTIALITY NOTICE - This electronic mail message, including any attachments, are confidential and are intended for the exclusive use of the addressee. Any other person is strictly prohibited from disclosing, distributing, forwarding or reproducing them without the prior written authorization of the sender. If the addressee cannot be reached or is unknown to you, please immediately inform the sender by return electronic mail and delete this electronic mail message and any attachments and destroy all copies.
Oriental Financial Services Corp. and Oriental Insurance, Inc. are affiliates of Oriental Bank, and their products are not insured by the FDIC, are not guaranteed by a bank, and may lose value. This email is confidential. If it's not intended for you, follow these instructions: Disclosure

# EXHIBIT A

# Paycheck Protection Program
## Borrower Application Form

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

| Check One: | ☐ Sole proprietor  ☐ Partnership  ☐ C-Corp  ☐ S-Corp  ☐ LLC<br>☐ Independent contractor  ☐ Eligible self-employed individual<br>☐ 501(c)(3) nonprofit  ☐ 501(c)(19) veterans organization<br>☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act)  ☐ Other | **DBA or Tradename if Applicable** |
|---|---|---|

| **Business Legal Name** | |
|---|---|

| **Business Address** | **Business TIN (EIN, SSN)** | **Business Phone** |
|---|---|---|
| | | (   )    - |
| | **Primary Contact** | **Email Address** |
| | | |

| Average Monthly Payroll: | $ | x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request: | $ | Number of Employees: | |
|---|---|---|---|---|---|
| Purpose of the loan<br>(select more than one): | ☐Payroll  ☐Lease / Mortgage Interest  ☐Utilities  ☐Other (explain):_____ | | | | |

## Applicant Ownership

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| | | | | |
| | | | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ☐ | ☐ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | ☐ | ☐ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A. | ☐ | ☐ |
| 4. Has the Applicant received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ☐ | ☐ |

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?<br>Initial here to confirm your response to question 5 →  _____ | ☐ | ☐ |
| 6. Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?<br>Initial here to confirm your response to question 6 →  _____ | ☐ | ☐ |
| 7. Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above? | ☐ | ☐ |
| 8. Is the Applicant a franchise that is listed in the SBA's Franchise Directory? | ☐ | ☐ |

SBA Form 2483 (04/20)

**Paycheck Protection Program**
**Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

CERTIFICATIONS AND AUTHORIZATIONS

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals:  I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

CERTIFICATIONS

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

_____   The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

_____   Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

_____   The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

_____   The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

_____   I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

_____   During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

_____   I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than  $1,000,000.

_____   I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_____          _____
Signature of Authorized Representative of Applicant                              Date


_____          _____
Print Name                                                                            Title

2

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

**Purpose of this form:**

This form is to be completed by the authorized representative of the Applicant and ***submitted to your SBA Participating Lender***. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

**Instructions for completing this form:**

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized basis for each employee. For seasonal businesses, the Applicant may elect to instead use average monthly payroll for the time period between February 15, 2019 and June 30, 2019, excluding costs over $100,000 on an annualized basis for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020, less the amount of any "advance" under an EIDL COVID-19 loan, to Loan Request as indicated on the form.

All parties listed below are considered owners of the Applicant as defined in 13 CFR § 120.10, as well as "principals":

- For a sole proprietorship, the sole proprietor;

- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;

- For a corporation, all owners of 20% or more of the corporation;

- For limited liability companies, all members owning 20% or more of the company; and

- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to : Small  Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416., and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503.

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act (the Act).

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Act using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your  loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) foreclose on collateral or take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants  SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial



**Paycheck Protection Program**
**Borrower Application Form**

institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – Subject to certain exceptions, SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that will be automatically released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers (and their officers, directors, stockholders or partners), the collateral pledged to secure the loan, the amount of the loan, its purpose in general terms and the maturity. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined, forced to cease operations, or prevented from starting operations. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549; (2 CFR Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

4

# EXHIBIT B

**Paycheck Protection Program**

## Lender Application Form - Paycheck Protection Program Loan Guaranty

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

The purpose of this form is to collect identifying information about the Lender, the Applicant, the loan guaranty request, sources and uses of funds, the proposed structure (which includes pricing and the loan term), and compliance with SBA Loan Program Requirements. This form reflects the data fields that will be collected electronically from lenders; no paper version of this form is required or permitted to be submitted. As used in this application, "Paycheck Protection Program Rule" refers to the rules in effect at the time you submit this application that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act).

<u>Instructions for Lenders</u>

All Paycheck Protection Program (PPP) loans are processed by all Lenders under delegated authority from SBA. This application must be submitted and signed electronically in accordance with program requirements, and the information requested is to be retained in the Lender's loan file.

### A. Lender Information

| | |
|---|---|
| Lender Name: | Lender Location ID: |
| Address: | City:    St:    Zip: |
| Lender Contact: | Ph: ( ) -    Cell or Ext: ( ) - |
| Contact Email: | Title: |

### B. Applicant Information

Check One: ☐ Sole Proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☐ LLC ☐ Independent contractor
☐ Eligible self-employed individual ☐ 501(c)(3) nonprofit ☐ 501(c)(19) veterans organization
☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act) ☐ Other

**Applicant**

| | |
|---|---|
| Applicant Legal Name: | |
| DBA: | Business Tax ID: |
| Applicant Address: | City, State, Zip: |
| Applicant Primary Contact: | Phone: ( ) - |

### C. Loan Structure Information

| Amount of Loan Request: | $ | Guarantee %: | 100% | Loan Term in # of Months: | 24 | Payment: | Deferred 6 mos. |
|---|---|---|---|---|---|---|---|

Applicant must provide documentation to Lender supporting how the loan amount was calculated in accordance with the Paycheck Protection Program Rule and the CARES Act, and Lender must retain all such supporting documentation in Lender's file.

| Interest Rate: | 1% |
|---|---|

### D. Loan Amount Information

| | |
|---|---|
| Average Monthly Payroll multiplied by 2.5 | $ |
| Refinance of Eligible Economic Injury Disaster Loan, net of Advance (if Applicable; see Paycheck Protection Program Rule) | $ |
| **Total** | $ |

### E. General Eligibility *(If the answer is no to either, the loan cannot be approved)*

| | |
|---|---|
| • The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020 and had employees for whom the Applicant paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC, (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant, (3) the funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, and (4) the Applicant has not received another Paycheck Protection Program loan. | ☐ Yes ☐ No |
| • The Applicant has certified to the Lender that it (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, meets the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry. | ☐ Yes ☐ No |

### F. Applicant Certification of Eligibility *(If not true, the loan cannot be approved)*

| | |
|---|---|
| • The Applicant has certified to the Lender that the Applicant is eligible under the Paycheck Protection Program Rule. | ☐ True |

### G. Franchise/License/Jobber/Membership or Similar Agreement *(If applicable and no, the loan cannot be approved)*

| | |
|---|---|
| • The Applicant has represented to the Lender that it is a franchise that is listed in the SBA's Franchise Directory. | ☐ Yes ☐ No |

| **H.  Character Determination** *(If no, the loan cannot be approved)* | | |
|---|---|---|
| • The Applicant has represented to the Lender that neither the Applicant (if an individual) nor any individual owning 20% or more of the equity of the Applicant is subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or is presently incarcerated, or on probation or parole. | ☐ Yes | ☐ No |
| • The Applicant has represented to the Lender that neither the Applicant (if an individual) nor any individual owning 20% or more of the equity of the Applicant within the last 5 years, for any felony: 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment). | ☐ Yes | ☐ No |

| **I.  Prior Loss to Government/Delinquent Federal Debt** *(If no, the loan cannot be approved)* | | |
|---|---|---|
| • The Applicant has certified to the Lender that neither the Applicant nor any owner (as defined in the Applicant's SBA Form 2483) is presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy. | ☐ Yes | ☐ No |
| • The Applicant has certified to the Lender that neither the Applicant nor any of its owners, nor any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government. | ☐ Yes | ☐ No |

| **J.  U.S. Employees** *(If no, the loan cannot be approved)* | | |
|---|---|---|
| • The Applicant has certified that the principal place of residence for all employees included in the Applicant's payroll calculation is the United States. | ☐ Yes | ☐ No |

| **K.  Fees** *(If yes, Lender may not pass any agent fee through to the Applicant or offset or pay the fee with the proceeds of this loan)* | | |
|---|---|---|
| • Is the Lender using a third party to assist in the preparation of the loan application or application materials, or to perform other services in connection with this loan? | ☐ Yes | ☐ No |

### SBA Certification to Financial Institution under Right to Financial Privacy Act (12 U.S.C. 3401)

By signing SBA Form 2483, Borrower Information Form in connection with this application for an SBA-guaranteed loan, the Applicant certifies that it has read the Statements Required by Law and Executive Orders, which is attached to Form 2483. As such, SBA certifies that it has complied with the applicable provisions of the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401) and, pursuant to that Act, no further certification is required for subsequent access by SBA to financial records of the Applicant/Borrower during the term of the loan guaranty.

### Lender Certification

On behalf of the Lender, I certify that:

• The Lender has complied with the applicable lender obligations set forth in paragraphs 3.b(i)-(iii) of the Paycheck Protection Program Rule.
• The Lender has obtained and reviewed the required application (including documents demonstrating qualifying payroll amounts) of the Applicant and will retain copies of such documents in the Applicant's loan file.

I certify that:

• Neither the undersigned Authorized Lender Official, nor such individual's spouse or children, has a financial interest in the Applicant.

