## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | Chapter 11 |
| ORGANIC POWER, LLC., | Bankruptcy Case No. 19-01789 (EAG) |
| Debtor. | |
| ORGANIC POWER, LLC. | Adv. No. 20-00055-EAG |
| Plaintiff, | |
| v. | |
| THE U.S. SMALL BUSINESS ADMINISTRATION and JOVITA CORRANZA, solely as Administrator of the United States Small Business Administration, | |
| Defendants. | |

## UNITED STATES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

The United States of America, on behalf of the U.S. Small Business Administration (SBA) and Jovita Carranza in her capacity as SBA Administrator (the United States), hereby moves to dismiss Plaintiff Organic Power, LLC.'s Complaint [Dkt. No. 1] (Complaint), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. The United States does not consent to entry of final orders or judgment by the bankruptcy court, including enjoinment, money damages, and any relief under the Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq.*, or any relief under 28 U.S.C. § 1361, which exceeds this Court's Article I constitutional authority. Thus, the United States requests that the Court enter propose conclusions of law for dismissal of Counts I, II, and IV.

## INTRODUCTION

In response to the unprecedented public health and economic challenges created by the coronavirus pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Stimulus (CARES) Act, which was signed into law on March 27, 2020. The CARES Act created the Paycheck Protection Program (PPP), a $659 billion loan program administered by the SBA and which must extend loans to small businesses and nonprofits throughout the United States as expeditiously as possible. Section 1102(a)(2) of the CARES Act adds a new paragraph (36) to Section 7(a) of the Small Business Act, 15 U.S.C. § 636(a)(36), to extend loans to eligible small businesses for certain covered uses, including "payroll costs," the "payment of interest on any mortgage obligation," and "rent," among other approved uses. In order to achieve the goals of the CARES Act, with its capped funding, while also acting consistent with the Small Business Act and the Section 7(a) loan program, the SBA conditioned eligibility for a PPP loan on borrower's certification that it is not currently a debtor in bankruptcy. Plaintiff was not approved for a PPP loan based on its current status as a debtor in bankruptcy. (Compl. ¶ 42.)

Plaintiff has filed suit against the United States for declaratory and injunctive relief under the Administrative Procedures Act and section 525(a) of the Bankruptcy Code, and for writ of mandamus under 28 U.S.C. § 1361. Under Count I, Plaintiff asserts the SBA exceeded its "statutory jurisdiction, authority, or limitations," in implementing the PPP "in a manner that causes debtors in bankruptcy . . . to be ineligible," in violation of the APA. (Compl. ¶ 56.) Under Count II, Plaintiff asserts the SBA's PPP implementation was "arbitrary, capricious, [or] an abuse of discretion," in violation of APA. (*Id.* ¶ 77.) Under Count III, Plaintiff seeks declaratory judgment that its disqualification from receiving PPP loans based on its status as a debtor in bankruptcy is discriminatory in violation of section 525(a) of the Bankruptcy Code. (*Id.* ¶ 96). Under Count IV, Plaintiff seeks a writ of mandamus to compel the SBA to remove the bankruptcy disqualification from all PPP Lender Applications. (*Id.* ¶ 105.)

Plaintiff's APA claims fail as a matter of law. SBA's decision to exclude debtors in bankruptcy from eligibility for the PPP was well within its statutory authority to implement the PPP, and, as demonstrated by the Administrative Record,[1] this Court should defer to the agency's decision, which was based upon consideration of relevant factors. Likewise, Plaintiff's claim for declaratory judgment and injunctive relief on the ground that the SBA violated 11 U.S.C. § 525(a) fails as a matter of law. Section 525(a) does not explicitly cover loan guarantees; nor do SBA's guarantees of PPP loans fall within even the broadest application of section 525(a) because they are in no way similar to the grants that do fall under section 525(a)'s anti-discrimination protection. Finally, Plaintiff's claim for a writ of mandamus is without merit.

---

[1] The Administrative Record includes public record documents and the attached Declaration of SBA Deputy Associate Administrator for Capital Access John A. Miller (Miller Decl.), Exhibit 19), who has been duly authorized by the SBA to "to explain the basis for the SBA's determination to exclude debtors in bankruptcy from obtaining PPP loan guarantees." Miller Decl. ¶ 1.

A number of bankruptcy courts, including this one, have previously addressed the issues of whether the SBA's bankruptcy exclusion violated the APA and section 525(a), primarily in deciding whether to grant a temporary restraining order or preliminary injunction. The earliest decided cases had mixed results, but since May 8, 2020, courts in at least eighteen cases have refused to grant relief to debtors,[2] while only five courts have entered injunctive relief. And four of the five courts that entered injunctive relief found the debtors were unlikely to succeed on the merits of their section 525(a) claims or did not address the issue.  In all of these cases, there were no facts in dispute, making resolution of the APA and section 525(a) issues addressed herein pure questions of law that are appropriate for resolution on a motion to dismiss.

---

[2] *See Henry Anesthesia Assoc. LLC v. Carranza (In re Henry Anesthesia Assoc. LLC)*, Adv. No. 20-6084 (Bankr. N.D. Ga. June 4, 2020) (Ex. 1); *Calais Reg. Hosp. v. Carranza (In re Calais Reg. Hosp.)*, Adv. No. 20-1006 (Bankr. D. Me. June 3, 2020); *Penobscot Valley Hosp. v. Carranza (In re Penobscot Valley Hosp)*, Adv. No. 20-1005 (Bankr. D. Me. June 3, 2020) (collectively, Ex. 2); *Hartshorne Mining, LLC. v. Carranza (In re Hartshorne Hold., LLC)*, Adv. No. 20-4012 (Bankr. W.D. Kent. June 1, 2020) (Ex. 3); *Schuessler et al. v. SBA (In re Schuessler et al.)*, Adv. No. 20-2065 (Bankr. E.D. Wis. May 21, 2020); *Steffen et al. v. SBA (In re Steffen et al.)*, Adv. No. 20-2068 (Bankr. E.D. Wis. May 21, 2020); *Thull Farms, LLC v. SBA (In re Thull Farms, LLC)*, Adv. No. 20-2069 (Bankr. E.D. Wis. May 21, 2020) (collectively, Ex. 4); *Jack Cty. Hosp. Dist. v. SBA*, Adv. No. 20-04035 (Bankr. N.D. Tex. May 21, 2020) (Ex. 5); *Starplex Corp. v. Carranza*, Adv. No. 20-00095 (Bankr. D. Ariz. May 21, 2020) (Ex. 6); *NAI Cap., Inc. v. Carranza (In re NAI Cap., Inc.)*, Adv. No. 20-01051 (Bankr. C.D. Cal. May 20, 2020) (Ex. 7); *PPV, Inc. v. Carranza (In re PPV, Inc.)*, Adv. No. 20-03054 (Bankr. D. Or. May 20, 2020) (Ex. 8); *Inland Family Practice Ctr., LLC v. SBA (In re Inland Family Practice Center, LLC)*, Adv. No. 20-06016 (Bankr. S.D. Miss. May 15, 2020) (Ex. 9); *Okorie v. SBA (In re Okorie)*, Adv. No. 20-06015 (Bankr. S.D. Miss. May 15, 2020) (Ex. 10); *Abe's Boat Rentals, Inc. v. Carranza (In re Abe's Boat Rentals, Inc.)*, Adv. No. 20-01029 (Bankr. E.D. La. May 13, 2020) (Ex. 11); *J.H.J., Inc. v. Carranza (In re J.H.J., Inc.)*, Adv. No. 20-05014 (Bankr. W.D. La. May 12, 2020) (Ex. 12); *Areway Acquisition, Inc. v. SBA (In re Areway Acquisition, Inc.)*, Adv. No. 20-01037 (Bankr. N.D. Ohio May 12, 2020) (Ex. 13); *Breda, LLC v. Carranza (In re Breda, LLC)*, Adv. No. 20-01008 (Bankr. D. Me. May 11, 2020) (Ex. 14); *iThrive Health LLC*, 20-00151 (Bankr. D. Md. June 8, 2020) (Ex. 15)

