

**IT IS ORDERED as set forth below:**

**Date: June 4, 2020**

_____
**Lisa Ritchey Craig
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | : | CASE NUMBERS |
| | : | |
| HENRY ANESTHESIA ASSOCIATES LLC | : | BANKRUPTCY CASE |
| | : | 19-64159-LRC |
| Debtor. | : | |
| _____ | : | |
| | : | |
| HENRY ANESTHESIA ASSOCIATES LLC | : | ADVERSARY PROCEEDING |
| | : | NO. 20-06084-LRC |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | IN PROCEEDINGS UNDER |
| JOVITA CARRANZA, in her capacity as Administrator for the U.S. Small Small Business Administration, | : | CHAPTER 11 OF THE |
| | : | BANKRUPTCY CODE |
| | : | |
| Defendant. | : | |

## <u>ORDER DENYING PRELIMINARY INJUNCTION</u>

Before the Court is an _Emergency Motion for Temporary Restraining Order and_

Case 20-00052-FAG Doc 21 Filed 06/08/20 Entered 06/08/20 19:28:43 Desc Main Document Page 2 of 24

*Request for Hearing Date and Briefing Schedule for Motion for Preliminary Injunction* (Doc. 2), as amended by a *Consent Order Denying Emergency Motion for Temporary Restraining Order and Setting Briefing Schedule for Motion for Preliminary Injunction* (Doc. 8), (the "Motion") filed by Henry Anesthesia Associates LLC ("Plaintiff"). The Motion arises in connection with a complaint, as amended (Doc. 7) (the "Amended Complaint"), filed against Jovita Carranza, in her capacity as Administrator for the U.S. Small Business Administration (the "SBA") whereby Plaintiff contends that the SBA violated § 525(a) of the Bankruptcy Code and the Administrative Procedures Act (the "APA") by denying Plaintiff's loan application through the Paycheck Protection Program (the "PPP") because plaintiff is a debtor in a pending bankruptcy case.

Through the Motion, Plaintiff seeks a preliminary injunction enjoining the SBA and all those acting in concert with the Administrator from: (a) denying Plaintiff's application under the PPP on the basis that Plaintiff is a debtor in bankruptcy; (b) refusing to guaranty a forgivable PPP loan sought by Plaintiff on the basis that Plaintiff is a debtor in bankruptcy; and (c) authorizing, guarantying, or disbursing funds appropriated under the PPP without reserving sufficient funds or guaranty authority to provide Plaintiff with access to PPP funds if Debtor is eligible once the SBA considers Plaintiff's application without regard to Plaintiff's status as a debtor in bankruptcy.

The Motion is brought pursuant to Rule 65 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7065 of the Federal Rules of

Case 20-06055-EAG  Doc#: 44-1  Filed 06/08/20  Entered 06/08/20 19:33:49  Desc:
Exhibit 1  Page 3 of 24

Bankruptcy Procedure. The Court has jurisdiction over this matter pursuant to 28 U.S.C.

§ 1334(b).[1]

I.  <u>Introduction and Background</u>[2]

Plaintiff is a Georgia limited liability company that provides anesthesiology services

to Piedmont Henry Hospital ("Piedmont"), South Atlanta Ambulatory Surgical Center,

Regenerative Orthopedics Surgery Center, LLC, and Midtown Urology. On September 6,

2019, Plaintiff filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the

"Petition Date") and is operating as a debtor-in-possession. On March 19, 2020, the

elective surgeries of Plaintiff's patients were suspended due to the COVID-19 pandemic.

After the suspension of these elective surgeries, Debtor agreed to provide Piedmont

services related to treatment of COVID-19, including intubations for patients in need of

ventilators. Piedmont provided a stipend to Plaintiff in exchange for these COVID-19

related services, but the stipend was significantly lower than Plaintiff's normal rates for its

usual services, resulting in a drastic decrease in Plaintiff's revenue. Nonetheless, Plaintiff

has maintained its staff and continues to incur obligations for payroll, payroll taxes, and

benefits for its employees.

In response to the COVID-19 pandemic, Congress enacted, and the President signed

---

[1] Plaintiff's claim under 11 U.S.C. § 525(a) constitutes a core proceeding, while Plaintiff's claims under the APA constitute a non-core proceeding. *See Schuessler v. U.S. Small Bus. Admin.*, 2020 WL 2621186, at *2 (Bankr. E.D. Wis. May 22, 2020).
[2] Unless otherwise indicated, the following factual background has been stipulated to by the parties for the limited purpose of considering Plaintiff's Motion and is set out in the *Joint Stipulation of Facts* (Doc. 17).

