UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **HARTSHORNE HOLDINGS, LLC,** *et al.* | ) | **Case No. 20-40133-thf** |
| | ) | |
| | ) | **Chapter 11** |
| **Debtors** | ) | **Jointly Administered** |
| | ) | |
| | ) | **Adv. No. 20-04012-thf** |
| | ) | |
| **HARTSHORNE MINING, LLC, and** | ) | |
| **HARTSHORNE MINING GROUP, LLC** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| **JOVITA CARRANZA, in her capacity as** | ) | |
| **Administrator for the U.S. Small** | ) | |
| **Business Administration** | ) | |
| | ) | |
| **Defendant** | ) | |

\* \* \* \* \*

**ORDER**

This matter is before the Court on Debtors' Application for Preliminary Injunction, in which Debtors seek to enjoin the U.S. Small Business Administration ("SBA"), and Jovita Carranza, in her capacity as Administrator for the SBA, from finding Debtors ineligible to receive the pandemic-related Paycheck Protection Program ("PPP") funds for which they applied due to their Chapter 11 bankruptcy debtor status.

Before addressing the parties' arguments for and against a preliminary injunction, this Court must consider its own jurisdiction. Under 28 U.S.C. § 1334(b) and the District Court's order

1

of reference in this District, this Court has jurisdiction over all civil proceedings arising under Title 11, or arising in or related to cases under Title 11. Debtors' petition in this adversary proceeding arises under or relates to their bankruptcy cases and thus falls within the court's broad jurisdiction.

Congress created the Small Business Administration through the Small Business Act, 15 U.S.C. §§ 631, *et seq.*, to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns." 15 U.S.C. § 631(a). The SBA is under the management of a single Administrator, 15 U.S.C. § 633(a), (b)(1), who has authority under section 7(a) of the Act, 15 U.S.C. § 636(a), to provide a wide variety of technical, managerial, and financial assistance to small-business concerns. In the performance of these authorized functions, the Administrator is further empowered to "make such rules and regulations as [she] deems necessary to carry out the authority vested in [her]," and "take any and all actions ... [that] [she] determines ... are necessary or desirable in making ... loans." 15 U.S.C. § 634(b)(6), (b)(7).

On March 27, 2020, the President of the United States signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). Under the CARES Act, Congress amended the SBA's existing "7(a) Loan Program" to create the Paycheck Protection Program. Section 1102(a)(2) of the CARES Act adds a new paragraph (36) to section 7(a) of the Small Business Act, 15 U.S.C. § 636(a)(36), providing for a new program of loans for eligible small businesses to cover certain uses, including "payroll costs," the "payments of interest on any mortgage obligation," and "rent," among other approved uses. CARES Act § 1102(a)(2); 15 U.S.C. § 636(a)(36)(F)(i).

The CARES Act initially allocated $349 billion to guarantee PPP loans. CARES Act § 1102(b)(1). On April 16, 2020, the SBA announced that the PPP was closed to new applications. Eight days later, on April 24, 2020, Congress passed the Paycheck Protection Program and Health Care Enhancement Act ("CARES Act II"), adding another $310 billion to the PPP. Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020). The SBA began accepting new PPP applications from participating lenders on Monday, April 27, 2020.

The CARES Act authorizes the Administrator of the SBA to issue emergency regulations to implement the PPP without complying with typical notice and comment requirements. CARES Act § 1114. The SBA posted its First Interim Final Rule implementing the PPP on the agency's website on April 3, 2020, and published the rule in the Federal Register on April 15, 2020. The First Interim Final Rule does not directly address bankrupt debtors' inability to participate in the PPP, but it does refer to SBA Form 2483, the Paycheck Protection Program Borrower Application. That form requires an applicant to certify, among other things, that the applicant is not "presently involved in any bankruptcy."

