```
 1                UNITED STATES BANKRUPTCY COURT

 2         CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES

 3                           --oOo--

 4  In Re:                          )  Case No. 1:20-bk-10256-DS
                                    )
 5  NAI CAPITAL, INC.,              )  Chapter 11
                                    )  Los Angeles, California
 6                                  )
    Debtor,                          )  Wednesday, 9:00 A.M.
 7                                  )  May 20, 2020
    -------------------------------X
 8  NAI CAPITAL, INC.,              )
                                    )
 9              Plaintiff,          )
                                    )
10              v.                  )  Adv. No. 1:20-ap-01051-DS
                                    )
11  CARRANZA, in her capacity as    )
    administrator for the U.S.      )
12  Small Business                  )
    Administration,                 )
13                                  )
                Defendant.          )
14  -----------------------------)

15                                  HEARING RE: [3] NAI
                                    CAPITAL, INC., A MOTION
16                                  FOR TEMPORARY RESTRAINING
                                    ORDER AND ORDER TO SHOW
17                                  CAUSE WHY A PRELIMINARY
                                    INJUNCTION SHOULD NOT
18                                  ISSUE

19                                  STATUS HEARING RE: [1]
                                    CHAPTER 11 VOLUNTARY
20                                  PETITION NON-INDIVIDUAL,
                                    INC.
21

22           TRANSCRIPT OF TELEPHONIC PROCEEDINGS
          BEFORE THE HONORABLE DEBORAH J. SALTZMAN
23               UNITED STATES BANKRUPTCY JUDGE

24
    Proceedings produced by electronic sound recording;
25  transcript produced by transcription service.
```



P 888.272.0022  F 818.343.7119    www.benhyatt.com

```
 1   APPEARANCES:

 2   For the Movant:              BETH ANN R. YOUNG, ESQ.
                                  RON BENDER, ESQ.
 3                                RICHARD P. STEELMAN, JR., ESQ.
                                  Levene Neale Bender Yoo &
 4                                  Brill, LLP
                                  10250 Constellation Boulevard
 5                                Suite #1700
                                  Los Angeles, California  90067
 6
     For the Small Business       MARC STACKS, ESQ.
 7   Administration:              ELAN S. LEVEY, ESQ.
                                  RICHARD PARK, ESQ.
 8                                Federal Building
                                  Suite #7516
 9                                300 North Los Angeles Street
                                  Los Angeles, California  90012
10
     Court Recorder:              Dawnette Francis
11                                U.S. Bankruptcy Court
                                  Central District of California
12                                Edward R. Roybal Federal Building
                                    and Courthouse
13                                255 East Temple Street, Room #940
                                  Los Angeles, California  90012
14                                (855) 460-9641

15   Court Transcriptionist:      Ruth Ann Hager, C.E.T.**D-641
                                  Ben Hyatt Certified Deposition
16                                  Reporters
                                  17835 Ventura Boulevard, Suite 310
17                                Encino, California  91316

18

19

20

21

22

23

24

25
```

```
Page                                                               3
 1          LOS ANGELES, CALIFORNIA, WEDNESDAY, MAY 20, 2020
 2                             9:10 A.M.
 3                             --oOo--
 4          THE CLERK:  Please come to order.  This court is
 5   now in session, the Honorable Deborah J. Saltzman
 6   presiding.
