Entered: June 8th, 2020
Signed: June 8th, 2020

**THOMAS J. CATLIOTA**
**U.S. BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
## at Greenbelt

| | | |
|---|---|---|
| In re: | * | Case No. 19-25413-TJC |
| iThrive Health, LLC | * | Chapter 11 |
| Debtor | * | |
| * * * * * * * | * | |
| iThrive Health, LLC | * | |
| Plaintiff | * | |
| vs. | * | Adversary No. 20-00151 |
| Jovita Carranza, in her capacity as Administrator for the U.S. Small Business Administration | * * | |
| Defendant | * | |
| * * * * * * * * * * * * * * | | |

## MEMORANDUM OF DECISION

Chapter 11 debtor and plaintiff iThrive Health, LLC brings this motion for preliminary injunction against defendant Jovita Carranza, in her official capacity as Administrator for the United States Small Business Administration ("SBA"). Debtor contends defendant violated §525(a) of the Bankruptcy Code by excluding it from participating in the Paycheck Protection Program (the "PPP") established by the Coronavirus Aid Relief Economic Security Act (the "CARES Act"), solely because it is a debtor in bankruptcy. Debtor also contends defendant exceeded its statutory authority and acted arbitrarily and capriciously by excluding bankruptcy

1

debtors from participating in the PPP, in violation of the Administrative Procedures Act (the "APA"). Defendant opposes the motion. For the reasons that follow, the court concludes that binding Fourth Circuit precedent forecloses the relief sought by debtor. The motion will be denied.

While the preliminary injunction motion was pending, debtor filed a motion to dismiss its bankruptcy case and requested that, if the court denies the motion for a preliminary injunction, it should dismiss the bankruptcy case to allow debtor to seek PPP funds. As addressed further below, the court concludes that "cause" exists to dismiss the case and will grant the motion.

**Jurisdiction**

Debtor's claim that defendant violated 11 U.S.C. §525(a) is one "arising under title 11" and is a core proceeding. 28 U.S.C. §§1334(b) and 157(a). Debtor's APA claims are "related to" a case in title 11. 28 U.S.C. §1334(b). Although the APA claims are noncore, the court is not called upon to issue a final judgment in resolving the preliminary injunction motion. Finally, debtor's motion to dismiss the Chapter 11 case "arises in" a case under title 11 and is a core proceeding.

**Facts**

Debtor filed a Chapter 11 bankruptcy case on November 19, 2019. Case No. 19-25413. It is a pharmacy trading under the name Village Green Apothecary with approximately fifty (50) employees. ECF 1 ¶¶12-13. Debtor continues to operate and manage its business as a debtor-in-possession.

On March 27, 2020, the CARES Act[1] was signed into law in response to the COVID-19 pandemic and subsequent economic downturn. As part of the CARES Act, the PPP extended

---

[1] Pub. L. No. 116-136, 134 Stat. 281 (2020).

2

certain funding to small businesses via participating federally insured lending institutions. Defendant has been tasked with administering the PPP.

Debtor states it qualifies to receive approximately $418,000 in PPP funds. It approached several lending institutions to obtain PPP funding, each declining to process debtor's application because of its active bankruptcy status and defendant's guidelines prohibiting the extension of PPP funding to entities in bankruptcy.

Debtor filed its complaint on May 12, 2020. Along with the complaint, debtor filed a motion for temporary restraining order and preliminary injunction and a memorandum in support. ECF 3. At a status conference held on May 13, the parties reported that defendant had agreed to set aside PPP funds for debtor in the event it prevailed on its claims, thus obviating the need for resolving the motion for a temporary restraining order. The parties also presented a scheduling order for resolving the preliminary injunction motion, and the court held a hearing on the motion on June 3, 2020.[2]

In the meantime, debtor filed a motion to dismiss its bankruptcy case on May 15, 2020. ECF 98, Case No. 19-25413. Debtor requests that the court dismiss the case if it denies the motion for preliminary injunction. Debtor states that, outside of bankruptcy, it would immediately seek $418,000 of PPP funds, which would aid substantially in its reorganization effort. It also states that, after dismissal, if it fails to obtain the funds or otherwise continues to require debt relief, it would seek to refile under the provisions of the Small Business Reorganization Act. Debtor states that "the flexibility of the confirmation process and substantially reduced legal fees and costs under the Small Business rules would substantially

---

[2] 5 U.S.C. §§701 *et seq.*

3

enhance Debtor's probability of success in a Chapter 11 reorganization, and result in increased payments to creditors." *Id*. at 3.

