# Declaration of John A. Miller

I, John A. Miller, hereby declare the following:

1. I have worked at the United States Small Business Administration ("SBA"), 409 Third Street, S.W., Washington, D.C. 20416, for over twenty years. I currently hold the position of Deputy Associate Administrator for Capital Access. I am the highest-ranking career official in the Office of Capital Access and am knowledgeable about the Section 7(a) loan program and the Paycheck Protection Program ("PPP"). The Office is responsible for the operation and policy of the business loan programs for the Agency. I am duly authorized to make the statements contained in this Declaration to explain the basis for the SBA's determination to exclude debtors in bankruptcy from obtaining PPP loan guarantees.

2. On March 13, 2020, President Trump declared the ongoing Coronavirus Disease 2019 (COVID–19) pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, territories, and the District of Columbia. With the COVID–19 emergency, many small businesses nationwide were experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus. These measures, some of which are government-mandated, were being implemented nationwide and included the closures of restaurants, bars, and gyms. In addition, based on the advice of public health officials, other measures, such as keeping a safe distance from others or even stay-at home orders, were being implemented, resulting in a dramatic decrease in economic activity as the public avoids malls, retail stores, and other businesses.

3. On March 27, 2020, the President signed the Coronavirus Aid, Relief, and Economic Security Act (the CARES Act or the Act) (Pub. L. 116–136) to provide emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic. The Small Business Administration (SBA) received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID–19

emergency. Section 1102 of the Act temporarily permits SBA to guarantee 100 percent of 7(a) loans under a new program titled the ''Paycheck Protection program.'' Section 1106 of the Act provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the Paycheck Protection Program.

4. The CARES Act was enacted to provide immediate assistance to individuals, families, and businesses affected by the COVID–19 emergency. Among the provisions contained in the CARES Act are provisions authorizing SBA to temporarily guarantee loans under a new 7(a) loan program titled the ''Paycheck Protection Program.'' Loans guaranteed under the Paycheck Protection Program (PPP) will be 100 percent guaranteed by SBA, and the full principal amount of the loans may qualify for loan forgiveness.

5. SBA determined that the intent of the Act is that SBA provide relief to America's small businesses expeditiously. This intent, along with the dramatic decrease in economic activity nationwide, provided good cause for SBA to dispense with the 30-day delayed effective date provided in the Administrative Procedure Act. Specifically, small businesses needed to be informed on how to apply for a loan and the terms of the loan under section 1102 of the Act as soon as possible because under the CARES Act as enacted the last day to apply for and receive a loan was June 30, 2020. The Interim Final Rules were issues to allow immediate implantation of this program.

6. Congress placed the PPP within 15 U.S.C. Sec. 636(a), which is the Section 7(a) lending program of the Small Business Act. The Section 7(a) lending program gets its name from Section 7(a) of the Small Business Act, 15 U.S.C. Sec. 636(a), et seq.

7. The Section 7(a) lending program extends loans to qualified small businesses and is SBA's largest lending program.

8. While the SBA has authority to issue direct loans under the Section 7(a) lending program, in practice the SBA guarantees Section 7(a) loans disbursed by participating lenders, subject to Loan Program Requirements identified in SBA's regulations, as defined in 13 C.F.R. Sec. 120.10.

9. 13 C.F.R. Sec. 120.10 defines Loan Program Requirements:

    *Loan Program Requirements* or *SBA Loan Program Requirements* are requirements imposed upon Lenders, CDCs, or Intermediaries by statute; SBA and applicable government-wide regulations; any agreement the Lender, CDC, or Intermediary has executed with SBA; SBA Standard Operating Procedures (SOPs); FEDERAL

REGISTER notices; official SBA notices and forms applicable to the 7(a) Loan Program, 504 Loan Program or Microloan Program; and loan authorizations, as such requirements are issued and revised by SBA from time to time. For CDCs, this term also includes requirements imposed by Debentures, as that term is defined in §120.802. For Intermediaries, this term also includes requirements imposed by promissory notes, collateral documents, and grant agreements.

10. To participate in the section 7(a) lending program, lenders must agree to abide by all Loan Program Requirements.

11. The Loan Program Requirements require lenders to underwrite their loans. This underwriting process explicitly considers whether a borrower, owner of a borrower or affiliate of a borrower has ever petitioned for bankruptcy protection.

