## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | Bankr. Case No.: 19-01789(ESL) |
| ORGANIC POWER, LLC., | |
| DEBTOR. | Chapter 11 |
| _____ | |
| ORGANIC POWER, LLC. | |
| Plaintiff | |
| v. | Adv. Proceeding. No.20-00055 |
| The U.S. Small Business Administration and Jovita Corranza, solely as the Administrator of the U.S. Small Business Administration, | |
| Defendant | |

### OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**TO THE HONORABLE COURT:**

**COME NOW,** Plaintiff, Organic Power, LLC ("OP") through the undersigned counsel very respectfully avers and prays as follows:

1

## PROCEDURAL BACKGROUND

1.      On April 27th, 2020, Organic Power filed an Adversary Proceeding against the Small Business Administration and Jovita Carranza as its administrator (herein after "SBA"). *Dkt.1.*

2.      On that same date OP filed an Application for a Temporary Restraining Order. *Dkt.4.*

3.      On May 4th, 2020, the SBA filed an Opposition to TRO. *Dkt.19.*

4.      On May 5th, 2020, Plaintiff filed a Reply to Defendant's Opposition to Plaintiffs Application for TRO. *Dkt.22.*

5.      On May 6th, 2020, a Status Conference was held. *Dkt.27.*

6.      On May 8th, 2020, an Order granting the TRO was entered. *Dkt.29.*

7.      On May 19th, 2020, a Status Conference was held. *Dkt.37.*

8.      On May 20th, 2020, the Minute of Proceeding stated that the parties requested that the preliminary injunction be consolidated with trial on the merits. *Dkt.34.*

9.      On the same Minute it was stated that trial is scheduled for June 22, 2020 at 10 a.m. *Dkt.34.*

10.     Also, a schedule was established to govern pre-trial preparation. The same is as follows:

–   June 9th, 2020 – End of Discovery;

–   June 12th, 2020 – Due date to exchange exhibits;

–   June 15th, 2020 – Due date for simultaneous briefs;

–   June 18th, 2020 – Due date for Reply briefs and Pre-Trial Report before 2 p.m.;

–   June 19th, 2020 – Due date for any Unsworn Declarations and Pre-Trial hearing at 1:30 p.m.; and

2

– June 22nd, 2020 – Trial at 10:00 a.m.

11. On the abovementioned Status Conference, Docket 37, the temporary restraining order is extended until June 23, 2020.

12. On May 21st, 2020, OP filed the required Motion Informing the Opening of DIP Account.*Dkt.38*.

13. On that same day, OP also filed its required Motion to inform *20 Largest Unsecured Creditors, All Secured Creditors and US Trustee of PPP "loan" Approval and Request for Disbursement*[1]. *Dkt.39*.

14. On June 8th, 2020, Defendants file a Motion to Dismiss the Adversary Proceeding. *Dkt.44*. The Court Ordered Plaintiff to file its opposition to the Motion to Dismiss before June 16, 2020. Dkt. 45.

15. OP hereby submits an opposition to SBAs' dismissal.

## FACTUAL BACKGROUND

1. On April 1st, 2019 (the "Petition Date"), Plaintiff files its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States District Court for the District of Puerto Rico, commencing the case captioned: *In re Organic Power, LLC,* Case No. 19-01789 (the "Chapter 11 Case").

2. Since the Petition Date, the Plaintiff has been operating as a Debtor-in-Possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.[2]

3. On March 19th, 2020, the Governor of Puerto Rico instituted a quarantine/total closure order for Puerto Rico (the "Quarantine Order"). Pursuant to the Quarantine Order, only governmental essential services and gas, health and food commercial businesses may open and or

---

[1] This same motion was filed on the lead bankruptcy case, 19-01789.
[2] See, Docket 1 of Case No. 19-01789.

attend their offices.  Only those citizens who are attending those listed services may leave their residences.

4.     On March 26th, 2020, the governor of Puerto Rico extended the quarantine/stay at home order until May 6th, 2020. Because all non-essential businesses have been ordered to close, Plaintiff is experiencing a significant decrease in revenue and anticipates that for as long as the stay at hoe order remains in effect. Plaintiff relies on, as its primary source of income, its daily basis of operations.  As a result, it will struggle to continue making payroll payments.

5.     On March 27, 2020 the President of the United States signed into law the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). CARES Act, S. 3548, 116th Cong. (2020). The CARES Act is intended to, among other things, provide stimulus to the economy by distributing approximately $2.3 trillion to various industries, programs, and individuals.

6.     The Payroll Protection Program (PPP) is set forth in Title I of the CARES Act, and provides, among other things, up to $349 billion in forgivable loans to businesses that are affected by COVID-19. The PPP is a temporary, short-term program,[3] and amends Section 7(a) of the Small Business Act (15 U.S.C. 636(a)), the regulatory scheme through which the SBA guarantees covered loans.

7.     The CARES Act further grants the SBA emergency rule making authority and charges them to issue regulations to carry out certain of the programs contemplated in the CARES Act, including the PPP. *See* CARES Act, section 1114.

8.     On April 2, 2020, the SBA issued an interim final rule (the "First Interim Rule") providing guidance on, among other things, the eligibility requirements for loans under the PPP.

---

[3] The PPP covers loans that are issued between February 15, 2020 until June 30, 2020.

The First Interim Rule adopts the ineligibility standards set forth in section 120.110 title 13 the

Code of Federal Regulations ("CFR 120.110"), as further described in SBA's Standard Operating

Procedure 50-10, Subpart B, Chapter 2 ("SOP 50-10").[4]  *See* First Interim Rule, ¶ 2(c) ("Businesses

that are not eligible for PPP loans are identified in 13 CFR 120.110 and further described further

in SBA's Standard Operating Procedure").

