## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br>ORGANIC POWER, LLC.,<br>DEBTOR.<br>_____ | Bankr. Case No.: 19-01789(EAG)<br><br>Chapter 11 |
| ORGANIC POWER, LLC.<br>Plaintiff<br><br>v.<br><br>The U.S. Small Business Administration  and Jovita Corranza, solely as the Administrator of the U.S. Small Business Administration,<br><br>Defendants | Adv. Proceeding. No. 20-00055 (EAG) |

## BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY AND FINAL INJUNCTION

## MEMORANDUM OF LAW

**COMES NOW, ORGANIC POWER, LLC., and** through its undersigned counsel, most respectfully requests the Court to take note of the following:

On a Status Conference hearing held on May 19th, 2020 and on its Minutes of Proceedings issued on May 20th, this Honorable Court ordered the parties to submit simultaneous briefs in support of the pre-trial conference scheduled for June 19th, 2020.

## BRIEF PROCEDURAL HISTORY

1. On April 27th, 2020, Organic Power filed an Adversary Proceeding against the Small Business Administration and Jovita Carranza as its administrator (herein after "SBA"). *Dkt.* 1.

    1. On that same date OP filed an Application for a Temporary Restraining Order. *Dkt.4.*

    2. On May 4th, 2020, the SBA filed an Opposition to TRO. *Dkt.19.*

    3. On May 5th, 2020, Plaintiff filed a Reply to Defendant's Opposition to Plaintiffs Application for TRO. *Dkt.22.*

    4. On May 6th, 2020, a Status Conference was held. *Dkt.27.*

    5. On May 8th, 2020, an Order granting the TRO was entered. *Dkt.29.*

    6. On May 19th, 2020, a Status Conference was held. *Dkt.37.*

    7. On May 20th, 2020, the Minute of Proceeding stated that the parties requested that the preliminary injunction be consolidated with trial on the merits. *Dkt.34.*

    8. On the same Minute it was stated that trial is scheduled for June 22, 2020 at 10 a.m. *Dkt.34.*

    9. Also, a schedule was established to govern pre-trial preparation. The same is as follows:

- June 9th, 2020 – End of Discovery;

- June 12th, 2020 – Due date to exchange exhibits;

- June 15th, 2020 – Due date for simultaneous briefs;

- June 18th, 2020 – Due date for Reply briefs and Pre-Trial Report before 2 p.m.;

- June 19th, 2020 – Due date for any Unsworn Declarations and Pre-Trial hearing at 1:30 p.m.; and

- June 22nd, 2020 – Trial at 10:00 a.m.

10.     On the abovementioned Status Conference, Docket 37, the temporary restraining order was extended until June 23, 2020.

11.     On May 21st, 2020, OP filed the required Motion Informing the Opening of DIP Account. *Dkt.38*.

12.     On that same day, OP also filed its required Motion to inform *20 Largest Unsecured Creditors, All Secured Creditors and US Trustee of PPP "loan" Approval and Request for Disbursement[1]. Dkt.39.*

13.     On June 8th, 2020, Defendants file a Motion to Dismiss the Adversary Proceeding. *Dkt.44.* The Court Ordered Plaintiff to file its opposition to the Motion to Dismiss on or before June 16, 2020.  Dkt. 45.

14.     OP, in compliance with this Court's Order, submitted its opposition to SBAs' dismissal on June 12th, 2020.

15.     Organic Power herein submits its brief in support of its claim for pre-trial preparations.

---

[1] This same motion was filed on the lead bankruptcy case, 19-01789.

## **INTRODUCTION**

Organic Power, LLC.[2] ("Organic Power", the "Plaintiff"), like many other businesses, has been financially affected by the COVID-19 pandemic in ways that could not have been foreseen. The Government of Puerto Rico's "stay at home" directive that requires 100 percent of the territory's non-essential workforce to stay home and prohibits gatherings of any kind has further exacerbated this crisis for the Plaintiff. Puerto Rico's stay-at-home Order further requires that only essential government services and commercial gas, health, and food businesses are allowed to open and or attend their respective offices. Only those citizens who are attending those listed services may leave their residences. On March 26th, 2020, the governor of Puerto Rico extended the quarantine/stay at home order until May 6th, 2020. Because all non-essential businesses have been ordered to close, Plaintiff is experiencing a significant decrease in revenue and anticipates that for as long as the stay at home order remains in effect. Plaintiff relies on, as its primary source of income, its daily basis of operations.  As a result, it will struggle to continue making payroll payments.

Plaintiff is clearly among those businesses upon whom Congress intended, when it passed the CARES Act (defined below), to confer a benefit through the Paycheck Protection Program (the "PPP") (as discussed more fully below). However, the form of PPP application promulgated by the United States Small Business Administration ("SBA"), the federal agency charged with overseeing and administering the program, purports to disqualify bankruptcy debtors from participating in the PPP. By disqualifying bankruptcy debtors from the PPP, the SBA has exceeded its authority and has violated the anti-discrimination provision of Section

---

[2] Debtor currently operates a business of manufacturing of animal feed, recycling of organic waste and generating electricity with propane gas

525 of the Bankruptcy Code.

