**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: <br> ORGANIC POWER, LLC., <br> DEBTOR. <br> _____ <br><br> **ORGANIC POWER, LLC.** <br> **Plaintiff** <br><br> v. <br><br> **The U.S. Small Business Administration and Jovita Corranza, solely as the Administrator of the U.S. Small Business Administration,** <br><br> **Defendants** | Bankr. Case No.: 19-01789(EAG) <br><br> Chapter 11 <br><br> Adv. Proceeding. No. 20-00055 (EAG) |

**Reply to Defendant's Brief**

**TO THE HONORABLE COURT:**

   **COME NOW,** Plaintiff Organic Power, LLC ("OP"), through the undersigned counsel, very respectfully avers and prays as follows:

   1.   The present Adversary Complaint was filed on April 27th, 2020. *Dkt.1*, Case 20-00055.

   2.   On April 27th, 2020, Plaintiff filed in support to the complaint an Application for Temporary Restraining Order *(Dkt.4)*, and an Urgent Motion for Hearing TRO *(Dkt.5)*.

   3.   In their brief, Defendants state that Plaintiff is not entitled to the relief asked for.

4. Defendant basically presents the same arguments that were presented in their Opposition to Plaintiff's Memorandum in Application for a TRO.

5. On Debtor's Brief all opposing arguments on Defendants Brief are already developed and supported, therefore here we will focus on elaborating the jurisdictional aspect of the claim.

6. But first we would like to emphasize on two things regarding PPP applications and requirements that are basic principles behind the applicability of section 525 of the Bankruptcy Code:

- SBA does not review PPP applications to determine whether the applicants are likely to liquidate or close or whether a particular applicant's participation would be of "sound value" prior to approval.

- Creditworthiness is not a relevant consideration when determining whether to advance PPP funds—a key fact as to why PPP funds are truly in the nature of a grant of economic aid rather than a loan.

7. The SBA argues that they are covered by sovereign immunity; that the Administrator is immune from Debtor's claims for preliminary injunctive relief.

8. The Administrator has argued that the Bankruptcy Court lacks authority to issue injunctive relief against her due to 15 U.S.C. § 634(b)(1). This is not so. Binding law authorizes

injunctive relief against the Administrator (and all those acting in concert with her) when she acts outside the scope of her authority, as she has under the APA and § 525. <u>Ulstein Mar., Ltd. v. U.S.</u>, 833 F.2d 1052, 1057 (1st Cir. 1987). In <u>Ulstein Marine</u>, the First Circuit provided a path to harmonize §§ 105, 106, and 525 of the Bankruptcy Code with § 634(b)(1) by giving precedence to the later-enacted, more specific statutes, here §§ 105 and 106, as the Bankruptcy Court ruled.

    9. The Administrator's perspective fails to account for binding case-law interpreting 15 U.S.C.sec.634(b) to permit certain forms of relief against the Small Business Administration ("SBA") that might be characterized as injunctive. In <u>Ulstein</u>, the First Circuit Court of Appeals affirmed an order invalidating a certificate issued by the SBA for failure to comply with applicable laws and regulations. In so doing, the Court indicated that the anti-injunction provision of 15 U.S.C. sec.634(b) "*protects the [SBA] from interference with its internal workings by judicial orders attaching agency funds, etc.,* ***but does not provide blanket immunity from every type of injunction***." [Emphasis added] <u>Ulstein</u>, 833 F.2d at 1057.[1]

    10. After examining the purpose of the statute, the Court suggested that the anti-injunction language "*should not be*

---

[1] <u>Ulstein</u> was cited favorably by the Bankruptcy Courts of Main and Vermont in their decisions to grant the TRO. See, Exhibits C & D.

*interpreted as a bar to judicial review of agency actions that exceed agency authority where the remedies would not interfere with internal agency operations." Id.*

11. Section 106(a) specifically waives immunity for claims under certain Bankruptcy Code provisions, including section 525.

12. The Court has the power to grant injunctive relief based on §§ 105, 106, and 525 of the Bankruptcy Code. Section 106(a) abrogates sovereign immunity in three important ways:

> (a) Section 106(a)(1) of the Bankruptcy Code abrogates sovereign immunity under §§ 105, 106, and 525 of the Bankruptcy Code.
>
> (b) Section 106(a)(2) authorizes the Court to "hear and determine any issue arising with respect to the application of such sections" in this matter.
>
> (c) With the sole exception of punitive damages, § 106(a)(3) authorizes the Court to issue any "order, process, or judgment" under §§ 105, 106, and 525 and the Federal Rules of Bankruptcy Procedure, including Rule 7065.

