# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: <br><br> ORGANIC POWER, LLC., <br><br> Debtor. | Chapter 11 <br><br> Bankruptcy Case No. 19-01789 (EAG) |
| ORGANIC POWER, LLC. <br><br> Plaintiff, <br><br> v. <br><br> THE U.S. SMALL BUSINESS ADMINISTRATION and JOVITA CORRANZA, solely as Administrator of the United States Small Business Administration, <br><br> Defendants. | Adv. No. 20-00055-EAG |

## UNITED STATES' SUPPLEMENTAL MEMORANDUM REGARDING STAUTORY CONSTRUCTION AND IRREPARABLE HARM

During the June 19, 2020 pretrial hearing, this Court directed Defendants U.S. Small Business Administration and Jovita Carranza, in her capacity as Administrator of the U.S. Small Business Administration (collectively, "Defendants"), to file a supplemental brief (1) setting forth their position with respect to the statutory language found in 15 U.S.C. § 636(a)(36)(D)(i) and (2) addressing whether Plaintiff has satisfied the element of irreparable harm required to obtain a permanent injunction. Defendants thus submit this supplemental brief, incorporating by reference all their previous briefing in this case, and maintain and preserve all arguments set forth therein. *See* Supplemental Memorandum of Law Regarding Plaintiff's Claims (Doc. 57),

Motion to Dismiss (Doc. 44), and Opposition to Plaintiff's Emergency Motion for a Temporary Restraining Order (Doc. 19).

**I. Principles of Statutory Construction Further Demonstrate that Plaintiff's Claims Under the Administrative Procedures Act Fail As A Matter of Law**

During the June 19, 2020 pretrial hearing, the Court raised the statutory language in 15 U.S.C. § 636(a)(36)(D)(i), a provision of the CARES Act which provides that "[d]uring the covered period, in addition to small business concerns, any business concern, nonprofit organization, veterans organization, or tribal business concern . . . shall be eligible to receive a covered loan" if the business employs less than 500 employees, or otherwise meets alternative size standards established by the SBA for a particular industry. *Id.* The Court asked Defendants whether principles of statutory construction lead to the conclusion that Congress did not intend that there be any other criteria for determining loan guarantee eligibility under the PPP beyond the size standards specified in 15 U.S.C. § 636(a)(36)(D)(i). The Court suggested that courts in *DV Diamond Club of Flint, LLC v. U.S. Small Business Administration*, No. 20-CV-10899, 2020 WL 2315880 (E.D. Mich. May 11, 2020), and *USA Gymnastics v. U.S. Small Bus. Admin.*, Adv. Proc. No. 20-50055 (Bankr. S.D. Ind. June 12, 2020), had reached that conclusion.

Simply stated, principles of statutory construction do not mandate such a conclusion. Indeed, such a construction is untenable because, as Judge Elizabeth Wolford of the Western District of New York recently explained, it places far more weight on § 636(a)(36)(D)(i) than that provision can bear, by "examining [the] particular provision in isolation" rather than "examin[ing] [it] in the context of the statutory scheme as a whole." *Diocese of Rochester v. U.S. Small Bus. Admin.*, 2020 WL 3071603, at *6 (W.D.N.Y. June 10, 2020) (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007)).

Specifically, the CARES Act explicitly places the PPP under the SBA's existing Section 7(a) loan program, and states that PPP loans are to be provided "under the same terms, conditions, and processes" as other Section 7(a) loans except as provided by the terms of the CARES Act itself. 15 U.S.C. § 636(a)(36)(B); *see Diocese of Rochester*, 2020 WL 3071603, at *15. Under the section 7(a) program, the SBA loans only to "small business concerns." 15 U.S.C. § 636(a). The term "small business concerns" is specifically defined by reference to size restrictions. *See* 15 U.S.C. § 632(a)(1)–(2); 13 C.F.R. § 121.101(a) ("SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for 'small business' concerns."); 13 C.F.R. Part 122 (establishing size standards). Congress sought to expand those size restrictions in the CARES Act, and thus provided in § 636(a)(36)(D)(i) that, "*in addition to small business concerns*, any business concern . . . shall be eligible to receive a covered loan" if the business has less than 500 employees, or qualifies under industry-specific rules. *See* 15 U.S.C. § 636(a)(36)(D)(i) (emphasis added).[1] Thus, Congress in § 636(a)(36)(D)(i) explicitly lifted certain size restrictions to allow larger businesses to qualify for the PPP. *Diocese of Rochester*, 2020 WL 3071603, at *6.

