**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br>ORGANIC POWER, LLC.,<br>DEBTOR.<br>_____<br><br>**ORGANIC POWER, LLC.**<br>**Plaintiff**<br><br>v.<br><br>**The U.S. Small Business Administration and Jovita Corranza, solely as the Administrator of the U.S. Small Business Administration,**<br><br>**Defendants** | Bankr. Case No.: 19-01789(EAG)<br><br>Chapter 11<br><br>Adv. Proceeding. No. 20-00055 (EAG) |

**Opposition to Defendant's Supplemental Brief**

**TO THE HONORABLE COURT:**

  **COME NOW,** Plaintiff Organic Power, LLC ("OP"), through the undersigned counsel, very respectfully avers and prays as follows:

### I. Introduction

  1. The present Adversary Complaint was filed on April 27th, 2020. *Dkt.1*, Case 20-00055.

  2. On June 19th, 2020, a hearing was held on which the parties were ordered the following: SBA should submit a Supplemental Brief regarding the United States Supreme Court decisions of *Bostock v. Clayton City*, 2020 U.S. LEXIS 3252, and

*Department of Homeland Security Et Al. v. Regents of the University of California Et Al.*, 591 U.S. \_\_\_\_\_ (2020) by June 24th, 2020, and OP would have until June 26th, 2020, to reply. *(Dkt.65)*.

3. When addressing the Court's concern about how the *Bostock* and *Regents* decisions affect the instant case, Defendant simply states that neither case applies and/or that they support SBA's position.[1] This is misleading. *Supra*.

4. For starters, *Bostock* clearly states that there is no "*such thing as a 'canon of donut holes,' in which Congress' failure to speak directly to a specific case that falls within more general statutory rule creates a tacit exception. Instead,* **when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule**." [*Emphasis added*] *Bostock, supra*. This clearly shows that the Supreme Court will not permit the creation of exceptions where none were created by Congress. Since Congress did not create an *exception for small sized[2] bankruptcy debtors in the CARES PPP funds*.

5. On the other hand, *Regents* tells us that administrative agencies may not create rules without providing a reasoned

---

[1] In their brief, Defendants state that Plaintiff is not entitled to the relief asked for mostly the same reasons stated in Opposition to Plaintiff's Memorandum in Application for a TRO (Dkt.19); Supplemental Memorandum of Law Regarding Plaintiff's Claims at 13-21 (Doc. 57); & their Motion to Dismiss (Dkt.44).

Plaintiff's replies to documents at dockets 19, 44 & 57, have already been developed and supported. Dkts.22, 23, 51, 57 & 60.

[2] Defined as entities with less than 500 employees.

explanation for such a rule. *Supra*. The SBA did no such thing until AFTER the first complaint for discrimination was filed. Regents shows us that "[p]ermitting agencies to invoke belated justifications, on the other hand, can upset "the orderly functioning of the process of review", <u>SEC v. Chenery Corp.</u>, 318 U. S. 80, 94 (1943), forcing both litigants and courts to chase a moving target." Id. The SBA broke both those requirements.

6. On the other hand, Defendants, again, claim that SBA did not exceed their authority excluding Bankruptcy Debtors from applying for PPP funds, that they acted well within the authority granted by Congress in the CARES ACT, and that Debtor has not complied with the requirement of irreparable harm for the TRO to be granted.

7. Plaintiff's main focus in this reply will be as to why OP will suffer irreparable damages if not granted the opportunity to apply (at this time) for the "loan" forgiveness aspect provided by the PPP, and as to how the SBA did, indeed, exceed their statutory authority and acted in a discriminatory manner, according to <u>Bostock</u>, supra, and <u>Regents</u>, *supra*.

**II. <u>The Violation of Administrative Procedures Act, Section 525 of the Bankruptcy Code and Statutory Construction</u>**

8. Statutory construction principle is a well-developed concept in common law. It is defined as the process of determining what a particular statute means so that a court may apply it

accurately.

9. As the Supreme Court of the United States has explained, "[I]n interpreting a statute a court should always turn to one cardinal canon before all others. . .[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." <u>Connecticut Nat'l Bank v. Germain,</u> 112 S. Ct. 1146, 1149 (1992).

10. Indeed, "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: `judicial inquiry is complete.'" *Id.*

11. "**<u>Congress is presumed to act intentionally and purposely when it includes language in one section but omits it in another.</u>**" <u>Estate of Bell v. Commissioner</u>, 928 F.2d 901, 904 (9th Cir. 1991). [Emphasis ours.]