Authorized Lender Official: _____     Date: _____
                                                       Signature

Type or Print Name: _____     Title: _____

NOTE: According to the Paperwork Reduction Act, you are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated burden for completing this form, including time for reviewing instructions, gathering data needed, and completing and reviewing the form is 25 minutes per response. Comments or questions on the burden estimates should be sent to U.S. Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Rm. 10202, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

# EXHIBIT C



**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: April 08, 2020.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Chapter 11** |
| **ASTERIA EDUCATION, INC.,** | § | |
| | § | **Case No. 20-50169-cag** |
| Debtor. | § | |
| _____ | § | |

### ORDER AUTHORIZING DEBTOR TO SEEK EMERGENCY GOVERNMENT LOAN FUNDING ON ACCOUNT OF EFFECTS OF EXISTING AND POTENTIAL FUTURE COVID-19 MEASURES AS WELL AS <u>SUBSEQUENT ACTIONS AS MAY BE NEEDED IF APPROVED</u>

The Court having considered the _Expedited Motion for Authority to Seek Emergency Government Loan Funding on Account of Effects of Existing and Potential Future Covid-19 Measures as well as Subsequent Actions as May be Needed if Approved_ (the "**Motion**") [Docket No. 112] filed by Asteria Education, Inc., d/b/a ECS Learning Systems ("**Asteria**" or "**Debtor**") on March 27, 2020, the Debtor's Brief in Support of the Motion [Docket No. 127] the arguments of counsel and the lack of objection to the Motion, the Court finds and concludes:

Order Authorizing Debtor to Seek Emergency Government Loan
Funding on Account of Effects of Existing and Potential Future Covid-19
Measures as well as Subsequent Actions as may be Needed if Approved          Page 1 of 6

A. **Jurisdiction and Venue.** This Court has jurisdiction and authority to enter final orders in this contested matter pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. **Notice.** Notice of the Motion was served by the Debtor on: (a) counsel for Cadence, AAVIN and WebBank via electronic mail; (b) the U.S. Trustee, by the Court's CM/ECF system; (c) the 20 largest unsecured creditors by U.S. mail; (d) those persons who have formally appeared and requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, by the Court's CM/ECF system, or U.S. mail; and (e) all governmental agencies required to receive notice under the Federal Rules of Bankruptcy Procedure or the Local Bankruptcy Rules, by U.S. mail (the foregoing parties are hereinafter referred to as the "**Notice Parties**").

C. **Authority to Seek Emergency Government Loan Funding.** The Debtor is bound by the Agreed Order Granting Final Use of Cash Collateral [Docket No, 61] ("**FCC Order**"), including provisions pertaining to "Debtor's use of unauthorized credit" (FCC Order, at p. 9 ¶ 4 (v)). The Court finds that the Debtor does not violate the FCC Order by applying to the Small Business Administration or other governmental units or financial institutions for loans, or by applying to secure the benefits under any of the programs detailed in the Motion or those that may be enacted into law for the purposes of addressing the effects of the Covid-19 pandemic on the economy and small businesses; *provided, however,* that the Debtor may only borrow funds in a manner that complies with the Bankruptcy Code and the FCC Order, including, but not limited to, the requirement that the Debtor seek approval of any such loan under Sections 364

**Order Authorizing Debtor to Seek Emergency Government Loan
Funding on Account of Effects of Existing and Potential Future Covid-19
Measures as well as Subsequent Actions as may be Needed if Approved**          **Page 2 of 6**

of the Bankruptcy Code and that any such sought loan does not violate the terms of the FCC Order p. 9 ¶ 4.

D.      **Applications under the "Coronavirus Aid, Relief, and Economic Security Act" or the "CARES Act" (including Economic Injury Disaster Loans "EIDL" or Paycheck Protection Program "PPP" loans) is Compliant with the FCC Order.** The Court finds that none of the loans that may be available to the Debtor under the CARES Act (as they may be combined per the CARES Act if both EIDL and PPP loans are awarded to the Debtor)(hereinafter "**Emergency Government Loan Funding**") by virtue of the text of: a) the CARES Act; and b) the U.S. Small Business Administration's Interim Final Rules ("**Interim Final Rules**"),[1] would constitute unauthorized credit that violates the prohibition detailed in the FCC Order, at p. 9 ¶ 4. (v) of the FCC Order.

E.      **Debtor is Otherwise Eligible (Authorized) to be an Applicant for Loan(s) under the CARES Act.** As detailed in the Debtor's Brief in Support [Docket No. 127] and after the Court's own review of the CARES Act and the Interim Final Rules, finds that the only provision of the CARES Act which prohibit the granting of any of the loans under the legislatively mandated relaxed lending standards provided for in the CARES Act to a debtor under Chapter 11 of Title 11 of the U.S. Code, are set forth in Section 4003 (c)(3)(B) and (D)(i)(V) of the CARES Act, which applies only to Federal Reserve Programs or Facilities

---

[1]    Provisions of the Interim Final Rules note the immediate adoption of those rules consistent with applicable provisions of CARES Act:

> "The immediate effective date of this interim final rule will benefit small businesses so that they can immediately apply for the loan with a full understanding of loan terms and conditions. This interim final rule is effective without advance notice and public comment because section 1114 of the Act authorizes SBA to issue regulations to implement Title 1 of the Act without regard to notice requirements. This rule is being issued to allow for immediate implementation of this program." SBA Interim Final Rule p. 4, Small Business Administration [Docket No. SBA-2020-0015] 13 CFR Part 120 (April 2, 2020).

where respectively: a) "Federal Reserve Act Taxpayer Protections and Other Requirements Apply. —For the avoidance of doubt, any applicable requirements under section 13(3) of the Federal Reserve Act (12 U.S.C. 343(3)), including requirements relating to loan collateralization, taxpayer protection, and *borrower solvency*, shall apply with respect to any program or facility described in subsection (b)(4) [of Section 4003]²" [*emphasis and insert added*]; and b) "Assistance For Mid-Sized Businesses.— ...Any eligible borrower applying for a direct loan under this program shall make a good-faith certification that— ... (V) the recipient is not a debtor in a bankruptcy proceeding;".  Any loans sought by the Debtor, because the Debtor employs less than 500 employees, do not fall under the rubric of Section 4003, but rather are governed by Sections 1102, 1106 and 1110 of the CARES Act.  In the context of the CARES Act or the Interim Final Rules, as they apply to the Debtor, there is no such prohibition with regard to debtor under Chapter 11 of title 11 being the recipient of a loan under the revised SBA 7(a) program known as the PPP or under the EIDL program portions of the CARES Act.

F.    **Requirement to Seek Approval of Any Approved Emergency Government Loan Funding.** For any loan for which Debtor is approved, the Debtor shall file and serve on the Notice Parties a supplemental pleading(s) seeking interim approval on an emergency/expedited basis as circumstances may warrant, per Rule 4001(c) and final approval on an emergency/expedited basis promptly after receiving notice from the SBA or any other governmental unit which may administer disaster loan or similar programs shortly after such approval notification. The Debtor shall also keep the Lenders³ informed of any information

---

² The Federal Reserve is authorized to lend to loans to illiquid non-bank institutions 43 Federal Reserve Act, § 13(3) (codified at 12 U.S.C. § 343 (2012)) subject to applicable limitations.
³ As that term is defined in the FCC Order.

received regarding its SBA or other governmentally approved loan applications made.

**Accordingly, it is hereby ORDERED that**

1.      **Motion is Granted.** The Motion is GRANTED. This Order is valid and effective immediately upon entry.

2.      **Notice.** Notice of the Motion has been provided to all parties in interest entitled to notice and such notice was appropriate under the circumstances. No other or further notice of the Motion is required, except as otherwise provided by this Order.

3.      **Authorization to Seek Emergency Government Loan Funding.** Subject to the terms and conditions of this Order, the Debtor is authorized to seek Emergency Government Loan Funding and such efforts shall not cause the Debtor to be in default under the FCC Order.

4.      **Requirement to Seek Approval of Any Approved Emergency Government Loan.** If the Debtor secures the approval for any approved Emergency Government Loan Funding the Debtor shall file and serve on the Notice Parties a supplemental pleading(s) seeking interim approval on an emergency/expedited basis, as circumstances may warrant per Rule 4001(c) and final approval on an emergency/expedited basis promptly after receiving notice from the SBA or any other governmental unit which may administer disaster loan or similar programs shortly after such approval notification and secure approval of same by this Court before any approved funding thereunder may be utilized by the Debtor. The Debtor shall also keep the Lenders informed of any information received regarding its SBA or other governmentally approved loan applications made.

**# # # END OF ORDER # # #**

**Order Authorizing Debtor to Seek Emergency Government Loan**
**Funding on Account of Effects of Existing and Potential Future Covid-19**
**Measures as well as Subsequent Actions as may be Needed if Approved          Page 5 of 6**

**Submitted by:**

*/s/ E. P. Keiffer*
E. P. Keiffer (Texas SBN 11181700)
Paul M. Lopez (Texas SBN 24076516)
ROCHELLE MCCULLOUGH, LLP
325 North Saint Paul Street, Suite 4500
Dallas, Texas 75201
Telephone: (214) 580-2525
Facsimile: (214) 953-0185
Email: pkeiffer@romclaw.com
Email: plopez@romclaw.com

**ATTORNEYS FOR DEBTOR**
**AND DEBTOR-IN-POSSESSION**

**Order Authorizing Debtor to Seek Emergency Government Loan**
**Funding on Account of Effects of Existing and Potential Future Covid-19**
**Measures as well as Subsequent Actions as may be Needed if Approved          Page 6 of 6**

EXHIBIT D

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


| | | |
|---|---|---|
| HIDALGO COUNTY EMERGENCY SERVICE FOUNDATION, | ) ) ) | CASE NO:  20-02006 ADVERSARY |
| Plaintiff, | ) ) | Houston, Texas |
| vs. | ) ) | Friday, April 24, 2020 |
| JOVITA CARRANZA, | ) ) | (9:01 a.m. to 10:04 a.m.) |
| Defendant. | ) ) | |


HEARING

BEFORE THE HONORABLE DAVID R. JONES,
UNITED STATES BANKRUPTCY JUDGE


REMOTE AND TELEPHONIC APPEARANCES:

For Plaintiff:            NATHANIEL PETER HOLZER, ESQ.
                         Jordan Holzer & Ortiz
                         500 N. Shoreline Drive
                         Suite 900
                         Corpus Christi, TX 78401


Also present:            DAVID ELLIOTT

For Defendant:           RICHARD A. KINCHELOE, ESQ.
                         United States Attorney's Office
                         1000 Louisiana Street
                         Suite 2300
                         Houston, TX 77002


Court Reporter:          Recorded; FTR-Mobile

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>**Houston, Texas; Friday, April 24, 2020; 9:01 a.m.**</u>

<u>**(Remote and telephonic appearances)**</u>

**(Call to order)**

**THE COURT:**  All right, good morning, everyone.  This is Judge Jones.  Today is Friday, April the 24th, 2020, which is the docket for Corpus Christi, Texas.