Prior to May 8, 2020, courts denied relief to debtors in *Trudy's Texas Star, Inc. v. Carranza (In re Trudy's Texas Star, Inc.)*, Adv. No. 20-01026 (Bankr. W.D. Tex. May 7, 2020) (Ex. 16); *Asteria Educ., Inc. v. Carranza (In re Asteria Educ., Inc.)*, Adv. No. 20-05024 (Bankr. W.D. Tex. Apr. 30, 2020) (Ex. 17); and *Cosi, Inc. v. SBA (In re Cosi, Inc.)*, Adv. No. 20-50591 (Bankr. D. Del. Apr. 30, 2020) (Ex. 18).

## BACKGROUND

### I.     THE SMALL BUSINESS ADMINISTRATION

Through the Small Business Act, 15 U.S.C. § 631 *et seq.*, Congress created the SBA to
"aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns,"
in order to preserve the system of free competitive enterprise that is "essential" to the economic
well-being and security of the Nation. 15 U.S.C. § 631(a). To promote that objective, Congress
placed the SBA under the management of a single Administrator, *id.*, § 633(a), (b)(1), who is
given "extraordinarily broad powers" under section 7(a) of the Act, 15 U.S.C. § 636(a), to
provide a wide variety of technical, managerial, and financial assistance to small-business
concerns. *SBA v. McClellan*, 364 U.S. 446, 447 (1960); *see generally* 15 U.S.C. § 636(a)
(describing numerous varieties of general small-business loans the Administrator is "authorized"
and "empowered" to make); 13 C.F.R. § 120.1. In the performance of these authorized functions,
the Administrator is further empowered to "make such rules and regulations as [she] deems
necessary to carry out the authority vested in [her]," and to "take any and all actions . . . [that
she] determines . . . are necessary or desirable in making . . . loans."  15 U.S.C. §§ 634(b)(6)−(7).
SBA also has the power to establish general policies "which shall govern the granting and denial
of applications for financial assistance by the Administration." 15 U.S.C. § 633(a).

### II.     SECTION 7(a) LENDING

The section 7(a) loan program is the SBA's primary program for providing financial
assistance to small businesses. Under the terms of the Small Business Act, assistance under
section 7(a) may take the form of loans or loan guarantees. 13 C.F.R. § 120.2(a); *see Valley Nat'l
Bank v. Abdnor*, 918 F.2d 128, 129 (10th Cir. 1990); *Cal. Pac. Bank v. SBA*, 557 F.2d 218, 219
(9th Cir. 1977). In practice, the SBA ordinarily guarantees loans made by private lenders rather

than disbursing funds directly to borrowers, *see United States v. Kimbell Foods, Inc.*, 440 U.S.

715, 719 (1979), thus reducing risk for lenders and making it easier for them to access capital

and for small business to obtain loans. https://www.sba.gov/funding-programs/loans.

### III.    SECTION 7(a) LOAN UNDERWRITING

Ordinarily, to qualify for an SBA general business loan an applicant must be an operating

business organized for profit that is located in the United States, 13 C.F.R. § 120.100(a)−(c);

meet the size standards for a "small" business set forth under the statute and SBA rules (usually

stated in terms of number of employees, or average annual receipts), *see* 15 U.S.C. § 632(a)(2);

13 C.F.R. § 120.100(d); 13 C.F.R. Part 121; and demonstrate that the desired credit is not

available elsewhere on reasonable terms, 15 U.S.C. § 632(h); 13 C.F.R. §§ 120.100(e), 120.101.

Additionally, the Small Business Act requires that "[a]ll loans made under this subsection *shall*

be of such sound value or so secured as reasonably to assure repayment." 15 U.S.C. § 636(a)(6)

(emphasis added). Form 1919 (attached as Exhibit 20) serves as the application for section 7(a)

loans. It asks whether the applicant has "ever filed for bankruptcy protection." *See also* Standard

Operating Procedure 50-10 at 39 (allowing lenders to consider "bankruptcy history"). By

regulation, requirements listed on Form 1919 and other official SBA forms comprise part of the

"Loan program requirements." 13 C.F.R. § 120.10. Lenders agree to abide by these requirements

when joining the section 7(a) lending program. *Id.*; *see also* SBA Forms 3506 (Ex. 21) and 3507

(Ex. 22) (addressing new PPP lenders).

### IV.    THE CORONAVIRUS AID, RELIEF, & ECONOMIC STIMULUS (CARES) ACT

On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and

Economic Stimulus (CARES) Act, Pub. L. 116-136, 134 Stat. 281, providing an unprecedented

package of emergency economic assistance and other support to assist businesses and Americans

coping with the enormous economic and public health crises triggered by the worldwide coronavirus (COVID-19) pandemic. *See* SBA, Interim Final Rule, "Business Loan Program Temporary Changes; Paycheck Protection Program" (the First Interim Final Rule), 85 Fed. Reg. 20,811 (April 15, 2020). Section 1102 of the CARES Act established the PPP to assist eligible small businesses experiencing economic hardship as a result of COVID-19 measures. *See id*. Section 1102(a)(2) adds a new paragraph (36) to section 7(a) of the Small Business Act, 15 U.S.C. § 636(a)(36), extending loans to eligible small businesses for certain covered uses, including among other things payroll costs. CARES Act § 1102(a)(2); 15 U.S.C. § 636(a)(36)(F)(i).