into law on March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). Pub. L. No. 116-136, 134 Stat. 281 (2020). Section 1102 of the CARES Act creates the PPP by amending the SBA's existing Section 7(a) loan program, as codified in 15 U.S.C. § 636(a), by adding paragraph (36). *See* CARES Act § 1102; 15 U.S.C. § 636(a)(36). Under the PPP, eligible small businesses may obtain guaranteed loans to cover certain expenses including "pay roll costs," "interest on any mortgage obligation," "rent," and "utilities." *See* CARES Act § 1102(a)(2); 15 U.S.C. § 636(a)(36)(F)(i). Loans issued under the PPP may be forgiven if certain conditions are satisfied, namely that the proceeds of the loan are used to cover allowable expenses. *See* CARES Act § 1106(b); 15 U.S.C. § 9005(b). To receive forgiveness of a PPP loan, the borrower must "submit to the lender that is servicing the covered loan an application" including documentation and certification that the amounts to be forgiven were "used to retain employees, make interest payments on a covered mortgage obligation, make payments on a covered rent obligation, or make covered utility payments." *See* 15 U.S.C. § 9005(e).

The CARES Act initially allocated $349 billion to the PPP. CARES Act § 1102(b)(1). However, these initial funds were exhausted, and the SBA stopped accepting new PPP loan applications on April 16, 2020. *See Schuessler v. U.S. Small Bus. Admin.*, 2020 WL 2621186, at *7 (Bankr. E.D. Wis. May 22, 2020). On April 24, 2020, Congress allocated additional funds for the PPP through the Paycheck Protection Program and Health Care Enhancement Act ("CARES Act II"), Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620

(2020), and the SBA resumed accepting PPP loan applications on April 27, 2020. The funds

issued under the PPP are available on a first-come, first-served basis.

Additionally, the CARES Act required that the SBA Administrator "issue

regulations to carry out this title and the amendments made by this title without regard to

the notice requirements under section 553(b) of title 5, United States Code." *See* CARES

Act § 1114; 15 U.S.C. § 9012. On April 2, 2020, the SBA released its form application for

the PPP ("Form PPP Application"). The Form PPP Application requires, among other

things, that the applicant certify it is not "presently in any bankruptcy." *See* SBA Form

2483, Question 1. On April 3, 2020, the SBA published its First Interim Final Rule which

requires that applicants for PPP loans submit the Form PPP Application. On April 24, 2020,

the SBA issued its Fourth Interim Final Rule which was published in the Federal Register

on April 28, 2020. *See* Fed. Reg. 23, 450 (Apr. 28, 2020). Section III(1) of the Fourth

Interim Final Rule provides in relevant part that:

> if the applicant or the owner of the applicant is the debtor in a bankruptcy
> proceeding, either at the time it submits the application or at any time before
> the loan is disbursed, the applicant is ineligible to receive a PPP loan…. The
> Administrator, in consultation with the Secretary, determined that providing
> PPP loans to debtors in bankruptcy would present an unacceptably high risk
> of an unauthorized use of funds or non-repayment of unforgiven loans.

*See* Fourth Interim Final Rule, Doc. 17, Ex. 1(G).

On April 10, 2020, Plaintiff submitted an application (the "Application") for a loan

under the PPP to its commercial lender, Sonabank. On the Application, Plaintiff answered

"yes" to whether it is currently involved in bankruptcy because it is a Chapter 11 debtor. On April 29, 2020, Sonabank advised Plaintiff that the SBA denied the Application based on Plaintiff's status as a Chapter 11 debtor. This is the sole reason the Application was denied. There are no administrative appeals or remedies available to Plaintiff to seek review of the SBA's determination.

On May 12, 2020, Plaintiff initiated this adversary proceeding against the SBA. Through the Amended Complaint, Plaintiff contends that the SBA's denial of the Application based solely on its status as a bankruptcy debtor violates the anti-discrimination provisions of 11 U.S.C. § 525(a) and constitutes an action that is arbitrary and capricious and in excess of the SBA's statutory authority under 5 U.S.C. § 706(2)(A) and (C). Accordingly, the Amended Complaint seeks declaratory and injunctive relief as well as a writ of mandamus requiring the SBA to consider the Application without regard to Plaintiff's status as a bankruptcy debtor. Given that the limited funds through the PPP are available on a first-come, first-served basis, the Motion initially sought a temporary restraining order enjoining the SBA from considering its status as a bankruptcy debtor in connection with the Application. However, the parties later agreed that the SBA would set aside $946,300 from the PPP, an amount equal to the amount applied for by Plaintiff, and that the Motion would be treated as a request for a preliminary injunction. (Doc. 8) (the "Consent Order"). The Court then set a hearing on the Motion for May 29, 2020 (Doc. 12) (the "Hearing").