The SBA later announced further changes to the interim final rule. On April 24, 2020, the SBA posted a Fourth Interim Final Rule, which provides the following in Section III(4):

> Eligibility of Businesses Presently Involved in Bankruptcy Proceedings: Will I be approved for a PPP loan if my business is in bankruptcy?
>     No. If the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan. If the applicant or the owner of the applicant becomes the debtor in a bankruptcy proceeding after submitting a PPP application but before the loan is disbursed, it is the applicant's obligation to notify the lender and request cancellation of the application. Failure by the applicant to do so will be regarded as a use of PPP funds for unauthorized purposes. The Administrator, in consultation with the Secretary,

3

> determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans. In addition, the Bankruptcy Code does not require any person to make a loan or a financial accommodation to a debtor in bankruptcy. The Borrower Application Form for PPP loans (SBA Form 2483), which reflects this restriction in the form of a borrower certification, is a loan program requirement. Lenders may rely on an applicant's representation concerning the applicant's or an owner of the applicant's involvement in a bankruptcy proceeding.

Business Loan Program Temporary Changes, 85 Fed. Reg. 23,451 (April 28, 2020) (to be codified at 13 C.F.R. pts. 120-121).

On May 8, 2020, Hartshorne Mining, LLC and Hartshorne Mining Group, LLC ("Hartshorne"), the debtors-in-possession ("DIP") of a coal mining business in Western Kentucky which continues to operate with 111 employees, filed a Complaint and Emergency Application for Temporary Restraining Order and Preliminary Injunction and Request for Expedited Hearing. In their complaint, Debtors explain that they filed a PPP application with Old National Bank on April 27, 2020, requesting $2,274,400 in PPP funds for Debtors' payroll and employer-provided healthcare.

On May 6, 2020, however, Old National responded that it was required by the SBA to deny Debtors' applications, based on the fact that Debtors had disclosed they were presently involved in a bankruptcy. The SBA had recently passed an interim final rule on April 28, 2020, expressly stating that bankrupt applicants are ineligible to receive PPP loans, the SBA Administrator having determined that "providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans." 85 FR 23450. Because Hartshorne would apparently be eligible for PPP funding otherwise, but for their own bankruptcy status and the SBA's rule, Debtors filed the underlying complaint seeking emergency

4

injunctive relief in the form of a temporary restraining order and subsequent preliminary and permanent injunctions against the SBA.

The Court held an expedited hearing on May 12, 2020, and in light of the time-sensitive nature of Debtors' request due to the PPP funds' temporary availability, and upon considering the four factors for issuance of a temporary restraining order or preliminary injunction – (1) a likelihood of success on the merits; (2) the likelihood of irreparable harm; (3) the balance of the equities; and (4) whether the injunction would serve the public interest (*McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018)) – the Court granted the Debtors' Application for Temporary Restraining Order the same day. Among other things, the TRO required the SBA Administrator to authorize the issuance of the $2,274,400 PPP loan to Debtors, in the event they are deemed eligible to obtain that amount after further consideration and resolution of their claims, and scheduled a hearing on May 21, 2020 to determine whether the temporary restraining order should be made a preliminary and permanent injunction. The Court notes that, although the TRO was originally due to expire after fourteen days on May 26, 2020, the parties mutually agreed during the May 21 teleconference to extend the TRO's duration to June 1, 2020.

Having taken the parties' preliminary injunction briefs and arguments under submission and considering again the four factors of a preliminary injunction together with a complete accounting of Debtors' financial circumstances, the Court comes to the conclusion that Debtors have failed to show a likelihood of irreparable harm and, thus, have not met all the elements for this Court to issue a preliminary injunction.

In a motion for a preliminary injunction, the moving party bears the burden of proving four elements – the same four listed earlier for a TRO. Debtors must show (1) a likelihood of success

5

on the merits; (2) a likelihood of irreparable harm; (3) that the preliminary injunction would serve the balance of the equities; and (4) the injunction would serve the public interest. 891 F.3d at 610. Debtors must prove all of these elements, meaning a failure to show one of them – the likelihood of irreparable harm, in this case – dooms the motion for a preliminary injunction. *See In re Smithers*, No. 03-65561, 2005 WL 4030095, at *3 (Bankr. S.D. Ohio July 13, 2005) ("absence of a showing of irreparable harm may itself constitute sufficient grounds to deny a preliminary injunction").