 7          THE COURT:  Thank you.  Good morning.  This is
 8   our continued hearing regarding the NAI case for temporary
 9   restraining order.  The adversary proceeding is NAI
10   Capital, Inc. v. Carranza.
11          Let's begin briefly with appearances for counsel
12   who argued yesterday on the motions, then I'm giving your
13   participants and get your ruling.
14          MS. YOUNG:  Good morning, Your Honor.  Beth
15   Young, Richard Steelman, and Ron Bender on behalf of the
16   debtor NAI.
17          THE COURT:  Good morning.
18          MS. YOUNG:  Good morning.
19          THE COURT:  And Mr. Stacks?
20          MR. STACKS:  Good morning, Your Honor.  Marc
21   Stacks on behalf of the Government with Elan Levey and
22   Richard Park as well.
23          THE COURT:  Good morning.
24          MR. STACKS:  Good morning.
25          THE COURT:  Okay.  So I am going to review --
```

```
Page                                                                    4
 1              COMPUTER VOICE:  You are muted.  You can mute or
 2   unmute yourself by --
 3              THE COURT:  (Inaudible -- computer voice
 4   overrides the Court.)
 5              COMPUTER VOICE:  -- pressing star 6.
 6              THE COURT:  -- plus debtor recording and I
 7   apologize for what I'm sure are going to be a lot of ums
 8   (phonetic) and pauses here.  I'm working from a bunch of
 9   notes from our conversation yesterday, as well as from
10   reading the papers, and I want to make sure that I'm clear
11   about the ruling today.
12              Preliminarily, again, this is the adversary
13   proceeding that was filed by the debtor against Jovita
14   Carranza as administrator of the Small Business
15   Administration alleging that the SBA in administering the
16   PPP, part of the CARES Act enacted by Congress in response
17   to the COVID-19 pandemic essentially is unlawful for two
18   reasons:  first, it violates Section 525(a) of the
19   Bankruptcy Code by discriminating impermissibly against
20   debtors and excluding them as recipients; and secondly, it
21   violates the Administrative Procedures Act, the APA, by
22   excluding debtors from the PPP in that this exclusion is
23   arbitrary and capricious.  And the debtor asked this Court
24   for a temporary restraining order essentially striking the
25   bankruptcy question from the PPP application and allowing
```

```
    Page                                                         5
 1  the debtor to submit their application without this
 2  question, without the bankruptcy debtor restriction so that
 3  they can be considered for the funding.
 4          Let me get to the end and then walk through how I
 5  got there.  The Court is not able to grant the requested
 6  relief here.  I'm not able to issue the temporary
 7  restraining order and I want to walk through the reasoning
 8  for this ruling.  And I need to say at the very beginning
 9  that in over ten years of doing this job I think this is
10  the hardest decision I've made and it's not necessarily
11  because the facts are difficult to analyze here.  I don't
12  think there were any disputes as to the facts.
13          And it's not because the law is particularly
14  complicated, although it's certainly not simple.  It's
15  because I feel very strongly that Chapter 11 and bankruptcy
16  in general should be an opportunity for a debtor to address
17  its financial challenges.  And in this environment where we
18  have the CARES Act as an attempt to allow not just --
19  obviously not debtors to be the only parties to address
20  their financial challenges, but to allow everyone an
21  opportunity to address these unique challenges.  It seemed
22  to me to be a very sad result that I have to arrive at
23  today, but I need to walk through why I get to that result.
24          First of all, we have the standard
25  (indiscernible) preliminary injunction or temporary
```

```
Page                                                                    6
```