## CARES Act and the PPP

On March 13, 2020, the President declared the COVID-19 pandemic warranted an emergency declaration for all States, territories, and the District of Columbia. The President signed into law the CARES Act to provide emergency economic assistance to help individuals and businesses cope with the economic and public health crises triggered by the worldwide COVID-19 pandemic. *See* SBA, Interim Final Rule, 85 Fed. Reg. 20,811 (April 15, 2020) (the "First Interim Final Rule").

As described in the First Interim Final Rule, the SBA received funding and authority through the CARES Act to establish a new loan program to assist small businesses adversely impacted by the COVID-19 emergency. Section 1102 of the CARES Act temporarily permits the SBA to guarantee loans under the PPP. Section 1106 of the CARES Act provides for forgiveness of qualifying loans guaranteed under the PPP. *Id.* "The intent of the CARES Act is that SBA provide relief to America's small businesses expeditiously" with a "focus on keeping workers paid and employed." *Id.*

By law the SBA is managed by an Administrator who has the power to make rules that carry out the agency's objectives and programs. 15 U.S.C. §633(a), (b)(1), (b)(6), (b)(7). The Administrator has promulgated several interim final rules which set forth PPP funding implementation, eligibility and criteria. The First Interim Final Rule described eligibility requirements. Second and third interim final rules were issued addressing affiliation rules, additional eligibility guidelines and pledges of loans. 85 Fed. Reg. 20,817 (April 15, 2020); 85 Fed. Reg. 21,747 (April 20, 2020). The third interim final rule also sets forth the parameters for

4

loan forgiveness, which states "[t]he amount of loan forgiveness can be up to the full principal amount of the loan plus accrued interest." 85 Fed. Reg. 21,747 (April 20, 2020). Generally speaking, the amount of forgiveness is computed based on the amounts spent on payroll costs including taxes, insurance, salary, wages, and tips; owner compensation replacement; payments of interest on mortgage obligations on real or personal property incurred before February 15, 2020 to the extent tax deductible; rent payments on lease agreements in force before February 15, 2020, to the extent tax deductible; and utility payments. *Id*.

A fourth interim final rule was issued on April 24, 2020, which provides:

4. Eligibility of Businesses Presently Involved in Bankruptcy Proceeding.

Will I be approved for a PPP loan if my business is in bankruptcy? No. If the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan. If the applicant or the owner of the applicant becomes the debtor in a bankruptcy proceeding after submitting a PPP application but before the loan is disbursed, it is the applicant's obligation to notify the lender and request cancellation of the application. Failure by the applicant to do so will be regarded as a use of PPP funds for unauthorized purposes.

The Administrator, in consultation with the Secretary, determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans. In addition, the Bankruptcy Code does not require any person to make a loan or a financial accommodation to a debtor in bankruptcy. The Borrower Application Form for PPP loans (SBA Form 2483), which reflects this restriction in the form of a borrower certification, is a loan program requirement. Lenders may rely on an applicant's representation concerning the applicant's or an owner of the applicant's involvement in a bankruptcy proceeding.

85 Fed. Reg. 23,450 (April 28, 2020).

Under the PPP, an SBA approved lending institution reviews a small business's application for PPP funding and decides whether it meets the SBA requirements to be funded. Upon approval, the lending institution and applicant execute a promissory note and PPP funds

are disbursed. The applicant may then, after the requisite time period lapses, apply to their lending institution for loan forgiveness. Funds never pass between the SBA and applicant.