12. This consideration of bankruptcy status is incorporated in the official section 7(a) borrower application form 1919, a true and correct copy of which is attached as **Exhibit A**.

13. While lenders have some discretion over what weight to afford prior bankruptcy history, I am not aware of any lender that has extended section 7(a) loans to an entity in active bankruptcy. If such were the case, it would be very unusual and would cause the Agency to provide more scrutiny of the loan during oversight of the lender's decision to make the loan and perhaps lead to refusal of the Agency to honor its guaranty. Most SBA participating lenders would also avoid lending in a bankruptcy situation, because of the possible inability to sell the loan in the secondary market. The CARES Act created the PPP by modifying SBA's existing Section 7(a) lending program. It also authorized the SBA working with the Treasury Department to implement the PPP and issue any necessary rules, regulations or other guidance to do so.

14. Under the PPP, SBA has no authority to make PPP loans directly. Instead, SBA provides loan guarantees to participating lenders for eligible PPP loans.

15. Participating lenders have no obligation to issue PPP loans. And the SBA has no authority to require lenders to issue PPP loans.

16. To implement the PPP, the SBA has issued rules, forms and other guidance, all of which has been available on the SBA website, with guidance also available on the Department of Treasury website. The SBA borrower application form for PPP loans was adapted from the aforesaid regular 7(a) borrower application and is Form 2483. Among other

things, it differs from the regular 7(a) borrower application in the number of and scope of questions concerning bankruptcy. Borrower application Form 2483 for PPP loans states that if the applicant business or its owner is in bankruptcy it is ineligible for PPP assistance.

17. The reason for including the bankruptcy exclusion in form 2483 was that SBA in consultation with Treasury determined that in order to meet the challenge of rescuing the economy from the effects of the Covid-19 virus pandemic, loan assistance authorized by the Cares Act had to be provided as expeditiously as possible with as little as possible underwriting. Since a company in bankruptcy required an inquiry into the state of the proceeding and possibly a court order for DIP financing, as well the possible resolution of a host of other issues and the prospect of the incurring of fees by the lender in monitoring the bankruptcy proceeding, it was determined that the wording of Form 2483 would be expeditious and less likely to slow the administration of the program and less likely to require the expenditure of additional time, effort and other resources. The purpose of a PPP loan is to help small businesses pay their employees and maintain operations to allow them to restart quickly over the next few months. SBA decided that this purpose would not be served by including all bankruptcies. Certain creditors, including administrative creditors, could assert claims to the PPP loan funds that would interfere with its authorized uses and the requirements for PPP loan forgiveness. SBA, in consultation with the Department of Treasury, determined there should be one streamlined rule that applies to all debtors in bankruptcy to avoid the need for case by case reviews.

18. The Administrator issued her First Interim Final Rule for the PPP. The rule was posted to the SBA website on April 2, 2020, and subsequently published in the Federal Register on April 15, 2020.

19. Among other things, the First Interim Final Rule references the aforesaid official application form for the PPP in Section 2(q), "What forms do I need and how do I submit an application?". The form is identified in Section 2(q) as "SBA Form 2483 (Paycheck Protection Program Application Form)".

20. The First Interim Final Rule also describes the underwriting PPP lenders must perform in Section 3(b), "What do lenders have to do in terms of loan underwriting?" Among other

things, that section identifies the "Paycheck Protection Program Application Form" as part of loan underwriting.

21. The CARES Act initially appropriated $349 billion to the section 7(a) program to fund the PPP.
22. Participating lenders began accepting PPP loan applications on or about April 3, 2020.
23. On or about April 24, 2020, the Fourth Interim Final Rule was posted on SBA's website, sba.gov and at the Department of Treasury website, treasury.gov. Part of the Fourth Interim Final Rule was intended to clarify the rationale for the need to exclude businesses in bankruptcy or businesses with owners in bankruptcy from participation in the PPP loan program for the same reason as noted above. The Fourth Interim Final Rule was published in the Federal Register on April 28, 2020. There is no Administrative Record other than as noted above because this was an Interim Final Rule, prepared in order to help deliver this much needed assistance to small businesses as expeditiously as possible.

I declare under penalty of perjury, pursuant to 28 USC 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 5th day of June, 2020

_____

John A. Miller