9.    The SOP 50-10 provides that a "Small Business Applicant" must, among other

things:

      i.   Be an operating business;
     ii.   Be organized for profit;[5]
    iii.   Be located in the united states;
     iv.   Be small (as defined by the SBA); and
     v.   Demonstrate the need for the desired credit.

See SOP 50-10, pg. 85. The SOP 50-10 also provides that the businesses listed in CFR 120.110

are not eligible for an SBA loan. Bankruptcy debtors are not the listed as an ineligible business

in CFR 120.110.[6]

10.    Notwithstanding the foregoing, on April 2, 2020, the SBA issued Official SBA

Form 2483 ("PPP Application"),[7] that disqualified bankruptcy debtors from participation in the

---

[4] Available at https://www.sba.gov/sites/default/files/files/serv_sops_50105b_0_5.pdf.

[5] The CARES Act and the First Interim Rule expressly provide that non-profit organizations shall be eligible for the PPP.

[6] Interestingly, CFR 120.110 and the SOP 50-10 provide that "[b]usinesses principally engaged in teaching, instructing, counseling or indoctrinating religion or religious beliefs, whether in a religious or secular setting" are ineligible.  However, on April 3, 2020, the SBA issued the "Faith-Based Organizations FAQ" that established, among other things, that the SBA is taking the position that "faith-based organizations are eligible to receive SBA loans regardless of whether they provide secular social services. That is, no otherwise eligible organization will be disqualified from receiving a loan because of the religious nature, religious identity, or religious speech of the organization. The requirements in certain SBA regulations— 13 C.F.R. §§ 120.110(k) and 123.301(g)— impermissibly exclude some religious entities. Because those regulations bar the participation of a class of potential recipients based solely on their religious status, SBA will decline to enforce these subsections and will propose amendments to conform those regulations to the Constitution." *See* Faith-Based Organizations FAQ (attached to the Declarations of Lisa M. Passero and Charles Mendolera, as Exhibit A).

[7] A copy of the PPP Application is attached to the Adversary Proceeding Complaint, dated April 27, 2020, as Exhibit A.

PPP.

11.   Further, Official SBA Form 2484, which is the Lender Application Form – Paycheck Protection Program Loan Guaranty ("PPP Lender Application"), states that the PPP loan cannot be approved unless the applicant certifies that neither the applicant nor any owner is presently involved in any bankruptcy.  (See Complaint, Exhibit B).

12.   On April 4, 2020, the SBA issued a supplemental interim final rule ("the Second Interim Rule") further providing guidance on the PPP.  The Second Interim Rule is void of any provision that renders bankruptcy debtor's ineligible for the PPP.

13.   On April 24th, 2020, and after several entities had filed complaints against it and concurrent with Congress' extension of additional PPP funding, the SBA posted a new interim final rule, subsequently published in the Federal Register on April 28th, 2020, entitled "Business Loan Program Temporary Changes; Paycheck Protection Program – Requirements – Promissory Notes, Authorizations, Affiliation, and Eligibility" (Fourth Interim Final Rule) 85 Fed. Reg. 23, 450.

14.   The SBA does have emergency rule making authority under section 1114 of the CARES Act, nevertheless, this authority is limited to the development of regulations that carry out the provisions of the CARES Act, and it is clear that Congress did not intend for bankruptcy debtors to be excluded from participation in the PPP, ***otherwise they would have expressly included such a prohibition in the PPP, as it did in section 4003 of the CARES Act***.[8]

## I.     PLAINTIFF'S BRIEF RESPONSE TO DEFENDANT'S ARGUMENTS

---

[8] The only disqualifying criteria in the CARES Act that affects bankruptcy debtors appears in section 4003 of title IV, entitled "Economic Stabilization and Assistance to Severely Distressed Sectors of The United States Economy." Section 4003 governs loans that are not reserved to small businesses, is regulated by the United States Department of Treasury not the SBA and does not apply to the PPP.

The instant complaint was filed in response to the arbitrary and capricious disqualification of Chapter 11 Bankruptcy Debtors from the PPP "loan" program.[9]

According to Black's Law Dictionary a loan is defined as "to lend, esp. money"[10], however, it comes with multiple specific requirements, as established in Section 7(a) of the Small Business Act, 15 U.S.C. sec.631 *et seq*., amongst which repayment is one of the main characteristics.

The main difference between a grant and a loan is that the later requires you to repay the money you borrow, whereas the grant does not. Grants are non-repayable, *UNLESS the entity receiving the grant uses the funds for purposes other than those stipulated in the grant*.

A quick look at the requirements established by the SBA for the PPP "loan" application and repayment clearly establishes that the funds are meant to be a grant to help small businesses during this worldwide coronavirus (COVID-19) pandemic.

The Coronavirus Aid, Relief, & Economic Stimulus Act (CARES Act) provided an unprecedented package of emergency economic assistance and other support to assist businesses and Americans coping with the economic and public health crisis due to COVID-19. Congress was clear in that which they intended to exclude from the CARES Act.[11] Section 1102 of the CARES Act established the PPP to assist small businesses experiencing economic hardships as a result of COVID-19 measures taken by local governments.[12]

Congress created the Small Business Act to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns". The 7(a) loan program is known as the SBA's

---

[9] The PPP is more akin to a grant than a loan since the "loan" proceeds does not have to be repaid if it is used in the manner and for the purposes provided in the Act.