Plaintiff submits this brief in support of their complaint seeking a permanent injunction to enjoin the SBA from denying the Plaintiff a loan under the PPP based on the Plaintiff's status as chapter 11 debtor and compels the SBA to remove from all PPP applications its disqualification of bankruptcy debtors as viable applicants under 28 U.S.C. § 1361.

As set forth further below, these is no basis in law, either statutory or regulatory, to disqualify a bankruptcy debtor from a PPP and the SBA violated the Administrative Procedure Act in its application of such disqualifying criteria. Additionally, prohibiting the Plaintiffs from obtaining a PPP loan is discriminatory in violation of section 525 of the Bankruptcy Code.

## **STATEMENT OF FACTS**

### **A.  Organic Power Bankruptcy**

On April 1st, 2019 (the "Petition Date"), Plaintiff filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States District Court for the District of Puerto Rico, commencing the case captioned *In re Organic Power, LLC,* Case No. 19-01789 (the "Chapter 11 Case"). Since the Petition Date, the Plaintiff has been operating as a Debtor-in-Possession[3] pursuant to sections 1107 and 1108 of the Bankruptcy Code.

### **B.  Paycheck Protection Program**

On March 27, 2020 the President of the United States signed into law the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). CARES Act, S. 3548, 116th Cong. (2020). The CARES Act is intended to, among other things, provide stimulus to the economy by distributing approximately $2.3 trillion to various industries, programs, and individuals.

The PPP is set forth in Title I of the CARES Act, and provides, among other things, up to

---

[3] Debtor currently operates a business of manufacturing of animal feed, recycling of organic waste and generating electricity with propane gas.

$349 billion in forgivable loans to businesses that are affected by COVID-19. The PPP is a temporary, short-term program,[4] and amends Section 7(a) of the Small Business Act (15 U.S.C. 636(a)), the regulatory scheme through which the SBA guarantees covered loans. The CARES Act further grants the SBA emergency rule making authority and charges them to issue regulations to carry out certain of the programs contemplated in the CARES Act, including the PPP. *See* CARES Act, section 1114.

On April 2, 2020, the SBA issued an interim final rule (the "<u>First Interim Rule</u>") providing guidance on, among other things, the eligibility requirements for loans under the PPP. The First Interim Rule adopts the ineligibility standards set forth in section 120.110 title 13 the Code of Federal Regulations ("<u>CFR 120.110</u>"), as further described in SBA's Standard Operating Procedure 50-10, Subpart B, Chapter 2 ("<u>SOP 50-10</u>").[5]  *See* First Interim Rule, ¶ 2(c) ("Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and further described further in SBA's Standard Operating Procedure").

The SOP 50-10 provides that a "Small Business Applicant" must, among other things:

  i.    Be an operating business;
  ii.   Be organized for profit;[6]
  iii.  Be located in the united states;
  iv.   Be small (as defined by the SBA); and
  v.    Demonstrate the need for the desired credit.

See SOP 50-10, pg. 85. The SOP 50-10 also provides that the businesses listed in CFR 120.110 are not eligible for an SBA loan. *Bankruptcy debtors are not the listed as an ineligible business in CFR 120.110.*

Notwithstanding the foregoing, on April 2, 2020, the SBA issued Official SBA Form

---

[4] The PPP covers loans that are issued between February 15, 2020 until June 30, 2020.
[5] Available at https://www.sba.gov/sites/default/files/files/serv_sops_50105b_0_5.pdf.
[6] The CARES Act and the First Interim Rule expressly provide that profit and non-profit organizations shall be eligible for the PPP.

2483 ("PPP Application"),[7]  that disqualified bankruptcy debtors from participation in the PPP.

 Furthermore, Official SBA Form 2484, which is the Lender Application Form – Paycheck Protection Program Loan Guaranty ("PPP Lender Application"), states that the PPP loan cannot be approved unless the applicant certifies that neither the applicant nor any owner is presently involved in any bankruptcy.  (See Complaint, Exhibit B).

On April 4, 2020, the SBA issued a supplemental interim final rule ("the Second Interim Rule") further providing guidance on the PPP.  The Second Interim Rule is void of any provision that renders bankruptcy debtor's ineligible for the PPP.

On April 24th, 2020, and after several; entities had filed complaints against it and concurrent with Congress' extension of additional PPP funding, the SBA posted a new interim final rule, subsequently published in the Federal Register on April 28th, 2020, entitled "Business Loan Program Temporary Changes; Paycheck Protection Program – Requirements – Promissory Notes, Authorizations, Affiliation, and Eligibility" (Fourth Interim Final Rule) 85 Fed. Reg. 23, 450.

After several motions and status conferences, on May 20th, 2020, the Court, in their Minutes of Proceedings, established a schedule for pre-trial preparations.  The Court, after Plaintiffs Motion for Extension of Time, established that by June 16th, 2020 both parties should present their briefs.

The SBA does have emergency rule making authority under section 1114 of the CARES Act, nevertheless, this authority is limited to the development of regulations that carry out the provisions of the CARES Act, and it is clear that Congress did not intend for bankruptcy debtors

---

[7] See, the of the PPP Application is attached, dated April 26, 2020.

to be excluded from participation in the PPP, ***otherwise they would have expressly included such a prohibition in the PPP, as it did in section 4003 of the CARES Act***.[8]

Here, the SBA acted outside the scope of its statutory and regulatory authority when it issued the PPP Application which purports to disqualify bankruptcy debtors from participation in the PPP.