13. Section 525(a) prohibits discrimination against on the basis of a bankruptcy filing—and § 105(a) grants the Court the authority to "issue any order, process, or judgment . . . necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This includes authority to remedy a violation of § 525(a). Sovereign immunity has clearly been waived.

14. Section 525(a) of the Bankruptcy Code is clearly applicable to the case at hand since it has been stated in multiple opinions and orders that the PPP funds are in fact considered a

grant under section 525 of the Bankruptcy Code.

15. Congress enacted § 525 of the Bankruptcy Code with the passage of the Bankruptcy Reform Act of 1978. Pub. L. 95-598, 92 Stat. 2593 (Nov. 6, 1978). At the time, courts across the country were developing a body of case law aimed at limiting or prohibiting governmental discrimination against discharged bankruptcy debtors. This culminated with <u>Perez v. Campbell</u>, 402 U.S. 637 (1971), a case in which the Supreme Court held that a state would have frustrated the purpose of a fresh start if it were permitted to refuse to renew a driver's license due to an unpaid claim that was discharged in a bankruptcy case.

16. Following <u>Perez</u>, Congress added § 525 to the Bankruptcy Code to prevent the government from *ad hoc* discrimination against debtors in ways that conflict with the purpose and policy of the bankruptcy system in much the same way that federal law prohibits the government from discriminating against a person based on status as a member of a protected class. *See* 1 COLLIER PAMPHLET EDITION 2020, p. 525 (Richard Levin & Henry J. Sommer, eds., Matthew Bender); S. Rep. 95-989, 81, 1978 U.S.C.C.A.N. 5787, 5867. The language of § 525 was not intended to be "exhaustive" or used to "permit other forms of discrimination." *Id.* Instead, Congress intended that the courts would apply § 525 and define its contours over time. *Id.*

17. Today, those contours remain murky as courts struggle

to reconcile the text of § 525 within the amorphous concept of "bankruptcy policy."

18. This struggle is apparent from the analysis in the Bankruptcy Court's Order, which ultimately focused on form over function in concluding that PPP has the hallmarks of a loan program and is outside § 525's scope. Based on the language and intent of § 525(a), the Debtors object to this conclusion and all others relevant to the Court's determination that the Administrator's exclusion of debtors from PPP amounts to anything less than impermissible discrimination under the law.

19. It is important to note and emphasize that Congress did not define the terms "license, permit, charter, franchise, or other similar grant[.]" This was intentional to allow courts to exercise policy influence in application of the law. "'[T]he section is not exhaustive. The enumeration of various forms of discrimination . . . is not intended to permit other forms of discrimination' *and delegates to the judiciary* the responsibility 'to mark the contours of the anti-discrimination provision *in pursuit of sound bankruptcy policy*.'" Stoltz v. Brattleboro Housing Authority (In re Stoltz), 315 F.3d 80, 89 n.4 (2d Cir. 2002) (*quoting* H. Rep. No. 95-595, 366-67 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323)) (emphasis added).

20. Three things are clear from the meaning of these words. First, they are all permission to do something. Second, the

permissions granted overlap like a Venn diagram. Third, what makes them similar (as in "other *similar* grant") is that the permissions are given by the sovereign. Thus Congress has given courts a quiver of arrows that can be used to shoot overlapping targets to remedy unwarranted exclusion of debtors from government programs, like PPP.

21. Case law applying to 525 diverges in two paths. One path applies the section narrowly, limiting its application to the enumerated list and interpreting that list narrowly. The other path applies § 525(a) broadly to prohibit governmental behavior targeted at debtors and impacting reorganizations or fresh starts. This case law has, however, created a false dichotomy in light of (A) Congressional rebuke of a narrow application of § 525 and (B) subsequent Supreme Court precedent holding that an agency is not shielded from § 525 just because it may have a valid regulatory motive in addition to a discriminatory one. *F.C.C. v. NextWave Personal Communications, Inc.*, 537 U.S. 293 (2003).

22. The message is clear: § 525 should be applied to protect foundational bankruptcy policy. Just as the creation of the bankruptcy system in America signaled a shift in policy away from criminalizing financial distress, enacting § 525 developed that policy into the civil sphere and is a signal that financial distress should not be used as a basis to withhold government benefits, as the Administrator has. When viewed through this lens,

it is clear that the Administrator discriminated against the Debtors and that a permanent injunction must issue to allow the Debtors to apply for, and if eligible once their bankruptcy status is disregarded, participate in all aspects of PPP, including what makes it a grant of aid—forgiveness.