However, the fact that Congress relaxed size restrictions for PPP loans does not suggest that it intended size to be the *only* condition on eligibility for those loans. *See id.* ("[T]he Court disagrees with Plaintiffs that in expanding the size restrictions, Congress unambiguously provided that there could be no other eligibility criteria."). To the contrary, § 636(a)(36)(D)(i) is just one of several CARES Act provisions that adjust eligibility requirements for Section 7(a) loans. *See, e.g.*, 15 U.S.C.

---

[1] This conclusion is bolstered by the fact that, following this statutory expansion of the size of eligible businesses, Congress also expanded the type of businesses eligible for PPP loans to include "sole proprietors, independent contractors, and eligible self-employed individuals." *See* 15 U.S.C. § 636(a)(36)(D)(ii).

3

§ 636(a)(36)(D)(ii) (permitting sole proprietors and independent contractors to receive PPP loans); *id.* § 636(a)(36)(D)(iv) (lifting application of certain affiliation rules); *id.* § 636(a)(36)(I) (waiving the no "credit elsewhere" requirement); *id.* § 636(a)(36)(J) (waiving collateral and personal guarantee requirements). These additional provisions of the CARES Act "clearly anticipate the existence of additional eligibility criteria" beyond the size requirement. *Diocese of Rochester*, 2020 WL 3071603, at *7. If *Diamond Club's* reading of § 636(a)(36)(D)(i) were correct, these other provisions would be rendered superfluous, because Congress would have already made clear that the SBA may not impose any eligibility requirements other than § 636(a)(36)(D)(i)'s size requirements. *See Mary Jo C. v. N.Y. St. & Local Ret. Sys.*, 707 F.3d 144, 171 (2d Cir. 2013) ("[Courts] are required to disfavor interpretations of statutes that render language superfluous.") (internal quotation marks omitted); *Diocese of Rochester*, 2020 WL 3071603, at *7 ("'[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous[.]'") (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

Moreover, construing the phrase "any business concern" as used in § 636(a)(36)(D)(i) to mean that the SBA must lend to *all* businesses meeting the size requirement would lead to strange and anomalous results. As the *Diamond Club* court acknowledged, *see* 2020 WL 2315880, at *11 & n.4, the meaning of the word "any" can differ if "strange and indeterminate results" would emerge from adopting the usual meaning of "any" in a given context. *Nixon v. Mo. Mun. League,* 541 U.S. 124, 132-33 (2004); *see also Small v. United States*, 544 U.S. 385, 388-94 (2005) (holding that the term "any court," as used in 18 U.S.C. § 922(g)(1), was limited to domestic courts because, *inter alia*, including foreign courts would create anomalies that Congress could not have intended).

The *Diamond Club* court's reading of the CARES Act would lead to just such irregular and abnormal results. Under that court's interpretation of the Act, in one fell swoop Congress also

4

purportedly compelled the SBA to make loans available to "[b]usinesses located in a foreign country"; "[p]yramid sale distribution plans"; "[b]usinesses engaged in any illegal activities"; "[p]rivate clubs and businesses" with discriminatory membership policies; "[b]usinesses with an [a]ssociate who is incarcerated, on probation, on parole, or [who] ha[s]e been indicted for a felony"; "[b]usinesses that have previously defaulted on a Federal loan resulting in a loss to the Federal Government"; and "speculative businesses (such as oil wildcatting)." *See* 13 C.F.R. § 120.110(e), (f), (h), (i), (n), (q), (s). There is no basis for concluding that Congress found it necessary or appropriate in the public interest to compel the SBA to make such dramatic departures from the Government's longstanding policies against financial assistance to businesses falling into these categories. *See Whitman v. American Trucking Assocs.*, 531 U.S. 457, 468 (2001) ("Congress . . . does not . . . hide elephants in mouseholes."); *Jones v. United States*, 526 U.S. 227, 234 (1999) ("Congress is unlikely to intend radical departures from past practice without making a point of saying so."). Consistent with this analysis, Judge Wolford held in *Diocese of Rochester* that "[t]he Court will not presume that simply by using the phrase 'any business' concern in one part of the CARES Act, Congress meant to implicitly eliminate the long-standing statutory requirements for Section 7(a) loans" concerning creditworthiness. *Diocese of Rochester*, 2020 WL 3071603 at * 7.[2]  Judge Wolford thus concluded, at step one of the *Chevron* analysis, that "[p]ut differently, nothing in the CARES Act requires that a bankrupt debtor be eligible for participation in the PPP—this detail was left by Congress for determination by the SBA."  2020 WL 3071603 at * 7.[3]  This