12. "And, in fact, the Supreme Court has frequently recognized that "[s]tatutory construction . . . is a holistic endeavor" and a court should select a "meanin[g that] produces a substantive effect that is compatible with the rest of the law." <u>Kelly v. Robinson</u>, 479 U.S. 36, 43 (1986)

13. The main goal of applying this concept is to protect that which the courts are called out to protect.

14. In this particular case, protecting debtors from discrimination pursuant to section 525 of the Bankruptcy Code, and the checks and balances of the SBA's powers in enacting a

categorical exclusion not expressed by Congress.

15. The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." <u>Franklin v. Massachusetts</u>, 505 U. S. 788, 796 (1992). It requires agencies to engage in "reasoned decision making," <u>Michigan v. EPA</u>, 576 U. S. 743, 750 (2015) (internal quotation marks omitted), and directs that agency actions be "set aside" if they are "arbitrary" or "capricious," 5 U. S. C. §706(2)(A). <u>Regents</u>, *supra*.[3]

16. Permitting agencies to invoke belated justifications, can upset "the orderly functioning of the process of review,"[4] <u>SEC v. Chenery Corp.,</u> 318 U. S. 80, 94 (1943).

17. "This Court has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end. The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration. See, *e.g.*, <u>*Carcieri v. Salazar*</u>*, 555 U. S. 379, 387, 129 S. Ct. 1058, 172 L. Ed. 2d 791 (2009);* <u>*Connecticut Nat. Bank v. Germain*</u>*, 503 U. S. 249, 253-254, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992);* <u>*Rubin v. United States*</u>*, 449 U. S. 424, 430, 101 S. Ct. 698, 66 L. Ed. 2d 633 (1981)."*

---

[3] The APA establishes a "basic presumption of judicial review [for] one 'suffering legal wrong because of agency action.'" <u>Abbott Laboratories v. Gardner</u>, 387 U. S. 136, 140 (1967) (quoting §702).

[4] An example of this is John Millers' Statement at presented by Defendants at Dkt.44-19.

**ORGANIC POWER LLC v. SBA** 6
Case No. 20-00055
*Reply to Defendant's Supplemental Brief*

*Bolstock*, *supra*.[5]

18. "Nor is there any such thing as a 'canon of donut holes,' in which Congress' failure to speak directly to a specific case that falls within more general statutory rule creates a tacit exception. Instead, when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule." *Bostock*, *supra*.

19. As Plaintiff has stated in their multiple motions and memorandums, Congress did not exclude small business debtors from applying to the PPP. Under *Bostock*, our analysis should stop there. Since Congress did not create an exception for bankruptcy Debtors, the SBA could not create on its own. *Bostock*, *supra*. We cannot assume that Congress 'forgot' to include the exception, and must conclude that the broad language was intended to include those most vulnerable of entities, bankruptcy debtors. Id; *see also*, *Germain*, *supra*.

20. But in this case the intention of Congress is even easier to discern. Congress specifically excluded medium and large entities[6] that were in bankruptcy from receiving the PPP benefits.[7] *Estate of Bell*, *supra*. We must assume that Congress intentionally excluded medium and large bankruptcy debtors from receiving the

---

[5] See also A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 101 (2012) (noting that unexpected applications of broad language reflect only Congress's "presumed point [to] produce general coverage—not to leave room for courts to recognize *ad hoc* exceptions").
[6] Those with over 500 employees.
[7] "At the outset, Congress clearly knows how to provide for class-wide deferred action when it wishes to do so." *Regents*, *supra*.

benefits of the PPP, but intended for small debtors to receive the funds. This is logical. Medium and large entities have access to better and more willing capital sources than small entities, even when navigating a bankruptcy proceeding.

21. The fact that Congress did not have the "imagination" to foresee SBA's illegal discrimination of bankruptcy debtors should not be reason to allow said discrimination. <u>Bostock</u>, *supra*.

22. Bankruptcy Code §525 prevents the government from *ad hoc* discrimination against debtors in ways that conflict with the purpose and policy of the bankruptcy system in much the same way that federal law prohibits the government from discriminating against a person based on status as a member of a protected class. *See* 1 COLLIER PAMPHLET EDITION 2020, p. 525 (Richard Levin & Henry J. Sommer, eds., Matthew Bender); S. Rep. 95-989, 81, 1978 U.S.C.C.A.N. 5787, 5867.