First matter on this morning's docket is Adversary Number 20-2006, Hidalgo County Emergency Services versus the director of the Small Business Administration.  Take appearances, please.

Mr. Holzer, I see you there, you want to lead us off, please.

**MR. HOLZER:**  Pete Holzer, your Honor, for the Plaintiff, Hidalgo County Emergency Service Foundation.  I believe my co-counsel, Kay Walker, is on the line, and also believe the Chief Restructuring Officer of the Debtor, Mr. Romero, was going to call in.

**THE COURT:**  All right, thank you.  Good morning to everyone.

Mr. Kincheloe, and I look at the official title, I said director of the SBA.  I see that the title is administrator.  I meant nothing by it, my apologies.  Do you want to go ahead and make your appearance, please?

**MR. KINCHELOE:**  Thank you, your Honor, Rick Kincheloe for the Defendant.

3

1          **THE COURT:**  All right, thank you.  Anyone else wish

2    to make an appearance?

3          **MR. ELLIOTT:**  This is David Elliott (indisc.) for

4    Hidalgo County.

5          **THE COURT:**  All right, thank you, Mr. Elliott.  Good

6    morning to you.  Anyone else?

7          **MR. ELLIOTT:**  Good morning (indisc.)

8          **THE COURT:**  All right, thank you, Mr. Castillo.  Let

9    me -- Mr. Holzer and Mr. Kincheloe, let me sort of bring you

10   sort of full circle in my thoughts since yesterday.  I spent a

11   good part of the night reading the entirety of the CARES Act.

12   I have come to conclude it is a very long and often complicated

13   document to work your way through, but I spent a lot of time

14   with it.  I also have spent significant time reviewing the

15   SBA's final interim (indisc.) I believe the number is 2020-

16   0015.  I have also looked at relevant provisions governing --

17   and, again, I will apologize if I don't get the title right,

18   but SBA 7(A) loans.  I have also thought a great deal about the

19   jurisdictional issues that are present.  And I have gone back

20   and reviewed some recent decisions by my circuit.  And I am --

21   it is very clear to me that my circuit has concerns as to just

22   how far the jurisdiction of an Article One court goes.  And I

23   don't want to entertain that argument today.  And so to the

24   extent that I grant any relief, it will be as to this debtor

25   only in this adversary only.  And to the extent that there are

1    what I'm going to call class-like issues, I do not want Rule 23

2    or anything close to Rule 23 to become part of this discussion.

3    I -- for a couple of reasons.  Number one, it's my belief that

4    by the time that we were able to work through all of those

5    issues, the Debtor's economic situation might probably have

6    dictated the outcome.  And that shouldn't be anyone's goal.  I

7    also think that to the extent that there are (indisc.) 23

8    issues in a case like this, they are better left to my Article

9    Three colleagues.  I think that's all I wanted to say in terms

10   of what I've done in preparation.  Obviously I've read

11   everything.  Mr. Kincheloe, I have read your brief.  I have had

12   a time -- I have had an opportunity to review the authorities

13   cited in that brief.  I've had a chance to do my own research.

14   So I feel like as though I'm fairly well-educated on the

15   applicable law.  I think I understand the issue.  That doesn't

16   mean that you shouldn't take the opportunity to advance any

17   position that you think.  But I am prepared to talk about a

18   number of issues as we work our way through that.  Any

19   questions before we get started?

20          **MR. HOLZER:**  No, your Honor.

21          **MR. KINCHELOE:**  No, your Honor.

22          **THE COURT:**  All right, thank you.  Mr. Holzer, I

23   think that it is your burden so if you'd like to lead off,

24   please.

25          **MR. HOLZER:**  Thank you, your Honor.  Pete Holzer for

1   the Plaintiff, Hidalgo County Emergency Services Foundation.  I

2   know the Court is up to speed.  I'm not going to belabor the

3   facts that have before you in the three sworn declarations.

4   The one of Mr. Romero in the sworn complaint, certain

5   paragraphs of that factual basis.  There is a sworn declaration

6   of Mr. Elliott that was filed last night.  And then just a few

7   moments ago Mr. Ponce's declaration hit the docket.  I don't

8   know if the Court has had a chance to see Mr. Elliott and

9   Mr. Ponce's declarations.

10          **THE COURT:**  I've read Mr. Elliott's.  I did not see

11   Mister you said Ponce, I've not seen (indisc.) --

12          **MR. HOLZER:**  Mr. Ponce.

13          **THE COURT:**  Yes, I have not seen that one.  I am

14   reading it as you talk.  So go ahead.

15          **MR. HOLZER:**  I was going to let you finish reading,

16   Judge.

17          **THE COURT:**  Pretty short, direct, four paragraphs, I

18   got it.

19          **MR. HOLZER:**  Okay, so Mr. Ponce really talks about

20   the background of the company and where it is and touches on

21   the impact of the coronavirus problem.

22          Mr. Elliott is certainly much more specific addressed

23   a few things that may have not been in the complaint that we

24   talked about yesterday, that is the process by which we got to

25   where we are and what we think happened and so forth.

```
 1              So I think what I really want to do is talk sort of
 2   in general about some of the issues that Mr. Kincheloe raised
 3   in his brief, which is actually quite helpful in my thinking
 4   about how things go together and what the administrator does
 5   and how the government looks at these kind of issues.  I think
 6   one very important thing is that despite what we now know from
 7   Mr. Kincheloe's brief, we still don't know who, where, why, or
 8   how the bankruptcy exclusion came to be -- came about as part
 9   of the application form.  There's no doubt that it's there in
10   the form.  And I do see the I'll call it a tenuous connection
11   that the government makes between the implementing rule and
12   that there's a form, okay, so there is a connection.  But it
13   doesn't really tell us -- we just have no understanding and no
14   knowledge or any idea how, who, where, or why this exception
15   language showed up in this application on the PPP loan program.
16   I can speculate, and here's what my speculation is.  First of
17   all, I think we're all aware that there are other lawsuits now,
18   a lot of them from what I've read in the papers, where the SBA
19   is being sued about giving these PPP loans to a larger
20   corporation, Fortune 500 companies, that really didn't make any
21   sense to be allowed under the PPP loan program and wound up
22   exhausting it, all these big-monied corporations.  And so
23   that's ongoing.  That's not really before this Court but it's
24   certainly out there.  But it looks to me like what happened in
25   this agency is they took this CARES Act, which I agree, I've
```

1   read the whole thing, too, and it's, you know, about what you'd

2   expect from legislation that occurred over just a period of a

3   few days and weeks.  There is a section that has loans for

4   large companies and like the airlines and so on and so forth

5   that does have a bankruptcy exclusion, it's a specific one in

6   there.  And then there's the paycheck protection loan under --

7   in Section 1100, 1102, that does not.  And so it looks to me

8   like what the SBA has done is they then drafted the bankruptcy

9   exclusion in the large company section and they've applied it

10  also to the PPP loan protection.  And then conversely they let

11  the --

12          **THE COURT:**  (Indisc.)

13          **MR. HOLZER:**  -- large companies into the PPP

14  (indisc.) --

15          **THE COURT:**  Mr. Holzer, if I could just interrupt you

16  because I want to make sure that the record is clear.  The

17  bankruptcy exclusion is actually in the section for midsized

18  businesses defined those companies with more than 500, less

19  than 10,000 employees, can be found at page 193 of the Act.  I

20  have read it, I'm familiar with it.  I just -- I don't think

21  there necessarily is a section that I read with respect to

22  large-sized businesses.  The actual subtitle of the provision

23  are loans for midsized businesses.

24          **MR. HOLZER:**  All right, (indisc.) --

25          **THE COURT:**  (Indisc.)