Otherwise, the existing section 7(a) requirements and limitations remain unaltered and govern PPP lending. The CARES Act provides, "*Except as otherwise provided in this paragraph*, the [SBA] *may* guarantee [PPP] covered loans"—not make loans directly, however—"under the same terms, conditions, and processes as a loan made under this subsection," *i.e.*, section 7(a).  15 U.S.C. § 636(a)(36)(B) (emphasis added). The CARES Act then sets forth in extensive detail the precise ways in which PPP covered loans differ from other section 7(a) loans by authorizing the SBA to guarantee covered loans to particular types of businesses not previously eligible for section 7(a) loans under the SBA's rules. *Id*. § 636(a)(36)(D)−(R). Specifically, it allows SBA to guarantee PPP loans to various nonprofit organizations, independent contractors, and self-employed individuals, as well as to small business concerns, *id*. § 636(a)(36)(D)(i), (ii); relaxes size limitations to allow businesses with as many as 500 employees (or more, depending on the industry in which they operate) to receive assistance, *id*. § 636(a)(36)(D)(i)(I); and (iii) selectively waives certain of the SBA's affiliation rules used to determine small business "size." Notably, while expanding eligibility to those

6

specified types of businesses, the CARES Act leaves unaltered the requirement that "[a]ll loans

made under this subsection *shall* be of such sound value or so secured as reasonably to assure

repayment." 15 U.S.C. § 636(a)(6) (emphasis added).

The CARES Act initially allocated $349 billion to guarantee PPP loans. CARES Act §

1102(b)(1). On April 16, 2020, the SBA announced PPP was closed to new applications.

Congress then passed the Paycheck Protection Program and Health Care Enhancement Act

(CARES Act II) on April 24, 2020 to add $310 billion to the PPP. PL 116-139 § 101(a)(1).

## V.     EMERGENCY RULEMAKING AUTHORITY

The CARES Act authorizes the Administrator of the SBA to issue emergency regulations

to implement the PPP more rapidly than it could under typical notice and comment requirements.

CARES Act § 1114. The Administrator of the SBA posted her First Interim Final Rule on the

SBA website on April 3, 2020, which was subsequently published in the Federal Register on

April 15, 2020. 85 Fed. Reg. 20,811. The First Interim Final Rule "streamlin[es] the

requirements of the regular 7(a) loan program." *Id.* at 20,812. The rule states that lenders need

not comply with case-by-case underwriting requirements of 13 C.F.R. § 120.150. *Id.* Instead,

under a section titled "What Do Lenders Have to Do in Terms of Loan Underwriting," it states:

"Each lender's underwriting obligation under the PPP is limited to [the enumerated] items above

and reviewing the 'Paycheck Protection Application Form.'" The Paycheck Protection

Application Form itself requires the borrower to certify, among other things, that it is "not

presently involved in a bankruptcy." SBA Form 2483 (Ex. 23).

On April 24, concurrent with Congress' extension of additional PPP funding, SBA posted

a new interim final rule, which was subsequently published in the Federal Register on April 28,

2020, entitled "Business Loan Program Temporary Changes; Paycheck Protection Program –

Requirements – Promissory Notes, Authorizations, Affiliation, and Eligibility" (the Fourth

Interim Final Rule) (attached as Exhibit 24). 85 Fed. Reg. 23,450.[3] The Fourth Interim Final

Rule provides additional information regarding a number of eligibility requirements. Section

III(4) of the Fourth Interim Final Rule specifically addresses applicants in bankruptcy. It

provides:

> *4. Eligibility of Businesses Presently Involved in Bankruptcy Proceeding.*
>
> *Will I be approved for a PPP loan if my business is in bankruptcy?*
>
> No. If the applicant or the owner of the applicant is the debtor in a bankruptcy
> proceeding, either at the time it submits the application or at any time before the
> loan is disbursed, the applicant is ineligible to receive a PPP loan. . . .
> . . .
> The Administrator, in consultation with the Secretary, determined that providing
> PPP loans to debtors in bankruptcy would present an unacceptably high risk of an
> unauthorized use of funds or non-repayment of unforgiven loans.  In addition, the
> Bankruptcy Code does not require any person to make a loan or a financial
> accommodation to a debtor in bankruptcy.  The Borrower Application Form for
> PPP loans (SBA Form 2483), which reflects this restriction in the form of a
> borrower certification, is a loan program requirement.  Lenders may rely on an
> applicant's representation concerning the applicant's or an owner of the applicant's
> involvement in a bankruptcy proceeding.

Fourth Interim Final Rule. 85 Fed. Reg. at 23,451.

## VI.    **PLAINTIFF'S ALLEGATIONS**

Plaintiff filed its Chapter 11 petition in this Court on April 1, 2019. (Compl. ¶ 11.) On

April 14, 2020, Plaintiff submitted PPP loan requests to two banks. (Compl., Ex. 1.) Both

responded that Plaintiff did not qualify because Plaintiff currently is in bankruptcy. (*Id.*)

---

[3] The SBA's second and third interim final rules addressed affiliation rules, additional eligibility
criteria, and certain pledges of loans. 85 Fed. Reg. 20,817, 21,747.

## LEGAL STANDARD

This Court uses "a two-step process under the current context-based 'plausibility'

standard established by *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Aschroft v. Iqbal*,

556 U.S. 662 (2009)," in considering a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6). *Vazquez-Colon v. Caribe Physicians Plaza Corp.*, No. 19-1153,2020 WL

1933652, at *2 (D.P.R. April 21, 2020). Under step one, "the Court must 'accept as true all of the

allegations contained in a complaint[,]' discarding legal conclusions, conclusory statements and

factually threadbare recitals of the elements of a case of action." *Id.* (quoting *Iqbal*, 556 U.S. at

678). Under step two, "the Court must determine whether, based upon all assertions that were not

discarded under the first step of the inquiry, the complaint 'states a plausible claim for relief.'"

*Id.* (quoting *Iqbal*, 556 U.S. at 670). The plaintiff's allegations must therefore rise "above the

speculative level" and cross "the line from conceivable to plausible" in order to proceed. *Id.*

## ARGUMENT

I. **PLAINTIFF CANNOT STATE A CLAIM FOR RELIEF UNDER THE APA
   BECAUSE THE SBA ACTED WELL-WITHIN ITS STATUTORY AUTHORITY
   AND THE BANKRUPTCY EXCLUSION IS NEITHER ARBITRARY NOR
   CAPRICIOUS**

Counts I and II allege that the SBA's PPP implementation in a manner that excludes

debtors in bankruptcy "is in excess of statutory jurisdiction, authority, or limitations, or short of

statutory right" and "arbitrary, capricious, [or] an abuse of discretion," in violation of sections

702(2)(A) and (C) of the APA. (Compl. ¶¶ 56, 77.) Where a plaintiff's allegations implicate "an

agency's construction of the statute which it administers," courts must "apply the principles of

deference described in *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S.