Case:20-00055-EAG Doc:24 Filed:04/20/20 Entered:04/20/20 19:28:43 Desc: Main Document Page 7 of 24

Pursuant to the Consent Order, the SBA filed a *Response in Opposition to Plaintiff's Motion for Preliminary Injunction* (Doc. 15) (the "Response"). Plaintiff filed a *Reply in Support of Debtor's Request for a Preliminary Injunction* (Doc. 16) (the "Reply"). The parties also filed a *Joint Stipulation of Facts* (Doc. 17) (the "JSOF") whereby the parties stipulated to the facts outlined above and to the admission of various exhibits attached to the JSOF for the Court's consideration of the Motion. At the Hearing, counsel for Plaintiff, counsel for the SBA, counsel for Bank of America, and counsel for the United States Trustee appeared. For the reasons explained below, and upon consideration of the Motion, the briefs filed, and the arguments of counsel made at the Hearing, the Court reluctantly concludes that it must deny Plaintiff's request for a preliminary injunction.[3]

II.    <u>Discussion</u>

Plaintiff's Motion seeks a preliminary injunction against the SBA. To obtain a preliminary injunction, a plaintiff "must clearly establish the following requirements: '(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the potential harm to the defendant; and (4) that the injunction will not disserve the public interest.'" *Keister v. Bell*,

---

[3] The SBA contends that the limited waiver of sovereign immunity codified in § 634(b) of the Small Business Act precludes an award of injunctive relief against the SBA. Section 634(b) provides, in relevant part, that the Administrator of the SBA may "sue or be sued. . . but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property." 15 U.S.C. § 634(b)(1). However, because the Court finds that Plaintiff has not shown a substantial likelihood of success on the merits of its claims, and therefore is not entitled to a preliminary injunction, the Court finds it unnecessary to determine the scope and limit of the waiver of sovereign immunity in § 634(b) of the Small Business Act.

879 F.3d 1282, 1287 (11th Cir. 2018) (quoting *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Id.* (quoting *ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009)). Further, if Plaintiff "is unable to demonstrate a substantial likelihood of success on the merits, [the Court] do[es] not need to address the remaining preliminary injunction requirements." *Id.* at 1288 (citing *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011)).

a. Plaintiff's Claim that the SBA Violated 11 U.S.C. § 525(a)

Plaintiff contends that the SBA's denial of the Application violates the anti-discrimination provisions of 11 U.S.C. § 525(a). Section 525(a) of the Bankruptcy Code provides, in relevant part, that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to" a person "solely because" that person is or has been a debtor in bankruptcy. Here, there is no dispute that the SBA is a governmental unit or that the Application was denied solely on the basis that Plaintiff is currently a debtor in bankruptcy. Thus, the question becomes whether the right to receive a guaranteed loan under the PPP constitutes a "license, permit, charter, franchise, or other similar grant." Plaintiff concedes that the PPP is not a license, permit, or charter, but contends that it is either a franchise or an "other similar grant." Additionally, Plaintiff contends that Congress intended for § 525(a) to be interpreted broadly.

8

In support of its argument that the PPP is a franchise, Plaintiff cites to *Exquisito Services, Inc. v. U.S. (In re Exquisito Services, Inc.)*, 823 F.2d 151 (5th Cir. 1987), in which the plaintiff asserted a violation of § 525(a) when the U.S. Air Force decided not to renew a contract for food services granted to the plaintiff under the SBA's Section 8(a) program solely on the basis that plaintiff was a Chapter 11 debtor. In determining whether the contract under the Section 8(a) program was "analogous to those enumerated" in § 525(a)—a license, permit, charter, or franchise—the Fifth Circuit concluded that "the program is [] essentially a franchise as defined in Black's Law Dictionary" because it granted the plaintiff "the exclusive right to [provide services to the Barksdale Air Force Base] according to the terms and for the length of that contract." *Exquisito*, 823 F.2d at 154 (citing Black's Law Dictionary (5th ed. 1979)). The Fifth Circuit also discussed the nature of the SBA's Section 8(a) program, which aims to award government "procurement contracts" to "socially and economically disadvantaged small business[es]," noting that "[b]ecause of the strong policies inherent in the [] program, contracts may be awarded without competition, and at rates higher than those at which a non-8(a) business could perform." *Id.* (citations omitted). Further, the Fifth Circuit stated that "Congress assumed that 8(a) businesses are unable to compete effectively in the marketplace, and are unable to win competitively bid procurement contracts." *Id.* (citing 15 U.S.C. § 637(a)(6); *Ray Baillie Trash Hauling, Inc. v. Kleppe*, 477 F.3d 696, 708 (5th Cir. 1973)).

Although the Fifth Circuit in *Exquisito* did not provide the fifth edition of Black's

Case:20-06055-FE Doc#:20-1 Filed:06/08/20 Entered:06/08/20 09:28:13 Desc:Main Document Page 10 of 24

Law Dictionary's definition of a franchise, Plaintiff provides the definition in its Reply, stating that a franchise is "a special privilege conferred by government on an individual or corporation which does not belong to citizens generally of common right." *See* Reply, at 10-11 (citing Black's Law Dictionary (5th ed. 1979)). Plaintiff contends that, just as the Section 8(a) contract in *Exquisito* met this definition, so does the PPP because it "is a special privilege (the right to obtain funds to cover payroll and other expenses during these extraordinary times) to a set of individuals or corporations ('eligible entities' under the PPP)." *See id.* at 11. At the Hearing, counsel for Plaintiff further argued that a franchise is a "property right bestowed upon a private person by a governmental entity" and that the PPP was a franchise because it is "a grant of rights to money" by the government.