Debtors have not proved a likelihood of irreparable harm if they are denied the PPP funds they have requested because they have not shown that the PPP funds are necessary to stave off economic destruction or an inability to continue with their DIP operations going forward. This situation therefore differs from that of *DV Diamond Club of Flint, LLC v. Small Business Administration*, Case No. 20-1437 (6th Cir. May 15, 2020), on which Debtors heavily rely. In that case, a three-judge panel for the Sixth Circuit Court of Appeals noted that the debtors were "at a substantial risk of losing their businesses" from the response to the spread of the novel coronavirus, and thus the "irreparable harm" element had been met. In another analogous case, the Bankruptcy Court for the District of Delaware, in finding the harm element had been met, noted that "the debtor faces dire, if not fatal, consequences in the absence of financial relief here." *Cosi, Inc. v. SBA*, Adv. No. 20-50591 at 60 (Bankr. D. Del. Apr. 30, 2020).[1]

Such an immediate risk of a dire outcome does not exist here. Instead, based on the particular circumstances of this case, the Court finds a closer analogy to the *Breda* case from the

---

[1] Even so, the *Cosi* court denied the debtor's request for a TRO / preliminary injunction on the grounds that the SBA was entitled to deference in its rulemaking decisions (an issue this Court does not discuss here).

6

Bankruptcy Court for the District of Maine. There, the court denied a similar request by a debtor for a TRO against the SBA, finding that the debtor itself had demonstrated a lack of likelihood of irreparable harm by assuring its creditors through its disclosure statement that its Chapter 11 plan was feasible, even in the face of coronavirus concerns. *In re Breda*, 2020 WL 2373597, at *1 (Bkrtcy. D. Me., 2020). Because the debtor had indicated the strength of its plan and its expectation of being able to carry forward, the court was unable to find a likelihood of an irreparable harm if it did not obtain PPP funds.

Similarly here, Debtors have consistently indicated through filings and representations to this Court that they expect a successful Chapter 11 process culminating in a sale under Section 363 of the Bankruptcy Code of substantially all assets. On March 6, 2020, Debtors filed a Motion for the entry of an Order establishing bidding procedures for such a sale, and on March 24, Debtors submitted a Proposed Order to that effect, which this Court entered the next day, March 25. That Order contemplates bidding and an auction occurring in June and a sale closing in July.

Debtors' April Operating Report further confirms that Debtors' Chapter 11 process has not been upended by the pandemic such that their failure to secure PPP funds will cause "irreparable harm." That Operating Report shows that Debtors had $8,621,244 in deposits and $3,830,049 in disbursements during April, with an ending balance of $7,836,318. These deposits included nearly $3 million from their customer Louisville Gas and Electric Company ("LG&E"), and another $5,681,000 in DIP funding from Tribeca, the Debtors' primary DIP lender.

Furthermore, despite both their own reorganization process and the coronavirus pandemic, Debtors have not had any employee layoffs. In fact, on April 29, 2020, well into the depths of the nation's coronavirus pandemic and resulting economic uncertainty, Debtors filed a Motion for the

7

entry of an Order approving a Key Employee Incentive Program ("KEIP"), by which Debtors would incentivize their "senior manages" with bonus pay.

Having taken the time necessary to fully consider the parties' briefs and arguments, and examine the relevant information as described above, this Court comes to the conclusion that Debtors' operations are proceeding fairly in line with how they expected, or perhaps hoped, that they would at the outset of their filing, before the extent of the coronavirus pandemic was known and before the PPP program had even been envisioned. Their healthy bank account activity, access to robust DIP funding, continued sales to their customer LG&E, and ability to keep workers employed and even offer them bonuses, all indicate that they are not substantially certain or even likely to suffer "irreparable harm" without access to PPP funds that they were not expecting to be available at the outset of this case. Instead, they appear to be on track to continue their operations, with the benefit of substantial DIP lending, and continue toward an 11 U.S.C. § 363 sale as envisioned.

For the reasons described above, the Court finds that Debtors have failed to show prove the "irreparable harm" element necessary to the issuance of a preliminary injunction. The Court now being sufficiently advised,

IT IS HEREBY ORDERED that the petition for such a preliminary injunction is therefore DENIED.

Thomas H. Fulton
United States Bankruptcy Judge

Dated: June 1, 2020

8