1 restraining order and it's up to the moving party to
2 establish that they're likely to succeed on the merits,
3 that they are likely to suffer irreparable harm in the
4 absence of the relief, that the balance of harms
5 to (indiscernible) and that the injunction is in the public
6 interest.
7  　　　　The Ninth Circuit has what is referred to in the
8 case law as a sliding scale approach to preliminary
9 injunction and this is from the *Cattrell* case.  And the
10 idea here is that the elements don't necessarily all get
11 weighed equally, that a stronger showing of one element can
12 offset a weaker showing of another.  For example, stronger
13 showing of irreparable harm to the movant might offset a
14 lesser showing of likelihood of success on the merits.  So
15 it's important to keep those factors in mind when analyzing
16 this and I will walk through all four of these factors.
17  　　　　First let's talk about likelihood of success on
18 the merits and here we have the two substantive claims.
19 First 525.  I want to look at the language specifically of
20 Section 525(a).  It states:
21  　　　"A governmental unit may not deny, revoke,
22  　　　　suspend or refute showing a license, permit, charter,
23  　　　　franchise or other similar grant to conditions such a
24  　　　　grant to, discriminate with respect to such a grant
25  　　　　against deny employment to terminate the employment of

Page 7

1      or discriminate with respect to employment against a
2      person that is or has been a debtor under this title,"
3      and so forth.
4           The question that this Court wrestles with, as
5 well as some of the other courts that have had this issue
6 in front of them have wrestled with, is whether the PPP is
7 a grant within the meaning of Section 525(a) or whether it
8 is a loan.  And I believe that the debtor has not
9 established adequately that it would be likely to succeed
10 in establishing that the PPP is a loan -- I'm sorry -- is a
11 grant.  It appears to be more of a loan.
12           The CARES Act calls it a loan.  It's a loan that
13 is forgivable and I think intended and hoped to be
14 forgivable if the borrower complies with certain terms and
15 requirements, but that doesn't mean that it is not a loan.
16 Initially there is a note.  There is an obligation to pay.
17 And while Congress did relieve compliance with certain
18 provisions of the SBA Act with respect to lending standards
19 and requirements, it did leave in place the rest, which
20 again suggests to me that this is a loan, particularly the
21 soundness requirement that loans made are guaranteed under
22 Section 7A via sound value or so secured as to reasonably
23 assure repayment.
24           Section 525(a) doesn't refer to loans as I read,
25 and I have to conclude that it didn't intend to include

```
                                                                    Page                                                                  8
 1   loans, especially since later in Section 525 and 525(c)
 2   does refer to loans and grants.
 3              I also don't think that 525(a) really applies to
 4   any economic grant in any event.  The qualifying language
 5   in Section 525(a) is important and that's why I read it, a
 6   "license, permit, franchise or other similar grant."  And
 7   it seems to me that even if you were to call PPP funds a
 8   grant and not a loan, an economic grant isn't the sort of
 9   license, permit, franchise or other similar grant that is
10   intended to be covered in 525(a).  That section and case
11   law interpreting that section deals with Government-related
12   authority to do things kind of in the marketplace,
13   something like a driver's license or bar casting (phonetic)
14   license or something like that.
15              And while the cases cited were in the Ninth
16   Circuit, the SBA did point to other circuit court decisions
17   holding that 525(a) has not implicated (phonetic) it when
18   the Government can issue the loan on whether the party
19   receiving that loan is in bankruptcy because the loan isn't
20   a grant within the meaning of Section 525(a).
21              Now, as to Section 525(a) I don't think that the
22   movant has met its burden of establishing likelihood of
23   success on the merits because the PPP is a loan and not a
24   grant and if it were a grant, I don't think that it is
25   within the meaning of grant as Section 525(a) defines that
```

```
                                                                         9
     Page
 1   term.
 2                Next we get to (indiscernible) and Section
 3   706(2)(a) of the Administrative Procedure Act provides --
 4   requires that an agency action is upheld unless it is
 5   arbitrary, capricious, an abuse of discretion or otherwise
 6   not in accordance with law.  And of course, we're familiar
 7   with the body of case law beginning with Chevron and then
 8   developing from there that a rule is arbitrary and
 9   capricious, that the agency has relied on factors which
10   Congress has not intended it to consider, entirely failed
11   to consider an important aspect of the program, operate an
12   explanation for its decision that runs counter to the
13   evidence before the agency or it's so implausible that it
14   could not be ascribed to a difference in view or the
15   product of agency expertise.  And this is the Ninth Circuit
16   decision, Providence (indiscernible) Medical Center v.
17   Cedilia (phonetic) and it is citing the Supreme Court's
18   decision.
19                Here Congress did specifically chose to exclude
20   certain requirements of the SBA's Section 7A of money
21   requirements when casting secured debt and creating PPP.
22   But it wasn't placed (indiscernible) and it authorized the
23   administrator of the SBA (indiscernible) to carry out the
24   PPP and under her authority the administrator has issued a
25   number of rules, including the most recent one which we
```

```
Page                                                          10
 1  discussed at some length yesterday (indiscernible --
 2  garbled) interim (indiscernible) requirements to achieving
 3  PPP loans.  And that court -- that court interim rule --
 4  can everyone hear me?
 5            (No response.)
 6            MS. YOUNG:  Your Honor, it's not coming through
 7  clearly.  It's a little garbled.
 8            THE CLERK:  Your Honor, I'm trying to reset the
 9  speaker.  Is that working?
10            THE COURT:  Yes.
11            MS. YOUNG:  Yes, Your Honor.
12            THE CLERK:  Okay.
13            MS. YOUNG:  Thank you.
14            THE COURT:  I am not sure where you started
15  losing me.  I talked about the administrator of the SBA
16  issuing the fourth interim final rule.  Is that where it
17  started to become difficult to hear?  Okay.
18            MS. YOUNG:  Just right before it.
19            THE COURT:  Right before that.  All right.  So
20  let me jump back, and I apologize for repeating myself.
21  Congress did exclude certain requirements of the SBA's
22  lending requirements, Section 7A, but it did leave in place
23  the rest of the program and it authorized the administrator
24  to issue rules to use -- carry out the PPP.
25            I will point out first the debtor did provide and
```