## Preliminary Injunction Standards

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The last two of these four factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009). A plaintiff must make a clear showing that it will likely succeed on the merits, *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017), and is likely to suffer irreparable harm without preliminary relief. *Winter,* 555 U.S. at 20. As to the public interest analysis, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* at 24. All elements must be satisfied before a party may obtain a preliminary injunction. *Mountain Valley Pipeline,* 918 F.3d at 366 (citing *Winter*, 555 U.S. at 20).

**Likelihood of Success – The APA Claims.**

Before addressing debtor's claims that defendant exceeded its statutory authority and acted arbitrarily and capriciously in violation of the APA, the court must first determine whether it may enter the requested relief. Based on Fourth Circuit precedent, the court concludes it may not do so.

The parties differ on whether §634(b)(1) of the Small Business Act, 15 U.S.C. §631 *et seq.*, bars courts from entering injunctions against the SBA. Section §634(b)(1) provides:

(b) Powers of Administrator

In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may—

(1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; *but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property;*

15 U.S.C. §634(b)(1) (emphasis added). The Fourth Circuit has addressed §634(b)(1) on several occasions, and each time applied the anti-injunction provision according to its plain language. In *J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383 (4th Cir. 1990), *cert. denied*, 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978)), the Court unequivocally stated, "courts have no jurisdiction to award injunctive relief against the SBA." 901 F.2d at 386 (citing *Duncan v. Furrow Auction Co.,* 564 F.2d 1107, 1109 (4th Cir. 1977)). In *Duncan*, after a state court issued an injunction restraining the sale of collateral, the SBA intervened and removed the case to District Court, which then dissolved the injunction. 564 F.2d at 1109. In affirming the District Court, the Fourth Circuit stated, again without qualification, "we find 15 U.S.C. §634(b)(1) prohibits an injunction, which was all the relief asked for, against the SBA." *Id*. at 1109. In *Vincent v. Small Business Administration,* 402 F.2d 769 (4th Cir. 1968), a state court issued an injunction restraining the foreclosure of real property on which the SBA held a lien. After the SBA removed the case to federal court, the District Court dissolved the injunction as precluded by §634(b)(1). *Vincent,* 402 F.2d at 770. On appeal, the Fourth Circuit summarily affirmed the District Court, stating "the correctness of the District Court's decision is apparent" from the anti-injunction language of §634(b)(1). *Id*. at 771. The District Court in Maryland reached a similar

7

conclusion in *vonLusch v. Hoffmaster*, 253 F. Supp. 633, 635 (D. Md. 1966) (holding that the APA does not circumvent the no-injunction provision of §634(b)(1)).

Debtor relies on *Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1056–57 (1st Cir. 1987). There, the First Circuit adopted a nuanced view of §634(b)(1), distinguishing between injunctive relief that interferes with agency property (*i.e.* attachment of funds) or internal operations, and injunctive relief that results from judicial review of agency action:

> The no-injunction language protects the agency from interference with its internal workings by judicial orders attaching agency funds, etc., but does not provide blanket immunity from every type of injunction. In particular, it should not be interpreted as a bar to judicial review of agency actions that exceed agency authority where the remedies would not interfere with internal agency operations.

*Id.* at 1057. The First Circuit recognized that some courts have determined §634(b)(1) "absolutely prohibit[s]" all injunctive relief against the SBA, citing, for example, *Valley Constr. Co. v. Marsh,* 714 F.2d 26, 29 (5th Cir.1983). *Id*. at 1056.