[10] Black's Law Dictionary, Deluxe Tenth Edition, Editor Brian A. Garner, 2009

[11] The only disqualifying criteria in the CARES Act that affects bankruptcy debtors appears in section 4003 of title IV, entitled "Economic Stabilization and Assistance to Severely Distressed Sectors of The United States Economy." Section 4003 governs loans that are not reserved to small businesses, is regulated by the United States Department of Treasury not the SBA and does not apply to the PPP.

[12] See, Interim First Rule, "Business Loan Program Temporary Changes; Paycheck Protection Program", 85 Fed.Reg.20, 811 (April 15, 2020)

primary program for providing assistance to small businesses. 13 C.F.R. Sec. 120.10 defines the

loan program requirements as "*Loan Program Requirements* or *SBA Loan Program Requirements*

are requirements imposed upon Lenders, CDCs, or Intermediaries by statute; SBA and applicable

government-wide regulations; any agreement the Lender, CDC, or Intermediary has executed with

SBA; SBA Standard Operating Procedures (SOPs); FEDERAL REGISTER notices; official SBA

notices and forms applicable to the 7(a) Loan Program, 504 Loan Program or Microloan Program;

and loan authorizations, as such requirements are issued and revised by SBA from time to time.

For CDCs, this term also includes requirements imposed by Debentures, as that term is defined in

§120.802. For Intermediaries, this term also includes requirements imposed by promissory notes,

collateral documents, and ***grant agreements***."

Why would the SBA exclude Debtor in Possession small businesses? Isn't the aim of the

SBA to "aid, counsel, assist, and protect...the interests of small businesses"?

Through the CARES Act, Congress enabled the SBA to provide "loans" to small businesses

that were economically affected by the COVID-19 global emergency. It is clear from the PPP

requirements that repayment is not a deciding factor when applying for the funds, if it were,

creditworthiness would, without a doubt, be a requirement to apply for such funds. The SBA is

trying to argue, without merit, that section 525 of the Bankruptcy Code does not apply to small

businesses in bankruptcy because we are not dealing with a grant, but a loan. The issue here is

more founded on semantics than actual law. As stated clearly by Puerto Rico's Supreme Court in

*In re Cruz Aponte*, "*It is necessary to point out that the name does not make the thing... [things]*

*should be interpreted beyond its label.*" 159 D.P.R. 170, 187 no. 7 (2003).

A monetary grant is defined as "to give or confer (something) with or without

compensation." *Black's Law Dictionary* (10th ed. 2014).  If such a grant is not used for the purposes

described in the grant, the money has to be returned to the grantor.[13]  This is exactly what the PPP "loan" does – it provides funds to small businesses for use in payroll, rent, utilities and mortgage payments.  If the funds are used in that manner, the "loan" is forgiven.  What distinction is there between the PPP and an actual grant?  None!

The SBA bases its argument in the underwriting of section 7(a), stating that they abided by the letter of the law when excluding small businesses debtors from the PPP funds because 15 U.S.C. sec. 636(a)(6) states that the Small Business Act requires that "[a]ll loans made under this subsection shall be of such sound value or so secured as reasonably to assure repayment."  Why would a PPP "loan" to a debtor not be of sound value or so secured to assure repayment? The PPP statute clearly states that the funds to be used have extremely favorable terms for applicants. E.g. _Funds are available regardless of the applicant's creditworthiness_, no fees are charged, the interest rate is of 1%, and _**the loans are fully forgiven if the funds are used as required**_.[14]  In fact, PPP "loans" guarantees are so generous as to be considered effectively as grants.[15]  Small businesses in bankruptcy are clearly more monitored and inclined to uphold repayment of such funds if incompliant with requirements than many other applicants which have not even been

---

[13] "The federal government can sue any grant recipient for violations of a grant agreement and seek repayment of misspent funds." _Mineta v. Board of County Comm'rs_, 2006 U.S. Dist. LEXIS 67566 (N.D. OK, 2006) citing _Guardians Association v. Civil Service Comm'n of City of New York_, 463 U.S. 582, 602 n.24 (1983).

[14] See Exhibit B: Opinion, _In re: Roman Catholic Church of the Archdiocese of Santa Fe_, Case No. 18-13027; _Roman Catholic Church of the Archdiocese of Santa Fe v. Small Business Administration_, Dkt.15 (Bankr. D. N.M. May 1st, 2020); and _In re Hidalgo County Emergency Service_, Case No. 19-20497, _Hidalgo County Emergency Service Foundation v. Jovita Carranza in her capacity as Administrator of the U.S. Small Business Administration_, Dkt.18, Adv. Proc. 20-02006 (Bankr. S.D. Tex., April 25, 2020), Dkt.17, Transcript of hearing before Judge David Jones, p.29 lines 18-19.

[15] See Exhibit A, Temporary Restraining Order, _In re Hidalgo County Emergency Service_, Case No. 19-20497; _Hidalgo County Emergency Service Foundation v. Jovita Carranza in her capacity as Administrator of the U.S. Small Business Administration_, Dkt.18, Adv. Proc. 20-02006 (Bankr. S.D. Tex., April 25, 2020); See Exhibit B: Opinion, _In re: Roman Catholic Church of the Archdiocese of Santa Fe_, Case No. 18-13027; _Roman Catholic Church of the Archdiocese of Santa Fe v. Small Business Administration_, Dkt.15 (Bankr. D. N.M. May 1st, 2020); See Exhibit C: Temporary Restraining Order, _In re: Springfield Hospital, Inc._, Case No. 19-10283; _Springfield Hospital, Inc. v. Jovita Carranza_, Dkt.19, Adv. Proc. 20-01003 (Bankr. D. Vt., May 4, 2020).

screened for creditworthiness. What better guarantee of adequate use of the funds and of repayment than a federal judge monitoring were the "loaned" funds are going on a constant basis?