Debtor submitted a PPP Loan request to Banco Popular de Puerto Rico and Oriental Bank; both banks denied the application because Plaintiff is currently in bankruptcy and the SBA Loan Application specifically excludes bankruptcy debtors.[9]

The SBA's regulations and published guidance do not authorize the disqualification of bankruptcy debtors from the PPP. Further, while the SBA does have emergency rule making authority under section 1114 of the CARES Act, this authority is limited to the development of regulations that carry out the provisions of the CARES Act, and it is clear that Congress did not intend for bankruptcy debtors to be excluded from participation in the PPP, otherwise they would have expressly included such a prohibition in the PPP, as it did in section 4003 of the CARES Act. [10] As such, Debtor respectfully requests that the Court: (i) declare that the SBA's implementation of the PPP in a manner that causes debtors in bankruptcy, including the Plaintiffs, to be ineligible for the PPP loan exceeds SBA's authority, is arbitrary and capricious and violates the anti-discrimination provisions of section 525 of the Bankruptcy Code; (ii) enjoin the SBA from

---

[8] The only disqualifying criteria in the CARES Act that affects bankruptcy debtors appears in section 4003 of title IV, entitled "Economic Stabilization and Assistance to Severely Distressed Sectors of The United States Economy." Section 4003 governs loans that are not reserved to small businesses, is regulated by the United States Department of Treasury not the SBA and does not apply to the PPP.

[9] See Miguel Perez Declaration.

[10] The only disqualifying criteria in the CARES Act that affects bankruptcy debtors appears in section 4003 of title IV, entitled "Economic Stabilization and Assistance to Severely Distressed Sectors of The United States Economy." Section 4003 governs loans that are not reserved to small businesses, is regulated by the United States Department of Treasury not the SBA and does not apply to the PPP.

denying the Plaintiff loans under the PPP based on the their status as a chapter 11 debtor; and (iii) compel the SBA to remove from all PPP applications its disqualification of bankruptcy debtor as viable applicants under 28 U.S.C. § 1361.[11]

## <u>ARGUMENT</u>

### I.     The SBA's Implementation of the PPP Violates the Administrative Procedure Act.

Under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (the "APA"), courts must "hold unlawful and set aside agency action, findings, and conclusions" that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). Further, the APA provides that courts must "hold unlawful and set aside" agency action that is "arbitrary, capricious, [or] an abuse of discretion."  5 U.S.C. § 706(2)(A).

A court's analysis of APA section 706(2)(C) "naturally begins with a delineation of the scope of the [agency's] authority and discretion" and then requires the court to determine whether the agency's action was made within that scope of authority. <u>*Citizens to Pres. Overton Park, Inc. v. Volpe*</u>, 401 U.S. 402, 416, (1971).

As set forth above, <u>*nothing*</u> in the CARES Act, SBA Regulations, SOP 50-10, the First Interim Rule or the Second Interim Rule authorizes or permits the SBA to exclude debtors in bankruptcy from the PPP. It is well established that "an administrative agency must adhere to its own regulations." <u>*Singh v. U.S. Dep't of Justice*</u>, 461 F.3d 290, 296 (2d Cir. 2006)(setting aside an agency action where "[t]he [agency's] decision, and the government's defense of it, **expose a clear conflict between the relevant statute and the agency's corresponding regulation**, which, to date, as far as we have found, [has] not been acknowledged let alone reconciled.")[Emphasis ours] Accordingly, SBA's implementation of the PPP in a manner that

---

[11] As will be discussed in more detail herein, two Bankruptcy Courts have already provided the same relief requested herein to other debtors.

causes debtors in bankruptcy, including the Plaintiffs, to be ineligible is therefore "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of APA section 706(2)(C).

Similarly, SBA's implementation of the PPP in a manner that causes debtors in bankruptcy to be ineligible is "arbitrary, capricious, [or] an abuse of discretion" in violation of § 706(2)(A) of the APA. On this matter, the Bankruptcy Court in *In re: Gateway Radiology*[12] concluded that the SBA's Administrator "relied on factors Congress had not intended her to consider and failed to consider important aspects of the problem…". When analyzing whether an agency's action was arbitrary or capricious, courts must determine whether "the agency has complied with the APA; specifically, whether . . . it has acted consistently with its own procedures; and whether its applications of its governing law have been reasonable." *Troy Corp. v. Browner*, 326 U.S. App. D.C. 249, 120 F.3d 277, 281 (D.C. Cir. 1997).

Defendants argue that if the SBA's determination or regulation can be supported by any rational view of the record it must be upheld by the courts. There is no rational explanation for excluding debtors in bankruptcy from being able to apply for PPP funds. At least not in the way they addressed it in their Final Rule and the declaration submitted in their Motion to Dismiss. *See* 44-19, Declaration of John A. Miller.