23. The Supreme Court rejected the argument that a "valid regulatory motive" for agency action could shield an agency's action from the purview of § 525(a) if there is also a discriminatory motive. *NextWave Personal Communications, Inc.*, 537 U.S. at 301-02

24. Several well-reasoned decisions have relied on *Stoltz,* 315 F.3d at 90 (or a similar view of § 525) to hold that the Administrator discriminated against debtors by excluding them from PPP. *Hidalgo County*, Adv. No. 20-2006, Dkt. No. 33; *Archdiocese of Santa Fe,* 2020 WL 2096113; *Alpha Visions*, 2020 WL 2893413; *Springfield Hospital, Inc. v. Carranza (In re Springfield Hospital, Inc.)*, Adv. No. 20-1003, Dkt. No. 19 & 27 (Bankr. D. Vt. May 4 & 11, 2020); *Springfield Medical Care Systems, Inc. v. Carranza (In re Springfield Medical Care Systems, Inc.)*, Adv. No. 20-1004, Dkt. No. 27 (Bankr. D. Vt. May 11, 2020); *St. Alexius Hospital Corp*, Adv. No. 20-6005, Dkt. No. 13; *NRP Lease Holdings*, Adv. No.20-00055, Dkt. No. 28. These decisions are consistent with sound bankruptcy policy.

25. Focusing on PPP's function through the lens of the CARES

Act, these decisions concluded that PPP is a grant of aid to businesses impacted by Covid-19 and falls squarely within § 525's ambit. Like *Stoltz*, which involved a residential lease and subsidized rent, these decisions look past the window dressing of a private financial transaction on the surface of PPP to the reality of what the program really is—a grant of aid to small businesses by the government using the immediately available capital of private financial institutions. By statute, Congress has presumed this aid is necessary. 15 U.S.C. § 636(a)(36)(M)(i)(II).

26. By statute, Congress has provided it to "any business concern [or] nonprofit organization" because it is necessary and no private sector actor would. 15 U.S.C. § 636(a)(36)(D)(i). Just as *Stoltz* was not simply about a residential lease, PPP is not simply a commercial loan product. What made the lease in *Stoltz* a grant was the rent subsidy, just like forgiveness makes PPP a grant here. This reasoning makes sense in light of the way PPP works: As stipulated, SBA makes no loans and conducts no review for creditworthiness or to determine "sound value" of applications. *See* Docket Entry 49, ¶¶ 37, 39.

27. In fact, SBA's own rules waive the provisions by which SBA measures creditworthiness and "sound value." *See* April 15 Rule, § III(1).

28. Congress has waived the requirement that a small

business be unable to obtain credit elsewhere or that personal guarantees be provided. 15 U.S.C. § 636(a)(36)(I).

29. Congress has presumed that all PPP participants have been harmed by Covid-19, signaling that PPP is essential to all eligible businesses. 15 U.S.C. § 636(a)(36)(M)(i)(II).

30. Lastly, Congress has determined that a "covered loan" under PPP shall receive a "risk weight of zero percent" for the purpose of regulatory capital requirements. 15 U.S.C. § 636(a)(36)((O)(i). If Congress intended PPP to be a traditional loan product, then it would have required banks to reserve for the risk of nonpayment.

31. Plaintiff's business is the specific type of commerce that Congress intended, when it passed the CARES Act, to benefit from the PPP and there is no indication that Congress intended to exclude bankruptcy debtors from participation in the PPP, nor granting blanket immunity to the SBA when developing the requirements for application.

32. Therefore, there is no legal or factual basis that justifies the argument that a bankruptcy court cannot entertain a controversy related to PPP "loan" due to lack of jurisdiction because of administrative immunity and the inapplicability of section 525.

33. The SBA's argument is invalid and unsupported by case law.

34. Therefore, Plaintiff requests that this Honorable Court take note of the above, and deny Defendants' Brief.

WHEREFORE, it is respectfully requested from this Honorable Court that it take note of the above, and deny Defendants' Brief.

**CERTIFICATE OF SERVICE**

**IT IS HEREBY CERTIFIED** that I filed the foregoing through the CM/ECF System which will give notice of this filing all parties in interest.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 17th of June of 2020.

By: */s/ Rafael A. Gonzalez Valiente*
USDC NO. 225209
Counsel for Multinational Insurance Company & Benitez Insurance Company
Godreau & Gonzalez Law, LLC
PO Box 9024176
San Juan, PR 00902-4176
Telephone: 787-726-0077
*rgv@g-glawpr.com*