---

[2] *See also Henry Anesthesia Assocs. LLC v. Carranza*, No. 19-64159-LRC, 2020 WL 3002124, at *9 (Bankr. N.D. Ga. June 4, 2020) (quotations and original alteration omitted)  ("[N]either the CARES Act nor the PPP expressly state that the SBA cannot consider creditworthiness of potential PPP borrowers or that it is relieved from its obligation to assure that all loans made under § 636(a) be of sound value to assure repayment.").

[3] *See also Penobscot Valley Hosp. v. Carranza*, No. 19-10034, 2020 WL 3032939, at *8 (Bankr. D. Me. June 3, 2020) ("Congress did not explicitly say whether debtors in bankruptcy are

interpretation is further strengthened by subsequent legislative history. Congress has revisited the PPP in subsequent legislation, *see* Paycheck Protection Program and Health Care Enhancement Act, Public Law No. 116-139, 134 Stat. 620 (Apr. 24, 2020), and the Paycheck Protection Program Flexibility Act of 2020, Public Law No. 116-142 (June 5, 2020), but has not mandated that SBA guarantee PPP loans to debtors in bankruptcy, despite undoubtedly being aware of SBA's interpretation given the intense scrutiny that PPP has received.

As the Supreme Court has explained, although congressional silence, in and of itself, is not necessarily dispositive of an agency's interpretation, "once an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned." *United States v. Rutherford*, 442 U.S. 544, 554 n.10 (1979) (internal quotations omitted); *see Bob Jones Univ. v. United States*, 461 U.S. 574, 600−01 (1983) (holding Congress acquiesced to the IRS's interpretation by repeatedly not overturning it in the face of "vigorous and widespread debate and discussion in and out of Congress" on the issue); *United. Airlines, Inc. v. Brien*, 588 F.3d 158, 173 (2d Cir. 2009) ("Congress's repeated amendment of the relevant provisions of the statute 'without expressing any disapproval reinforces the strength of the [agency's] interpretation,' because it 'is persuasive evidence that the [agency's] interpretation is the one intended by Congress.'") (quoting *CFTC v. Schor*, 478 U.S. 833, 846 (1986)).

Beyond that, at a minimum, the *Diamond Club* court erred in concluding that the CARES Act *unambiguously* compels the interpretation it adopted. For all of the reasons already discussed, the

---

categorically excluded from the PPP . . . . Congress intended the SBA to fill a statutory gap and determine whether debtors in bankruptcy would be eligible for the PPP. As a result, in evaluating the APA claim, the Court proceeds to the second step of the *Chevron* framework.").

6

meaning of § 636(a)(36)(D)(i) is at least ambiguous as to whether it prevents the SBA from imposing long-existing eligibility requirements to PPP loans. Because the *Diamond Club* court resolved this case under the first step of *Chevron*, it did not consider whether SBA's decision was based on a permissible construction of the statute. For the reasons set forth in Defendants' previous briefing, the agency's continued application of its longstanding regulations to the PPP is at a minimum a *permissible* construction of the statutory language, to which *Chevron* required the *Diamond Club* court to defer. *See* Supplemental Memorandum of Law Regarding Plaintiff's Claims at 13-21 (Doc. 57); *see also* Motion to Dismiss (Doc. 44), and Opposition to Plaintiff's Emergency Motion for a Temporary Restraining Order (Doc. 19).

Further, even if this Court agreed with the *Diamond Club* court's expansive interpretation of "any business" in § 636(a)(36)(D)(i) (which again would be error for the reasons set forth above), that case is distinguishable because the *Chevron* analysis differs for the bankruptcy exclusion. In *Diamond Club*, the basis for the exclusion of the plaintiff was a *regulation* that makes business that show "performances of a prurient sexual nature" ineligible for SBA loans. *Diamond Club*, 2020 WL 2315880, at *2. In contrast, the bankruptcy exclusion at issue here arises out of the existing Section 7(a) *statutory* requirement (unaltered by and thus applicable to the PPP) that all loans "shall be of such sound value . . . as reasonably to assure repayment." 15 U.S.C. § 636(a)(6). Thus, even accepting the *Diamond Club* court's interpretation of "any business" in section 636(a)(36)(D)(i), when that provision is read alongside the equally-applicable (and mandatory) "sound"-ness requirement of § 636(a)(6), there is a statutory ambiguity regarding the eligibility of debtors in bankruptcy for PPP loans. There is no such ambiguity in *Diamond Club*, where the plaintiff's exclusion from the PPP was based solely upon regulation. This statutory ambiguity compels the Court to move to step two of the *Chevron*