23. The language of §525 was not intended to be "exhaustive" or used to "permit other forms of discrimination." *Id.* Instead, Congress intended that the courts would apply § 525 and define its contours over time.[8] *Id.*

24. Section 525(a) prohibits discrimination against on the

---

[8] It is important to note and emphasize that Congress did not define the terms "license, permit, charter, franchise, or other similar grant[.]" This was intentional to allow courts to exercise policy influence in application of the law. "'[T]he section is not exhaustive. The enumeration of various forms of discrimination . . . is not intended to permit other forms of discrimination' *and delegates to the judiciary* the responsibility 'to mark the contours of the anti-discrimination provision *in pursuit of sound bankruptcy policy.*'" <u>Stoltz v. Brattleboro Housing Authority (In re Stoltz)</u>, 315 F.3d 80, 89 n.4 (2d Cir. 2002) (*quoting* H. Rep. No. 95-595, 366-67 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323)) (emphasis added).

basis of a bankruptcy filing—and § 105(a) grants the Court the authority to "issue any order, process, or judgment . . . necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This includes authority to remedy a violation of § 525(a).

25. "Section 525(a) has been interpreted by the courts to protect debtors from discrimination in a wide variety of contexts." *Stoltz v. Brattleboro Housing Authority, (In re Stoltz)*, 315 F.3d 80 (2nd Cir. 2002).

26. Several well-reasoned decisions have relied on *Stoltz*, 315 F.3d at 90 (or a similar view of § 525) to hold that the Administrator discriminated against debtors by excluding them from PPP. *Hidalgo County*, Adv. No. 20-2006, Dkt. No. 33; *Archdiocese of Santa Fe,* 2020 WL 2096113; *Alpha Visions*, 2020 WL 2893413; *Springfield Hospital, Inc. v. Carranza (In re Springfield Hospital, Inc.)*, Adv. No. 20-1003, Dkt. No. 19 & 27 (Bankr. D. Vt. May 4 & 11, 2020); *Springfield Medical Care Systems, Inc. v. Carranza (In re Springfield Medical Care Systems, Inc.)*, Adv. No. 20-1004, Dkt. No. 27 (Bankr. D. Vt. May 11, 2020); *St. Alexius Hospital Corp*, Adv. No. 20-6005, Dkt. No. 13; *NRP Lease Holdings*, Adv. No.20-00055, Dkt. No. 28. These decisions are consistent with sound bankruptcy policy.[9]

---

[9] While nominally designated as a "loan," the unique features of the PPP, including a lack of any underwriting and a repayment obligation that only arises if the borrower fails to use the funds for purposes underlying the CARES Act, distinguish it from the commercial extension of credit at

27. Focusing on PPP's function through the lens of the CARES Act, these decisions concluded that PPP is a grant of aid to businesses impacted by Covid-19 and falls squarely within §525's ambit. Like *Stoltz*, which involved a residential lease and subsidized rent, these decisions look past the window dressing of a private financial transaction on the surface of PPP to the reality of what the program really is—a grant of aid to small businesses by the government using the immediately available capital of private financial institutions. By statute, Congress has presumed this aid is necessary. 15 U.S.C. § 636(a)(36)(M)(i)(II).[10]

28. "By contrast, the CARES Act, the CARES Act was not enacted to increase the availability of commercial loans. Rather, it includes stimulus funds designed to assist businesses and ensure American workers continue to be paid, despite the economic impact of COVID-19 and social distancing measures (UMF ¶5). The CARES Act establishes the PPP as a convertible loan program with no repayment obligations for PPP disbursements if, amongst other things, the funds are used for payroll and wage expenses. (Id.)." *Springfield*

---

issue in Goldrich.12 These same features render the PPP analogous to the public housing lease at issue in Stoltz. *Springfield Hospital, Inc. v. Jovita Carranza*, Adv. Proc. 20-01003, and *Springfield Medical Care Systems, Inc. v. Jovita Carranza*, Adv. Proc. 20-01004, *Memorandum of Decision* by Honorable Bankruptcy Judge Collen A. Brown.