1          **MR. HOLZER:**  -- then I apologize, Judge.  I conflated

2     those two and I've done the same mistake that I'm accusing the

3     SBA of.  So I'm not -- I guess the point being, there's no ill

4     will.  This is not a intentional ill will, they're out to get

5     the bankrupt companies.  I think it's just a mistake in a badly

6     implemented process that they've done here, as evidenced by the

7     lawsuits for the big companies getting into this program and

8     exhausting it.  In any event, I think it's an abuse of

9     discretion the way they've handled this and the way they've put

10    this bankruptcy exception.  They've conflated these two

11    different programs.  And then we're faced with this form that

12    has this exception and bank lenders that look at the form and

13    say, well, here's the exception, it's right here in the form I

14    have to use so I can't give you a loan.  So with respect to the

15    abuse of discretion, and we are arguing, Judge, both Section

16    525, 523, I forget the number, is discrimination and a exercise

17    of authority that doesn't comply with the statute.  And then so

18    I want to jump down to some cases Mr. Kincheloe has.  His brief

19    talks about the Anti-Injunction Act in section -- in the Small

20    Business Act.  And I looked at those cases.  I have a couple of

21    cases, your Honor, if you need them that explain why in a

22    situation like this, the -- in a situation where the

23    administrator of a government agency exceeds the scope of their

24    authority like they're arguing here, that Anti-Injunction Act

25    doesn't apply.  And I would start with the Supreme Court.  It's

1   the case is -- oh, where'd it go?  *South Carolina versus Regan*

2   at 465 U.S. 367 from 1984.  That case is a holding where the

3   anti-injunction provisions are inapplicable where Congress

4   didn't provide the plaintiff with an alternative legal way to

5   challenge the administration's ruling.  And that was a case

6   related to taxes.  We have *Canterbury Career School versus*

7   *Riley*, District of New Jersey, 1993, 833 F.Supp. 1097 basically

8   saying the same thing.  This is a Secretary of Department of

9   Education has a similar anti-injunction provision in their

10  statute.  The court said if the defendant, the Secretary of

11  Department of Education, has exceeded the scope of his

12  authority, then this court has jurisdiction to grant

13  appropriate injunctive relief, notwithstanding the anti-

14  injunction provision.  And then, lastly, a case out of this

15  court from Judge Schmidt back in 1992, an unreported case, it's

16  a 1992 Westlaw 551256 pointing out that the Fifth Circuit has

17  left (indisc.) by implication recognizing that injunctive

18  relief is permissible where the government agency exceeds its

19  statutory authority.  So with those cases and my arguments, I

20  think the question of whether or not this Court has

21  jurisdiction authority to enter an injunction, I think it does.

22  And I think it's well-supported in the law and under the facts

23  of this case.

24          So I wanted to talk about next a -- what I think is

25  why this statute does exceed the administrator's authority.

1    And it's partly a policy argument.  So let's talk about a

2    hypothetical.  So let's say you have a loan applicant who's

3    preparing for bankruptcy, hired bankruptcy counsel, hired the -

4    - hired a -- hired bankruptcy lawyer, paid them a retainer,

5    they're working on the schedules, but they haven't filed

6    bankruptcy yet.  And so would that company -- would that

7    potential debtor qualify for these loans?  Yes, because they

8    could answer that question "no."  Let's talk about another

9    company (indisc.) --

10             THE COURT:  Could they?  I mean, Mr. Holzer, could

11   they?

12             MR. HOLZER:  Could they --

13             THE COURT:  (Indisc.)

14             MR. HOLZER:  Could they?

15             THE COURT:  I mean, if you look at the -- if you

16   compare the wording in the portion of the statute involving

17   midsized debtors, it actually says you aren't eligible if you

18   are a debtor in a case.  The words in the form are:  "presently

19   involved in a bankruptcy case."  What does that mean?  Does

20   that mean that if you (indisc.) a claim against someone in

21   bankruptcy, that you're not eligible under the Act?  Does it

22   mean that if you consult with a bankruptcy (indisc.)

23   contemplated bankruptcy that you are not eligible for

24   participation (indisc.).  What do the words "presently

25   involved" actually mean in your mind?

1          **MR. HOLZER:**  Yes, I don't know because you're right,

2     a creditor in a bankruptcy could be presently involved.  A

3     (indisc.) --

4          **THE COURT:**  What if you're (indisc.) who has a lease,

5     are you presently involved in a bankruptcy case?

6          **MR. HOLZER:**  Right.  I do think the most natural

7     construction there is that you're a debtor in bankruptcy.  I'm

8     not sure that there's any difference in the way I look at that

9     language and the way the government looks at the language.  But

10    I do agree with the Court that there is some ambiguity.  But

11    that's -- if you look at that language, a company that's

12    preparing to file bankruptcy is not presently involved in a

13    bankruptcy.  It's just thinking about it.  And if it hasn't

14    already, would it qualify for this loan, could it check the

15    "no" box on that form?  I think there's no doubt it could and

16    should and would qualify for a loan.  So let's talk about

17    another company that's insolvent and hasn't hired a bankruptcy

18    lawyer, but they're broke, they (indisc.) business, all the

19    employees have gone home, they're out of money, and they have

20    no idea whether they're going to survive, and can they apply

21    for a loan, you know, get the employees (indisc.) and the

22    answer is, yes, they would check that box "no."  And so another

23    company that's virtually shut down, it's overdrawn on its bank

24    account, and would they be able to check the "no" box?  The

25    answer is of course, they check the "no" box.  And so all three

```
 1   of those hypotheticals are ways where a company who is

 2   completely uncreditworthy can get one of these PPP loans.  So

 3   compare that to a debtor in possession that's operating,

 4   complying with all the rules, filing its monthly operating

 5   reports, running its business, and not only that, it's a

 6   systemically important business, particularly in the time of an

 7   active pandemic, and operating, but they don't qualify.  It

 8   simply makes no sense for the other companies that would

 9   qualify to be able to get one of these forgivable loans and for

10   my client (indisc.) that I'm (indisc.) is not.

11           THE COURT:  Mr. Holzer, let me go back to your

12   example because I'm not sure you really vetted that example

13   out.  What if you have a company that is as you said

14   contemplating bankruptcy, and you have an owner in the business

15   who owns one percent of that company and is a creditor in a

16   large oil and gas bankruptcy case that's pending because they

17   own -- that person owns a small royalty interest, could the

18   company check the box or not?

19           MR. HOLZER:  Haven't though through that one, Judge.

20   I would think they could check the "no" box.  But, you know,

21   there's certainly a --

22           THE COURT:  (Indisc.)

23           MR. HOLZER:  -- (indisc.) of the language --

24           THE COURT:  Read the language --

25           MR. HOLZER:  -- that they would -- yeah.
```

1          **THE COURT:**  Read the language.  Is the business or

2     any owner presently involved in any bankruptcy?

3          **MR. HOLZER:**  That's right.  I think that you're

4     highlighting, your Honor, the flaws in this -- in what this

5     form says and all the ambiguities that are evidence of a poorly

6     instituted program beyond the administrator's authority.  All

7     right, so let's see.  So that's arbitrary and capricious is

8     what I think and gives you a basis to enter an injunction.

9          Let me just say that I do understand that the limit

10    on the jurisdiction.  We never intended to seek relief for

11    anybody but my client, the Plaintiff in this lawsuit.  Whether

12    it would be appropriate for a nationwide injunction or even a

13    Southern District injunction is not our concern.  I'm only

14    worried about my client.  My client only cares about its

15    survival.

16         So I wanted to then go to the question of whether or

17    not this is bankruptcy discrimination.  I do agree in reading

18    Mr. Kincheloe's brief, he cited the Exquisito (phonetic) case

19    out of the Fifth Circuit and the Ares (phonetic) case out of I

20    believe it's the Fourth Circuit.  And they're both in his brief

21    and those are cases that we came up in our research as well.

22    And I do think they -- those two cases are useful to compare

23    and contrast.  Exquisito involved a program that the court

24    said, well, this is really about the jobs, not about a loan.

25    And so the -- so it was discrimination.  Ares was more about a

1   loan than anything else and so that was not.  So the case law

2   does say that if it's just a loan program, then the anti-

3   injunction -- excuse me, the -- it's not bankruptcy

4   discrimination.

5           So let's look at what we have here.  Is this more

6   like the facts in Exquisito or more like the facts in Ares?  I

7   think it's clearly this is more about saving jobs, preventing

8   collapse of the economy.  It's not really about a company

9   borrowing money that under the statute it has to show its

10  ability to pay back.  And that's in fact if you read the

11  requirements for qualify for a loan, that's just not in there.

12  You just have to say what you're going to use it for and that's

13  what my client needs it for is to pay payroll and help with the

14  rent and the other permissible uses for the funds.  It's really

15  more of a grant to protect the economy, save jobs, than it is a

16  straightforward loan.  So I would say that the cases that say

17  loans don't apply really don't have any impact here.

18          There's another case Mr. Kincheloe cited in his

19  brief, the *Toth*, T-O-T-H, case, and that also involved an

20  extension of credit which is really not what's happening here.

21  This is a different animal.  So with that, Judge, I think I've

22  said everything I wanted to say for now.  I think the facts are

23  pretty clear what happened that we qualify, except for this

24  arbitrary inclusion of a bankruptcy exception on the

25  application form, and that it is bankruptcy discrimination and

1   the Court should grant an injunction.

2            **THE COURT:**  All right, thank you.  Mr. Kincheloe.

3            **MR. KINCHELOE:**  Yes, your Honor, Rick Kincheloe.

4   (Indisc.) start with Mr. Holzer's discussion of he -- the

5   reasons for the exclusion.  And I will say I really appreciate

6   Mr. Holzer sending me the cases he was going to discuss before

7   today.  It certainly was an extreme professional courtesy.

8            I have received a regulation that I understand is

9   going to be published imminently like Monday.  I can broadcast

10  it for the Court if the Court would like to read it because I

11  think it does explain (indisc.) saying about the wording of the

12  application but the regulation that's going to be published

13  does add some color to that.  So just this is going to be at 13

14  CFR (indisc.) and 121.  And then the bankruptcy exclusion

15  appears here.  And so this is that if an applicant is currently

16  a debtor in bankruptcy or if it files bankruptcy before the

17  loan is funded, then it is ineligible.  And this -- the second

18  paragraph explains kind of the rationale.  There's a concern

19  that the SBA loses control over the funds because they become

20  property of the estate.  There's also a concern the Court --

21  your Honor, is the Court done reading?  I'll stop sharing so I

22  can go back to video.