837, 842 (1984)." *Garcia v. Sessions*, 856 F.3d 27, 35 (1st Cir. 2017). *Chevron* articulates a two-

step process. *Id.* First is "whether Congress has directly spoken to the precise question at issue."

9

*Id.* (internal quotations omitted). If Congress has, "courts, as well as the agency, must give effect to the unambiguously expressed intent . . . ." *Id.* (internal quotations omitted). If Congress "has not directly addressed the precise question at issue," then courts "do[] not simply impose [their] own construction on the statute, as would be necessary in the absence of administrative interpretation," but rather ask "if the implementing agency's construction is reasonable." *Id.* (internal quotations omitted). If so, then federal courts must accept the agency's determination. *Id.*; *see also Succar v. Ashcroft*, 394 F.3d 8, 23 (1st Cir. 2005) ("If the statutory terms are ambiguous, then the principle of *Chevron* deference . . . must apply.").

Plaintiff's APA claims are questions of law appropriate for resolution upon a motion to dismiss. "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083−84 (D.C. Cir. 2001). "[W]hen faced with a motion to dismiss in the APA context, a court may consider the administrative record and public documents without converting the motion into a motion for summary judgment . . . ." *Bates v. Donley*, 935 F. Supp. 2d 14, 17 (D.D.C. 2013) (citing *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009)). As noted above, the Administrative Record includes public record documents and the Miller Declaration. A declaration is an accepted form of presentation of the Administrative Record. *See, e.g.*, *Olivares v. Transp. Sec. Admin.*, 819 F.3d 454, 463−64 (D.C. Cir. 2016) ("TSA submitted the Vara Declaration and other internal agency documents that, together, offer a clear statement of the grounds and rationale upon which TSA relied in denying Petitioner's application for flight training"); *Rhea Lana, Inc. v. U.S. Dep't of Labor*, No. 1:14-cv-00017 (CRC), 2016 WL 10932817, at *2 (D.D.C. 2016) ("The Darling Declaration sets forth the reasons for DOL's finding of wage-and-hour violations . . . . As such, the declaration belongs in the administrative

record because it furnishes an explanation of the administrative action that is necessary to

facilitate effective judicial review.") (quotation omitted); *TOMAC v. Norton*, 240 F. Supp. 2d 45,

48−49 (D.D.C. 2003) (accepting declaration as additional explanation of the reasons for the

agency decision and concluding it was not a post-hoc rationalization) (quotation omitted).

### A.     Plaintiff Does Not Assert Sufficient Allegations That The SBA Exceeded Its Authority.

Congress has given the SBA Administrator "extraordinarily broad powers" under section

7(a) of the Small Business Act, 15 U.S.C. § 636(a), to provide a wide variety of assistance to

small-business concerns. *McClellan*, 364 U.S. at 447. The Administrator is authorized to "make

such rules and regulations as [she] deems necessary to carry out the authority vested in [her],"

and to "take any and all actions . . . [that she] determines . . . are necessary or desirable in

making . . . loans." 15 U.S.C. §§ 634(b)(6)−(7). But the Administrator must comply with the

Small Business Act requirement that "[a]ll loans made under this subsection shall be of such

sound value or so secured as reasonably to assure repayment." 15 U.S.C. § 636(a)(6).

SBA's decision to grant a loan "is one 'firmly committed to agency discretion.'" *Pramco,

LLC v. Torres*, 286 F. Supp. 2d 164, 169 (D.P.R. 2003) (quoting *Copake Lake Dev. Corp. v.

United States*, 490 F. Supp. 386, 389 (E.D.N.Y. 1980)). "Examination of the statutory scheme

leaves little doubt that decisions concerning loan worthiness were intended by Congress to be left

to the sound discretion of the SBA." *Id.* (quoting *Copake*, 490 F. Supp. at 389). As described

above, Congress placed the PPP within the existing architecture of the 7(a) loan program and

gave the SBA "EMERGENCY RULEMAKING AUTHORITY" requiring that, "[n]ot later than

15 days after the date of enactment . . . [the SBA] issue regulations to carry out this title and the

amendments made by this title without regard to the notice requirements" of 5 U.S.C. § 553(b).

CARES Act § 1114. In light of her broad authority under the section 7(a) loan program and

11

Congress's specific mandate that the Administrator issue emergency PPP regulations within fifteen days, the Administrator determined to exclude debtors in bankruptcy from obtaining PPP loans. Plaintiff does not, because it cannot, identify any statutory language in the CARES Act PPP, Section 1102, in which Congress *required* the Administrator to guarantee PPP loans to debtors in bankruptcy. Instead, Plaintiff asserts merely that "[n]othing in the CARES Act . . . authorizes or permits the SBA to exclude debtors in bankruptcy from the PPP." (*Id.* ¶ 55.)

Plaintiff misunderstands the APA. *Chevron*'s step one asks "whether Congress has directly spoken to the precise question at issue." *Garcia*, 856 F.3d at 35. In order to state a claim for relief that the SBA has exceeded its statutory authority, Plaintiff must identify a specific statutory provision prohibiting the SBA from excluding debtors in bankruptcy from the PPP. Plaintiff's concession that there is "nothing" in the statute that addresses the issue ends this Court's inquiry, particularly in view of the broad authority given to the SBA Administrator. As Judge Fagone explained: "Congress did not explicitly say whether debtors in bankruptcy are categorically excluded from the PPP, [thus] Congress intended the SBA to fill a statutory gap and determine whether debtors in bankruptcy would be eligible for the PPP." *Penobscot Valley Hosp. v. Carranza*, Adv. No. 20-1005, at 17 (Bankr. D. Me. June 3, 2020).

### B.   Plaintiff Does Not Assert Sufficient Allegations That The SBA Acted Arbitrarily Or Capriciously In Excluding Bankrupt Debtors From The PPP.