Plaintiff further contends that, even if a guaranteed loan under the PPP does not fit the precise definition of a franchise, it is an "other similar grant." In support of this argument, Plaintiff cites three recent bankruptcy opinions adopting the broad view of § 525(a) as expressed by the Second Circuit in *In Stoltz v. Brattleboro Hous. Auth. (In re Stoltz)*, 315 F.3d 80 (2d Cir. 2002), and finding that the right to receive a guaranteed loan under the PPP is an "other similar grant." *See Roman Catholic Church of the Archdiocese of Santa Fe v. United States Small Bus. Admin.*, 2020 Bankr. LEXIS 1211 at *21 (Bankr. D. N.M May 1, 2020); *Springfield Hosp., Inc. v. Carranza*, 2020 Bankr. LEXIS 1205 at *20 (Bankr. D. Vt. May 4, 2020); *Calais Reg'l Hosp. v. Carranza*, 2020 Bankr. LEXIS 1212 at *11 (Bankr. D. Me. May 1, 2020).

10

In its Response, the SBA argues that the PPP is not a grant but is rather a loan guarantee program. In support, the SBA notes that, under the PPP, a borrower must complete a loan application and execute a promissory note, the loan bears interest at a rate not exceeding 4%, and the loan can be sold on the secondary market. Further, while PPP loans are forgivable, the SBA argues that these loans are not automatically forgiven and are instead only forgiven if the borrower satisfies certain conditions, as specified in 15 U.S.C. § 9005(b), and notes that borrowers must submit an additional application for forgiveness of a PPP loan. *See* 15 U.S.C. § 9005(e).

The SBA then argues that § 525(a) does not apply to governmental loan or loan guarantee programs. In support of this argument, the SBA cites to three circuit court opinions which have all read § 525(a) narrowly by limiting the application of "other similar grants" to those that are similar to those enumerated in the statute. *Ayes v. U.S. Dep't of Veterans Affairs*, 473 F.3d 104, 108 (4th Cir. 2006) ("Unfortunately for Appellants, the veteran [home loan] guaranty entitlement bears no such resemblance to the items listed in § 525(a)."); *Toth v. Mich. State Hous. Dev. Auth.*, 136 F.3d 477, 480 (6th Cir. 1998) (concluding that a home improvement loan issued by Michigan's State Housing Development Authority did not fall within the purview of § 525(a) because "[t]he items enumerated in the statute [] are benefits conferred by government that are unrelated to the extension of credit."); *Watts v. Pa. Hous. Fin. Co.*, 876 F.2d 1090, 1093 (3d Cir. 1989) ("[A] [Homeowner's Emergency Mortgage Assistance Program] loan simply is not a

'license, permit, charter, franchise, or other similar grant''). These cases also conclude that the enumerated items in § 525(a) all "implicate the government's gate-keeping role in determining who may pursue certain livelihoods" and "are in the nature of indicia of authority from a governmental unit to the authorized person to pursue some endeavor." *See Ayes*, 473 F.3d at 108-09; *Watts*, 876 F.2d at 1093; *Toth*, 136 F.3d at 480.

Having considered the arguments presented by the parties, the Court is more persuaded by the narrow view of § 525(a)—as adopted by the Third, Fourth, Fifth, and Sixth Circuits—that Congress intended for the "other similar grants" language in § 525(a) to be limited to "situations analogous to those enumerated in the statute"—that is, a license, permit, charter, or franchise. *See Exquisito Services*, 823 F.2d at 153 ("The better approach is taken by other courts that have focused on the specific language of the section, and have read the legislative history more narrowly."); *see also Ayes*, 473 F.3d at 108-11 ("[W]e, like our sister circuits, refuse to venture beyond the confines of the statutory language to broadly construe § 525(a)'s specific 'other similar grant' language in reliance on the general 'fresh start' policy underlying the Bankruptcy Code."); *Watts*, 876 F.2d at 1092-93 ("[I]t seems perfectly clear that the items enumerated are in the nature of indicia of authority from a governmental unit to the authorized person to pursue some endeavor. Thus, a "similar grant" should be given the same meaning."); *Toth*, 136 F.3d at 479-80 ("The items enumerated in the statute—licenses, permits, charters, and franchises—are benefits conferred by government that are unrelated to the extension of credit.").

Further, the Court agrees that the PPP is a loan guarantee program. As explained by

Judge Ludwig,

> [t]he record is clear that Congress created the PPP as an amendment to the SBA's pre-existing loan program and both the statute and agency regulations refer to the funds distributed as "loans." The PPP loans are made through private lenders and participants sign promissory notes, subject to SBA guarantees. While it is certainly true that Congress created the program to make the funds readily available, even where market loans would not be, and the SBA has adopted regulations allowing the loans to be made with little-to-no underwriting, these attributes do not alter the fact that the program results in an actual loan. It is also true that Congress provided for loan forgiveness if the funds are used in certain ways, but the loan forgiveness is just that – it is a loan forgiveness. Moreover, forgiveness is conditioned on future events; if a recipient fails to use the funds in one of the delineated ways, the recipient must pay back the loan.