Page 11

1 I read letters from some senators -- I believe there were
2 four letters -- indicating their intention, their belief
3 that the PPP ought to include pre-bankruptcy debtors. And
4 that tells me their opinion as intent of the letters were
5 written, but it doesn't change the provisions of the law
6 itself. So I can't take much from that information.
7 But under the authority of the SBA administrator,
8 she issued a number of rules including the fourth interim
9 final rule that we discussed at some length yesterday which
10 set out certain requirements for obtaining a PPP loan. And
11 specifically, in the fourth interim final rules there is
12 this statement. The administrator in consultation with the
13 secretary determined that providing PPP loans to debtors in
14 bankruptcy would present an unacceptably high risk of
15 unauthorized use of funds for non-repayment of unforgiven
16 loans.
17 And it was clear that the intention was, if you
18 answer the question "Are you a debtor in bankruptcy?" and
19 the answer is "Yes, you are not eligible for a loan,"
20 there's no dispute as to that.
21 So do you agree with the administrator's
22 determination? No, I don't. In a lot of Chapter 11 cases
23 there's more oversight of these funds than there would be
24 to a borrower who is not in bankruptcy. In a case like
25 this there would probably be more oversight. We have a

Page 12

1  Creditors' Committee.  We have the court.  There would be a
2  request for approval of post-petition borrowing.  There is
3  oversight in a typical Chapter 11 case.
4         I also think that the administrator's
5  determination is likely to have a negative impact broadly
6  because it excluded a number of small businesses in
7  financial distress, the type of entity that the CARES Act
8  is meant to assist from obtaining assistance.  I think
9  these are bad results.  But do I think this determination
10 is arbitrary and capricious?  No.  I can't make that
11 determination.  It is true that there are risks in
12 maintaining loans to bankruptcy debtors that are real and
13 that don't come into play when making loans to non-debtors
14 and that the administrator could have had in mind.
15         Some of those were brought up in other cases and
16 we talked a little bit about a couple of those yesterday
17 like the idea of funds ending up in the hands of the
18 secured lender in the event of default.  Just because we
19 don't have a DIP lender in this case doesn't mean that the
20 administrator could not have appropriately considered that
21 risk generally as well as other risks like conversion or
22 dismissal of the case and how those events could implicate
23 the use of funds.
24         *Chevron* and the line of cases following require
25 that I give deference to the agency's determination.  Even

Page 13

1  if I don't like it and even if I -- had I had that job I
2  would have made a different choice.  But the law doesn't
3  allow me to substitute my judgment for that of the SBA's
4  (indiscernible).  So in terms of likelihood of success on
5  the merits, I don't believe that the debtor has met its
6  burden.
7           Let's walk through the rest of the factors.
8  Irreparable harm.  The debtor must demonstrate that it is
9  likely that it will be irreparably harm if the injunction
10 is not issued.  The debtor makes several arguments about
11 irreparable harm and they're not particularly specific
12 arguments.  They are more generalized arguments that the
13 PPP funds will help the debtor achieve its future goals,
14 that they will assist the debtor in its reorganization,
15 that not having the funds will make it more difficult for
16 the debtor to make payroll and pay its rent.  That will
17 make reorganization more challenging.
18           These statements to me do not establish the
19 likelihood of harm that would result in the absence of the
20 temporary restraining order.  And I think that that is what
21 the case law requires, that there's got to be some sort of
22 showing of immediate and irreparable harm. There is no
23 allegation, for example, that not receiving the funds would
24 cause the debtor to be unable to organize, would lead to a
25 conversion or a dismissal of the case, would lead to the