Debtor argues the claims it asserts here are the type *Ulstein* held are not prohibited by §634(b)(1). This court recognizes that the Fourth Circuit cases all involved the type of equitable relief that the First Circuit held was prohibited under §634(b)(1) and that the Fourth Circuit's holdings, while direct, are not expansive on the scope of the statute. Nevertheless, the language in *J.C. Driskill* and *Duncan,* along with the holdings of *Vincent* and *Hoffmaster*, are unambiguous and unqualified and does not leave room for this court to adopt the rationale of

8

Case:20-00055-EAG Doc#:44-15 Filed:06/08/20 Entered:06/08/20 19:33:49 Desc:
Case 20-00151-11 Doc 24 Filed 06/05/20 Page 9 of 15
Exhibit 15 Page 9 of 15

*Ulstein.*[3]

In concluding that Fourth Circuit precedent prevents this court from issuing injunctive relief against defendant, the court expresses no view on the merits of debtor's claims that defendant exceeded its statutory authority by excluding debtors from participating in the PPP, and acted arbitrarily and capriciously in violation of the APA.

**Likelihood of Success – The §525 Claim.**

As pertinent here, §525(a) provides:

> a governmental unit may not deny, revoke, suspend, or refuse to renew a *license, permit, charter, franchise, or other similar grant* to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title[.]

11 U.S.C. §525(a) (emphasis added). Debtor acknowledges that §525(a) does not apply to loans.[4] It contends that the PPP funds are grants, not loans, because there is no expectation that the funds will be repaid (provided debtor uses them as required). It argues a grant is included within the phrase "other similar grant" in §525(a). The court disagrees.[5]

---

[3] The parties have cited numerous recent PPP decisions by courts outside the Fourth Circuit that either grant or deny injunctive relief against the SBA sought on the same nonbankruptcy claims raised by debtor. A number of courts sitting in circuits that have not addressed the scope of §634(b)(1) rely on *Ulstein* to determine that §634(b)(1) does not bar injunctive relief against the SBA. *See, e.g.*, *DV Diamond Club of Flint, LLC v. U.S. Small Business Admin.*, No. 20-cv-10899, 2020 WL 2315880 (E.D. Mich. May 11, 2020); *Springfield Hospital, Inc. v. Carranza,* No. 20-01003, 2020 WL 2125881 (D. Vt. May 4, 2020); *Camelot Banquet Rooms, Inc. v. U.S. Small Business Admin.*, No. 20-C-0601, 2020 WL 2088637 (E.D. Wis. May 1, 2020). This court concludes these rulings are contrary to Fourth Circuit precedent. As the defendant points out, a number of courts sitting in circuits that take a restrictive view of §634(b)(1) reach the same result as this court. *See Inland Family Practice Center, LLC v. U.S. Small Business Admin. (In re Inland Family Practice Center, LLC),* No. 6:20-ap-06016 (Bankr. S.D. Miss. May 15, 2020); *Trudy's Texas Star, Inc. v. Carranza*, No. 20-ap-01026 (Bankr. W.D. Tex. May 7, 2020); *Asteria Educ., Inc. v. Carranza*, No. 20-ap-05024 (Bankr. W.D. Tex. April 30, 2020) (applying Fifth Circuit precedent in determining the court may not issue an injunction against the SBA under §634(b)(1)).

[4] The SBA guaranty is not a loan for purposes of §525(a). Under the PPP, the recipient obtains the funds from a financial institution, not the SBA. The SBA guarantees the funds and uses government resources to reimburse the financial institution, but the SBA itself does not make a loan or advance funds directly to the recipient.

[5] The court agrees with debtor that 11 U.S.C. §106(b)(1) and (3) provide a waiver of sovereign immunity for the debtor's claim that the defendant violated 11 U.S.C. §525.

This issue has been presented to numerous bankruptcy courts throughout the country, with differing results. A key distinction here is that the dispute must be resolved by reference to Fourth Circuit precedent. The Fourth Circuit addressed the meaning of "other similar grant" in *Ayes v. U.S. Dep't of Veterans Affairs*, 473 F.3d 104 (4th Cir. 2006). There, a class action was brought by veterans alleging the Department of Veterans Affairs (the "VA") violated §525(a) in the operation of its veteran guaranteed home mortgage loan program. The VA reduced the available guaranty by any amount the veteran failed to pay on a previous VA home loan. The plaintiffs had received bankruptcy discharges on prior VA guaranteed loans, and thus the VA reduced or eliminated, depending on the amount, the guaranties by the discharged amounts. The veterans contended the reduction of the available guaranty based on their discharged loans violated §525(a).