If the Standard Operating Procedure 50-10 (SOP 50-10) of **section 7(a) allows lenders to consider bankruptcy** history of applicants[16], why would the SBA exclude Debtor in Possession of small businesses now? Even when Congress did not?

The SBA supports its decision with a Declaration of John A. Miller (the declaration), SBA Deputy Associate Administrator for Capital Access, who tries to explain and within statutory authority recount why small business debtors were excluded from PPP funds. This declaration is based on a Fourth Final Interim Rule[17] (Final Rule) of the SBA regarding PPP "loan" funds that dates April 24th, 2020, and was published on April 28th, 2020; by this date Organic Power had requested the PPP "loan' and there were already multiple cases on different District and Bankruptcy Courts alleging discrimination by the SBA.  On its Final Rule, from April 24th, 2020, the SBA provides additional information regarding some eligibility requirements, particularly section III(4), which addresses applicants in bankruptcy. The same provides as follow:

> ...
> The Administrator, in consultation with the Secretary, determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk **_of an unauthorized use of funds_** or non-repayment of unforgiven loans.
> ...

A summary of the explanation in the declaration is that the SBA decided not to permit small business who are debtors to apply for PPP funds because their application will slow the administration program and it would be "less likely that it would require the expenditure of

---

[16] "The credit decision, including how much to factor in a past bankruptcy or whether to require an equity injection, is left to the business judgment of the lender." SOP 50-10 at p.36
[17] 85 Fed. Reg.23, 450

additional time, effort, and other resources".[18] Also, this declaration does not support SBA's previous arguments that the exclusion of debtors was due to the fear of default of small businesses involved in a bankruptcy proceeding.

First, it is important to remember that the SBA DID NOT evaluate the loan applications, it was the financial institutions. So the "need" to save time and effort is not really a concern of the SBA, but of the financial institutions.

Secondly, if the concern was simply time and effort, there were very simple ways to allow bankruptcy debtors to participate that would not have consumed ANY time or required ANY additional effort on the part of the SBA OR the lending institutions. Simply require Debtors to submit as part of the required approval package, along with other necessary documentation such as licenses to do business, an order of the Bankruptcy Court allowing the debtor to obtain the loan. Moreover, the SBA could have required that such order contain language to ascertain that the moneys would be segregated, were inaccessible to creditors and used for the specified purposes. This would have to be done by the debtors and the Court and would not have implied ANY additional time, work or effort from the lending institutions or the SBA. This makes the Final Interim Rule an abusive, capricious and arbitrary use of the SBA's administrative power.

Yes, the SBA was granted emergency rulemaking authority, but that does not grant them the authority to exclude a group clearly not meant to be excluded by Congress. Otherwise they could have excluded for example all businesses owned by minorities, which they clearly could not. Congress explicitly excluded medium size businesses in bankruptcy from applying to their

---

[18] "Since a company in bankruptcy required an inquiry into the state of the proceeding and possibly a court order for DIP financing, as well the possible resolution of a host of other issues and the prospect of the incurring of fees by the lender in monitoring the bankruptcy proceeding, it was determined that the wording of Form 2483 would be expeditious and less likely to slow the administration of the program and less likely to require the expenditure of additional time, effort and other resources… Certain creditors, including administrative creditors, could assert claims to the PPP loan funds that would interfere with its authorized uses and the requirements for PPP loan forgiveness." See, *** Declaration of John A. Miller

corresponding "loan" program, why wouldn't they exclude small business debtors if they meant to? Too many additional sentences to include in the provision? We cannot assume that Congress included language to prohibit medium sized bankrupt entities from qualifying for the PPP, but conveniently "forgot" to include said language for small sized entities.

Emergency rulemaking does not grant the lawmaker authority to hinder the intend of Congress when passing the CARES Act, that was to provide an unprecedented package of emergency economic *assistance* to small business that were affected by the enormous economic and public health crisis triggered by the world wide pandemic of COVID-19. As an emergency relief, Congress approved a specific amount of money to be provided to all small businesses affected by the present global pandemic.

Finally, as discussed herein below, all of this has already been decided for the instant case by the Honorable Edward A. Godoy in his TRO Order on May 8th, 2020. *Dkt.29.*

## I.    THE COURT ALREADY RULED ON THE ARGUMENTS RAISED IN THE MOTION TO DISMISS

The Motion to Dismiss filed by the SBA is nothing more than a frivolous attempt to avoid filing an Answer to the Complaint.  The SBA simply rehashed the same arguments it raised in its opposition to the temporary restraining order.  The SBA knows full well that the Court already ruled on this issue on a preliminary basis and that the standard for a temporary restraining order is higher than in a simple motion to dismiss.

As such, the Plaintiff incorporates its Memorandum of Law in Support of Motion for Preliminary Injunction, its Motion Requesting Leave to Reply and Reply to Memorandum in Opposition to Motion for Preliminary Injunction and the reasoning in the Court in the Temporary Restraining Order as if transcribed herein.  *See, Dkts. 4, 21, 22 and 29.*

This, combined with their refusal to provide ANY discovery are bad faith attempts to deprive Plaintiff of its right to straight answers to the allegations posed by the Complaint.

For that reason alone, the Motion to Dismiss should be denied out of hand, and the SBA ordered to file an Answer to the Complaint within three (3) days.