The SBA issued the First Interim Rule, which provides guidance on, among other things, the eligibility requirements to receive a loan under the PPP. The First Interim Rule adopts the ineligibility standards set forth in CFR 120.110, as further described in SOP 50-10. SOP 50-10 provides that a "Small Business Applicant" must, among other things: be an operating business; be located in the United States; be small (as defined by the SBA); and demonstrate the need for

---

[12] Memorandum Opinion, *In re: Gateway Radiology Consultants, P.A.*, Case No. 19-04971, *Gateway Radiology Consultants P.A. v. Jovita Carranza*, Dkt. 14, Adv. Proc. 20-00330 (June 8, 2020).

the desired credit. *See* SOP 50-10, pg. 85. SOP 50-10 also provides that the businesses listed in CFR 120.110 are not eligible for an SBA loan. Bankruptcy debtors are not the listed as an ineligible business in CFR 120.110.

Notwithstanding the foregoing, the SBA issued the PPP Application that purports to disqualify bankruptcy debtors from participation in the PPP. *See* Exhibit A to the Complaint - PPP Borrower Application. Further, the SBA issued the PPP Lender Application, which states that the PPP loan cannot be approved unless the applicant certifies that neither the applicant nor any owner is presently involved in any bankruptcy. *See* Exhibit B to the Complaint - PPP Lender Application.

The SBA then issued the Second Interim Rule, which further provides guidance on the PPP. The Second Interim Rule does not provide that bankruptcy debtors are ineligible for the PPP loan. Therefore, Defendants implemented the PPP in a manner that unlawfully excludes debtors in bankruptcy.

Of course, a court cannot substitute its judgment for that of the agency, however, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made,'" and judicial review is appropriate where an agency fails to meet this standard. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).  Further, an agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See id*. Further, while a federal agency's

interpretation of its own regulation is entitled to deference, that deference is misplaced if the agency's action 'is plainly erroneous or inconsistent with the regulation.'" _Bergamo v. Commodity Futures Trading Comm'n_, 192 F.3d 78, 79-80 (2d Cir. 1999) (quoting _Bowles v. Seminole Rock & Sand Co._, 325 U.S. 410, 414 (1945)).

As stated by the Honorable Bankruptcy Judge David Jones, the PPP "_isn't a loan program_", it "a support program." See, attached transcript of hearing before Judge David Jones, p. 29 lines 6-7 – Exhibit A. As such, the SBA did not act consistently with the CARES Act, its own eligibility requirements set forth in CFR 120.110, the First Interim Rule, the Second Interim Rule, and SOP 50-10, or with any of its prior guidance on SBA loans generally, when it issued the PPP Application and PPP Lender Application disqualifying bankruptcy debtors.[13] [14] The SBA's justification for the bankruptcy debtor disqualification in the PP Application and PPP Lender Application is based on capricious arguments and which were publicly stated on April 28th, 2020, and only supported by a declaration that has no legal merits on its arguments.

Plaintiff's business is the type of businesses that Congress intended, when it passed the CARES Act, that would benefit from the PPP and there is no indication that Congress intended to exclude bankruptcy debtors from participation in the PPP.[15] Therefore, there is no legal or factual basis that justifies the disqualification of bankruptcy debtors from the PPP, and as a result, the SBA determination to include debtor disqualifying criteria in the PPP Application

---

[13] See Attached Transcript of hearing before Judge David Jones, p. 29 lines 12-19, Exhibit A. ("To suggest that this is a program that enjoys underwriting and scrutiny in terms of who receives the money is to ignore the obvious… [it] is not a traditional loan program. There is no collateral valuation, there is no credit worthiness test.")

[14] All of the guidance issued by the SBA is binding even though they are not formal rules. _South Dakota v. Ubbelohde_, 330 F.3d 1014, 1028 (8th Cir. 2003). "Agency statements can be binding upon the agency absent notice-and-comment rulemaking in certain circumstances. Where a policy statement purports to create substantive requirements, it can be a legislative rule regardless of the agency's characterization."

[15] See Attached Transcript of hearing before Judge David Jones, p. 29 lines 14-20, Exhibit A. ("[T]his can't be what congress intended. This can't be the way that we are supposed to treat our fellow man in this time. It's inconceivable to me that this distinction could be drawn. The people that need the most help and who have sought protection under our laws are the people who are the targets of discrimination in a government support program; can't possibly be.")

and the PPP Lender Application was arbitrary and capricious in violation of §706(2)(A) of the APA.

Nothing in the CARES Act, SBA Regulations, SOP 50-10, the First Interim Rule or the Second Interim Rule authorizes or permits the SBA to exclude debtors in bankruptcy from the PPP. Defendants' developed the Final Rule after a series of cases were already at court to try and explain why debtors were excluded. The SBA's implementation of the PPP has been in a manner that causes debtors in bankruptcy, including Plaintiff, to be ineligible is therefore "arbitrary, capricious, [or] an abuse of discretion" in violation of the APA. 5 U.S.C. § 706(2)(A).

## II.     The PPP Applications Discriminate Against the Plaintiff as Bankruptcy Debtor and Violate Section 525 of the Bankruptcy Code.

Section 525(a) of the Bankruptcy Code provides in its relevant part that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to . . . a person that is or has been a debtor under this title." 11 U.S.C. § 525(a). This list is illustrative rather than exhaustive. *See, e.g.*, *Envtl. Source Corp. v. Mass. Div. of Occupational Safety (In re Envtl. Source Corp.)*, 431 B.R. 315, 322 (Bankr. D. Mass. 2010).