analysis and determine if the bankruptcy exclusion is "a permissible construction of the statute." As Defendants have explained in their previous briefing, the bankruptcy exclusion is the rational reconciliation of the sound value requirement under 15 U.S.C. § 636(a)(6) with the obligation to expeditiously process CARES Act PPP loans. Supplemental Memorandum of Law Regarding Plaintiff's Claims at 13-14, 18-20 (Doc. 57); *see also* Motion to Dismiss (Doc. 44), and Opposition to Plaintiff's Emergency Motion for a Temporary Restraining Order (Doc. 19). Accordingly, the SBA did not exceed statutory authority when it implemented the PPP with the bankruptcy exclusion.

Finally, the Court inquired as to whether the recent Supreme Court decisions in *Bostock v. Clayton County, Georgia*, -- S. Ct. --, 2020 WL 3146686 (2020) or *Department of Homeland Security Regents of the University of California Wolf v. Vidal*, -- S. Ct. --, 2020 WL 3271746 (2020) ("*Vidal*"), supported the *Diamond Club* interpretation of section 636(a)(36)(D)(i). They do not.

*Bostock* deals with an entirely different issue of statutory interpretation. Specifically, the question before the Court in *Bostock* was whether an employer could fire an employee for being gay, lesbian, or transgender. 2020 WL 3146686 at *3. Title VII of the Civil Rights Act made it "unlawful . . . for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Id.* at *4. The question of statutory interpretation presented in *Bostock* was thus whether Title VII's command precluding discrimination "because of . . . sex" applied to the fact pattern before the Court. *Id.* at *4.

8

In this case, however, the Court is faced with a fundamentally different interpretative question. In resolving whether the *Diamond Club* interpretation of § 636(a)(36)(D)(i) is appropriate, the critical question, as developed above, is whether that provision should be examined in isolation or in light of the statutory scheme as a whole. And, in fact, the Supreme Court has frequently recognized that "[s]tatutory construction . . . is a holistic endeavor" and a court should select a "meanin[g that] produces a substantive effect that is compatible with the rest of the law." *Kelly v. Robinson,* 479 U.S. 36, 43 (1986) (in interpreting a statute, a court "must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy" (internal quotation marks omitted)). There is nothing in *Bostock* that suggests that courts should ignore the overall statutory scheme in arriving at the proper construction of the statute. Rather, *Bostock* simply states: "When the meaning of the statute's terms is plain, our job is at end. The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based *on some extratextual consideration.*" *Id.* at *14 (emphasis added). Here, Defendants are not arguing that *Diamond Club*'s statutory analysis of section 636(a)(36)(D)(i) is wrong because of "extratextual considerations," but because (1) the text of the statute (when read as a whole) does not support the *Diamond Club* court's conclusions and (2) the text of the statute is, at a minimum, ambiguous. *Bostock* thus does not speak to the interpretative issue before the Court.

The Supreme Court's decision in *Vidal* likewise does not alter any of Defendants' arguments with respect to statutory construction (or the APA issues in the case more generally). Plainly, the decision in *Vidal* does not address any of the issues of statutory construction discussed above. Rather, the Supreme Court in *Vidal* held that the Secretary of Homeland Security acted in an arbitrary and capricious manner for the purposes of the APA by failing to (1) offer any "reason for terminating" the forbearance aspect of the Deferred Action for Childhood Arrivals ("DACA program"), *id.* at 13, and

9

(2) "address whether there was 'legitimate reliance' on the DACA Memorandum," *id.* at 14. Neither situation is applicable here. As developed in Defendants' prior briefing, the SBA Administrator has specifically articulated the contemporaneous rationale for the bankruptcy exclusion: "The Administrator, in consultation with the Secretary, determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans. In addition, the Bankruptcy Code does not require any person to make a loan or a financial accommodation to a debtor in bankruptcy." Supplemental Memorandum of Law Regarding Plaintiff's Claims (Doc. 57) at 10 (citing Fourth Interim Final Rule, 85 Fed. Reg. at 23,451); *see also* Declaration of SBA Deputy Associate Administrator for Capital Access John A. Miller (Ex. 3 to Doc. 57). Moreover, as a new and rapidly deployed program, the PPP does not involve similar issues of reliance that were presented in the *Vidal* case. Furthermore, the opinion is clear that an agency must consider such reliance interests "[w]hen [it] changes course," *id.* at *14, but no such change of course occurred in SBA's implementation of the novel PPP.