[10] By statute, Congress has provided it to "any business concern [or] nonprofit organization" because it is necessary and no private sector actor would. 15 U.S.C. § 636(a)(36)(D)(i). Just as *Stoltz* was not simply about a residential lease, PPP is not simply a commercial loan product. What made the lease in *Stoltz* a grant was the rent subsidy, just like forgiveness makes PPP a grant here. This reasoning makes sense in light of the way PPP works: As stipulated, SBA makes no loans and conducts no review for creditworthiness or to determine "sound value" of applications. *See* Docket Entry 49, ¶¶ 37, 39.

*Hospital, Inc. v. Jovita Carranza*, Adv. Proc. 20-01003, and *Springfield Medical Care Systems, Inc. v. Jovita Carranza*, Adv. Proc. 20-01004, *Memorandum of Decision* by Honorable Bankruptcy Judge Collen A. Brown.

29. Congress has waived the requirement that a small business be unable to obtain credit elsewhere or that personal guarantees be provided. 15 U.S.C. § 636(a)(36)(I).

30. Congress has presumed that all PPP participants have been harmed by Covid-19, signaling that PPP is essential to all eligible businesses. 15 U.S.C. § 636(a)(36)(M)(i)(II).

31. Lastly, Congress has determined that a "covered loan" under PPP shall receive a "risk weight of zero percent" for the purpose of regulatory capital requirements. 15 U.S.C. § 636(a)(36)(O)(i). If Congress intended PPP to be a traditional loan product, then it would have required banks to reserve for the risk of nonpayment.

32. Moreover, SBA's own rules waive the provisions by which SBA measures creditworthiness and "sound value." *See* April 15 Rule, § III(1).

33. "When it comes to statutory interpretation, our role is limited to applying the law's demands as faithfully as we can in the cases that come before us." *Bolstock, supra.*

34. The SBA has argued that in an interim rule of April 2020, drafted after various cases were already filed, they explained the

logical analysis for excluding bankruptcy debtors from applying for PPP funds, and also, in a statement by Deputy Administrator for Capital Access, John Miller.[11]

35. As stated in Scalia's concurring opinion in <u>Sullivan v. Finkelstein</u>, 496 U. S. 617, 632, 110 S. Ct. 2658, 110 L. Ed. 2d 563 (1990): "Arguments based on subsequent legislative history . . .should not be taken seriously, not even in a footnote".[12] "[T]he *post hoc* rationalizations of the agency . . . cannot serve as a sufficient predicate for agency action.". <u>Regents</u>, *supra*.[13]

36. "Judges are not free to overlook plain statutory commands on the strength of nothing more than suppositions about intentions or guesswork expectations." <u>Bolstock</u>, *supra*.

37. The message is clear: Small sized bankruptcy debtors were intended to be beneficiaries of the PPP funds and § 525 should be applied to protect foundational bankruptcy policy. Just as the creation of the bankruptcy system in America signaled a shift in policy away from criminalizing financial distress, enacting §525 developed that policy into the civil sphere and is a signal that

---

[11] It is a "foundational principle of administrative law" that judicial review of agency action is limited to "the grounds that the agency invoked when it took the action." *Michigan*, 576 U. S., at 758. If those grounds are inadequate, a court may remand for the agency to do one of two things: First, the agency can offer "a fuller explanation of the agency's reasoning *at the time of the agency action*." <u>Pension Benefit Guaranty Corporation v. LTV Corp.</u>, 496 U. S. 633, 654 (1990) (emphasis added).

[12] Courts cannot permit impermissible "*post hoc* rationalization." *Citizens to Preserve Overton Park, Inc.* v. *Volpe*, 401 U. S. 402, 420. The rule requiring a new decision before considering new reasons is not merely a formality. It serves important administrative law values by promoting agency accountability to the public, instilling confidence that the reasons given are not simply convenient litigating positions, and facilitating orderly review. Each of these values would be markedly undermined if this Court allowed DHS to rely on reasons offered nine months after the rescission and after three different courts had identified flaws in the original explanation. <u>Regents, supra</u>.

[13] Overton *Park*, 401 U. S., at 419 (rejecting "litigation affidavits" from agency officials as "merely '*post hoc*' rationalizations").

financial distress should not be used as a basis to withhold government benefits, as the Administrator has. When viewed through this lens, it is clear that the Administrator discriminated against the Debtors and that a permanent injunction must issue to allow the Debtors to apply for, and if eligible once their bankruptcy status is disregarded, participate in all aspects of PPP, including what makes it a grant of aid—forgiveness.[14]

38. The SBA violated the Administrative Procedures Act (APA) by failing to address important factors for her decision and trying to make up for them afterwards on statements and interim rules.