23           **THE COURT:**  Yeah, no, I read it.  Thank you.

24           **MR. KINCHELOE:**  Okay.

25           **MR. HOLZER:**  Mr. Kincheloe, I'm -- I didn't --

1          **MR. KINCHELOE:**  Oh, I --

2          **MR. HOLZER:**  -- (indisc.) second page.

3          **MR. KINCHELOE:**  The second page --

4          **MR. HOLZER:**  (Indisc.)

5          **MR. KINCHELOE:**  -- is just -- I can send it to you

6    shortly.

7          **MR. HOLZER:**  Okay, that'll be fine.

8          **MR. KINCHELOE:**  I don't think it was relevant.  But

9    the other concern is the pandemic has created a unique public

10   need with unprecedented unemployment to get loans funded

11   extremely quickly.  And in this need for speed, the traditional

12   underwriting is just not going to work.  it's going to take too

13   long.  And so to avoid that traditional underwriting and to get

14   this -- get these loans out guaranteed by SBA as quickly as

15   (indisc.) could, the decision was made to say if you're in

16   bankruptcy, you're excluded.  We certainly had maybe a good --

17   it can be argued whether that's a good or bad decision from

18   public policy standpoint but at least that was the motivation

19   is get these loans out quickly and minimize the amount of

20   underwriting that needs to be done.

21         **THE COURT:**  In fact there really is no underwriting

22   that's done, right?  I mean, aren't the lenders authorized to

23   simply accept what's on the form and act just on the form, and

24   so long as they rely on the form, then they are protected;

25   isn't that the way that it works?

1          **MR. KINCHELOE:**  From the interim rule I've read, yes.

2    But from the --

3          **THE COURT:**  (Indisc.)

4          **MR. KINCHELOE:**  -- regulation I just posted, I

5    haven't read the entire regulation.  I got it maybe five

6    minutes before we started.  And so unless something in the

7    regulation changes that, that's my understanding.

8          **THE COURT:**  Got it.

9          **MR. KINCHELOE:**  Turning to the jurisdictional issue,

10   admittedly the provision in the Small Business Act is unique.

11   I'm not aware of any other provision this broad.  And certainly

12   there are other anti-injunctive language that appears in

13   various statutes.  You know, the Anti-Injunction Act deals

14   (indisc.) I think that's a little different.  The one thing I -

15   - there's a case -- well, it's -- there's so many other cases

16   out there, and one that Mr. Holzer shared, where there's a

17   statute that said except as otherwise provided herein, you

18   can't issue an injunction.  And certainly that language seems

19   to suggest that, well, okay, if you violate the statute, we can

20   enjoin you, we just can't enjoin you otherwise.  For 634, 15

21   USC 634, I don't see any similar condition.  I mean, it just is

22   (indisc.) the Fifth Circuit (indisc.) decision I cite at

23   footnote six which, you know, I suppose we could, you know,

24   dispute whether it's holding or dicta, but it's a pretty

25   blanket assertion, thou shalt not enjoin the SBA.  And again we

1    can argue whether Congress made a good or bad policy decision

2    in enacting that but I think that's the law.  And so turning to

3    106, honestly 106 waives sovereign immunity for the entire

4    Federal government for purposes of 525.  But (a)(4) states that

5    waiver is only to the extent it's consistent with applicable

6    non-bankruptcy law, and so I think we have to turn to this

7    likely unique provision applicable to the SBA administrator and

8    say, courts can't enjoin the SBA.  Whether that's a good or bad

9    idea, so be it but that's what it says.  And so I think

10   106(a)(4) coupled with 15 USC 634 I think means that there is

11   not a waiver of sovereign immunity for an injunction against

12   the SBA, depriving the Court of jurisdiction.

13           On -- moving to the 525(a) argument, it -- in the

14   Exquisito case, as I read it, it seemed to -- one thing that

15   was distinguishable is there was a preexisting relationship

16   between the SBA and the Air Force.  That's one thing that's --

17   is noteworthy.  The injunction in that case was not against the

18   SBA, it was against the Air Force.  The -- there was a pre-

19   bankruptcy relationship in that case.  And the Fifth Circuit

20   kind of thought through it and said, you know what, this

21   program is really designed to train minority-owned businesses

22   and so we view it more in the nature of a franchise.  Fine, if

23   you're going to call it a franchise then, yeah, it's covered

24   under 525(a).  What the Fifth Circuit has not decided, at least

25   as far as I can find, which the (indisc.) court, the *Toth* court

1    and I believe the (indisc.) Watts (phonetic) court in the Third

2    Circuit, and then the Second Circuit in Goldrich (phonetic) --

3    well, Goldrich dealt with student loans which has been

4    abrogated by 525(c), --

5              **THE COURT:**  Right.

6              **MR. KINCHELOE:**  -- those courts look at the decision

7    to extend credit, more specifically in the (indisc.) case

8    extend a guarantee of credit.  That's something totally

9    different.  It doesn't trigger this traditional gatekeeper

10   function of the government.  Like, you know, for example, state

11   bar licensing, 525 expresses this desire that we don't want

12   lawyers to file bankruptcy, then they'd be unable to practice

13   law because they filed bankruptcy.  No, we want them to be able

14   to continue to engage in the profession.  Real estate brokers,

15   any other number of professions, we want them to continue being

16   able to engage in that profession and we don't want the

17   government's gatekeeper role to be influenced by bankruptcy.

18   That doesn't mean the government is not allowed to discriminate

19   in other ways.  Again, maybe right, maybe wrong, but 525(a)

20   says it only bars discrimination in the context of licenses,

21   permits, charters, franchises, or other similar grant.  The

22   (indisc.) case and the other ones, *Toth* and Watts, say that a

23   loan guaranteeing a loan is not really similar to these other

24   claims because it doesn't implicate this gatekeeper function.

25   And because it's not similar, it's not covered by 525(a) so we

```
 1    don't even need to get to the question of whether the

 2    government was motivated by the bankruptcy.  It's just not

 3    covered.

 4            On the -- I heard -- as I understand the complaint,

 5    there's not an APA claim asserted and so it's just whether

 6    statutory authority was exceeded.  The language in the CARES

 7    Act is very broad.  I mean, it's just the language for 1102

 8    implementing the PPP loan guarantees (indisc.) may and that

 9    leaves a very broad, open-ended grant of authority, leaves a

10    lot of discretion in the administrator which makes sense given

11    the context.  I mean, this is imagine probably one of the

12    fastest pieces of legislation ever to make it through House,

13    Senate, and White House.  And --

14            THE COURT:  Well, wouldn't you agree that that

15    discretion has certain boundaries on it?  For instance, that

16    discretion shouldn't be allowed to frustrate the purpose of the

17    Act itself, agreed?

18            MR. KINCHELOE:  (No audible response)

19            THE COURT:  (Indisc.) there are limits.  You simply

20    can't say that you can implement rules and make an argument

21    that says, well, that discretion allows me to implement rules

22    that frustrate the application of the law.

23            MR. KINCHELOE:  So, your Honor, --

24            THE COURT:  (Indisc.)

25            MR. KINCHELOE:  -- I agree that there are limits but
```

1    I think the use of the word "may," as I read the statute now

2    (indisc.) didn't happen and no one intends for this to happen

3    but if we're just taking the thought experiment to the extreme,

4    I think the use of the word "may," the administrator can say,

5    okay, I've got this authority, I don't have to exercise it.

6    And I think Congress would probably come back and put a shell

7    in there.  But I think the way the statute's written, it's

8    pretty broad.  Now, there are other limits in the Small

9    Business Act, like the administrator has to ensure that the,

10   you know, loans made under this section are of such sound value

11   or so secured as reasonably to assure repayment.  So (indisc.)

12   administrator doesn't do that, the administrator violates the

13   statute.  But because Congress prohibited injunctions on the

14   SBA, it really creates this strange space where, yeah, the

15   statute says the administrator has limits but I don't think the

16   statutory -- the statute authorized an injunction against the

17   administrator if the administrator exceeds those limits.

18          THE COURT:  All right, so let me ask you this.  And

19   we're going to come back to that issue in a second.  But do I

20   even need to get there?  Didn't the SBA effectively delegate

21   the authority to determine who's eligible to the participating

22   financial institutions?

23          MR. KINCHELOE:  I don't (indisc.)

24          THE COURT:  Let's take a practical example.

25   Mr. Holzer comes into his local financial institution for a PPE

1  -- I'm sorry, a PPP loan.  He fills out the application.  Who

2  makes the decision of whether or not he's eligible?

3       **MR. KINCHELOE:**  So the -- as I read (indisc.) then

4  the bank has to receive the form, and as long as the bank

5  follows the form and the guidance, it may issue the loan and

6  it's going to be guaranteed by SBA.  But it is still SBA who

7  decided those parameters that go into the form.

8       **THE COURT:**  I'm not arguing with you on that.  I'm

9  just saying who makes the decision of who's eligible and who's

10 not?  The bank.  Has to be that way.  SBA couldn't do it.  SBA

11 doesn't have enough employees, it doesn't have enough local

12 offices.  It had to delegate part of that process to financial

13 institutions; otherwise, it would have been a program with

14 absolutely no ability to implement.  I'm not complaining.  I'm

15 just trying to be practical about it.

16      **MR. KINCHELOE:**  Right, yeah.  So again with the need

17 for speed, the analysis of whether a borrower meets the

18 appropriate criteria is sent to the banks.