Plaintiff also alleges that the SBA's determination was arbitrary, capricious or an abuse of discretion. (Compl. ¶¶ 67−86.) Where Congress has not directly spoken to the precise question at issue, the relevant question is whether the SBA's interpretation is reasonable. *Sessions*, 856 F.3d at 35. Courts owe an agency's interpretation "[p]articular deference . . . when Congress has entrusted the agency with rulemaking authority." *Me. Med. Ctr. v. Burwell*, 841 F.3d 10, 17 (1st Cir. 2016). If an agency regulation "represents a reasonable accommodation of conflicting

policies that were committed to the agency's care by the statute, [the court] should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *Chevron*, 467 U.S. at 845. Review under section 706(2)(A) of the APA "is highly deferential, and the agency's actions are presumed to be valid." *River St. Donuts, LLC v. Napolitano*, 558 F.3d 111, 114 (1st Cir. 2009). Moreover, "the arbitrary and capricious standard is narrow and this Court may not substitute its judgment for that of the agency, even if it disagrees with the agency's conclusions." *Id.* Under "this 'highly deferential' standard of review, [courts] will uphold an agency determination if it is supported by any rational view of the record." *Cowels v. FBI*, 936 F.3d 62 (1st Cir. 2019) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 290 (1st Cir. 1995)).

Where the agency's determinations "are within the law, are based upon consideration of the relevant factors, and do not involve clear errors of judgment, a court may not substitute its view." *Commonwealth of Mass. v. Andrus*, 594 F.2d 872, 888 (1st Cir. 1979) (citing *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)). Only "when the agency relied on improper factors, failed to consider pertinent aspects of the problem, offered a rationale contradicting the evidence before it, or reached a conclusion so implausible that it cannot be attributed to a difference of opinion or the application of agency expertise" is its action arbitrary or capricious. *Boston Redevelopment Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016). While "inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Appleyard's Motor Transp. Co., Inc. v. I.C.C.*, 592 F.2d 8, 10 (1979) (quoting *Bowman Transp.*, 419 U.S. at 285); *see also Associated Fisheries of Me., Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997) ("[P]olicy choices are for the agency, not the court, to make.")

13

The Administrative Record demonstrates the SBA's decision to exclude debtors in bankruptcy from the PPP was reasonable. As Judge Fagone explained: "[T]he better view is that the [SBA]—armed with a mandate from Congress and facing an economic crisis of unprecedented magnitude—made reasonable choices about how to allocate a large but finite amount of aid among struggling businesses. Those choices may produce seemingly harsh results, but they are not illegal." *Penobscot Valley Hosp. v. Carranza*, Adv. No. 20-1005, at 2 (Bankr. D. Me. June 3, 2020) (Ex. 2). Similarly, the Bankruptcy Court for the United States District Court for the Eastern of Wisconsin explained:

> That the SBA chose to use a broad and blunt instrument—flatly excluding bankrupt debtors from PPP participation—does not make the SBA's rule arbitrary and capricious. The law does not require precision or perfection, particularly at the expense of other valid and competing Congressional goals . . . . That one could have adopted a different approach or policy—perhaps even a better one—does not make the SBA's policy choice invalid. It is not this court's role to order the SBA to replace its own policy judgment with that of the plaintiffs.

*Schuessler v. SBA*, Adv. No. 20-2065, at 19−20 (Bankr. E.D. Wis. May 21, 2020) (Ex. 4).

The CARES Act builds upon the section 7(a) lending program, which explicitly considers the borrower's bankruptcy history to ensure that loans be of "sound value . . . as reasonably to assure repayment."  15 U.S.C. 636(a)(6); SBA Form 1919 (Questions 6 and 24, considering whether applicant, its owners, affiliates or any business controlled by applicants principals have "ever" been in bankruptcy); Miller Decl. ¶¶ 6−13. Mr. Miller explains he is "not aware of any lender that has extended section 7(a) loans to an entity in active bankruptcy. If such were the case, it would be very unusual and would cause the Agency to provide more scrutiny of the loan during oversight of the lender's decision to make the loan and perhaps lead to refusal of the Agency to honor its guaranty."  Miller Decl. at ¶ 13.

The bankruptcy exclusion in the PPP stems from these pre-existing section 7(a) requirements. The pre-existing bankruptcy questions of section 7(a) were "streamlined" for the PPP to meet SBA's determination that PPP loans must be processed "expeditiously." First Interim Final Rule, 85 Fed. Reg. at 20,811; Miller Decl. at ¶ 5 ("SBA determined that the intent of the Act is that SBA provide relief to America's small businesses expeditiously"). The SBA eliminated the requirement to perform individual credit review for each PPP loan, as with other 7(a) loans. Instead, the PPP program imposed a bright line rule to exclude those in bankruptcy through its official application form. As the SBA explains:

> The reason for including the bankruptcy exclusion in form 2483 was that SBA in consultation with Treasury determined that in order to meet the challenge of rescuing the economy from the effects of the Covid-19 virus pandemic, loan assistance authorized by the Cares Act had to be provided as expeditiously as possible with as little as possible underwriting. Since a company in bankruptcy required an inquiry into the state of the proceeding and possibly a court order for DIP financing, as well the possible resolution of a host of other issues and the prospect of the incurring of fees by the lender in monitoring the bankruptcy proceeding, it was determined that the wording of Form 2483 would be expeditious and less likely to slow the administration of the program and less likely to require the expenditure of additional time, effort and other resources. The purpose of a PPP loan is to help small businesses pay their employees and maintain operations to allow them to restart quickly over the next few months. SBA decided that this purpose would not be served by including all bankruptcies. Certain creditors, including administrative creditors, could assert claims to the PPP loan funds that would interfere with its authorized uses and the requirements for PPP loan forgiveness. SBA, in consultation with the Department of Treasury, determined there should be one streamlined rule that applies to all debtors in bankruptcy to avoid the need for case by case reviews.

Miller Decl. at ¶ 17. This streamlining of the consideration of bankruptcy status through the PPP application form is wholly within the SBA's delegated discretion. The CARES Act did not amend the "shall" requirement in 15 U.S.C. § 636(a)(6) that loans be of "sound value." The CARES Act instead explicitly left that provision unaltered, along with Section 7(a) lending procedures more broadly, except where specifically altered. CARES Act § 1102(a)(2) (providing

15

that "[e]xcept as otherwise provided in this paragraph, the Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection."); 15 U.S.C. § 636(a)(36)(B). The bankruptcy exclusion reasonably reconciles the "shall" requirement concerning the sound value of loan-making under 15 U.S.C. § 636(a)(6) with the obligation to expeditiously process CARES Act PPP loans by replacing the case-by-case consideration of bankruptcy history with a bright line rule on the application form.