*Schuessler*, 2020 WL 2621186 at *9; *see also Penobscot Valley Hosp., et al. v. Carranza*, Adv. Proc. Nos. 20-1005, 20-1006, at 22-23 (Bankr. D. Me. June 3, 2020) ("[T]he PPP creates a loan program. The existence of favorable terms and a unique feature (namely, forgiveness under specified circumstances) does not change the character of what the Debtor wants to obtain: a loan that might be forgiven by the lender.").

Having found that the PPP is a loan guarantee program and that the application of § 525(a) is limited to situations "analogous" to a license, permit, charter, or franchise, the Court reluctantly concludes that the PPP is not similar to any of those enumerated items. *See Ayes*, 473 F.3d at 108; *Toth*, 136 F.3d at 480; *In re Cleasby*, 139 B.R. 897, 900 (W.D. Wis. 1992) ("[Section] 525(a) does not prohibit governmental units from making credit decisions on the basis of a prior discharge in bankruptcy. Applications for credit are distinct

13

from applications for a 'license, permit, charter, franchise, or other similar grant.'"). As previously noted, Plaintiff concedes that the PPP is not similar to a license, permit, or charter, but instead contends that it is – or is at least similar to – a franchise. Unfortunately, the Court must disagree.

As stated by the Corpus Juris Secundum (the "C.J.S."), "in the context of grants of public property or interests, a 'franchise' has been defined as a privilege or special privilege conferred by government upon an individual, organization, or corporation, which does not belong to the citizenry at large, and in which activity one otherwise could not engage without the franchise." 37 C.J.S. Franchises § 1. The C.J.S. also notes that "governmental franchises typically are obtained by service-type, monopolistic businesses such as electricity, water, telephone, and cable television providers." *Id*. This definition is consistent with the "government's gate-keeping role in determining who may pursue certain livelihoods" and "is in the nature of indicia of authority from a governmental unit to the authorized person to pursue some endeavor." *See Ayes*, 473 F.3d at 108-09; *see also Penobscot Valley Hosp*., Adv. Proc. Nos. 20-1005, 20-1006, at 21 (Bankr. D. Me. June 3, 2020) ("Each of the enumerated items is a type of grant from a governmental actor that involves some permission for the holder of the grant to act in a particular way"). Thus, the Court concludes this is the proper definition to apply to the term "franchise" as used in § 525(a).

With this definition in mind, the Court finds that the PPP is not a franchise because

14

it is not a right given by the government to engage in some activity that the recipient could not otherwise engage in without permission from the government—such as maintaining a toll road,[4] providing utility services to a municipality,[5] or even exclusively providing food services to the Air Force through a non-competitively bid procurement contract.[6] Instead, the PPP is a "heavily subsidized loan guarantee program." *See Schuessler*, 2020 WL 2621186, at *11. Through the PPP, the government agrees to guarantee loans for eligible borrowers, and agrees to forgive those loans if certain conditions are met. However, no legislative authority is required to contract for a loan, a loan guarantee, or even forgiveness of a loan, and all of these transactions can be obtained in the private market. *See Int'l Trust Co. v. Am. Loan & Trust Co.*, 65 N.W. 78, 78 (Minn. 1895) ("The right to receive money… to lend money… to discount or purchase bills, notes, or other evidences of indebtedness, are not franchises or privileges. No legislative authority is necessary to authorize a person… to engage in such kinds of business."). Therefore, the PPP cannot be classified as a franchise, nor is it "analogous" to a franchise, as that term is used in § 525(a).

For these reasons, the Court concludes that the right to receive a loan guarantee through the PPP is not a "license, permit, charter, franchise, or other similar grant" and,

---

[4] *See Monongahela Nav. Co. v. U.S.*, 148 U.S. 312, 339-40 (1893) (What the company got from congress was the grant of a franchise. . . to maintain a bridge across one of the great highways of commerce."); *see also In re South Bay Expressway, L.P.*, 434 B.R. 589, 599 (Bankr. S.D. Cal. 2010) ("The Franchise Agreement appears to be a textbook governmental franchise vesting SBX with relatively long term private property rights to use public property to provide vital public transportation facilities, which the government itself is otherwise obligated to furnish to its citizens.").
[5] *See South Carolina Elec. & Gas Co. v. Town of Awendaw*, 359 S.C. 29, 32-37 (2004); *Tex. Power & Light v. City of Garland*, 431 S.W.2d 511, 513 (Tex. 1968).
[6] *See Exquisito Services*, 823 F.2d at 153.