Page 14

1 debtor shutting down.  None of that is in the record.  And
2 to me that is the sort of irreparable harm that the case
3 law looks to when deciding whether a temporary restraining
4 order is appropriate.
5     Again, all of the case law makes very clear that
6 this is an extraordinary remedy, a temporary restraining
7 order, and that the debtor -- the movant has the burden to
8 establish all of the elements and I don't think that the
9 record here establishes irreparable harm.  It establishes
10 perhaps additional challenges, additional difficulties, but
11 it does not establish irreparable harm.
12     Yesterday during the oral argument Ms. Young
13 noted that this is the only grant that's sort of available
14 and that may well be the case.  But the declaration and the
15 arguments did not say that these are the only funds that
16 might ever be available to discover.  There is no DIP loan
17 in this case, but there's been no argument and no showing
18 that that may not -- that -- that would not be available in
19 the absence of their requested relief.
20     So again, while I do not doubt that not receiving
21 these funds will have any negative affect on this debtor
22 and on its employees, and I wish that that were not the
23 case, I don't think that that is the sort of irreparable
24 harm that needs to be shown under the case law.
25     The third and fourth factors that the balance of

```
 1  harms in equities and the public interest, when the party
 2  (indiscernible) the injunction is the Government, these two
 3  factors can merge as the (indiscernible) risk holder case
 4  points out, I think that these factors point more probably
 5  towards the debtor not receiving funds that will assist in
 6  a reorganization that will allow employees to be paid on
 7  time is a harm.  And to me that is probably a greater harm
 8  than the funds being available to go to another borrower or
 9  not be available to go to another borrower.
10            And this is a Bankruptcy Court.  I take seriously
11  the public interest in allowing debtors every opportunity
12  to reorganize under the legal framework that's available to
13  them.  The SBA does argue though persuasively that there is
14  also a public interest in allowing it to fulfil its
15  statutory mandate.
16            So the final two factors are closer but -- it may
17  tip in favor of the debtor, but the first two factors I
18  think are clearly not established by the debtor here.  And
19  for those reasons I do not believe that the debtor has met
20  its burden, which is a heavy one in establishing the
21  factors needed for issuing a temporary restraining order.
22            Once again, this is not a decision that I take
23  lightly and it is not one that I am happy to make because I
24  don't think that this is a good result, but I don't think
25  that the law allows me to make a different conclusion.  So
```

```
    Page                                                              16
 1  that established my ruling there.
 2           Ms. Young, will you lodge the order for us,
 3  please?  Are you there?
 4           MS. YOUNG:  Yes, Your Honor, I will.
 5           THE COURT:  Thank you.  I did have a Chapter 11
 6  status conference on calendar today because I wanted to
 7  make sure that the ruling on the temporary restraining
 8  order had some immediate impact on what this debtor needed
 9  to do, that the debtor would have an opportunity to notify
10  the Court, ask the Court for anything that it might need to
11  ask.
12           So if there is -- counsel for the debtor who
13  would like to notify the Court of anything that it needs to
14  do or ask for any assistance or other relief, that's why we
15  have a status conference on calendar here today.
16           MS. YOUNG:  Thank you, Your Honor.  I -- we
17  already have, and I think it's still going forward, a
18  status conference on May 28th, correct?
19           THE COURT:  Yes.  Yes, and that is still going
20  forward.
21           MS. YOUNG:  And so immediately nothing comes to
22  mind, but I expect we will talk to the debtor's principals
23  and advise the Court at the next status conference if this
24  has an impact that needs to be addressed or there's some
25  other imminent issue.  But right now, we'll figure out what
```

```
                                                                17
     Page
 1   we need to do next.
 2            THE COURT:  Okay.  Okay.  I understand.  I just
 3   wanted to give the opportunity in case there was anything
 4   immediate.  And of course, if there's anything that comes
 5   up between now and the 28th, even though it's a little over
 6   a week, you know, please notify us.
 7            MS. YOUNG:  Thank you.
 8            THE COURT:  Thank you.  Any other questions for
 9   today?
10            MS. LEVEY:  Your Honor, the Government may wish
11   to obtain a transcript of the hearing of today and
12   yesterday.
13            THE COURT:  Okay.
14            MS. LEVEY:  Given that it's on -- being conducted
15   on Zoom is there any specific procedure related to
16   requesting that transcript?
17            THE COURT:  The recording is still being done
18   through the court's electronic recording system, so it's
19   the same procedure that we always have.  The recording is
20   still maintained with the Court.
21            MS. LEVEY:  Thank you, Your Honor.
22            THE COURT:  Okay.  I want to thank again everyone
23   both for the (indiscernible) briefing and the very
24   thoughtful oral argument, calling in twice both yesterday
25   and today, and I very much appreciate your flexibility in
```

```
Page                                                              18
 1  terms of this remote age that we're operating in.  Thank
 2  you again and we're adjourned.  Thank you.
 3          ATTORNEYS:  Thank you, Your Honor.
 4  (At 9:36 p.m.)
 5                      * * * * * * *
 6          I certify that the foregoing is a correct
 7  transcript from the electronic sound recording of the
 8  proceedings in the above-entitled matter.
 9
10
11
12  _____       Date:  5/22/2020
13  RUTH ANN HAGER, C.E.T.**D-641
14
15
16
17
18
19
20
21
22
23
24
25
```

P 888.272.0022  F 818.343.7119    www.benhyatt.com