The Court stated that to establish a violation of §525(a), the plaintiff "must show that (1) the VA is a governmental unit, (2) the veteran guaranty entitlement is an item covered by the statute, and (3) the VA discriminated . . . solely because of their discharges in bankruptcy." *Id*. at 107. In addressing the second point, the Court took no issue with the position that the loan guaranty benefit was a grant. Its analysis turned on whether it was a "similar grant" to a "license, permit, charter [or] franchise" as specified in §525(a). The Court noted that the term "grant" is not defined in the statute, but emphasized that "the use of the word 'similar' limits the universe of 'grants' to which §525(a) applies, ensuring that only grants bearing a family resemblance to licenses, permits, charters, and franchises enjoy the anti-discrimination protections of the Bankruptcy Code." *Id.* at 108. In that regard, "licenses, permits, charters, and franchises are all governmental authorizations that typically permit an individual to pursue some occupation or endeavor aimed at economic betterment" and are issued in furtherance of the

10

"government's gate-keeping role in determining who may pursue certain livelihoods." *Id.* at 109.

The Court then turned to government loan guaranty programs, addressing *In re Goldrich*, 771 F 2d. 28 (2d Cir. 1985). There, the Second Circuit held that New York's student loan guaranty program was not a "similar grant" under §525(a) because it was of "distinctly different character" and not "in any way similar" to a "license, permit, charter or franchise." *Ayes*, 473 F.3d at 109. The *Goldrich* court stated the items listed in §525(a) are "composed solely of benefits conferred by the state that are unrelated to credit." *Id*. at 110 (citing *Goldrich*, 771 F.2d at 30). The Fourth Circuit noted that Congress abrogated *Goldrich's* holding by adding §525(c) ("A governmental unit that operates a student grant or loan program … may not deny … a *loan guarantee* … to a person that is or has been a debtor" under the Bankruptcy Code.)(emphasis added). As the Fourth Circuit stated, "Congress's tightly-worded abrogation" of *Goldrich's* holding justifies the inference that other kinds of loan guaranties "were excluded by deliberate choice, not inadvertence." *Id*. (quoting *Barnhart v. Peabody Coal Co.,* 537 U.S. 149, 168, 123 S.Ct. 748, 154 L.Ed.2d 653 (2003)).

The Court explained why the VA guaranty program was not a "similar grant."

> A home loan guaranty . . . does not implicate the government's gate-keeping role in determining who may pursue certain livelihoods because, unlike the enumerated items in § 525(a), a person can obtain a home loan or guaranty from the private sector. A governmental entity's refusal to issue, for example, a commercial real estate license to a bankrupt individual *completely forecloses that individual from legally pursuing a career as a commercial realtor*. If a governmental entity refuses to guarantee a home loan for a bankrupt individual, however, that individual is not doomed to homelessness; he may seek a guaranty from family or friends, may seek another private loan, perhaps on less favorable terms, or he may rent. Indeed, Appellants concede that they "might be able to obtain a home loan from another lender on less favorable terms." . . . *That governmental units do not exercise exclusive or even pervasive control over the "world" of home loans dooms Appellants' argument*.

11

*Id*. at 109 (emphasis added). In reaching its conclusion, the Court refused "to venture beyond the confines of the statutory language to broadly construe § 525(a)'s specific 'other similar grant' language in reliance on the general 'fresh start' policy underlying the Bankruptcy Code." *Id*. at 111.

There are substantial similarities between the home loan guaranty program in *Ayes* and the PPP. In both, the applicant obtains funds from a lending institution, and the funds are guaranteed by the government agency. In both, the expectation is that the government will not pursue the recipient for repayment on the guaranty.[6] Because Congress excluded government guarantee programs from §525(a) "by deliberate choice," these similarities would seem to foreclose debtor's contention that the PPP violates §525(a). *Id*. at 109.