## II. <u>LEGAL BASIS FOR MOTIONS TO DISMISS</u> - *Rule 12(b)(6) – Motion to Dismiss for failure to state a claim*

Rule 12(b)(6) imposes the burden of proof on the moving party and "erects a powerful presumption against rejecting pleadings for failure to state a claim". *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119 (10th Cir., 1994); *Ragin v. New York Time Co.*, 923 F.2d 995 (2nd Cir., 1991); *Anyanwu v. Columbia Brod. Sys.*, 887 F.Supp. 690 (S.D.N.Y., 1995).

When considering the motion to dismiss, the Court must presume **that all well plead allegations in the Complaint are true** and should resolve all doubts and inferences in favor of the plaintiff party. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 124 S.Ct. 2499 (2007). The Court should view all said pleadings liberally and in the light most favorable to the non-moving party. *Id*; *See* also, *Kaltenbach v. Richards*, 464 F.3d 524 (5th Cir. 2006).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should only be granted where facts alleged in the complaint, if presumed to be true, fail to state a claim for which relief may be granted. *See Butler V. Deutsche Bank Trust Company Americas*, 2007, QS3, --- F.3d ----, 2014 WL 1328296 (1st Cir. April 4, 2014) ("We affirm the grant of a motion to dismiss only where the facts, presumed to be true, fail to state a claim for which relief may be granted. Fed.R.Civ.P. 12(b)(6).")

It should be plain that taking the allegations as true and "looking at the allegations in the light most favorable" for the Plaintiff, none of the causes of action should be dismissed. The defendant has neither met said burden, nor has it countered the "powerful presumption". The

complaint has all of the elements of its causes of action correctly and adequately plead, thus, for purposes of a Motion to Dismiss they must be taken as true. Therefore, the Motion to Dismiss must be denied.

Furthermore, in deciding a Motion to Dismiss the Court can only look at the contents of the Complaint and the law. It may not look to outside evidence, such as sworn statements. Thus, the Court should completely disregard the Unsworn Statement submitted in support of the Motion to Dismiss.

### III.    The SBA's Implementation of the PPP Violates the Administrative Procedure Act – *Exceeds Statutory Authority and it's Arbitrary and Capricious*

The SBA first requests that Counts I, II and IV be dismissed because these causes of action are "non-core" and a final judgment cannot be issued by the Court. First of all, since the cause of action under section 525 is core, the Court has ancillary jurisdiction to see related causes of action. Secondly, the Court is entitled to issue "report and recommendation" to the District Court and does not have to dismiss the causes of action.[19] Finally, if the Court decided it did not have jurisdiction to entertain those causes of action, the proper course would be to withdraw the reference to District Court, not dismiss them. The causes of action are properly under federal jurisdiction and can be entertained by the District Court. Therefore, if the Court decides it may not entertain causes of action I, II and IV, the Plaintiff hereby requests that in the interest of judicial economy and time, the same be withdrawn to the District Court.

Under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (the "APA"), courts must "hold unlawful and set aside agency action, findings, and conclusions" that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

---

[19] *See* Order, *In re: USA Gymnastics*, Case No. 18-09108, *USA Gymnastics v. Jovita Carranza, et al.*, Dkt. 20, Adv. Pro. 20-50055 (June 12, 2020).

Further, the APA provides that courts must "hold unlawful and set aside" agency action that is "arbitrary, capricious, [or] an abuse of discretion."  5 U.S.C. § 706(2)(A).

A court's analysis of APA section 706(2)(C) "naturally begins with a delineation of the scope of the [agency's] authority and discretion" and then requires the court to determine whether the agency's action was made within that scope of authority. _Citizens to Pres. Overton Park, Inc. v. Volpe_, 401 U.S. 402, 416, (1971). As set forth above, nothing in the CARES Act, SBA Regulations, SOP 50-10, the First Interim Rule or the Second Interim Rule authorizes or permits the SBA to exclude debtors in bankruptcy from the PPP. It is well established that "an administrative agency must adhere to its own regulations." _Singh v. U.S. Dep't of Justice_, 461 F.3d 290, 296 (2d Cir. 2006)(setting aside an agency action where "[t]he [agency's] decision, and the government's defense of it, **expose a clear conflict between the relevant statute and the agency's corresponding regulation**, which, to date, as far as we have found, [has] not been acknowledged let alone reconciled.")[Emphasis ours] Accordingly, SBA's implementation of the PPP in a manner that causes debtors in bankruptcy, including the Plaintiffs, to be ineligible is therefore "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of APA section 706(2)(C).

Similarly, SBA's implementation of the PPP in a manner that causes debtors in bankruptcy to be ineligible is "arbitrary, capricious, [or] an abuse of discretion" in violation of § 706(2)(A) of the APA. On this matter, the Bankruptcy Court in _In re: Gateway Radiology_[20] concluded that the SBA's Administrator "relied on factors Congress had not intended her to consider and failed to consider important aspects of the problem…". When analyzing whether an agency's action was arbitrary or capricious, courts must determine whether "the agency has complied with the APA;

---

[20] Memorandum Opinion, _In re: Gateway Radiology Consultants, P.A._, Case No. 19-04971, _Gateway Radiology Consultants P.A. v. Jovita Carranza_, Dkt. 14, Adv. Proc. 20-00330 (June 8, 2020).

specifically, whether . . . it has acted consistently with its own procedures; and whether its applications of its governing law have been reasonable." *Troy Corp. v. Browner*, 326 U.S. App. D.C. 249, 120 F.3d 277, 281 (D.C. Cir. 1997).

Defendants argue that if the SBA's determination or regulation can be supported by any rational view of the record it must be uphold by the courts. There is no rational explanation for excluding debtors in bankruptcy from being able to apply for PPP funds. At least not they way they addressed it in their Final Rule and the declaration submitted with the Motion to Dismiss.