The SBA is a governmental unit under the Bankruptcy Code and is not entitled to sovereign immunity. *See* 11 U.S.C. § 101(27); *see also* 11 U.S.C. § 106. Section 106 is a general waiver of sovereign immunity as to "a governmental unit to the extent set forth in this section with respect to [section]. . . 525". *See id.* Further, section 106(a)(2) provides that the "court may hear and determine any issue arising with respect to the application of such sections to governmental units."

The legislative history of section 525(a) provides that the congressional intent was to "prohibit actions by governmental or quasi-governmental organizations . . . or by other

organizations that can seriously affect the debtors' livelihood or fresh start." *See* S.REP. No.

989, 95th Cong., 2d Sess. 81 (1978), reprinted in 1978 U.S. CODE CONG. & ADMIN. NEWS

5787, 5867; H.R.Rep. No.595, 95th Cong., 1st Sess. 366-267 (1977); reprinted in 1978 U.S.

CODE CONG. & ADMIN. NEWS 5963, 6322-6323.  The legislative history further provides

that section 525:

> Codifies the result of *Perez v. Campbell*… which held that a
> state would frustrate the Congressional policy of a fresh start for
> a debtor if it were permitted to refuse to renew a driver's license
> because a tort judgment resulting from an automobile accident
> had been unpaid as a result of a discharge in bankruptcy. The
> Section is not exhaustive. The enumeration of various forms of
> discrimination against former bankrupts is not intended to
> permit other forms of discrimination. The courts have been
> developing the *Perez* rule.

*See id*.

Many of the cases involving section 525(a) relate to revocation of licenses and employment

discrimination against individual debtors, but courts within the Second Circuit have interpreted the

"or similar grant" language broadly to include government loan related assistance. *See, e.g.*, *In re

Rose*, 23 B.R. 662 (Bankr. D. Conn. 1982). In *Rose*, the Bankruptcy Court for the District of

Connecticut held that a state mortgage financing program could not deny a mortgage to a former

debtor. *In re Rose*, at 666-67. The Court reasoned that "[i]f a state has chosen to enact a program

of home financing for its citizens, § 525 prohibits that state from exempting debtors or bankrupts

from those benefits solely because of bankruptcy and without taking into account present financial

capability.  To hold to the contrary would frustrate the Congressional policy of granting the debtor

a fresh start by denying him a means open to other citizens of acquiring a home." *See id*.

Similarly, the Eastern District of New York Bankruptcy Court expanded on the *Perez*

doctrine by holding that while section 525 "does not on its face embrace the refusal of money,

credit or financing," it is not exhaustive, and "it was the legislative intent that the courts should continue to invalidate all discrimination of the character condemned in *Perez v. Campbell*". *In re Mart i.l.v.e.s. Goldrich*, 45 B.R. 514, 520 (Bankr. E.D.N.Y. 1984); *see also Perez v. Campbell*, 402 U.S. 637, 91 S. Ct. 1704, 29 L. Ed. 2d 233 (1971). The *In re Mart* court ultimately held that "New York cannot refuse to guarantee a student loan to [a debtor] because an earlier loan was not paid but was discharged in bankruptcy," Reasoning that the section 525 is violated if the governmental discrimination interferes with congressional policy of giving a debtor a fresh start. *See In re Mart i.l.v.e.s. Goldrich*, at 522-23 (holding that "that New York cannot refuse to guarantee a student loan to Goldrich because an earlier loan was not paid but was discharged in bankruptcy. . . Section 661.6(b) of New York's Education Law frustrates the Congressional policy of granting Goldrich a fresh start by denying him the means available to other citizens who have acquired a higher education. Therefore, under the authority of the Perez case, Section 661.6(b) is unconstitutional and the defendants should be enjoined from denying Goldrich because of it the loans he requests").

The Second Circuit has also held that section 525(a) prohibits the eviction of a debtor from public housing, even though the debtor failed to pay pre-petition rent, an obligation that was discharged in the bankruptcy case. *Stoltz v. Brattleboro Hous. Auth. (in Re Stoltz)*, 315 F.3d 80, 89 (2d Cir. 2002). The *Brattleboro Housing Authority* argued that a public housing lease was not an "other similar grant" contemplated under section 525 and that while the denial of the debtor's reapplication for a future lease was prohibited, that section 525 did not prohibit the eviction of the debtor for failure to pay prepetition rent. *See id*. The court disagreed reasoning "[t]he common qualities of the property interests protected under section 525(a), i.e., 'licenses, permits, charters, franchises, and other similar grants,' *are that these property interests are*

*unobtainable from the private sector and essential to a debtor's fresh start.*" *See id.* (emphasis
added).