Furthermore, *Vidal* underscores that an "agency can offer a fuller explanation of the agency's reasoning" after taking an action as long as that explanation reflects the agency's reasoning "at the time of the agency action." *Id.* at *9 (emphasis and citation omitted); *id.* (agencies may "provide an amplified articulation of a prior conclusory observation"). As explained in Defendants' prior briefing, SBA acted entirely reasonably in exercising its emergency rulemaking authority to expeditiously promulgate a PPP application form within one week of the CARES Act's enactment, followed just weeks later by providing contemporaneous explanations of its reasoning in interim final rules published in the federal register. *See* 85 Fed. Reg. 20,811 (Apr. 15, 2020); 85 Fed. Reg. 23,450 (Apr. 28, 2020). The facts of this case are thus wholly dissimilar from those in *Vidal*. *See id.* at *9

10

(refusing to consider agency's justification, offered "nine months" later, which "b[ore] little relationship to" agency's prior reasoning).

*Vidal* also reaffirms that arbitrary-and-capricious review is "narrow," and that "a court is not to substitute its judgment for that of the agency." *Id.* at *7 (quoting *FCC v. Fox Television Stations, Inc.,* 556 U. S. 502, 513 (2009)). That SBA assessed the risks of making PPP loans to applicants in bankruptcy differently than Plaintiff might have preferred does not mean, as Plaintiff contends, that SBA failed to consider an important aspect of the problem. Consequently, *Vidal* offers no support to Plaintiff on the issue of statutory construction or its APA claims more generally.

## II. Plaintiff's Claims For Injunctive Relief Also Fail Because Plaintiff Has Not Met Its Burden Of Demonstrating Irreparable Harm

Minutes prior to the June 19, 2020 pretrial hearing, Plaintiff submitted a third unsworn declaration from Miguel Perez, President of Organic Power LLC, in an attempt to meet its burden on the issue of irreparable harm. As demonstrated below, this new declaration (alone or in conjunction with the prior declarations) does not satisfy the requirements for demonstrating irreparable harm.

The First Circuit has "consistently emphasized the importance of a showing of irreparable harm in the calculus of injunctive relief." *E.E.O.C. v. Astra U.S.A.*, 94 F.3d 738, 743 (1st Cir. 1996). "It is a longstanding axiom that 'economic harm in and of itself is not sufficient to constitute irreparable injury.'" *Office Max Inc. v. County Qwik Print, Inc.*, 709 F. Supp. 2d 100, 113 (D. Me. 2010). Rather, "[a] finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II v. Blinds To Go, Inc.,* 370 F.3d 151, 162 (1st Cir. 2004).

Applying these standards in similar cases involving the PPP, courts have repeatedly held that plaintiffs must come forward with concrete evidence that they will suffer irreparable harm if

11

Case:20-00055-EAG Doc#:66 Filed:06/24/20 Entered:06/24/20 22:49:56 Desc: Main
Document Page 12 of 15