39. John Miller's statement fails to "elaborate meaningfully"[15] the rational for excluding bankruptcy debtors from applying for PPP funds.

40. There always need to be a legitimate reliance for the agency's decision. This is not the case here.

41. SBA's explanations are unilluminating as to the reason bankruptcy debtors are excluded. Their analysis fails to meet even the most basic aspects of a logical reasoning mind.

---

[14] The legislative history specifically rejects a narrow construction of the antidiscrimination provision and makes clear that 525(a) protects the debtor's fresh start. Section [525(a)] is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination. The courts have been developing the Perez rule. This section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions, such as a state bar association or a medical society, or by other organizations that can seriously affect the debtors' livelihood or fresh start, such as exclusion from a union on the basis of discharge of a debt to the union's credit union. The effect of the section, and of further interpretations of the Perez rule, is to strengthen the anti-reaffirmation policy found in section 524(b). Discrimination based solely on nonpayment could encourage reaffirmations, contrary to the expressed policy. H. Rep. No. 95-595, at 367 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6323. *Id*. at 92, n. 6 (modification in original).

[15] *Regents, supra*.

42. In words of Honorable Judge David Jones: "I cannot imagine anything less controlling than to simply give out money with no underwriting, with no oversight, and then complain that if I have a Federal judge who makes sure that the debtor complies with the law ensures that the debtors file monthly operating reports, ensure that copies of bank statements are filed on the docket ever month, that they somehow lost control. I simply don't buy it. I find the arguments to lack any good faith. *In re Hidalgo County Emergency Service*, Case No. 19-20497, *Hidalgo County Emergency Service Foundation v. Jovita Carranza in her capacity as Administrator of the U.S. Small Business Administration*, Dkt. 18, Adv. Proc. 20-02006 (Bankr. S.D. Tex., April 25, 2020), Dkt.17, Transcript of hearing before Judge David Jones, p.31-32 lines 24-6.[16]

43. In the SBA's decision to exclude debtors and their explanation there is a "significant mismatch between the decision . . . made and the rationale . . . provided." *Department of Commerce v. New York*, 588 U. S. \_\_\_, \_\_\_ (2019) (slip op., at 26). *Regents*, *supra*.

44. Thus, and in consistency with Congress intent when enacting § 525 to the Bankruptcy Code, Congress intended to include small business debtors as commerce to which PPP "loans" were

---

[16] See SBA's Interim Rules and John Millers' Statement at presented by Defendants at Dkt.44-19.

available to.

46. Plaintiff's business is the specific type of commerce that Congress intended, when it passed the CARES Act, to benefit from the PPP and there is no indication that Congress intended to exclude bankruptcy debtors from participation in the PPP, nor granting blanket immunity to the SBA when developing the requirements for application.

46. Therefore, there is no legal or factual basis that justifies defendant's argument because "When an agency exercises power beyond the bounds of its authority, it acts unlawfully. See, *e.g.*, *SAS Institute Inc. v. Iancu*, 584 U. S. ___, ___, n. (2018) (slip op., at 11, n.)." *Regents*, *supra*.

### III. Irreparable Harm

47. Plaintiff has presented multiple declaration on which the issue of irreparable harm has been addressed.[17]

48. The SBA contends that said declarations do not establish irreparable harm. Nothing could be farther from the truth.

49. As the overwhelming case law cited below will show, Plaintiff has more than sufficiently established that it will suffer irreparable harm.

---

[17] From the Court's perspective, the declarations of the Plaintiffs' interim/acting CEOs are thoughtful, candid, and reflective of the uncertainty surrounding the coronavirus and its impact, and the inability of anyone to prognosticate how this global pandemic will play out in this country, generally, or with respect to the Plaintiffs' operations, in particular. *Springfield Hospital, Inc. v. Jovita Carranza*, Adv. Proc. 20-01003, and *Springfield Medical Care Systems, Inc. v. Jovita Carranza*, Adv. Proc. 20-01004, *Memorandum of Decision* by Honorable Bankruptcy Judge Collen A. Brown.