19      **THE COURT:**  Right.  And in fact there really isn't an

20 underwriting function.  I mean, if your instruction is

21 (indisc.) this form and you make the decision off the form,

22 there really isn't an underwriting function.  There's no

23 evaluation of ability to repay, there's no evaluation of

24 collateral.  And you know what I'm doing, I'm undermining your

25 argument that it's consistent with the (indisc.) power of SBA

1    7(A).  You know, that just doesn't exist in this program.  In

2    fact, let's just be practical.  The entire intent of the

3    program is for people not to pay this back.  It's a way of

4    getting money from the government to people that are being

5    harmed.  And so long as they use it in the right way, they

6    don't have to pay it back.  Am I -- tell me where I'm wrong

7    about that.

8            **MR. KINCHELOE:**  Your Honor, I (indisc.) agree with

9    the Court that the intent was to get money to people who needed

10   it quickly.  And certainly to the extent it's used for the

11   proper purpose, it is intended to be forgiven.  And, you know,

12   I think the Court's correct, I mean, the amount of underwriting

13   is virtually nil.  I mean, the SBA set up parameters and said

14   banks (indisc.) somebody meets these parameters, that's the

15   amount of underwriting we're going to do.  And one of the

16   decisions made by SBA was, well, since we can't really -- we

17   don't have the time to go through and do a traditional credit

18   inquiry, we're going to exclude companies in bankruptcy, you

19   know, together with this purpose of we can't control the money

20   once it goes into the bankruptcy estate (indisc.)

21           **THE COURT:**  (Indisc.) said that, I mean, (indisc.)

22   hundred and eighty degrees wrong, I mean, isn't part of my job

23   to ensure that debtors act in accordance with the law?  I mean,

24   I would think, I mean, assuming that I'm doing my job, and I

25   try really hard to do my job every day, isn't there actually a

1   greater level of oversight than for someone who's not in

2   bankruptcy who can simply theoretically do what they want to

3   with the money once they get it?

4        **MR. KINCHELOE:**  I disagree, your -- I disagree with

5   your Honor's point.  It's not a question of oversight.  I think

6   it's a question of the way the statute is written, if Hidalgo

7   receives a PPP loan outside of bankruptcy, they are free to

8   choose how to use those funds.  Now, --

9        **THE COURT:**  Are they?

10       **MR. KINCHELOE:**  -- (indisc.) they use -- well, I

11  think they are.  But if they use it for certain purposes,

12  they're required to repay it.  If they use it for payroll

13  (indisc.) gets forgiven but if let's say company receives a

14  loan, a week later files bankruptcy.  Well, all of those funds

15  then become property of the estate, subject to administrative

16  claims.  And I don't think there's anything in the CARES Act

17  which would cause the proceeds of a PPP guaranteed loan to be

18  excluded from property of the estate or to be immune from the

19  claim of (indisc.) creditors or priority creditors.

20       **THE COURT:**  Okay.

21       **MR. KINCHELOE:**  So that's the motivation.  Again, the

22  statutory authority is broad.  I hear the Court's comment about

23  underwriting and the requirement to make sound loans.  This is

24  the administrator's decision.  But I go back to the anti-

25  injunction language in the Small Business Act that even to the

1  extent the administrator is wrong, the United States has not

2  waived sovereign immunity for an injunction to be issued

3  against the administrator.

4         **THE COURT:**  And tell me why I can't issue -- because

5  it -- there's no doubt that the financial institution is

6  (indisc.) participation with the SBA.  I think you just told me

7  they are given follow the form and process these loans.  And

8  Rule 65 gives me the ability to issue injunctive relief against

9  anyone acting in participation with the parties, agreed?

10        **MR. KINCHELOE:**  Would the Court give me a moment?

11        **THE COURT:**  Of course.  It would be 65(d)(2).

12 Actually (d)(2)(C).

13        **MR. KINCHELOE:**  So, your Honor, I don't think the

14 Court can enjoin the bank.  As I read this and I -- the Court

15 knows it way better than I do, but at least my quick reading of

16 the language of the rule is this would be if the Court enjoined

17 the administrator and anyone acting in concert with her, that

18 would capture this.  I don't know that this lets the Court

19 enjoin the bank without also enjoining the administrator;

20 because without an injunction against the administrator, the

21 administrator doesn't have to guarantee the loan.

22        **THE COURT:**  Well, I think -- I agree with you that I

23 can't order the SBA to guarantee a loan.  I 100 percent agree

24 with that.  The issue is can I order that the application be

25 considered without those four or five words.  And if you're

1    telling me the person making that decision is, what was it,

2    PlainsCapital Bank, Mr. Holzer?

3           **MR. HOLZER:**  Yes, your Honor.

4           **THE COURT:**  You're telling me that I can't order

5    PlainsCapital Bank to consider the application without giving

6    any consideration for those words in the form?

7           **MR. KINCHELOE:**  Then again I don't know that it

8    becomes a can't.  I think it becomes a question of should or

9    should not.  And with that question of whether or not the Court

10   should enjoin PlainsCapital Bank, I think there is a

11   substantial threat of irreparable injury to the bank because if

12   the bank --

13          **THE COURT:**  (Indisc.)

14          **MR. KINCHELOE:**  Well, because I think if the bank

15   follows the Court's order, ignores that line, and then issues

16   the loan, I think they are at risk if the SBA says we weren't

17   ordered to guarantee it, we're not guaranteeing it.

18          **THE COURT:**  Okay, so you just say that I need to

19   order the SBA to comply with the law if I find discrimination.

20          **MR. KINCHELOE:**  No, your Honor.

21          **THE COURT:**  Is that it?

22          **MR. KINCHELOE:**  I -- that -- your Honor, on that one

23   I think it's a question of can or cannot.

24          **THE COURT:**  All right.  So you're telling me that I

25   took an oath to uphold the statute, and if I find the statute's

1    been violated by the SBA, that I can do nothing about it?

2          **MR. KINCHELOE:**  I think the Court is unable to issue

3    an injunction against the SBA, even if the statute has been

4    violated.

5          **THE COURT:**  So tell me what it is I can do.

6          **MR. KINCHELOE:**  I don't know, your Honor.  For today

7    (indisc.) TRO, I do not think the Court can enter a TRO.

8          **THE COURT:**  Got it, okay.  Anything else?

9          **MR. HOLZER:**  Your Honor, briefly.

10         **THE COURT:**  No, I don't need anything else.

11         **MR. HOLZER:**  Okay (indisc.)

12         **THE COURT:**  Anything else, Mr. Kincheloe?

13         **MR. KINCHELOE:**  Yes, your Honor.  Just in closing, I

14   do dispute that the public policy considerations weigh in favor

15   of enjoining -- of issuing an injunction allowing this loan to

16   go -- to be made and guaranteed -- and/or guaranteed due to the

17   policy considerations.  If the SBA is required to implement

18   traditional underwriting requirements, it is likely to slow

19   down this program and likely to delay proceeds to other

20   applicants.

21         **THE COURT:**  Well how can it implement traditional

22   underwriting when it's been told what to do?

23         **MR. KINCHELOE:**  Your Honor, I mean --

24         **THE COURT:**  Simply because if I were to say that

25   there has been discrimination, that doesn't require the SBA to

1    do anything other than to not discriminate.

2        **(Pause)**

3            **MR. KINCHELOE:**  Your Honor, I -- sorry, I don't think

4    I understand the Court's point.

5            **THE COURT:**  I got it.  Anything else?

6            **MR. KINCHELOE:**  No, your Honor.

7            **THE COURT:**  All right.  So I have before me the

8    Debtor's request for a temporary restraining order against the

9    administrator of the SBA.  I do find that I have jurisdiction

10   over the matter pursuant to (indisc.) Section 1334.  I do find

11   that the adversary and the request for injunctive relief

12   constitutes a core proceeding under 28 USC Section 157.  I

13   further find that I have the requisite constitutional authority

14   under the guidance given by our Supreme Court to enter, to the

15   extent it is a final order, and I'm not sure it is, but it may

16   practically be a final order, I do find that I have the

17   requisite constitutional authority to enter final order.

18           I want to go through a couple of the arguments

19   because, again, I spent a lot of time reading all of the

20   relevant wording.  And there are certainly the arguments that I

21   simply -- they need to be addressed and I simply think that

22   they just have no foundation in logic or law or fact.  I want

23   to start with the argument that (indisc.) that there remains

24   intact, and I wrote it down as a quote, that there's this

25   (indisc.) ensuring that there is sound value or so secure as to

```
 1   reasonably assure repayment.  That is so out of context in this
 2   program that it's a frivolous argument.  The entire --
 3   everything said by our President, everything put out by our
 4   administration, everything put out by our Congress reflects
 5   that this was an emergency reaction to a series of events that
 6   had never before been experienced.  This isn't a loan program.
 7   This is a support program.  It is phrased the way it is to try
 8   and ensure that the money ends up in the right hands and used
 9   for the right purposes.  It is intended to protect tax-paying
10   citizens from the effects of government shutdowns, stay-at-home
11   orders, and simply the public not being able to engage in
12   ongoing commerce.  To suggest that this is a program that
13   enjoys underwriting and scrutiny in terms of who receives the
14   money is to simply ignore the obvious.  The SBA's own rules
15   (indisc.) effectively look at the form, make the loans.  You
16   make the loans, and so long as they're used for the right
17   purposes, there's no need to pay it back.  That is not a
18   traditional loan program.  There is no collateral valuation,
19   there is no credit worthiness test.  And, again, to make that
20   argument is simply frivolous.
21          I also want to talk about the 525 argument.  And I
22   take a quote out of the briefs.  It says that issues under 525
23   (indisc.) the gatekeeper role of the governments or a
24   government entity in determining who may pursue certain
25   livelihoods.  All of the cases cited have dealt with the
```

1   government engaging in regulated commerce.  There were

2   commercial alternatives, there were private sector

3   opportunities.  Practically speaking, this program isn't

4   designed to be a commercial product; it is a support product.