Plaintiff's reliance on 13 C.F.R. § 120.110 and SOP 50-10 referenced in the First Interim Rule is misplaced.  (Compl. ¶¶ 69-71.) Although the First Interim Rule incorporates section 120.110 and SOP 50-10, that rule also provides that "[e]ach lender's underwriting obligation under the PPP is limited to," *inter alia*, "reviewing the 'Paycheck Protection Application Form.'" First Interim Rule, 85 Fed. Reg. 20,815. In turn, the Paycheck Protection Application Form requires the borrower to certify that it is "not presently involved in a bankruptcy." SBA Form 2483. Because the First Interim Rule incorporates the PPP application form and the bankruptcy exclusion provided on that form, Plaintiff's assertion that nothing in the First Interim Rule excludes debtors in bankruptcy is incorrect as a matter of law.

In asking this Court to place it at the front of the line to receive a PPP loan, Plaintiff asks this Court to impose Plaintiff's own preferred solution to these statutory requirements. But Congress delegated the SBA authority to implement the PPP, and otherwise gave the SBA broad discretion over its lending programs. The Court must defer to that discretion. *See Bellum v. PCE Constructors, Inc.*, 407 F.3d 734, 740 (5th Cir. 2005) ("We may not substitute our own preference for a reasonable alternative devised by the [agency].  . . . This is the essence of what is known as *Chevron* deference.").

Judge Fagone agreed, explaining:

16

The SBA's bankruptcy exclusion was a reasonable effort to accommodate the conflicting policies committed to the SBA's care, and one that Congress might reasonably have sanctioned. Many approaches could have been taken when determining whether and under what circumstances a debtor in bankruptcy might be approved for a PPP loan. The SBA could have determined that any debtor could participate in the PPP if authorized by the bankruptcy court. The SBA could have excluded chapter 7 debtors, but not debtors in other chapters; or some chapter 11 debtors, but not others. None of these approaches alter the reality that the SBA had very little time to implement this program and that standard underwriting would have been impractical. Under the circumstances, in light of Congress' intent to see the PPP funds distributed quickly, the SBA relaxed its underwriting standards. The SBA did not, however, eliminate all underwriting; viewed together, the questions on SBA Form 2483 represent at least a minimal effort to learn something about whether a covered loan will be repaid if not forgiven.

*Penobscot Valley Hosp. v. Carranza*, Adv. No. 20-1005, at 17−18 (Bankr. D. Me.) (Ex. 2).

This Court should similarly conclude that the Administrative Record demonstrates that the SBA's bankruptcy exclusion was reasonable, and not arbitrary or capricious, and that Plaintiff has failed to state a claim for relief in Count II.

## II.    PLAINTIFF'S SECTION 525(a) CLAIM IS INSUFFICIENT BECAUSE THE ANTI-DISCRIMINATION PROVISION DOES NOT COVER LOAN GUARANTEES

Count III of plaintiff's complaint is insufficient as a matter of law. Plaintiff alleges that the SBA's denial of a PPP loan—based on plaintiff's status as a debtor in bankruptcy—violates 11 U.S.C. § 525(a)'s anti-discrimination provision. (Compl. ¶¶ 87−102). Section 525(a) provides:

[A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, [or] discriminate with respect to such a grant against . . . a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act . . . solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act . . . .

First, the facts show PPP proceeds are loans and not grants. Second, section 525(a) does not cover loans. Third, even if PPP loans are considered grants, they are by no means "similar."

17

### A.     PPP Proceeds Are Loans.

PPP loans are, in fact, loans. Congress refers to PPP proceeds as "Paycheck protection *loans*" and grants the SBA authority to "guarantee *covered loans* under same terms, conditions, and processes as a *loan* made under this subsection." 15 U.S.C. § 636(a)(36)(B) (emphasis added). In turn, Congress defined "covered loan" to mean "*a loan* made under this paragraph during the covered period." 15 U.S.C. § 636(a)(36)(A)(ii) (emphasis added). Congress also refers to PPP proceeds as a "loan" in setting forth the "Maximum loan amount," 15 U.S.C. § 636(a)(36)(E), in authorizing the SBA "to make loans under this paragraph" to additional lenders, 15 U.S.C § 636(a)(36)(F)(iii), in allowing refinancing of "a loan made under subsection (b)(2)," 15 U.S.C. § 636(a)(36)(F)(iv), in setting forth the "[m]aturity for loans with [a] remaining balance," 15 U.S.C. § 636(a)(37)(K), and in describing "Loan deferment" for PPP borrowers. 15 U.S.C. § 636(a)(36)(M). And Congress sets forth the necessary certifications PPP applicants must make under the heading "Borrower requirements." 15 U.S.C. § 636(a)(36)(G). Also relevant is where Congress chose to place the CARES Act legislation, specifically by adding a new paragraph (36) to section 7(a) of the Small Business Act. As noted earlier, Section 7(a) is the SBA's primary loan program, under which the SBA is empowered to make loans to small business concerns. 15 U.S.C. § 636(a). That Congress repeatedly refers to PPP proceeds as loans and established the PPP under section 7(a) is strong evidence PPP proceeds are loans.

Additionally, PPP loans share many characteristics of typical loans. They carry an interest rate, mature after two years, and may be refinanced. 85 Fed. Reg. 20,811. They are secured with a promissory note and may include amortization terms and conditions. 85 Fed. Reg. 23,450. Borrowers, moreover, must comply with specific and mandatory requirements to be eligible for forgiveness, and their compliance will be evaluated by lenders or the SBA months

after loans are funded; unless and until compliance is determined, borrowers have a payment

obligation. As the bankruptcy court noted in *In re Penobscot Valley Hospital*, Congress "knows

how to distribute aid without strings attached and, in fact, did so recently"—citing 26 U.S.C. §

6428, where Congress authorized up to $1,200 in direct payments to certain individuals

following COVID-19—but "elected to establish a loan program, albeit one that does not look

like any other loan program available . . . . These loans may function as a grant of aid during a

crisis, but they are still—at least at their inception—loans."  Ex. 2 at 18.

### B. Loans Are Not Covered By Section 525(a).

Section 525(a) does not cover loans. In determining the contours of section 525(a), a

court begins, as it must, with the statutory text. *Conn. Nat'l Bank v. Germain*, 503 U.S. 249,

253−54 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon

before all others"; namely "courts must presume that a legislature says in a statute what it means

and means in a statute what it says there."). So long as "the words of a statute are unambiguous

then, this first cannon is also the last: judicial inquiry is complete." *Id.* at 254. Only when the

plain language yields an absurd result should courts look beyond the plain language to legislative

history. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989). In looking to the plain

meaning, moreover, courts do not "construe statutory phrases in isolation," but rather "read

statutes as a whole." *United States v. Morton*, 467 U.S. 822, 828 (1984).