therefore, § 525(a) of the Bankruptcy Code does not prohibit the SBA from excluding bankruptcy debtors from receiving guaranteed loans through the PPP. The Court does recognize that the SBA, in deciding that debtors are ineligible to receive PPP loans, has discriminated against debtors solely based on their status as debtors in bankruptcy. However, the Court must conclude that this form of discrimination is not one of those prohibited by § 525(a). Therefore, the Court finds that Plaintiff has not shown a substantial likelihood of success on the merits of its § 525(a) claim against the SBA.

  b. <u>Plaintiff's Claim that the SBA Exceeded its Statutory Authority</u>

  Plaintiff also contends that the SBA's exclusion of debtors from the PPP exceeds the SBA's statutory authority and can be set aside under § 706(2)(C) of the APA, which provides that a court, in reviewing an agency's action, "shall hold unlawful and set aside" the action if it is "found to be… in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). Plaintiff argues that the CARES Act specifies the sole eligibility criteria for the program and does not refer to a borrower's status as a debtor in bankruptcy. Therefore, Plaintiff contends that the CARES Act does not give the SBA authority to add additional eligibility criteria, thus making the agency's exclusions of bankruptcy debtors an action "in excess of statutory… authority."

  In response, the SBA contends that Congress's placement of the PPP into the existing Section 7(a) loan program makes the other provisions of the Section 7(a) loan program applicable to the PPP. Specifically, the SBA points to 15 U.S.C. § 636(a)(6),

which provides that "[a]ll loans made under this subsection shall be of such sound value or so secured as reasonably to assure repayment." Further, the SBA points to a provision in the PPP itself, 15 U.S.C. § 636(a)(36)(B), which states that "[e]xcept as otherwise provided in this paragraph, the Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection." Accordingly, the SBA contends that it was acting pursuant to its authority under § 636(a)(6), which is incorporated by the PPP itself in § 636(a)(36)(B), to assure that PPP loans are of "sound value."

Thus, the dispute is one of statutory interpretation with the parties having different interpretations on the SBA's authority to impose eligibility criteria for applicants that are not specifically listed in the PPP, as codified in 15 U.S.C. § 636(a)(36). As both parties explain in their briefs, the Eleventh Circuit applies a two-step test "[w]hen [] review[ing] an agency's interpretation of a statute that the agency is responsible for administering." *Sierra Club v. Johnson*, 436 F.3d 1269, 1274 (11th Cir. 2006) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984)). The first step is to "determine whether Congress has directly spoken to the precise question at issue. Then, if Congress' intent is clear from the statutory language, [the Court] must give effect to it." *Id.* (internal quotations and citations omitted) If, however, "the statute is silent or ambiguous with respect to the specific issue," the second step is to "decide whether the agency based its interpretation on a permissible construction of the statute." *Id.* (internal quotations omitted). Further, to uphold an agency's interpretation of a statute, the Court "need not

17

conclude that the agency construction was the only one it permissibly could have adopted or even that [the Court] would have interpreted the statute in the same way that the agency did." *Id.* (internal quotations omitted).

Here, Plaintiff claims that the CARES Act and the PPP are unambiguous because "Congress made clear that the provisions of the PPP contained in § 636(a)(36) override any conflicting provisions in the general § 7(a) program contained in § 636." *See* Reply, at 16. In support, Plaintiff points to § 636(a)(36)(B) which states that "*except as otherwise provided in this paragraph*, the [SBA] may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection." (emphasis added). Thus, Plaintiff contends that because § 636(a)(36) speaks directly to the eligibility requirements of the PPP,[7] one of which is to certify that the applicant needs the PPP loan because of the "uncertainty of current economic conditions,"[8] the "except as otherwise provided" language quoted above overrides the "sound value" requirement located in § 636(a)(6). In short, Plaintiff contends that the CARES Act and the PPP exclude creditworthiness

---

[7] Plaintiff points to three different provisions of the PPP in paragraph (36) which provide eligibility requirements. *See* Reply, at 16-17. The first is § 636(a)(36)(D) which provides that "in addition to small business concerns, any business concern, nonprofit organization, veterans organization, or Tribal business… shall be eligible to receive a covered loan if the business concern… employs not more than the greater of – (I) 500 employees; or (II) if applicable, the size standard in number of employees established by the Administration…" The second is § 636(a)(36)(F)(II) which provides that lenders may consider, "[i]n evaluating the eligibility of a borrower for a covered loan," whether the borrower "was in operation on February 15, 2020" and "had employees for whom the borrower paid salaries and payroll taxes" or "paid independent contractors." The last provision is § 636(a)(36)(G)(i) which requires that borrowers make certain certifications, namely that the PPP loan is needed due to current economic conditions, that the loan will be used to maintain payroll, and that the borrower has not previously received a PPP loan.

[8] *See* 15 U.S.C. § 636(a)(36)(G)(i) (requiring that "an eligible recipient applying for a [PPP] loan [] make a good faith certification – (I) that the uncertainty of current economic conditions makes necessary the loan request to support the ongoing operations of the eligible recipient."