There is, however, a critical difference between the two programs that gives the court pause. The central characteristic of the PPP is that the recipient fully anticipates the SBA will satisfy its guaranty by paying the loan to the issuing financial institution, while the veteran is expected to repay the home loan to the financial institution and the VA guaranty is funded only upon default. PPP funds, in essence, are a distribution of government funds to be used by businesses to survive the devastating economic consequences of the COVID-19 pandemic. They are intended to enable businesses to pay employees and certain other critical expenses that they likely would not otherwise be able to pay. As the SBA itself states in the First Interim Final

---

[6] In *Ayes,* the Court explained:
> If the veteran later defaults on the loan, the VA pays the private lender the amount it guaranteed on behalf of the veteran. In such cases, the VA becomes subrogated to the rights of the private lender for the amount paid by the VA on the guaranty. While the regulations relating to the veteran guaranty program state that any amount paid by the VA in satisfaction of a guaranty made on behalf of a veteran shall constitute a debt owing to the United States by such veteran . . . , the VA acknowledges that it does not take any action to collect this debt.

*Ayes* 473 F.3d at 106 (quotations and citations omitted).

Rule, the "intent of the CARES Act is that SBA provide relief to America's small businesses expeditiously" with a "focus on keeping workers paid and employed."

In this sense, the government does indeed "exercise exclusive . . . control" over the "world" of providing emergency funds intended to allow businesses to survive the pandemic. *Ayes*, 473 F.3d at 109. There is simply nowhere else debtor can turn to obtain such funds. It would be required to repay a loan obtained from any other source. But satisfying the Fourth Circuit's requirement that the government exercise exclusive (or at least pervasive) control over the subject of the grant addresses only part of the *Ayes* inquiry. The PPP must be similar to "a "license, permit, charter, [or] franchise" to be protected from discrimination under §525(a). *Id.* at 108. Here, PPP funds are not issued in furtherance of the "government's gate-keeping role in determining who may pursue certain livelihoods" or to enable an individual "to pursue some occupation or endeavor aimed at economic betterment." *Id*. at 109. The "family resemblance" required by the Fourth Circuit is lacking. To hold otherwise would be to stretch the rationale of *Ayes* well beyond the language of the decision.

The court concludes that debtor has not established a likelihood of success on the merits of its §525(a) claim under the *Ayes* standard. Therefore, the court will not address the remaining preliminary injunction factors.

**Debtor's Motion to Dismiss the Bankruptcy Case.**

As stated above, debtor filed a motion to dismiss its bankruptcy case and requested that, if the court denies the motion for a preliminary injunction, it should dismiss the bankruptcy case to allow debtor to immediately seek $418,000 of PPP funds. The time for objecting to the motion to dismiss has passed and the lone objection has been resolved. The court concludes that

13

"cause" exists to dismiss the case because the PPP funds will provide a substantial benefit to the estate that is not available to debtor while it remains in bankruptcy. *See* 11 U.S.C. §1112(b).

## Conclusion

For the foregoing reasons, the court will deny debtor's request for a preliminary injunction and will grant debtor's motion to dismiss the bankruptcy case, by separate orders. The Clerk will file this Memorandum in the adversary proceeding and in the main bankruptcy case.

cc:    iThrive Health, LLC
5415 W. Cedar Ln.
Bethesda, MD 20814
*Debtor*

Justin P. Fasano
McNamee, Hosea et al.
6411 Ivy Ln. Ste. 200
Greenbelt, MD 20770
*Debtor's Counsel*

Janet M. Nesse
McNamee, Hosea et al.
6411 Ivy Ln. Ste. 200
Greenbelt, MD 20770
*Debtor's Counsel*

Jovita Carranza, Administrator
Small Business Admin.
Chicago, IL 60602
*Defendant*

Alan Carl Lazerow
United States Attorney's Office for the District of Maryland
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
*Defendant's Counsel*

Daniel J. Martin
Department of Justice Civil Division
Commercial Litigation Branch, Corporate/Financial Litigation Section
1100 L St. NW
Washington, DC 20005
*Defendant's Counsel*

**End of Memorandum**