The SBA issued the First Interim Rule, which provides guidance on, among other things, the eligibility requirements to receive a loan under the PPP. The First Interim Rule adopts the ineligibility standards set forth in CFR 120.110, as further described in SOP 50-10. SOP 50-10 provides that a "Small Business Applicant" must, among other things: be an operating business; be located in the United States; be small (as defined by the SBA); and demonstrate the need for the desired credit. *See* SOP 50-10, pg. 85. SOP 50-10 also provides that the businesses listed in CFR 120.110 are not eligible for an SBA loan. Bankruptcy debtors are not the listed as an ineligible business in CFR 120.110.

Notwithstanding the foregoing, the SBA issued the PPP Application that purports to disqualify bankruptcy debtors from participation in the PPP. *See* Exhibit A to the Complaint - PPP Borrower Application. Further, the SBA issued the PPP Lender Application, which states that the PPP loan cannot be approved unless the applicant certifies that neither the applicant nor any owner is presently involved in any bankruptcy. *See* Exhibit A to the Complaint - PPP Lender Application.

The SBA then issued the Second Interim Rule, which further provides guidance on the PPP. The Second Interim Rule does not provide that bankruptcy debtors are ineligible for the PPP loan. Therefore, Defendants implemented the PPP in a manner that unlawfully excludes debtors

16

in bankruptcy.

It is clear that a court cannot substitute its judgment for that of the agency, however, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made,'" and judicial review is appropriate where an agency fails to meet this standard. _Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co._, 463 U.S. 29, 43 (1983) (citing _Burlington Truck Lines, Inc. v. United States_, 371 U.S. 156, 168 (1962)).  A n agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." _See id_. While a federal agency's interpretation of its own regulation is entitled to deference, that deference is misplaced if the agency's action 'is plainly erroneous **_or inconsistent with the regulation_**.'" [Emphasis added] _Bergamo v. Commodity Futures Trading Comm'n_, 192 F.3d 78, 79-80 (2d Cir. 1999) (quoting _Bowles v. Seminole Rock & Sand Co._, 325 U.S. 410, 414 (1945)).

The SBA did not act consistently with the CARES Act, its own eligibility requirements set forth in CFR 120.110, its interim rules, the SOP 50-10, or with any of its prior guidance on SBA loans generally, when it issued the PPP Application and PPP Lender Application disqualifying bankruptcy debtors.[21] The SBA's justification for the bankruptcy debtor disqualification in the PPP Application and PPP Lender Application is based on capricious arguments and which were publicly stated on April 28th, 2020, and only supported by a declaration that has no legal merits

---

[21] All of the guidance issued by the SBA is binding even though they are not formal rules. _South Dakota v. Ubbelohde_, 330 F.3d 1014, 1028 (8th Cir. 2003). "Agency statements can be binding upon the agency absent notice-and-comment rulemaking in certain circumstances. Where a policy statement purports to create substantive requirements, it can be a legislative rule regardless of the agency's characterization."

on its arguments.

It is clear that plaintiffs are the type of businesses that Congress intended, when it passed the CARES Act, that would benefit from the PPP and there is no indication that  Congress intended to exclude bankruptcy debtors from participation in the PPP. Therefore, there is no legal or factual basis that justifies the disqualification of bankruptcy debtors from the PPP, and as a result, the SBA determination to include debtor disqualifying criteria in the PPP Application and the PPP Lender Application was arbitrary and capricious in violation of § 706(2)(A) of the APA.

Nothing in the CARES Act, SBA Regulations, SOP 50-10, the First Interim Rule or the Second Interim Rule authorizes or permits the SBA to exclude debtors in bankruptcy from the PPP. Defendants' developed the Final Rule after a series of cases were already at court to try and explain why debtors were excluded. The SBA's implementation of the PPP has been in a manner that causes debtors in bankruptcy, including Plaintiff, to be ineligible is therefore "arbitrary, capricious, [or] an abuse of discretion" in violation of the APA. 5 U.S.C. § 706(2)(A).

## IV. The PPP Applications and Rules Discriminate Against the Plaintiffs as Bankruptcy Debtors and Violate Section 525 of the Bankruptcy Code.

Section 525(a) of the Bankruptcy Code provides in relevant part that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to . . . a person that is or has been a debtor under this title." 11 U.S.C. § 525(a). This list is illustrative rather than exhaustive. *See, e.g.*, *Envtl. Source Corp. v. Mass. Div. of Occupational Safety* (In re Envtl. Source Corp.), 431 B.R. 315, 322 (Bankr. D. Mass. 2010).

The SBA is a governmental unit under the Bankruptcy Code and is not entitled to sovereign immunity. *See* 11 U.S.C. § 101(27); *see also* 11 U.S.C. § 106. Section 106 is a general

waiver of sovereign immunity as to "a governmental unit to the extent set forth in this section

with respect to [section]. . . 525". *See id.* Further, section 106(a)(2) provides that the "court may

hear and determine any issue arising with respect to the application of such sections to

governmental units."

The legislative history of section 525(a) provides that the congressional intent was to

"prohibit actions by governmental or quasi-governmental organizations . . . or by other

organizations that can seriously affect the debtors' livelihood or fresh start." *See* S.REP. No.

989, 95th Cong., 2d Sess. 81 (1978), reprinted in 1978 U.S. CODE CONG. & ADMIN. NEWS

5787, 5867; H.R.Rep. No.595, 95th Cong., 1st Sess. 366-267 (1977); reprinted in 1978 U.S.