The Plaintiff is not being denied access to the PPP because of its creditworthiness. In
fact, the PPP was enacted to provide relief to struggling small businesses *without regard to their
creditworthiness.*[16] Further, the plaintiff is otherwise eligible for a PPP loan but for its status as
debtor, and as such, its "fresh start" is being interfered with by the SBA's implementation of the
PPP program, and in particular, the PPP Application. Debtor is facing similar financial distress
as the other non-debtor entities in light of both COVID-19 and the Puerto Rico "stay at home"
directive. Those non-debtor organizations are eligible to participate in the PPP while the Plaintiff
is not solely because of their status as bankruptcy debtor. This is exactly the type of
discrimination that Section 525 intends to prohibit.[17]

The PPP is an unprecedented program designed to provide relief to small businesses
affected by COVID-19. The Plaintiff cannot obtain loans on similar terms from a private
institution because the main factor driving a bank's willingness to issue loans under the PPP is
the SBA's guarantee of such loan. The Plaintiff cannot have its "fresh start" if it is forced to lay
off and furlough employees many of whom are crucial to its business as a going concern. As
such, the Plaintiff respectfully submits that the SBA's implementation of the PPP is
discriminatory in violation of Section 525 of the Bankruptcy Code.

The SBA claims that the PPP should be considered a loan, but that goes against the essence
of what Congress intended in the CARES Act and what the PPP really is. "*It is necessary to point*

---

[16] See Attached Transcript of hearing before Judge David Jones, p. 29 lines 12-19, Exhibit A. ("To suggest that this
is a program that enjoys underwriting and scrutiny in terms of who receives the money is to ignore the obvious… [it]
is not a traditional loan program. There is no collateral valuation, there is no credit worthiness test.")
[17] See Attached Transcript of hearing before Judge David Jones, p. 30 lines 13-14, Exhibit A. ("I do think the
requirements of Section 525(a) are absolutely in play.")

out that the name does not make the thing... Rules should be interpreted beyond its label." *In re Cruz Aponte*, 159 D.P.R. 170, 187 no. 7 (2003).

According to Black's Law Dictionary a loan is defined as "to lend, esp. money"[18], however, it comes with multiple specific requirements, as established in Section 7(a) of the Small Business Act, 15 U.S.C. sec.631 *et seq*., amongst which repayment is one of the main characteristics.

The main difference between a grant and a loan is that the later requires you to repay the money you borrow, whereas the grant does not. Grants are non-repayable, *UNLESS the entity receiving the grant uses the funds for purposes other than those stipulated in the grant*.

A quick look at the requirements established by the SBA for the PPP "loan" application and repayment clearly establishes that the funds are meant to be a grant to help small businesses during this worldwide coronavirus (COVID-19) pandemic.

In support of their position, the SBA has alluded to fifteen[19] (15) cases similar to the one at hand in which the Temporary Restraining Order or Preliminary Injunction was denied. We would first like to point out that out of the 15 cases attached to the Motion to Dismiss, two (2) do not support SBA's position.  In *In re: Hartshorne Mining*, the court does not examine the validity of the Sec. 525 claim, but denied the TRO simply because Debtor could not meet the "irreparable harm" requirement.  Order, *In re: Hartshorne Holdings, LLC, et al.* Case No. 20-40133, *Hartshorne Mining, LLC., et al. v. Jovita Carranza*, Dkt. 35, Adv. Proc. 20-04012 (Bankr. W.D. Ky. June 1, 2020). In the case of *In re: iThrive Health, LLC*, the Court granted the Motion to Dismiss simply because it was unopposed. Memorandum of Decision, *In re: iThrive Health, LLC*, Case No. 19-25413, *iThrive Health, LLC v. Jovita Carranza*, Dkt. 24, Adv. Pro.

---

[18] Black's Law Dictionary, Deluxe Tenth Edition, Editor Brian A. Garner, 2009
[19] Although there are 17 exhibits to the Motion to Dismiss containing purported cases supporting the SBA's position, two of the cases are repeated.

20-00151 (Bankr. D. Md. June 8, 2020).  Thus, these cases do not support the SBA's position and were misquoted.

As previously discussed, there are multiple cases that support our contention that section 525 applies to the PPP.  We hereby include a list of the same.[20]

As expressed by this Court in the Order Granting the Temporary Restraining Order, the PPP "*loan is more akin to a grant than a loan*."[21]  Nothing has changed in that regard.  Thus Section 525 applies to the case at hand and the SBA unlawfully disqualified the Debtor from receiving the loan.

### III.    This Court should Enjoin the SBA from Disqualifying the Plaintiff as an Eligible Applicant Under the PPP.

The plaintiff "seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay, Inc. v. MercExchange, LLC.*, 547 U.S. 388, 391 (2006). A plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available ay law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in

---

[20] *In re: Hidalgo County Emergency*, Case No. 19-20497, *Hidalgo County Emergency v. Jovita Carranza*, Adv. Pro. 20-2006 (Bankr. S.D. Tx. 2020); *In re: Gateway Radiology Consultants, P.A., Case No. 19-04971, Gateway Radiology Consultants P.A. v. Jovita Carranza, Dkt. 14, Adv. Proc. 20-00330 (Bankr. M.D. Fl, June 8, 2020)*; *In re: Roman Catholic Church of Archdiocese of Santa Fe*, Case No. 18-13027, *Roman Catholic Church of the Archdiocese of Santa Fe*, Dkt. 15, Adv. Pro. 20-01026 (Bankr. D. NM, May 1, 2020); *In re: Springfield Hospital, Inc.*, Case No. 19-10283, *Springfield Hospital, Inc. v. Jovita Carranza*, Dkt. 19, Adv. Pro. 20-01003 (Bankr. D. Vt. May 4, 2020); *In re: Springfield Medical Care Systems, Inc.*, Case No. 19-10285, *Springfield Medical Care Systems, Inc. v. Jovita Carranza*, Dkt. 18, Adv. Pro. 20-01004 (Bankr. D. Vt., May 7, 2020); *Pharaohs GC, Inc.v. Jovita Carranza, et als.*, Dkt. 9, Case No. 20-00665, (June 8, 2020); *Camelot Banquet Rooms, Inc., et als. v. Jovita Carranza, et als.*, Case No. 20-C-0601, *J.R. Schuster, LLC. v. Jovita Carranza, et als.*, Dkt. 28, Adv. Pro. 20-C-634 (E.D. WI., May 1, 2020).