injunctive relief is not granted. As Judge Fulton explained in the *Hartshorne* case in the Western District of Kentucky, "Debtors have not proved a likelihood of irreparable harm if they are denied the PPP funds they have requested because they have not shown that the PPP funds are necessary to stave off economic destruction or an inability to continue with their DIP operations going forward." *Hartshorne Mining, LLC. v. Carranza* (*In re Hartshorne Hold., LLC*), Adv. No. 20-4012, Dkt. 35 (Bankr. W.D. Kent. June 1, 2020) (reconsideration denied, Dkt. 49 (June 15, 2020)). Similarly, in *In re Breda*, 2020 WL 2373597, Dkt. 16 (Bankr. D. Me. May 11, 2020), Judge Fagone denied a motion for a temporary restraining order because "nothing in the disclosure statement stated, or even suggested, that the Plaintiff was likely to suffer immediate and irreparable harm in the form of a cessation of business if the Plaintiff was denied access to the [PPP] or any other source of financial assistance." *Id.* at *1. Judge Barry in the recent *Dancor* case in the Western District of Arkansas and Judge Saltzman in the Central District of California have reached similar results. *See Dancor Transit Inc. v. Carranza (In Re Dancor Transit Inc.*), Adv. No. 2:20-AP-07024, Dkt. 29 (Bankr. W.D. Ark. June 22, 2020) (finding the debtor could not satisfy the element of irreparable harm because none of the live witnesses testified that, for example, "without the PPP funds the business would certainly collapse"); *NAI Cap., Inc. v. Carranza* (*In re NAI Cap., Inc.*), Adv. No. 20-01051 (Bankr. C.D. Cal. May 20, 2020) (oral ruling denying injunctive relief and holding plaintiff had not met its burden on irreparable harm because it had failed to present any evidence it could not reorganize or would collapse in the absence of receiving PPP funds).

Here, Plaintiff relies entirely on three unsworn declarations from Miguel Perez, the President of Organic Power LLC, to establish irreparable harm. Although Plaintiff has filed three separate statements from Mr. Perez, they all say basically the same thing and do not come

12

close to meeting Plaintiff's burden of demonstrating irreparable harm. The May 6, 2020 Declaration speculates that Plaintiff's "business of manufacturing animal feed, recycling of organic waste and generating electricity with propane gas," May 6, 2020 Declaration ¶ 8, "could end up having to cease operation," *id.* ¶14, if an injunction is not granted. The June 19, 2020 Statement uses slightly more forceful language in stating "[i]f we are not allowed to keep the PPP funds, it is highly likely that we would be forced to close down operations." *Id.* ¶ 24. But, once again, Plaintiff has attached no evidence to support this bare assertion. Moreover, Plaintiff's assertions that layoffs may result from a denial of PPP funds and the lack of employees could potentially lead to risks to the environment, *id.* ¶¶ 19-22, may be relevant to the consideration of whether injunctive relief is in the public interest, but it does not establish irreparable harm to Plaintiff, who has provided no financial or other supporting data to support its claim.

Such unsupported assertions of potential harms are not the kind of tangible and imminent harms required to meet the irreparable harm standard for a permanent injunction: "The applicant must establish more than a mere 'possibility' of irreparable harm." *Shady v. Tyson*, 5 F. Supp. 2d 102, 105 (S.D.N.Y. 1998). "T[]he party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488, 493 (S.D.N.Y. 1989) (quotations omitted). While Defendants are certainly sympathetic to the fact that nearly all business are struggling as a result of the ongoing pandemic, Plaintiff's submission relies entirely on speculative assertions of future financial injury, which cannot satisfy the irreparable harm standard required for the extraordinary remedy of prospective injunctive relief.. *See*, *e.g.*, *Charlesbank Equity Fund II*, 370 F.3d at 162 ("A finding of irreparable harm must be

13

grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."). Therefore, Plaintiff's newly submitted declaration does not satisfy its burden on the issue of irreparable harm.

## CONCLUSION

For the foregoing reasons (and the reasons set forth in Defendants' prior briefing), each of Plaintiff's Claims fails as a matter of law.

DATED: June 24, 2020

UNITED STATES OF AMERICA

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

*W. STEPHEN MULDROW*
United States Attorney

*s/Rafael J. López-Rivera*
Rafael J. López-Rivera
Assistant United States Attorney
USDC-PR No. 221213
UNITED STATES ATTORNEY'S OFICE
Torre Chardón, Suite 1201
350 Carlos Chardón Street
San Juan, Puerto Rico 00918
Phone Number: (787)766-5656
Facsimile: (787)766-6219
rafael.j.lopez@usdoj.gov

Pedro Jaime López-Bergollo
Special Assistant US Attorney
USDC No. 231412
273 Ponce de León Ave., Suite 510
Plaza 273
San Juan, PR 00917-1930
Tel.: 787-766-5269
Email: pedro.lopez-bergollo@sba.gov

RUTH A. HARVEY

14

Director
MARGARET M. NEWELL
Assistant Director
MICHAEL TYE
Trial Attorney (G03112)
United States Department of Justice
Commercial Litigation Branch,
Civil Division
P.O. Box 875, Ben Franklin Station
Washington, DC 20044-0875
 (202) 305-2419
Michael.Tye@usdoj.gov