50. "To establish irreparable harm, however, a plaintiff need not demonstrate that the denial of injunctive relief will be fatal to its business. It is usually enough if the plaintiff shows that its legal remedies are inadequate." *Ross-Simons of Warwick, Inc, v. Baccarat, Inc.*, 102 F.3d 12 (1st. Cir., 1996)

51. "If the plaintiff suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel. Thus, a cognizable threat of such harm can support a restraining order." *Ross-Simons of Warwick, Inc, supra.*

52. "Although there is no mechanical test that permits a court to make an exact calculation of the quantum of hard-to-measure harm that will suffice to justify interim injunctive relief, there are some relevant guideposts. In the first place, the plaintiff's showing must possess some substance; a preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm. In the second place, an attempt to show irreparable harm cannot be evaluated in a vacuum; the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem. Finally, it is clear that battles over the quality and quantity of the harm alleged most often will be won or lost in the trial court." *Ross-Simons of Warwick, Inc, supra.*

53. "Where there is significant difficulty in assessing

damages, preliminary injunctive relief is necessary "to assure the presence of an adequate legal remedy." *A.W. Chesterton Co. v. Chesterton*, 907 F.Supp. 19 (D. Mass., 1995)

54. Also, "Injunctive relief is appropriate when damages are difficult to measure." *A.W. Chesterton Co., supra.*

> Uncertainty in calculating damages may be considered irreparable harm sufficient to warrant injunctive relief. For example, injunctive relief requiring specific performance of a contract may be granted where monetary damages are uncertain and difficult to assess, where the harm caused by a breach of contract, although economic in nature, is impossible to assess or significantly difficult to measure accurately. *Aerovox, Inc. v. Parallax Power Components, LLC (In re Aerovox, Inc)*, 281 BR 419, 433 (Bankr. D. Mass., 2002)

55. "The determination whether to issue an injunction involves a balancing of the interests of the parties who might be affected by the Court's decision - the hardship on plaintiff if relief is denied as opposed to the hardship to defendant if it is granted. . . ." 11 C. Wright & Miller, Federal Practice and Procedure: § 2942 at 366-67 (1973). *Ferrofluidics Corp. v. Advanced Vacuum Components, Inc.*, 78 F. Supp. 1201, 1212 (D.N.H., 1992)

56. "There can be no "reasonable certainty" of the loss of income as to Ferrofluidics business as a result of defendants' activities. See *Equifax Services, Inc. v. Hitz,* 905 F.2d 1355, 1361 (10th Cir. 1990) (preliminary injunction due to the inadequacy of the remedy at law for loss of customers). It is the

opinion of this court that the threat of harm to Ferrofluidics if an injunction is not granted under the unique and bizarre circumstances of this case greatly outweighs the threat of harm to the defendants in this case." *Ferrofluidics Corp., supra.*

57. The first prong of the test, irreparable injury, can encompass intangible harm as well as economic harm. Irreparable harm is "harm for which there is no adequate legal remedy, such as an award for damages." For this reason, economic harm is not generally considered irreparable. But where parties cannot typically recover monetary damages flowing from their injury—as is often the case in APA cases—economic harm can be considered irreparable. **Intangible injuries may also qualify as irreparable harm, because such injuries "generally lack an adequate legal remedy.** *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1280 (9th Cir. 2020)" *Springfield Hospital, Inc. v. Jovita Carranza*, Adv. Proc. 20-01003, and *Springfield Medical Care Systems, Inc. v. Jovita Carranza*, Adv. Proc. 20-01004, *Memorandum of Decision* by Honorable Bankruptcy Judge Collen A. Brown.[Emphasis ours.]

58. "In the instant proceedings, there are too many unknowns to precisely quantify the damages the Plaintiffs are likely to suffer based on the Defendant's discrimination." *Springfield Hospital, Inc. v. Jovita Carranza*, Adv. Proc. 20-01003, and *Springfield Medical Care Systems, Inc. v. Jovita Carranza*, Adv. Proc. 20-01004, *Memorandum of Decision* by Honorable Bankruptcy Judge Collen

A. Brown.

59. It is clear that OP loss of personnel and the closing of operation will cause irreparable harm to debtor even if it is not mathematically measurable.[18]

60. Any closure, even a temporary one, or a reduction in employees alone could lead to unsafe conditions in the handling of the organic waste and the methane gas stored in the Debtor's tank.

61. Also, the unsupervised or mediocre management of a plant that recycles organic waste could lead to an environmental problem.

62. Due to a lack of supervision and maintenance, propane tanks and structures can be damaged if precautions aren't taken regularly.