5   The only entity that would ever engage in this type of activity

6   is the government because, again, it's a support for citizens.

7   I can think of no greater example of the government performing

8   its gatekeeping role as to who can engage in commerce and

9   pursue certain livelihoods than this particular program;

10  because if we didn't have this program, there would be no

11  ambulance services, there would be no nail salons, there would

12  be no convenience stores.  Society would be in a very difficult

13  (indisc.) so I do think the requirements of Section 525(a) are

14  absolutely in play.  I do think that the choice of the words in

15  the form -- and, again, I made the example with Mr. Holzer, and

16  I am bothered by the use of the words.  I disagree with

17  Mr. Holzer that, well, of course everybody knows what that

18  means, it's simply if you're a debtor.  Couldn't be further

19  from the truth.  Congress knew how to say we don't give these

20  loans to debtors.  They did it within the CARES Act itself.

21  And then to have a form that simply says if an owner or a

22  business is presently involved in a bankruptcy, I have zero

23  idea what that means.  It means if you have filed a proof of

24  claim in the General Motors bankruptcy umpteen years ago and

25  haven't yet received a final distribution on your claim, you

1    have to check that box "no."  That's silly.  It's even sillier

2    in light of the purpose of this program.

3          I also have found but I've not been cited to any

4    legitimate basis for including that language in the form.  I

5    take umbrage of the fact that if I look at question one and I

6    look at the list and I think just rules of normal construction,

7    and I realize that this is not a statute but it's a form that

8    is derived from a statute, it says if a business or owner is

9    presently suspended, debarred, proposed to be debarred declared

10   ineligible, voluntarily excluded from participation in this

11   transaction by any (indisc.) department or agency all conduct

12   which society frowns upon, involves potentially wrongful acts,

13   involves potentially criminal conduct.  And then as an add-on,

14   it says:  "Or presently involved in any bankruptcy."  Plain

15   meaning:  as a creditor, as a landlord, as a partner in another

16   business, as a shareholder in another business.  It's entirely

17   inappropriate that those words were added into that form in

18   that list in that manner.  And I see no authority anywhere for

19   including those words in that form.  It serves no purpose.  I

20   do find that by including the words "or presently involved in

21   any bankruptcy," they are intended to be discriminatory.  They

22   are intended to be discriminatory toward debtors for reasons

23   offered that somehow we lose control of the money, again I find

24   to be completely frivolous.  I cannot imagine anything less

25   controlling than to simply give out money with no underwriting,

1    with no oversight, and then complain that if I have a Federal

2    judge who makes sure that the debtor complies with the law,

3    ensures that the debtors file monthly operating reports, ensure

4    that copies of bank statements are filed on the docket every

5    month, that they somehow lost control.  I simply don't buy it.

6    I find the arguments to lack any good faith.

7           I am worried about the argument that I cannot enjoin

8    the administrator of the SBA.  I agree I can't tell the SBA

9    administrator what loans to guarantee, what loans to grant.  I

10   simply do not accept that when I have evidence of bankruptcy

11   discrimination that I can do nothing about it.  And if I am

12   wrong about that, I am very certain that my Article Three

13   colleagues will tell me that I am wrong, and I will accept that

14   criticism.  But this can't be what Congress intended.  This

15   can't be the way that we are supposed to treat our fellow man

16   in this time.  It's inconceivable to me that this distinction

17   could be drawn.  The people that need the most help and who

18   have sought protection under our laws are the people who are

19   the targets of discrimination in a government support program;

20   can't possibly be.

21          So I am going to grant the TRO.  I am going to enjoin

22   the administrator of the SBA and all those acting in concert

23   with her, which includes PlainsCapital Bank, in the following

24   manner.  I am requiring that the application form for the

25   paycheck protection program submitted by Hidalgo County

1   Emergency Service Foundation be considered in accordance with

2   the program without the words in question one: "or presently

3   involved in any bankruptcy."  They are stricken from

4   consideration.  The application shall be considered on its

5   merits and in accordance with the law with those six words

6   stricken.  It is my hope that my government that I serve will

7   realize the error that it has made and that it will act

8   appropriately and ensure that all of our citizens have access

9   to the support they needed.

10          Mr. Holzer, I want you to prepare a revised TRO in

11  accordance with the ruling that I've made on the record

12  pursuant to 7052.  Also want to go through in accordance with

13  Rule 65, I am required to state, and I am incorporating my

14  comments on the record, into the form of order to be submitted

15  pursuant to 7052.  I have stated the reasons why the temporary

16  restraining order should issue.  I have specifically stated its

17  terms.  I have specifically described in reasonable detail the

18  limits of the TRO and those acts that are required under the

19  TRO.  I will find that pursuant to Bankruptcy Rule 7065, there

20  is no security required.  I am also required to set a hearing

21  for issuance of a preliminary injunction.  I don't know that it

22  will be necessary because this may all become moot by then.

23  And I recognize, Mr. Kincheloe, that at a preliminary

24  injunction hearing, you may tell me that the law has changed.

25  But as I sit here today, the CFR that you showed me, I'm not

1   aware it's actually governing law; is that correct?

2            **MR. KINCHELOE:**  That's correct, your Honor.  It has

3   not been published in the register.

4            **THE COURT:**  All right, thank you.  Let's see,

5   Mr. Kincheloe, Mr. Holzer, can you look at your collective

6   schedules?

7            **MR. HOLZER:**  Have it in front of me, Judge.

8            **THE COURT:**  All right, today's the 24th.  My guess is

9   it's probably, and please tell me if you think I'm wrong, it's

10  probably a better use of everyone's time if we simply go as

11  close to the 14 days as possible to see what actually happens.

12  It may very well be that without waiving any right of review or

13  appeal that the SBA may have, it may make sense to extend the

14  original time.  But obviously we're not going to decide that

15  today.  Let me ask the parties, does it make sense to set this

16  -- I'm issuing this at 10:00 o'clock on Friday, can we set this

17  for 9:30 on Friday, May the 8th; does that make sense?

18           **MR. KINCHELOE:**  Yes, your Honor.  I was going to ask

19  for May 8th so perfect.

20           **THE COURT:**  Okay, fair enough.  And, Mr. Holzer, does

21  that work for your calendar?

22           **MR. HOLZER:**  It does, your Honor.

23           **THE COURT:**  All right, thank you.  What I would like

24  for you to do is once you finish drafting the TRO, I'd like for

25  you to send it to Mr. Kincheloe to review as to form only.

1  Mr. Kincheloe, consistent with my normal practice, by agreement

2  as to form only, you're not waiving any right of review or

3  complaint that you may have, you're simply acknowledging that

4  the paper is consistent with the ruling that I've made on the

5  record.  Is that enough of a (indisc.) that you feel

6  comfortable looking at the document?

7          **MR. KINCHELOE:**  Absolutely, your Honor.  And I'll

8  remain at my computer until I receive it from Mr. Holzer so

9  there's no delay.

10         **THE COURT:**  Terrific, thank you.  Gentlemen, I very

11  much appreciate the argument.  Yes, sir.

12         **MR. HOLZER:**  Just a clarification, and I'm trying to

13  think practically about the next two weeks, I understand your

14  ruling and I think I'll be able to get the TRO drafted

15  correctly, but is my client authorized to resubmit an

16  application form striking out that language about the

17  bankruptcy and checking the "no" box in question one?

18         **THE COURT:**  Yes.  What I would envision, so that

19  there is -- I don't want anyone at the bank to have an issue, I

20  don't want anyone within the SBA to have an issue, is that what

21  I would suggest that we do until this -- until we have an order

22  to the contrary is that your client's authorized to strike

23  through that language, check the box assuming that it (indisc.)

24  and it satisfies all of the other requirements of question one,

25  and then simply attach a copy of the TRO so that it's in the

1  file and everyone understands exactly what the issues are.  I

2  would hate for someone to --

3      **(Automated telephone recording played)**

4          **THE COURT:**  I don't -- I have 50 people on the

5  telephone so I'm not going to try to spend the time to figure

6  out who that was.  You're absolutely authorized to strike

7  through the question.  I can't remember where I stopped.

8  Attach a copy of the TRO, that way there is absolutely no

9  chance for error as to why the application was submitted the

10  way it was.  And if the Debtor doesn't need -- I want to make

11  it very clear, if the Debtor doesn't meet the requirements,

12  then I'm not changing that.  All I'm simply requiring is the

13  application be considered consistent with the (indisc.)

14  practices and governing (indisc.) as all other applications

15  with simply (indisc.) those six words stricken.

16          **MR. HOLZER:**  Understood, your Honor.  Thank you.

17          **THE COURT:**  All right, Mr. Kincheloe, anything else

18  that I -- any lack of clarification or any issues that we need

19  to talk about?

20          **MR. KINCHELOE:**  One issue, your Honor.

21          **THE COURT:**  Certainly.

22          **MR. KINCHELOE:**  (Indisc.) carry out instructions I

23  need to ask the Court if it will entertain an oral motion for

24  stay pending appeal.

25          **THE COURT:**  Of course.  And that's denied.

37

1          **MR. KINCHELOE:**  Thank you, your Honor.

2          **THE COURT:**  All right, anything else, folks?  I very

3   much appreciate the argument.  Mr. Holzer, I appreciate the way

4   in which you conducted yourself on behalf of the Debtor.  And,

5   Mr. Kincheloe, you know that I think you're the greatest thing

6   ever and I very much appreciate what you do for our country.

7          **MR. KINCHELOE:**  Thank you, your Honor.

8          **THE COURT:**  Thank you, gentlemen.

9          **MR. HOLZER:**  (Indisc.) have a good weekend.

10         **THE COURT:**  (Indisc.)

11         **MR. KINCHELOE:**  You, too, your Honor.