As the United States Court of Appeals for the Fourth Circuit has noted, "Section 525(a)'s

meaning is plain." *Ayes v. U.S. Dep't of Veterans Affairs*, 473 F.3d 104, 108 (4th Cir. 2006).

Section 525(a) prohibits certain discrimination by the government against debtors in awarding or

denying "a license, permit, charter, franchise, or other similar grant." Nowhere did Congress

expressly include loans in specifying section 525(a)'s coverage. Its absence makes clear

Congress's exclusion was intentional. *See Barnhard v. Peabody Coal Co.*, 537 U.S. 149, 168

(2003) ("[W]hen the items expressed are members of an associated group or series, [it] justif[ies]

the inference that items not mentioned were excluded by deliberate choice, not inadvertence.")

The language, moreover, contrasts sharply with language from the very same section, just

several provisions down, where Congress amended section 525 to prohibit governmental units

from denying "a student grant, loan, loan guarantee, or loan insurance to a person that is or has

been a debtor." 11 U.S.C. § 525(c)(1). *See Russello v. United States*, 464 U.S. 16, 23 (1983)

("[W]here Congress includes particular language in one section of a statute but omits it in

another section of the same Act, it is generally presumed that Congress acts intentionally and

purposely in the disparate inclusion or exclusion."). Clearly, then, Congress knows how and

when to include loans in enumerating applicable categories. Its specific inclusion of both grants

and loans in section 525(c) also demonstrates it understands the distinction between "grants" and

"loans." Had Congress intended section 525(c) to apply to loan guarantees beside those of the

student loan variety, it would have. *See Ayes*, 473 F.3d at 110 ("That Congress chose . . . to

narrowly amend § 525 . . . is strong evidence that its failure to mention other kinds of loan

guaranties in § 525(c) was intentional.").

### C.   Loans Are Not "Similar Grants" To Licenses, Permits, Charters, Or Franchises.

Any argument that loan guarantees are a type of "similar grant" to licenses, permits,

charters, or franchises, is unavailing. Although the United States Court of Appeals for the First

Circuit has not considered what constitutes a similar grant under section 525(a), its sister courts

have. *Ayes*, 473 F.3d at 108−12; *Toth v. Mich. State Hous. Dev. Auth.*, 136 F.3d 477, 480 (6th

Cir. 1998); *Watts*, 876 F.2d at 1093-94; *Goldrich v. N.Y. State Higher Ed. Servs. Corp.*, 771

F.2d 28, 30−32 (2d Cir. 1985). And these circuits "refuse to venture beyond the confines of the

statutory language to broadly construe § 525(a)'s specific 'other similar grant' language.'" *Ayes*, 473 F.3d at 111.

For instance, in *Ayes*, the Fourth Circuit affirmed a district court's dismissal of a complaint accusing the United States of violating section 525(a) for refusing to extend home loan guarantees to veterans following their discharges in bankruptcy. 473 F.3d at 107. Relying on the provision's plain language, the Circuit Court reasoned the loan guarantee at issue bore no "family resemblance" to the items listed in section 525(a): those items "are all governmental authorizations that typically permit an individual to pursue some occupation or endeavor aimed at economic betterment." *Id.* at 108 (citing *Watts*, 876 F.2d at 1093). According to the Fourth Circuit, section 525(a) implicates "government's role as a gatekeeper in determining who may pursue certain livelihoods," *id.* at 109 (quoting *Toth*, 136 F.3d at 480), and "is composed solely of benefits conferred by the state." *Id.* at 110 (quoting *Goldrich*, 771 F.2d at 30.) A home loan guarantee, though, "does not implicate the government's gate-keeping role . . . because . . . a person can obtain a home loan or guaranty from the private sector," a refusal does not mean that person is "doomed to homelessness," and "governmental units do not exercise exclusive or even pervasive control over the 'world' of home loans." *Id.* at 109.

*Ayes* relied in part on the Second Circuit's decision in *Goldrich*, where, prior to passage of section 525(c), the Second Circuit reversed a district court's finding that a state violated section 525(a) by refusing to extend student loan guarantees to applicants previously discharged from unpaid student loan debts. *Goldrich*, 771 F.2d at 30−32. Relying first on the plain language of the statute, the Circuit Court noted Congress's exclusion of credit arrangements was intentional—"[a] credit guarantee is not a license, permit, charter or franchise; nor is it in any way similar to those grants. Had Congress intended to extend this section to cover loans or other

forms of credit, it could have included some term that would have supported such an extension

. . . . In the absence of ambiguity, no further inquiry is required." *Id.* at 30.

Nevertheless, because the lower court looked to section 525's legislative history, so too

did the Second Circuit. *Id.* Although the Senate Report to Section 525 explained the provision "is

not exhaustive," the report also noted that section 525 "permits further development to prohibit

actions by governmental or quasi-governmental organizations that perform licensing functions,

such as a State bar association or a medical society, or by other organizations that can seriously

affect the debtors' livelihood or fresh start, such as exclusion from a union . . . ." *Id.* (quoting S.

REP. NO. 95-989, at 81 (1978), *as reprinted in* U.S.C.C.A.N. 5787, 5867). According to the

Second Circuit, while Congress "may have intended to allow expansion of the scope of

protection described in section 525 . . . the extension of credit is manifestly different from both

examples given in the Senate Report: licensing and exclusion from a union." *Id.* at 30−31. The

court thus declined to extend section 525(a)'s provisions "so far beyond the limits set by

Congress." *Id.* at 31. Likewise, the U.S. Courts of Appeals for the Third and Sixth Circuit have

held that loans in the context of housing are neither a license, permit, charter, or franchise, nor a

similar grant, for purposes of section 525(a). *Toth*, 136 F.3d at 480; *Watts*, 876 F.2d at 1093.

Lower courts routinely reach the same conclusion in similar contexts. *Jasper v. Bowdoinham*

*Fed. Credit Union* (*In re Jasper*), 325 B.R. 50, 53−55 (Bankr. D. Me. 2005) (credit union

privileges); *In re Cleasby*, 139 B.R. 897, 900 (W.D. Wis. 1992) (applications for credit under a

recovery buyout program); *Lee v. Yeutter*, 106 B.R. 588 (D. Minn. 1989) (debt restructuring).