18

considerations, thus giving the SBA "no basis" to incorporate the "sound value" requirement of § 636(a)(6) into the PPP.

The SBA contends that the CARES Act and the PPP are silent on whether the SBA may exclude bankruptcy debtors from the PPP. In its Response, the SBA states that "[w]hile it is true that the PPP relaxes several eligibility requirements for *potential* borrowers, it does not forbid the SBA from considering its standard loan guarantee criteria or making rules to that effect. . . . Neither the PPP nor the CARES Act writ large displaces the SBA's statutory mandate to assure that '[a]ll loans made under this subsection *shall* be of such sound value or so secured as reasonably to assure repayment.'" *See* Response, at 25-26 (emphasis in original). The Court agrees and finds that the CARES Act and the PPP are silent on this issue.

While § 636(a)(36)(B), through its "except as otherwise provided" language, carves out from the PPP conflicting "terms, conditions, and processes" of the SBA's Section 7(a) loan program, neither the CARES Act nor the PPP expressly state that the SBA cannot consider creditworthiness of potential PPP borrowers or that it is relieved from its obligation to assure that "all loans made under [§ 636(a)]" be of "sound value" to "assure repayment." In essence, Plaintiff asks the Court to view the PPP in isolation, without referring to the other provisions of the Section 7(a) loan program—as set out in § 636(a)— and to presume that Congress acted intentionally and purposely when it did not include

19

creditworthiness requirements in the PPP.[9] However, this argument overlooks the fact that

Congress purposely chose to engraft the PPP on to the SBA's existing Section 7(a) loan

program. Thus, without a clear expression from Congress that the "sound value"

requirement does not apply to the PPP, the Court cannot find that the statute is

unambiguous. *See Penobscot Valley Hosp.*, Adv. Proc. Nos. 20-1005, 20-1006, at 14

(Bankr. D. Me. June 3, 2020) ("The CARES Act nestled the PPP into 15 U.S.C. § 636(a),

which contains the terms generally applicable to lending under section 7(a) of the Small

Business Act," and did not "'provide otherwise' or expressly modify section 636(a)(6),

which requires (subject to certain qualifications not relevant here), that all loans made

under subsection (a) 'shall be of such sound value or so secured as to reasonably assure

repayment[.]'") Instead, the Court must determine whether the SBA's interpretation of the

PPP as including the "sound value" requirement is a permissible construction of the statute.

The Court concludes that it is. As stated by Judge Ludwig,

> Given this background, including the speed with which Congress adopted the
> CARES Act and wanted funds to be disbursed in the light of the pandemic,
> it is understandable that Congress did not spell out in the statute all
> requirements for PPP participation. Instead, Congress entrusted the details to
> the SBA, engrafting the PPP on to the SBA's existing section 7(a) lending
> program, and giving the SBA emergency rulemaking authority. Against this

---

[9] Plaintiff argues that had Congress intended to exclude debtors from the PPP, it would have expressly stated the exclusion as it did for another program under the CARES Act for mid-size businesses. *See* CARES Act § 4003(c)(3)(D); 15 U.S.C. § 9042(c)(3)(D) (requiring that an applicant under this program certify that it "is not a debtor in a bankruptcy proceeding"). Plaintiff then cites language from the Supreme Court stating that "[i]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *See* Reply, at 23 (quoting *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994)). However, as pointed out by the SBA, this program for midsize businesses is a standalone program, administered by the Secretary of the Treasury, and is not engrafted into the SBA's Section 7(a) loan program.

backdrop, the court cannot conclude that the SBA's adoption of a rule
excluding bankrupt debtors from the PPP is beyond the agency's delegated
authority.

*Schuessler*, 2020 WL 2621186, at *11. Therefore, the Court finds that Plaintiff has not

shown a substantial likelihood of success on the merits of its APA claim against the SBA

for exceeding its statutory authority.

    c.   <u>Plaintiff's Claim that the SBA Acted Arbitrarily and Capriciously</u>

Plaintiff also contends that the SBA acted arbitrarily and capriciously when it

excluded bankruptcy debtors from the PPP, in violation of § 706(2)(A) of the APA. The

Eleventh Circuit has stated that a court "may find a rule arbitrary and capricious where 'the

agency has relied on factors which Congress has not intended it to consider, entirely failed

to consider an important aspect of the problem, offered an explanation for its decision that

runs counter to the evidence before the agency, or is so implausible that it could not be

ascribed to a difference in view or the product of agency expertise.'" *Alabama-Tombigbee*

*Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1254 (11th Cir. 2007) (quoting *Motor Vehicles*

*Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 43 U.S. 29, 42 (1983)).

However, a court may not "substitute [its] judgment for that of the agency." *Id.* (citing

*Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).