CODE CONG. & ADMIN. NEWS 5963, 6322-6323.  The legislative history further provides

that section 525:

> Codifies the result of *Perez v. Campbell*… which held that a
> state would frustrate the Congresisonal policy of a fresh start for
> a debtor if it were permitted to refuse to renew a driver's license
> because a tort judgment resulting from an automobile accident
> had been unpaid as a result of a discharge in bankruptcy. The
> Section is not exhaustive. The enumeration of various forms of
> discrimination against former bankrupts is not intended to
> permit other forms of discrimination. The courts have been
> developing the Perez rule.

*Id.*

Many of the cases involving section 525(a) relate to revocation of licenses and employment

discrimination against individual debtors, but courts within the Second Circuit have interpreted the

"or similar grant" language broadly to include government loan related assistance. *See, e.g.*, *In re

Rose*, 23 B.R. 662 (Bankr. D. Conn. 1982). In *Rose*, the Bankruptcy Court for the District of

Connecticut held that a state mortgage financing program could not deny a mortgage to a former

debtor. *In re Rose*, at 666-67. The Court reasoned that "[i]f a state has chosen to enact a program

of home financing for its citizens, § 525 prohibits that state from exempting debtors or bankrupts

from those benefits solely because of bankruptcy and without taking into account present financial capability.  To hold to the contrary would frustrate the Congressional policy of granting the debtor a fresh start by denying him a means open to other citizens of acquiring a home." *See id*.

Similarly, the Eastern District of New York Bankruptcy Court expanded on the *Perez* doctrine by holding that while section 525 "does not on its face embrace the refusal of money, credit or financing," it is not exhaustive, and "it was the legislative intent that the courts should continue to invalidate all discrimination of the character condemned in *Perez v. Campbell*". *In re Mart i.l.v.e.s. Goldrich*, 45 B.R. 514, 520 (Bankr. E.D.N.Y. 1984); *see also, Perez v. Campbell*, 402 U.S. 637, 91 S. Ct. 1704, 29 L. Ed. 2d 233 (1971). The *In re Mart* court ultimately held that "New York cannot refuse to guarantee a student loan to [a debtor] because an earlier loan was not paid but was discharged in bankruptcy," Reasoning that the section 525 is violated if the governmental discrimination interferes with congressional policy of giving a debtor a fresh start. *See In re Mart i.l.v.e.s. Goldrich*, at 522-23 (holding that "that New York cannot refuse to guarantee a student loan to Goldrich because an earlier loan was not paid but was discharged in bankruptcy. . . Section 661.6(b) of New York's Education Law frustrates the Congressional policy of granting Goldrich a fresh start by denying him the means available to other citizens who have acquired a higher education. Therefore, under the authority of the Perez case, Section 661.6(b) is unconstitutional and the defendants should be enjoined from denying Goldrich because of it the loans he requests").

The Second Circuit has also held that section 525(a) prohibits the eviction of a debtor from public housing, even though the debtor failed to pay pre-petition rent, an obligation that was discharged in the bankruptcy case. *Stoltz v. Brattleboro Hous. Auth. (in Re Stoltz)*, 315 F.3d 80, 89 (2d Cir. 2002). The *Brattleboro Housing Authority* argued that a public housing lease was not an "other similar grant" contemplated under section 525 and that while the denial of the

debtor's reapplication for a future lease was prohibited, that section 525 did not prohibit the eviction of the debtor for failure to pay prepetition rent. *See id*. The court disagreed reasoning "[t]he common qualities of the property interests protected under section 525(a), i.e., 'licenses, permits, charters, franchises, and other similar grants,' *are that these property interests are unobtainable from the private sector and essential to a debtor's fresh start*." *See id*. (emphasis added).

The Plaintiffs are not being denied access to the PPP because of their creditworthiness. In fact, the PPP was enacted to provide relief to struggling small businesses *without regard to their creditworthiness*. Further, the plaintiffs are otherwise eligible for a PPP loan but for their status as debtors, and as such, their "fresh start" is being interfered with by the SBA's implementation of the PPP program, and in particular, the PPP Application.  It is beyond cavil that non-debtor organizations in Puerto Rico and across the nation are facing similar financial distress as the Plaintiffs in light of both COVID-19 and the Puerto Rico "stay at home" directive. Those non-debtor organizations are eligible to participate in the PPP while the Plaintiffs are not solely because of their status as bankruptcy debtors. This is exactly the type of discrimination that Section 525 intends to prohibit.

The PPP is an unprecedented program designed to provide relief to small businesses affected by COVID-19. The Plaintiffs cannot obtain loans on similar terms from a private institution because the main factor driving a bank's willingness to issue loans under the PPP is the SBA's guarantee of such loan. The Plaintiffs cannot have their "fresh start" if they are forced to lay off and furlough employees many of whom are crucial to their businesses as going concerns. As such, the Plaintiffs respectfully submit that the SBA's implementation of the PPP is discriminatory in violation of Section 525 of the Bankruptcy Code.

In support of their position, the SBA attaches to its Motion to Dismiss fifteen[22] (15) cases similar to the one at hand in which the Temporary Restraining Order or Preliminary Injunction was denied. We would first like to point out that out of the 15 cases attached to the Motion to Dismiss, two (2) do not support SBA's position.  In *In re: Hartshorne Mining*, the court does not examine the validity of the Sec. 525 claim, but denied the TRO simply because Debtor could not meet the "irreparable harm" requirement.  Order, *In re: Hartshorne Holdings, LLC, et al.* Case No. 20-40133, *Hartshorne Mining, LLC., et al. v. Jovita Carranza*, Dkt. 35, Adv. Proc. 20-04012 (Bankr. W.D. Ky. June 1, 2020). In the case of *In re: iThrive Health, LLC*, the Court granted the Motion to Dismiss simply because it was unopposed. Memorandum of Decision, *In re: iThrive Health, LLC*, Case No. 19-25413, *iThrive Health, LLC v. Jovita Carranza*, Dkt. 24, Adv. Pro. 20-00151 (Bankr. D. Md. June 8, 2020).  Thus, these cases do not support the SBA's position and were misquoted.