[21] "But this court agrees with the bankruptcy court in New Mexico that the PPP is not a loan program, rather a grant or support program offered by the government to small businesses in financial distress without regard to creditworthiness. See, Archdiocese of Santa Fe, slip op. at 11. Under section 1106 of the CARES Act, if 75% or more of PPP money is used for payroll and the rest for mortgage interest, rent, and utilities, none of it must be repaid. See First Interim Final Rule § 2(o). As Organic Power has committed to using 100% of any PPP money received for payroll, the "loan" will be forgivable and is best characterized as an "other similar grant" under section 525(a) of the Bankruptcy Code for the reasons stated in the Archdiocese of Santa Fe opinion and in open court. And, we note that the has imposed restrictions in this Order to enforce Organic Power's commitment."  Dkt. 29 at p. 3.

equity is warranted; and (4) that the public interest is not disserved by a permanent injunction."
*Id.* Whether to grant an injunction is "an act of equitable discretion by the district court". *Id.* In
the matters at hand, all four factors weigh heavily in favor of granting the Plaintiff the injunctive
relief requested.

### a. Plaintiff Will Suffer Irreparable Harm if the SBA is Permitted to Disqualify Plaintiff from the PPP

It is axiomatic that an injunction is intended to protect movants from irreparable injury
while the underlying action is pending, and as a result, "the linchpin of [injunctive] relief is that
threatened irreparable harm will be prevented by that injunction." *Buckingham Corp. v. Karp*,
762 F.2d 257, 262 (2d Cir. 1985); *see also Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975).

Here, a permanent injunction is warranted to prevent irreparable harm to the Plaintiff, its
bankruptcy estate and case administration efforts. The PPP offers applicants guaranteed loans
that are not otherwise obtainable in the private marketplace. Further, the PPP authorizes the SBA
to guarantee up to $349 billion in PPP loans on a first come, first served basis. Those funds were
exhausted, but Congress has authorized additional funding.  Bankruptcy Debtors were denied
participation in the first round due to the SBA's improper discrimination.  Once the additional
funding for PPP loans are issued, the PPP will no longer be available unless Congress enacts
further relief. The Plaintiff is being prohibited from participating in the PPP solely because of
its status as debtor, which is not supported by the law, and without an injunction preventing the
SBA from disqualifying the Plaintiff from the PPP based on its status as a debtor, the plaintiff
will be foreclosed from PPP participation completely.

### b. Remedies Available are Inadequate to Compensate for that Injury

Although the Plaintiff is seeking a monetary benefit from the SBA, it is not asserting a
claim where monetary relief is available. The PPP has a finite amount of funding available to it

and the overwhelming demand for PPP loans will deplete that funding in a matter of days. Accordingly, the Plaintiff will not be able to obtain the extraordinary benefits under the PPP once those funds are depleted. The PPP is analogous to an entity on the brink of insolvency. It is well settled that a finding of irreparable harm may lie in connection with an action for money damages where the claim involves an obligation owed by an insolvent or a party on the brink of insolvency. *See Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249-50 (2d Cir. 1999). The Second Circuit has explained that the exception to the general rule is rooted in the fact that insolvency may render otherwise compensable harm irreparable because "there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag*, 175 F.3d at 249-50. Here, unless the SBA is enjoined from enforcing the debtor disqualifying criteria, upon final resolution of this case, the Plaintiff will have lost the opportunity to participate in the PPP.

It is uncontested that if the PPP funds are not granted to the Debtor it will likely have to close its operation. This by itself is cause to grant the remedy. But in addition, the Court must consider the fact that Debtor operates a facility that houses a massive tank of organic waste and natural gas. If Debtor is forced to close operations there is no safe way to dispose of the gas and the organic waste on a short period of time. If Debtor cannot continue to operate and maintain the operation, it could lead to an environmental incident.

There are no other remedies that will "repair" the harm that OP will suffer if the remedy is not granted and this is the only remedy available in equity.

Therefore, the Plaintiff has met its burden of showing that it will suffer imminent irreparable harm in the absence of an injunction, and as a result, this factor weighs in favor of granting injunctive relief.

### c. Balance of Harms Weighs Heavily in Favor of Issuing an Injunction

Next, the Court should evaluate whether the balance of harm weighs in favor of the Plaintiff. While the Plaintiff can point to definite, quantifiable, harm that it will suffer and that will occur to its bankruptcy estate and case administration efforts absent a PPP loan, it is difficult perceive what harm, if any, the SBA would suffer if the Court were to grant the requested relief.