63. Finally, the discrimination against a debtor, in itself, is irreparable damage. If a debtor could only get protection from discrimination under §525 in cases where there is

---

[18] As Judge Hand opined, nearly 70 years ago, irreparable injury has always included the kind of injury that is impossible to predict: The plaintiff indeed has failed to show any "irreparable injury," if by that is meant that money will not satisfy any loss that the defendant's competition will cause; nevertheless **it has shown such an [irreparable] injury, if that includes the impossibility of ascertaining with any accuracy the extent of the loss. That has always been included in its meaning**; and I cannot see how the plaintiff will ever be able to prove what sales the defendant's competition will make it lose, to say nothing of the indirect, though at times far-reaching, effects upon its good will as the only licensee of the British company. *Foundry Servs. v. Beneflux Corp.*, 206 F.2d 214, 216 (2d Cir. 1953) (Hand, J., concurring) (emphasis added); see also *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) (holding an injury is irreparable "if the nature of the plaintiff's loss would make damages difficult to calculate"); *Berni v. Barilla G. e R. Fratelli, S.p.A.*, 332 F.R.D. 14, 26 (E.D.N.Y. 2019) ("The Second Circuit has held on multiple occasions that injunctive relief is appropriate where damages are not adequately ascertainable.") (citations omitted). *Springfield Hospital, Inc. v. Jovita Carranza*, Adv. Proc. 20-01003, and *Springfield Medical Care Systems, Inc. v. Jovita Carranza*, Adv. Proc. 20-01004, *Memorandum of Decision* by Honorable Bankruptcy Judge Collen A. Brown.

a showing of irreparable harm, most discriminations would escape the Court's authority and Debtors would be left without recourse. That is why Bankruptcy Courts "have the authority to issue injunctions under § 105 when necessary to enjoin conduct that "might impede the reorganization process," and may do so even if the plaintiff has not established the four usual required elements for an injunction described above."  See, *Springfield Hospital, Inc. v. Jovita Carranza*, Adv. Proc. 20-01003, and *Springfield Medical Care Systems, Inc. v. Jovita Carranza*, Adv. Proc. 20-01004, *Memorandum of Decision* by Honorable Bankruptcy Judge Collen A. Brown. (*citing*, *MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 837 F.2d 89, 93 (2d Cir.).

64.   As it has been demonstrated, the SBA's argument is invalid and unsupported by case law.

> However, the Plaintiffs have established it is likely they will suffer a real and substantial loss if deprived access to PPP funds. This will manifest both as the loss of opportunity to obtain funds that will most likely turn out to be forgivable, which other non-debtor entities are able to obtain, as well as the loss of cash to pay employees and basic operating expenses (see UMF ¶ 26). Denial of access to the PPP not only denies the Plaintiffs a significant amount of money in the near-term, but also jeopardizes their ability to reorganize, exit chapter 11, and continue operating in the future, causing immeasurable harm to the Plaintiffs, their employees, and the community if these Plaintiffs – two of the largest employers in the area and providers of essential medical services – are forced to shut down (UMF ¶¶ 1-2, 16, 26). The Plaintiffs readily acknowledge they cannot pinpoint an exact date they will run out of money and disclose that they have received other emergency funding, but repeatedly return to the reality we must all confront today, which is that no one knows if or when there will be a vaccine available or,

conversely, a second wave of Covid-19 cases (UMF ¶¶ 20-25). *Springfield Hospital, Inc. v. Jovita Carranza*, Adv. Proc. 20-01003, and *Springfield Medical Care Systems, Inc. v. Jovita Carranza*, Adv. Proc. 20-01004, *Memorandum of Decision* by Honorable Bankruptcy Judge Collen A. Brown.

65. Therefore, Plaintiff requests that this Honorable Court take note of the above, deny Defendants' Brief and grant judgement in favor of Plaintiff.

WHEREFORE, it is respectfully requested from this Honorable Court that it take note of the above, and grant judgment in favor of Plaintiffs.

## CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that I filed the foregoing through the CM/ECF System which will give notice of this filing all parties in interest.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 26th of June of 2020.

By: */s/ Rafael A. Gonzalez Valiente*
USDC NO. 225209
Counsel for Multinational Insurance Company & Benitez Insurance Company
Godreau & Gonzalez Law, LLC
PO Box 9024176
San Juan, PR  00902-4176
Telephone:  787-726-0077
*rgv@g-glawpr.com*

Z:\G&G Cases - General\ORGANIC POWER LLC\SBA Adversary\Opposition to DEfendants Supplemental Brief.docx