12         **(This proceeding was adjourned at 10:04 a.m.)**

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

April 25, 2020

_____                          _____

          Signed                                      Dated

*TONI HUDSON, TRANSCRIBER*

# EXHIBIT E

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

ENTERED
04/25/2020

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 19-20497 |
| HIDALGO COUNTY EMERGENCY | § | |
| SERVICE FOUNDATION, | § | |
| Debtor. | § | CHAPTER 11 |
| | § | |
| | § | |
| HIDALGO COUNTY EMERGENCY | § | |
| SERVICE FOUNDATION, | § | |
| Plaintiff | § | ADVERSARY NO. 20-2006 |
| v. | § | |
| JOVITA CARRANZA, IN HER | § | |
| CAPACITY AS ADMINISTRATOR FOR | § | |
| THE U.S. SMALL BUSINESS | § | |
| ADMINISTRATION, | § | |
| Defendant. | § | |

## TEMPORARY RESTRAINING ORDER

On Friday April 24, 2020, the Court considered the Plaintiff's Emergency Application

For Temporary Restraining Order And Preliminary Injunction (the "**Application**"), and the

request in the Application for issuance of a temporary restraining order; and having considered

certain facts set forth in the Application and supplemental declarations as being sworn to as true

and within the personal knowledge of Plaintiff's representatives Omar Romero, David Elliot, and

Kenneth Ponce; and having considered the text and purpose of the Coronavirus Aid, Relief, and

Economic Security Act" ("**CARES Act**"), the Paycheck Protection Program ("**PPP**") in the

CARES Act, and Section 7(a) of the Small Business Act (15 U.S.C. 636(a)); and having

considered the arguments and briefing of counsel for the Plaintiff and counsel for Defendant

Jovita Carranza, In Her Capacity As Administrator For The U.S. Small Business Administration

("**SBA**"); and having considered the SBA's Interim Final Rule for implementing the PPP,

Docket No. SBA-2020-0015, and an as-yet unpublished proposed revision to the Interim Final

Rule that was presented by SBA's counsel at the hearing, this Court finds and concludes that the

Plaintiff would suffer immediate and irreparable harm without issuance of a temporary restraining order. The Court incorporates by reference all its oral findings and rulings made on the record at the hearing, and also finds as follows:

1.     Hidalgo County Emergency Service Foundation, the Debtor and Debtor-in-Possession in this Chapter 11 Proceeding ("**Debtor**", "**Plaintiff**", or "**Hidalgo County EMS**") is entitled to issuance of a temporary restraining order pursuant to Bankruptcy Rule 7065 (incorporating Rule 65, FRCP).

2.     Plaintiff has shown a substantial likelihood of success on the merits on both its claims that SBA has exceeded its statutory authority and that it is in violation of 11 USC §525(a) with respect to SBA requiring participating lenders to consider loan applications on a form that says PPP loans will not be approved if the applicant or any owner is presently involved in any bankruptcy.

3.     Hidalgo County EMS states that it otherwise meets all other requirements for receipt of a PPP loan, however the Court make no ruling on whether or not Hidalgo County EMS otherwise qualifies for a PPP loan.

4.     Hidalgo County EMS testified that it answered "yes" to Question #1 of the SBA loan application form only because of its pending bankruptcy.

5.     Hidalgo County EMS is the primary 911 patient transfer provider for a large part of its service area in South Texas that includes some of the poorest areas in the country. It has approximately 250 highly-trained employees who may lose their jobs unless Debtor is permitted to apply for PPP loan. Hidalgo County EMS is currently working to reorganize in Chapter 11 while maintaining 100% of its usual staffing levels in the midst of the Corona Virus pandemic and a significant decline in call volume which causes a revenue decline that has occurred despite

the Debtor's extensive and ongoing involvement as a "front line" health care provider for victims of COVID-19 in South Texas.  Debtor's business, along with nearly every other business in the United States, has become the economic victim of novel coronavirus SARS-CoV-2, which lead to the shutdown or severe curtailment of normal life in the United States.

6.      The first lockdown order in Hidalgo County, Texas, was on March 17, 2020, and it was subsequently extended on a weekly basis.  HCEMS call volume dropped off sharply a few days later.

7.      Debtor's daily "Treat and Transport" number was trending towards 140 per day prior to the first lockdown order in Hidalgo County, Texas, however HCEMS has been struggling to keep at 100 throughout the lock down, a declined of 30%.  Each call that results in a treat and transport typically results in a cash receipt approximately 4 – 6 weeks after the call.

8.      Based on the drop in call volume the Debtor projects a related drop in cash receipts beginning about now, and unless there is a liquidity event of some sort, the Debtor is concerned it may have insufficient cash to make payroll on May 7, 2020.

9.      Debtor continues to maintain pre-Corona employment levels in order to serve the community during this pandemic.  Hidalgo County EMS needs the PPP loan to shore up its finances and allow it to continue to support the community as a front-line medical services provider during the crisis.  Without this source of liquidity the Debtor's survival as a going concern is in question.

10.      The risk of harm to Movant outweighs the harm to SBA if a TRO is granted.

11.      Issuance of this temporary restraining order is in the public interest.  The continued gainful employment of the Debtor's approximately 250 employees benefits the public interest as a whole.  The Debtor's business as a "front line" health care provider is vitally

important even in normal times, and even more so now for victims of COVID-19 in South Texas. It is important to maintain a fully-staffed emergency response capability that serves the entire South Texas region and all its citizens.  The public interest is clearly served by Debtor being able to maintain 100% of its usual staffing levels in the midst of the Corona Virus pandemic and an approximately 30% decline in its business since the onset of this crisis.

12.    The Debtor is a debtor-in-possession, and it is not required to post a bond.  Fed. R. Bankr. P. 7065, and so no bond is required.  *See, e.g. Mississippi Power & Light Co. v. United Gas Pipe Line Co*., 760 F.2d 618 (5th Cir 1985).   The Court made additional findings on the record which are incorporated herein pursuant to Bankruptcy Rule 7052.

Based on the findings and conclusions set forth above, it is hereby ORDERED, AJDUDGED AND DECREED as follows:

1.    The Plaintiffs' request for a temporary restraining order, is hereby GRANTED as set forth herein.

2.     A temporary restraining order is hereby issued, with notice, and directed to Jovita Carranza in her capacity as Administrator for the United States Small Business Administration, and all agents, servants, employees, and any parties acting in concert with any of the foregoing parties (collectively "**Restrained Parties**").  Until the expiration of this temporary restraining order, its scope is as follows:

a.    Hidalgo County EMS is authorized to submit a PPP loan application to any lender with the words "or presently involved in any bankruptcy" stricken from the SBA's form, and, if Hidalgo County EMS satisfies all the other conditions in question #1 to the loan application form, mark the box answering question #1 "no."  The Restrained Parties shall consider the PPP application and fully implement all aspects of the PPP program with respect to Hidalgo County EMS without any consideration of the involvement of Hidalgo

County EMS or any owner of Hidalgo County EMS in any bankruptcy.

b.       To the extent any bank requires Hidalgo County EMS to execute any other forms, applications, or other documents for a PPP loan that include any language about whether Hidalgo County EMS or any owner of Hidalgo County EMS is involved in any bankruptcy, Hidalgo County EMS is authorized to strike the portion of such language about involvement in any bankruptcy and the Restrained Parties shall process the forms, applications, or other documents without any consideration of the involvement of Hidalgo County EMS or any owner of Hidalgo County EMS in any bankruptcy.

c.       The Restrained Parties shall not make or condition the approval of any PPP loan guaranty to the Debtor contingent on the Debtor or any owner of the Debtor not being "presently involved in any bankruptcy."

IT IS FURTHER ORDERED that the Court will conduct a hearing on Plaintiff's Application for a Preliminary Injunction at 9:30 a.m., on the 8th day of May, 2020. The purpose of the hearing shall be to determine whether this Temporary Restraining Order should be made a Preliminary Injunction.

This temporary restraining order shall remain in full force and effect until it expires at 10:00 a.m. on May 8, 2020, unless either (a) terminated earlier by court order, or (b) further extended as provided by law or agreement of the parties.

SIGNED this the _____ day of April, 2020, at _____ a.m./p.m.

**Signed:  April 25, 2020.**

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

Signed at 8:44 p.m. prevailing central time on 4/25/2020.

**APPROVED AND ENTRY REQUESTED:**


_____*/s/ Nathaniel Peter Holzer*
Nathaniel Peter Holzer
State Bar. No 00793971
***Jordan, Holzer & Ortiz, PC***
500 North Shoreline Blvd., Suite 900
Corpus Christi, TX 78401
Telephone: 361.884.5678
Facsimile: 361.888.5555
Email: pholzer@jhwclaw.com
**BANKRUPTCY CO-COUNSEL TO DEBTOR**

-and-

Kay B. Walker
State Bar No. 20713400
***Law Office of Kay B. Walker***
615 Leopard, Ste. 635
Corpus Christi, TX  78401
Telephone: 361.533.2476
Email: kaywalker@kaywalkerlaw.com
**BANKRUPTCY CO-COUNSEL TO DEBTOR**


**APPROVED ONLY AS TO FORM:**


RYAN K. PATRICK,
United States Attorney

By: */s/ Richard A. Kincheloe by NP Holzer with permission*
Richard A. Kincheloe
Assistant United States Attorney
Attorney-in-Charge
United States Attorney's Office
Southern District of Texas
Texas Bar No. 24068107
S.D. Tex. ID No. 1132346
1000 Louisiana St., Suite 2300
Houston, Texas 77002
Telephone: (713) 567-9422
Facsimile: (713) 718-3033
Email: Richard.Kincheloe@usdoj.gov

**Attorney for the Defendant**