Guarantees of business loans—even more so than housing loans and extensions of credit

in other contexts deemed outside section 525(a)'s purview—bear no semblance to licenses,

permits, charters, and franchises. First, they do not do not provide a right to engage in a specific

activity or profession, and therefore do not implicate "government's role as a gatekeeper in determining who may pursue certain livelihoods." *Ayes*, 473 F.3d at 109 (quoting *Toth*, 136 F.3d at 480). Second, "governmental units do not exercise exclusive or even pervasive control" over them. *Ayes*, 473 F.3d at 109. Third, they are not "benefits conferred by the state that are unrelated to credit." *Id.* at 110. At bottom, "Had Congress intended to extend § 525's protections to other government loan guaranties besides student loans, it easily could have revised § 525(a) . . . ." *Id.* Or Congress "could have included some term in § 525(c) that would have supported extension of § 525(a)'s protections to" to more than student loan guarantees. *Id.*

Even assuming PPP loans may be characterized as grants, for all the reasons explained above, they are not grants similar to "licenses, permits, charters, or franchises," as required by section 525(a). As explained in *In re Penobscot Valley Hospital*, "Each of the enumerated items is a type of grant from a governmental actor that involves some permission for the holder of the grant to act in a particular way." (Ex. 2 at 21.) Businesses excluded from PPP loans are not, by law, prohibited from operating, as with a refusal to provide a license, permit, charter, or franchise. The SBA thus is not acting "as a gatekeeper in determining who may pursue certain livelihoods." *Ayes*, 473 F.3d at 109. Nor does SBA "exercise exclusive or even pervasive control over the world" of business loans, as the opportunity to seek funds elsewhere is still possible. *Id.* ("If a governmental entity refuses to guarantee a home loan for a bankrupt individual . . . that individual is not doomed to homelessness; [they] may seek a guaranty from family or friends, may seek another private loan, perhaps on less favorable terms, or [they] may rent."). PPP loans simply are not "benefits conferred by the state that are unrelated to credit." *Id.* at 110. In short, "withholding a permission to engage in activity that is essential to the enjoyment of the benefits of a fresh start . . . is different from declining to provide assistance in the form of a loan . . . that

23

might be useful to obtaining a fresh start." *In re Penobscot Valley Hospital* (Ex. 2 at 22.). Nor is

there anything absurd in limiting section 525(a)'s coverage to those instances where debtors may

experience discrimination in obtaining certain benefits conferred by government—such as

occupational licenses or permits—while not interpreting section 525 so broad as to insulate

debtors from "any and all adverse consequences of a bankruptcy filing." *Watts v. Pa. Hous. Fin.*

*Co.*, 876 F.2d 1090, 1094 (3d Cir. 1989).

In light of the plain meaning of section 525(a), as well as the conclusions of the many

courts to have defined section 525(a)'s contours, the provision does not cover loans. Because

PPP proceeds are loan guarantees, the decision to deny a PPP application is not a violation of

section 525(a). Count III of Plaintiff's claim fails as a matter of law and this Court should

dismiss under Federal Rule of Civil Procedure 12(b)(6).[4]

## III.   PLAINTIFF'S CLAIM FOR WRIT OF MANDAMUS IS INSUFFICIENT BECAUSE IT DOES NOT ALLEGE A CLEAR RIGHT OR DUTY OWED

Under Count IV, Plaintiff seeks a writ of mandamus to compel the SBA to remove the

bankruptcy disqualification from its PPP applications. (Compl. ¶ 105.) A writ of mandamus is a

"drastic" remedy reserved for "'extraordinary situations.'" *United States ex rel. Rahman v.*

*Oncology Assocs., P.C.*, 198 F.3d 502, 511 (4th Cir. 1999) (quoting *Kerr v. U.S. Dist. Court for*

*the N. Dist. Of Cal.*, 426 U.S. 394, 402 (1976)). The movant bears the burden of demonstrating

"a clear right to the relief sought" and that "the responding party has a clear duty to perform the

---

[4] Plaintiff relies on two cases in its Complaint for the proposition that it is entitled to PPP loans:
*In re Asteria Education* and *In re Hidalgo County Emergency Service*. (Compl. ¶ 98 n.3.) The
*Asteria* court ultimately denied plaintiff's claim that the SBA violated section 525(a). The
*Hidalgo* court subsequently entered a preliminary injunction on the same basis as its temporary
restraining order. However, on May 11, 2020, the U.S. District Court for the Southern District of
Texas stayed the Bankruptcy Court's preliminary injunction order pending the United States'
appeal, which is now before the Fifth Circuit.

act amounting to the relief sought." *Id.* The clear duty "must be a specific, plain ministerial act

devoid of the exercise of judgment or discretion." *Harmon Cove Condominium Assoc. v. Marsh*,

815 F.2d 949, 951 (3d Cir. 1987). Ministerial means "performance is positively commanded and

so plainly prescribed as to be free from doubt." *Id.* The SBA exercised the judgment and

discretion Congress granted it in excluding debtors in bankruptcy. Plaintiff makes no allegation

that it had a clear right, that the SBA had a clear duty, or that the SBA's duty was ministerial.

*See Copake*, 490 F. Supp. at 389 (denying writ of mandamus to the SBA on the grounds that "the

decision concerning the granting of a [disaster relief] loan by the SBA is one firmly committed to

agency discretion" and "it cannot be said that plaintiff has a clear right to the relief sought or

defendants have a plainly defined and peremptory duty to the act in question").

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint.

Dated: June 8, 2020                                   Respectfully submitted,

       Respectfully submitted,

                    UNITED STATES OF AMERICA

                    JOSEPH H. HUNT
                    Assistant Attorney General
                    Civil Division

                    *W. STEPEHEN MULDROW*
                    United States Attorney

                    *s/Rafael J. López-Rivera*
                    Rafael J. López-Rivera
                    Assistant United States Attorney
                    USDC-PR No. 221213
                    UNITED STATES ATTORNEY'S OFICE
                    Torre Chardón, Suite 1201
                    350 Carlos Chardón Street
                    San Juan, Puerto Rico 00918
                    Phone Number: (787)766-5656

Facsimile: (787)766-6219
rafael.j.lopez@usdoj.gov

Pedro Jaime López-Bergollo
Special Assistant US Attorney
USDC No. 231412
273 Ponce de León Ave., Suite 510
Plaza 273
San Juan, PR 00917-1930
Tel.: 787-766-5269
Email: pedro.lopez-bergollo@sba.gov

RUTH A. HARVEY
Director
MARGARET M. NEWELL
Assistant Director
MICHAEL TYE
Trial Attorney (G03112)
ROBERT CHANDLER
ERIC SCHMELZER
United States Department of Justice
Commercial Litigation Branch,
Civil Division
P.O. Box 875, Ben Franklin Station
Washington, DC 20044-0875
 (202) 305-2419
Michael.Tye@usdoj.gov

26

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 8, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

<u>/s/ Michael Tye</u>

Commercial Litigation Branch
Civil Division
United States Department of Justice