The SBA, in its Fourth Final Interim Rule, explained its reasons for excluding

debtors from the PPP and stated that: "[t]he Administrator, in consultation with the

Secretary, determined that providing PPP loans to debtors in bankruptcy would present an

unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans." *See* Fourth Interim Final Rule, Doc. 17, Ex. 1(G). The SBA further explains in its Response that "whether an applicant is a debtor is a routine consideration for other Section 7(a) loans" and that "the bright-line debtor exclusion was based on the perceived risk of nonpayment or unauthorized use of PPP funds (which would lead to at least a partial denial of forgiveness) in light of" the "statutory mandate [in § 636(a)(6)] to ensure that PPP loans be of sound value." *See* Response, at 30.

While the Court understands Plaintiff's frustration with the exclusion of bankruptcy debtors from the PPP, it cannot find that the exclusion is arbitrary and capricious. As summarized by Judge Ludwig:

> There can be little doubt that the bankruptcy exclusion is hardly an example of delicate or precise policymaking. The SBA could certainly have adopted other, alternative approaches in balancing the need for a quick disbursement of emergency economic relief against the "reasonably assure repayment" requirement that Congress left intact under section 636(a)(6). That the SBA chose to use a broad and blunt instrument – flatly excluding bankrupt debtors from PPP participation – does not make the SBA's rule arbitrary and capricious. The law does not require precision or perfection, particularly at the expense of other valid and competing Congressional goals. . . . The denial of PPP participation to entities that have already resorted to bankruptcy, while reserving PPP loans to those whose financial troubles have not yet gotten to the point (and perhaps never will) is a rational policy choice. The agency's policy choice is consistent with the CARES Act and the SBA's preexisting statutory mandate. Had Congress intended to preclude such a rule, it could have excepted the PPP from section 636(a)(6), but it did not do so. Using the bankruptcy exclusion question on the PPP application has the obvious benefit of being easy to administer. That is not a small matter, given the speed with which Congress and the President directed the SBA to implement the CARES Act and PPP.

*Schuessler,* 2020 WL 2621186, at *12; *see also Penobscot Valley Hosp.*, Adv. Proc. Nos. 20-1005, 20-1006, at 17 (Bankr. D. Me. June 3, 2020).

Thus, while the Court disagrees with the SBA in excluding debtors from the PPP— particularly one such as Plaintiff who is providing vital health care services during the current public health crisis—the Court "cannot substitute [its] judgment for that of the agency." The exclusion of debtors from the PPP is supported by rational considerations and is consistent with the SBA's requirement to assure that loans issued under its Section 7(a) loan program are of "sound value." Accordingly, the Court finds that Plaintiff has failed to show a substantial likelihood of success on the merits for its claim, under the APA, that the SBA acted arbitrarily and capriciously in excluding bankruptcy debtors from the PPP.

III.   Conclusion

For the reasons stated herein, the Court finds that Plaintiff has failed to show a substantial likelihood of success on the merits of its claims against the SBA under 11 U.S.C. § 525(a) and 5 U.S.C. § 706.[10] As noted above, because Plaintiff has not demonstrated a substantial likelihood of success on the merits of its claims, it is

---

[10] Through the Amended Complaint, Plaintiff also seeks a writ of mandamus directing the SBA to process Plaintiff's PPP Application without considering its status as a debtor in bankruptcy. Plaintiff does not address its mandamus claim in its Motion or its Reply. Nevertheless, the Court agrees with the SBA that Plaintiff cannot show a likelihood of success on the merits of its mandamus claim because the APA provides an alternative mechanism for obtaining the relief requested. *See Cash v. Barnhart,* 327 F.3d 1252, 1257-58 (11th Cir. 2003) ("Mandamus relief is only appropriate when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) 'no other adequate remedy [is] available.'").

unnecessary to address the remaining preliminary injunction requirements. *See Keister v. Bell*, 879 F.3d 1282, 1288 (11th Cir. 2018) (citing *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011)); *see also Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001) ("[O]ur cases have uniformly required a finding of substantial likelihood of success on the merits before injunctive relief may be provided. Furthermore, we have held on occasion that when a plaintiff fails to establish a substantial likelihood of success on the merits, a court does not need to even consider the remaining three prerequisites of a preliminary injunction."). Accordingly, for these reasons,

IT IS HEREBY ORDERED that the *Emergency Motion for Temporary Restraining Order and Request for Hearing Date and Briefing Schedule for Motion for Preliminary Injunction* (Doc. 2), as amended by a *Consent Order Denying Emergency Motion for Temporary Restraining Order and Setting Briefing Schedule for Motion for Preliminary Injunction* (Doc. 8), (the "Motion") filed by Henry Anesthesia Associates LLC ("Plaintiff") is **DENIED**.

**END OF DOCUMENT**

**Distribution List**

| | |
|---|---|
| **Leslie M. Pineyro** | **Andres H. Sandoval** |
| Jones and Walden, LLC | United States Attorney's Office |
| 699 Piedmont Avenue NE | Suite 600 |
| Atlanta, GA 30308 | 75 Ted Turner Drive SW |
| | Atlanta, GA 30303 |