On the other hand, the SBA fails to mention the cases in which the Courts have ruled that section 525 applies to the case at hand.[23]  As previously discussed, there are multiple cases that support our contention that section 525 applies to the PPP.  We hereby include a list of the same.[24]

As expressed by this Court in the Order Granting the Temporary Restraining Order, the

---

[22] Although there are 17 exhibits, two of the cases are repeated.

[23] Rule 3.3 of the ABA Model Rules of Professional Conduct requires a lawyer to disclose to the Court adverse legal authority.

[24] *In re: Hidalgo County Emergency*, Case No. 19-20497, *Hidalgo County Emergency v. Jovita Carranza*, Adv. Pro. 20-2006 (Bankr. S.D. Tx. 2020); *In re: Gateway Radiology Consultants, P.A., Case No. 19-04971, Gateway Radiology Consultants P.A. v. Jovita Carranza, Dkt. 14, Adv. Proc. 20-00330 (Bankr. M.D. Fl, June 8, 2020); In re: Roman Catholic Church of Archdiocese of Santa Fe*, Case No. 18-13027, *Roman Catholic Church of the Archdiocese of Santa Fe*, Dkt. 15, Adv. Pro. 20-01026 (Bankr. D. NM, May 1, 2020); *In re: Springfield Hospital, Inc.*, Case No. 19-10283, *Springfield Hospital, Inc. v. Jovita Carranza*, Dkt. 19, Adv. Pro. 20-01003 (Bankr. D. Vt. May 4, 2020); *In re: Springfield Medical Care Systems, Inc.*, Case No. 19-10285, *Springfield Medical Care Systems, Inc. v. Jovita Carranza*, Dkt. 18, Adv. Pro. 20-01004 (Bankr. D. Vt., May 7, 2020); *Pharaohs GC, Inc.v. Jovita Carranza, et als.*, Dkt. 9, Case No. 20-00665, (June 8, 2020); *Camelot Banquet Rooms, Inc., et als. v. Jovita Carranza, et als.*, Case No. 20-C-0601, *J.R. Schuster, LLC. v. Jovita Carranza, et als.*, Dkt. 28, Adv. Pro. 20-C-634 (E.D. WI., May 1, 2020).

PPP "loan is more akin to a grant than a loan.[25]  Thus Section 525 applies to the case at hand and the SBA unlawfully disqualified the Debtor from receiving the loan.

### V.    **Mandamus**

The Defendants have the non-discretionary duty to comply with the CARES Act and the provisions of the PPP to apply criteria to the PPP that are substantively and/or procedurally valid and to avoid imposing criteria to the PPP that are substantively and/or procedurally *ultra vires.*

OP is entitled to a writ of mandamus under 28 U.S.C. §1361 to compel the SBA to the remove from all PPP applications, including the PPP Application and the PPP Lender Application its disqualification of bankruptcy debtors as viable applicants because SBA acted beyond its statutory authority in implementing such disqualifying factors.

### VI.    **CONCLUSION**

The Motion to Dismiss filed by the SBA should be denied out of hand for the same reasons stated by this Court in the order granting the Temporary Restraining Order.  The Motion to Dismiss is nothing but a frivolous and bad faith attempt to avoid having to answer the complaint and admit to its failings.

---

[25] "But this court agrees with the bankruptcy court in New Mexico that the PPP is not a loan program, rather a grant or support program offered by the government to small businesses in financial distress without regard to creditworthiness. See, Archdiocese of Santa Fe, slip op. at 11. Under section 1106 of the CARES Act, if 75% or more of PPP money is used for payroll and the rest for mortgage interest, rent, and utilities, none of it must be repaid. See First Interim Final Rule § 2(o). As Organic Power has committed to using 100% of any PPP money received for payroll, the "loan" will be forgivable and is best characterized as an "other similar grant" under section 525(a) of the Bankruptcy Code for the reasons stated in the Archdiocese of Santa Fe opinion and in open court. And, we note that the has imposed restrictions in this Order to enforce Organic Power's commitment."  Dkt. 29 at p. 3.

Counts I, II and IV should not be dismissed and at worst should be adjudicated in a "report and recommendation" basis or withdrawn to District Court.  There is no reason for the Debtor to be obligated to start over.

As to the claim that Section 525 does not apply because the PPP is a loan, there is nothing in the statute that says that 525 does not apply to a loan.  Furthermore, the PPP is a grant and not a loan notwithstanding the name or method of distribution.  If the funds are used as prescribed, the recipient does not have to pay back the received funds.  That is the exact definition of a grant.[26]

**WHEREFORE,** Plaintiff respectfully requests that the Court take note of the above, consequently DENY SBA Motion to Dismiss, and Order the SBA to file an Answer to the Complaint within three (3) days so as not to affect the timeline for trial.

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the Assistant US Trustee at the US Trustees Office, Ochoa Building, 500 Tanca Street, Suite 301, San Juan, Puerto Rico 00901 and all parties in interest.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on June 12th, 2020.

/s/ RAFAEL GONZÁLEZ VALIENTE
USDC-PR 225209
Email: rgv@g-glawpr.com

**Godreau & González, LLC.**
PO Box 9024176
San Juan, PR 00902-4176
Tel. (787) 726-0077

---

[26] "To give or confer (something) with or without compensation." *Grant*, *Black's Law Dictionary* (10th ed. 2014)