As discussed above, the bankruptcy debtor prohibition in the PPP Application is not based on the applicant's creditworthiness. In fact, the SBA is charged under the CARES Act to guarantee the loans to businesses that are navigating the same COVID-19 related issues as the Plaintiff. There would no cognizable impact on the SBA if they were to guarantee loans to otherwise PPP eligible bankruptcy debtors.

This is especially true given the fact that the funds have yet to be used completely in spite of the fact that the term granted by Congress to disburse the PPP is about to expire.

Therefore, the balance of harms weighs heavily in favor of granting an injunction, and as a result, this factor weighs in favor of the Plaintiff.

### d. Granting the Requested Injunction is in the Public Interest

The public interest weighs in favor of issuing a permanent injunction. The public will not be injured by the entry of an injunction in this case as the SBA is charged under the CARES Act to administer the PPP to the benefit of small businesses that are eligible. There will be no cognizable impact on the SBA, or to taxpayers, if the SBA were to guarantee loans to otherwise PPP eligible bankruptcy debtors, because the available pool of PPP funds will be gone within weeks regardless. Further, the Debtors in general will benefit from access to the PPP Funds. There is a strong public interest in preserving the Plaintiff's, and other debtors', ability to continue operating in this time of unprecedented pandemic and the retention of Plaintiff's

employees are essential to allow Plaintiff to continue with its business as a going concern.

In addition, the preservation jobs for Debtor's employees also benefits society as a whole.[22]

Additionally, courts have held that "timely resolution of the bankruptcy estate" is in the public interest. _In re W.R. Grace & Co_., 412 B.R. 657, 666 (D. Del. 2009); _see also_ _In re Am. Film Techs., Inc._, 175 B.R. 847, 849 (Bankr. D. Del. 1994) ("It is 'one of the paramount interests' of this court to assist the Debtor in its reorganization efforts."); _Rickel Home Centers, Inc. v. Baffa (In re Rickel Home Centers, Inc._), 199 B.R. 498, 501 (Bankr. D. Del. 1996) ("[T]here is a strong public interest in promoting a successful Chapter 11 reorganization."). The ability of the Plaintifs to maintain its employees to assist with the administration of their chapter 11 cases will certainly contribute to the timely resolution of the bankruptcy estate.

Moreover, Debtor's facility is for the processing and recycling of organic waste into natural gas for the use in electric power generation. The generation of environmentally sound energy and the recycling of waste are both government sponsored industries, thus it is in the public interest to support those types of industries.

Accordingly, there is a strong public interest in awarding a permanent injunction to prevent the SBA from denying PPP loans to the Plaintiff based on its status as a bankruptcy debtor. As a result, this factor weighs in favor of granting Plaintiff's motion.

## WITNESSES

The parties have conditionally agreed that the case may be presented via unsworn declarations. If necessary, Debtor/Plaintiff will present Mr. Miguel Perez as a witness in support

---

[22] See TRO granted in case _Hidalgo County Emergency Service Foundation v. Jovita Carranza_, Adv. Proceeding 20-02006, Docket No.17 (DRJ), attached as Exhibit E p. 3. ("The continued gainful employment of the Debtor's approximately 250 employees benefits the public interest as a whole.")

of its position.

Plaintiff reserves the right to call additional witnesses when the SBA is required to

answer the Complaint and to respond to the interrogatories delivered in good faith by the

Plaintiff.[23]

Plaintiff reserves the right to call rebuttal witnesses and/or call any witness listed by the

SBA to support its case in chief.

## EVIDENCE

Plaintiff attaches to this document, as Exhibit B, a list of the evidence it intends to use

during trial.

Plaintiff reserves the right to supplement this list of documents when the SBA is required

to produce the documents it failed to produce in its response to the request for production of

documents.[24]

Plaintiff reserves the right to call rebuttal evidence and/or call any evidence listed by the

SBA to support its case in chief.

## CONCLUSION

For the forgoing reasons, Plaintiff requests that the Court (i) declare that the PPP

Application, and its disqualification of bankruptcy debtors as eligible applicants is beyond its

statutory and regulatory authority, is arbitrary and capricious and violates section 525 of the

Bankruptcy Code; (ii) enjoin the SBA from denying the Plaintiff's loans under the PPP based

---

[23] Plaintiff delivered a discovery request upon the SBA.  As explained in more detail in the Motion to Compel Discovery filed by the plaintiff, the SBA has failed to answer a single interrogatory or request for admission or to produce a single document as part of discovery.

[24] Plaintiff delivered a discovery request upon the SBA.  As explained in more detail in the Motion to Compel Discovery filed by the plaintiff, the SBA has failed to answer a single interrogatory or request for admission or to produce a single document as part of discovery.

on the Plaintiff's status as a chapter 11 debtor; (iii) compel the SBA to remove from all PPP

applications its disqualification of bankruptcy debtors as viable applicants; and (iv) provide

such further relief as the Court may deem just and proper.

  Respectfully submitted.

       On this 16th day of June of 2020.

**GODREAU & GONZÁLEZ LAW, LLC.**
/s/<u>Rafael A. González Valiente</u>
1806 McLeary St.
San Juan, PR 00911
Telephone: (787) 726-0077
rgv@g-glawpr.com

*Attorney for the Plaintiff*