IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO

| IN RE: | CASE NO. 19-01789-EAG11 |
|---|---|
| ORGANIC POWER LLC, | Chapter 11 |
|     Debtor. | |
| _____ | |
| ORGANIC POWER LLC, | ADV. PROC. NO. 20-00055 |
|     Plaintiff, | |
|     v. | |
| SMALL BUSINESS ADMINISTRATION and JOVITA CARRANZA, as Administrator of the Small Business Administration, | FILED & ENTERED ON 7/24/2020 |
|     Defendants. | |

**OPINION AND ORDER**

On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security Act, calling it "the single-biggest economic relief package in American history . . . ." H.R. 748, Pub. L. 116-136 (2020) ("CARES Act").[1] Title I of the CARES Act created the Paycheck Protection Program ("PPP"), which provided for "$350 billion in loans for small business, but it's structured in a way to incentivize them to keep their workers on payroll so

---

[1] Remarks by President Trump at Signing of H.R. 748 (https://www.whitehouse.gov/briefings-statements/remarks-president-trump-signing-h-r-748-cares-act/).

that those loans could be forgiven at end of the [covered payroll] period."[2] Those monies were exhausted in less than one month, so Congress appropriated an additional $310 billion: raising the total amount appropriated for the PPP to $659 billion. H.R. 266, Pub. L. 116-139 (2020).

Although the dollar amount appropriated for the PPP is historic,[3] it pales in comparison to the enormity of the economic damage inflicted by the Covid-19 pandemic on the U.S. economy.[4]

To push quickly out the door this huge amount of money to eligible small businesses, Congress placed the PPP within the existing section 7(a) loan program of the Small Business Act. 15 U.S.C § 636(a). On April 2, 2020, the Small Business Administration ("SBA") released the PPP application form. SBA Form 2843. The form asks whether the PPP applicant is "involved in any bankruptcy." If the applicant answers yes, the loan will not be approved according to the application form. On April 15, 2020, the SBA posted in the Federal Register its first interim final rule on the PPP, which does not itself make ineligible debtors but mentions that applicants need to submit Form 2843 in order to apply for the PPP. 85 Fed. R. 20811, Art. III § 2(q).

---

[2] Remarks by Labor Secretary Scalia at Signing of H.R. 748 (https://www.whitehouse.gov/briefings-statements/remarks-president-trump-signing-h-r-748-cares-act/). The exact dollar amount appropriated in the Cares Act for the PPP was $349 billion.

[3] For example, compare the $659 billion appropriated so far for the PPP to the $55.6 billion in 2019 for the Supplemental Nutrition Assistance Program (SNAP). See, https://www.fns.usda.gov/pd/supplemental-nutrition-assistance-program-snap.

[4] The Congressional Budget Office "projects that over the 2020–2030 period, cumulative nominal output will be $15.7 trillion less than what the agency projected in January [2020]" because of the Covid-19 pandemic. See, Letter dated June 1, 2020 from Director of CBO to Minority Leader of Senate, p. 2, https://www.cbo.gov/publication/56376.

On April 14, 2020, Organic Power LLC submitted a PPP application to Banco Popular de Puerto Rico.  Banco Popular denied the application on April 24, 2020 because Organic Power is in bankruptcy.  On April 24, 2020, Oriental Bank likewise denied a separate PPP application submitted by Organic Power.

On April 27, 2020, Organic Power filed an adversary complaint and application for temporary restraining order and preliminary injunction against Jovita Carranza, in her capacity as Administrator of the SBA.  The complaint and the temporary-restraining-order application requests that the court declare that the SBA's decision to exclude bankruptcy applicants from the PPP discriminates against Organic Power in violation of section 525(a) of the Bankruptcy Code and is beyond the SBA's statutory and regulatory authority under section 706(2)(C) of the Administrative Procedures Act ("APA").[5]  5 U.S.C. §706(2)(C).  In the alternative, Organic Power asserts that the bankruptcy exclusion is arbitrary and capricious under section 706(2)(A) of the APA.  5 U.S.C. § 706(2)(A).

On April 28, 2020, the SBA posted in the Federal Register its fourth interim final rule providing further guidance on requirements for PPP eligibility. 85 Fed. R. 23450.  The fourth interim final rule expressly states that businesses in bankruptcy are not eligible to apply for the PPP.  Id. at Art. III § 4.

On May 8, 2020, the court issued a temporary restraining order against the SBA.  Now, for the reasons set forth below, the court directs the entry of final judgment on the section 525(a) claim against the SBA, but denies the requests for preliminary and permanent injunctions.  Because both parties agree that the claims under sections 706(2)(A) and (C) of

---

[5] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to title 11 of the United States Code, 11 U.S.C. §§ 1010-1532, as amended. All references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

3

the APA are non-core matters, the court leaves (as explained below) those matters for
another day.

## I. JURISDICTION

This court has jurisdiction over the subject matter and the parties pursuant to 28
U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title
11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated
July 19, 1984 (Torruella, C.J.). The section 525 claim is a core proceeding under 28 U.S.C. §
157(b) over which the court can enter a final judgment.

## II. PROCEDURAL BACKGROUND

On April 1, 2019, Organic Power filed a petition for relief under chapter 11 of the
Bankruptcy Code. [Bankr. Dkt. No. 1.]

On April 27, 2020, Organic Power commenced the adversary proceeding of caption.
[Bankr. Dkt. No. 195; Adv. Dkt. Nos. 1, 4 & 5.]

On April 28, 2020, the court entered an order for the SBA to show cause why the
application for temporary restraining order should not be granted at a hearing scheduled for
May 6, 2020. [Adv. Dkt. No. 10.]

On May 4, 2020, the SBA filed a memorandum in opposition to the application for
temporary restraining order and injunctive relief. [Adv. Dkt. No. 19.] On May 5, 2020, Organic
Power filed a reply. [Adv. Dkt. No. 22]

On May 6, 2020, the court held the hearing on the temporary restraining order and
took the matter under advisement. [Adv. Dkt. No. 27.] The court granted Organic Power 24
hours to submit a sworn statement in support of its request for injunctive relief and 24 hours

4

thereafter for the SBA to reply.  [Id.] The court also set a status conference for May 19, 2020. [Id.]

As ordered, on May 6, 2020, Organic Power filed a supplemental unsworn declaration, and on May 7, 2020 the SBA replied. [Adv. Dkt. Nos. 23 & 25.]

On May 8, 2020, the court issued a temporary restraining order against the SBA. [Adv. Dkt. No. 29.]

On May 19, 2020, Organic Power filed a motion informing that Banco Popular "granted" its PPP application and disbursed to it $129,500. [Adv. Dkt. No. 33.]

On May 19, 2020, the court held a status conference where it consolidated the application for preliminary injunction with the trial on the merits and set the trial for June 22, 2010. [Adv. Dkt. No. 34.]   A schedule was also established to govern the pretrial preparation. [Id.]  The pretrial conference was set for June 19, 2020. [Adv. Dkt. No. 37.]  And the temporary restraining order was extended until June 23, 2020. [Adv. Dkt. No. 34.]

On May 21, 2020, Organic Power filed a motion informing it had opened a special debtor-in-possession bank account for the PPP money. [Adv. Dkt. No. 38.]  On that same day, Organic Power filed a motion requesting disbursement of the PPP money. [Adv. Dkt. No. 39.]

On May 29, 2020, the SBA filed a motion to inform that it had agreed with Organic Power to extend the deadline to respond to the complaint to June 8, 2020. [Adv. Dkt. No. 43.] On June 8, 2020, the SBA moved the court to dismiss the case. [Adv. Dkt. No. 44.] On June 12, 2020, the court granted Organic Power's motion requesting approval to disburse the PPP money. [Adv. Dkt. No. 48.]

On June 12, 2020, Organic Power opposed the SBA's dismissal request. [Adv. Dkt. No. 51.]

The SBA and Organic Power filed their supplemental memoranda of law on June 15 and 16, 2020, respectively.  [Adv. Dkt. Nos. 56 & 57.]

On June 18, 2020, in compliance with the pretrial order: the SBA filed a motion informing its trial exhibits [Adv. Dkt. No. 59], Organic Power filed its reply to the SBA's supplemental memorandum [Adv. Dkt. No. 60], Organic Power and the SBA filed a joint pre-trial report [Adv. Dkt. No. 61], and Organic Power filed a motion informing its trial exhibits. [Adv. Dkt. No. 62.]

On June 19, 2020, Organic Power filed a second unsworn statement by its president in support of its request for injunctive relief. [Adv. Dkt. No. 63.]

At the pretrial hearing held on June 19, 2020, the court granted the SBA until June 24, 2020 to submit another supplemental brief and Organic Power until June 26, 2020 to reply. [Adv. Dkt. No. 65.]  The court continued the trial to June 29, 2020 and extended the temporary restraining order until June 30, 2020. [Id.]

On June 24, 2020, the SBA filed its supplemental memorandum. [Adv. Dkt. No. 66.]  On June 26, 2020, Organic Power filed its opposition. [Adv. Dkt. No. 69.]

On June 26, 2020, Organic Power filed its first motion informing the use of the PPP money as of that date. [Adv. Dkt. No. 70.]

The trial was held on June 29, 2020. [ Adv. Dkt. No. 72.]  And the court again extended the temporary restraining order until it reached a decision on the merits of the case.  [Adv. Dkt. Nos. 72 & 76.]

On July 3, 2020, Organic Power filed a second motion informing its use of the PPP money as of that date. [Adv. Dkt. No. 74.] On July 10, 2020, Organic Power filed a third motion informing that its use of the PPP money as of that date. [Adv. Dkt. No. 77.]  On July 17, 2020,

Organic Power filed a fourth motion informing its use of the PPP money as of that date. [Adv. Dkt. No. 78.]  On July 24, 2020, Organic Power filed a fifth motion informing its use of the PPP money as of that date. [Adv. Dkt. No. 79.]

### III.    UNCONTESTED FACTS

The following facts are uncontested as found in the record of this case and the stipulated facts submitted by the parties in their pretrial report filed at docket number 61:

Organic Power is in business to recycle organic waste into animal feed and natural gas to generate electricity. [Adv. Dkt. No. 61, p. 3, ¶ 10.]  However, it currently generates electricity with propane gas. [Id.] Organic Power's income comes primarily from its clients that generate organic waste and purchase its electricity and animal feed. [Id.]

On April 1, 2019, Organic Power filed a petition for relief under chapter 11 of the Bankruptcy Code. [Bankr. Dkt. No. 1.]  On March 12, 2020, the Governor of Puerto Rico issued an Executive Order imposing a drastic lockdown of non-essential businesses and a mandatory curfew on the people of Puerto Rico. [Adv. Dkt. No. 72, Exhibit 16.]

On or about March 27, 2020, Congress enacted and the President signed into law the CARES Act.  [Adv. Dkt. No. 61, p. 3, ¶ 11.]  Section 1102 of the CARES Act establishes the PPP under § 7(a) of the Small Business Act, codified in 15 U.S.C § 636(a)(36). [Adv. Dkt. No. 61, p. 3, ¶ 12.]  It provides than an eligible applicant may obtain PPP money to cover payroll expenses, employee salaries, mortgage payments, rent, and utilities. [CARES Act, § 1102 (d)(1)(A).]  A party may submit a PPP application to any federally-insured lender participating in the SBA section 7(a) loan program or to any other SBA-approved lender. [Adv. Dkt. No. 61, p. 3, ¶ 12.]

7

On April 2, 2020, the SBA posted the first interim final rule on its website while pending publication in the Federal Register. [Adv. Dkt. No. 61, p. 4, ¶ 13.] On April 15, 2020, the first interim final rule was published in the Federal Register. [Id.] Congress initially "provided the SBA with $349 billion" for the PPP. [Adv. Dkt. No. 72, Exhibit E, p. 3.] PPP applications are approved on a "first-come, first-serve[ ]" basis. [Id. at 4]

On or about April 2, 2020, the SBA released the application form for the PPP: SBA Form 2483 - Paycheck Protection Program Borrower Application Form. [Adv. Dkt. No. 61, p. 4, ¶ 14.] The PPP application form asks whether "the Applicant . . . [is] presently involved in any bankruptcy." [Adv. Dkt. No. 72, Exhibit D.] The application form states: "If [this] question below [is] answered 'Yes,' the loan will not be approved." [Id.]

On April 14, 2020 Organic Power submitted a PPP application to Banco Popular de Puerto Rico. [Adv. Dkt. No. 61, p. 3, ¶ 8; Adv. Dkt. No. 72, Exhibit 7, ¶15.] Banco Popular denied the application on April 24, 2020 because Organic Power is in bankruptcy. [Adv. Dkt. No. 61, p. 3, ¶ 8-9; Adv. Dkt. No. 72, Exhibit 7, ¶16.] On April 24, 2020, Oriental Bank likewise denied a separate PPP application submitted by Organic Power. [Adv. Dkt. No. 61, p. 4, ¶ 9; Adv. Dkt. No. 72, Exhibit 7, ¶¶17-18.]

On April 24, 2020 the President signed into law the "PPP and Health Care Enhancement Act" which appropriated an additional $310 billion for the PPP. [H.R. 766, Pub. L. 116-136 (2020).]

Also on April 24, 2020, the SBA issued its fourth interim final rule for the PPP. [Adv. Dkt. No. 72, Exhibit F.] The fourth interim final rule was published in the Federal Register on April 28, 2020 and reads: "[i]f the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the

loan is disbursed, the applicant is ineligible to receive a PPP loan." [Id. at p. 2] The rule further states that the SBA "determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans." [Id.]

On May 8, 2020, the court issued the temporary restraining order against the SBA. [Adv. Dkt. No. 29.]  Subsequently, the SBA approved and Banco Popular disbursed a PPP loan to Organic Power in the amount of $129,500.  [Adv. Dkt. No. 33.]

IV.     APPLICABLE LAW AND DISCUSSION

   a.  Sovereign Immunity

Section 634(b)(1) of the Small Business Act precludes the issuance of an "attachment, injunction, garnishment, or other similar process . . ." against the SBA.  15 U.S.C. §634(b)(1). In the temporary restraining order of May 8, 2020, the court examined and rejected the SBA's claim to sovereign immunity under section 634(b)(1) of the Act.  Because the facts relevant to the request for injunctive relief have evolved since the entry of the temporary restraining order, there no longer is any need to further extend the temporary order or make it permanent.  As a result, both the controversy over sovereign immunity and the request for permanent injunctive relief are moot.

After the entry of the temporary restraining order: Organic Power resubmitted its PPP application to Banco Popular, the SBA approved the application, Banco Popular disbursed $129,500 in PPP money to Organic Power, Organic Power deposited that money into a special DIP account, and all but the $11,302.04 still in the bank (and protected by the automatic stay) was spent by Organic Power on expenses which qualify for PPP loan forgiveness.  What will remain, when the small amount left is spent, is for Organic Power to

apply for PPP loan forgiveness and for the SBA to process that application based on the ruling in this opinion and order.  Given the SBA's record of compliance with court orders in this case, the court has no doubt that the SBA will abide by this opinion and order and ensuring judgment unless it is stayed or overturned on appeal.

### b.  Section 525(a) violation

Because of the temporary restraining order: Organic Power resubmitted its PPP application; the SBA approved it; Banco Popular disbursed $129,500 to Organic Power; as of July 24, 2020, Organic Power spent $118,197.96 of it on expenses that qualify for PPP loan forgiveness; and Organic Power remains obligated to likewise spend what is left.   At this time the main point of contention is whether the $129,500 already disbursed to Organic Power and mostly spent will have to be repaid.  The SBA's position is that Organic Power was not eligible at the start to participate in the PPP and, thus, the PPP money it got is not eligible for forgiveness even though it was spent on forgiveness-qualified expenses.  The court finds that both the SBA's initial determination excluding Organic Power from the PPP because it is "involved" in bankruptcy and any subsequent action by the SBA to deny it loan forgiveness for the same reason violates the anti-discrimination provision of section 525(a).

This issue has been heavily litigated around the country, and courts are split on it. See, In re Springfield Hosp., Inc., 2020 WL 3422335, at *8-10 (Bankr. D. Vt. June 22, 2020) (holding SBA violated section 525(a) after analyzing 34 divergent court decisions on same issue).

The anti-discrimination provision of the Bankruptcy Code, section 525(a), provides that:

10

> a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against . . . a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act . . . .

11 U.S.C. § 525(a).

We first address whether the PPP should be treated under section 525(a) as a loan or grant program.

The SBA invites the court to examine how Congress consistently characterizes PPP money as loans throughout the CARES Act and later in the PPP Flexibility Act. [H.R. 7010, Pub. L. 116-142 (2020).]   It further argues that Congress in the CARES Act placed the PPP under section 7(a) of the Small Business Act, which is the SBA's primary loan program.  It also points out that the PPP has the hallmarks of a loan: a promissory note, an interest rate, a maturity date, amortization terms and conditions, and an obligation to repay the loan unless it is forgiven.  And the SBA asserts that the courts of appeal in all of the circuits have rejected, in pre-Covid-19 cases, section 525(a) claims based on the denial of government-loan applications.

But after considering many judicial opinions on both sides of this controversy handed down after this court's temporary restraining order of May 8, 2020, the court remains of the opinion that that the PPP should be treated as a grant program for purposes of section 525(a).  As the bankruptcy court in New Mexico explained:

> While a borrower's bankruptcy status clearly is relevant for a normal loan program, the PPP is the opposite of that. It is not a loan program at all. It is a grant or support program. The statute's eligibility requirements do not include creditworthiness. Quite the contrary, the CARES Act makes PPP money available regardless of financial distress. Financial distress is presumed. Given the effect of the lockdown, many, perhaps most, applicants would not be able to repay their PPP loans. They don't have to, because the "loans" are really

11

grants. Repayment is not a significant part of the program. That is why Congress did not include creditworthiness as a requirement.

In re Roman Catholic Church of Archdiocese of Santa Fe, 615 B.R. 644, 654 (Bankr. D. N.M. 2020), appeal docketed, No. 20-00473 (D. N.M. May 18, 2020).

The characterization of Labor Secretary Scalia at the signing of the PPP as "loans for small business, but [ ] structured in a way . . . so that those loans could be forgiven . . ." aptly describes the program.[6] Congress designed, and expected, that PPP loans would be forgiven. The $659 billion appropriated by Congress is not for the PPP loans themselves. The source of the loans is the private capital of the participating banks. The $659 billion was appropriated mainly for the SBA—not the borrowers—to pay back the banks for the loans forgiven. Admittedly the $659 billion was, in part, appropriated to also cover the guarantee feature of the PPP for loans both not forgiven and then not repaid by the recipient to the bank. But the court agrees with the conclusion of the bankruptcy court in New Mexico, after analyzing the PPP, that "[r]epayment is not a significant part of the program." Archdiocese of Santa Fe, 615 B.R. at 654.[7] Indeed it cannot be. An attempt to collect even a fraction of the 4,907,655 PPP loans made to distressed small business would be an act of folly.[8]

---

[6] See, footnote 2 (emphasis added).

[7] After the Archdiocese of Santa Fe decision, the SBA made PPP loans more easily forgiven by establishing a safe-harbor for loans under $2 million: "Any borrower that, together with its affiliates, received PPP loans with an original principal amount of less than $2 million will be deemed to have made the required certification concerning the necessity of the loan request in good faith." (Footnote omitted.) Paycheck Protection Program Frequently Asked Questions (FAQs) as of June 25, 2020, Question 46: https://www.sba.gov/document/support--faq-lenders-borrowers?fbclid=IwAR0grGa9wseRQD-4VEWr7mqcSga2ITyk52EJV-FPwOA3cy4aiCU4d8x7ud8.

[8] SBA's Paycheck Protection Program (PPP) Report: Approvals through 7/10/2020, https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&cad=rja&uact=8&ved=2a hUKEwjw_czDrdzqAhVfknIEHRsCCmoQFjAFegQIBRAB&url=https%3A%2F%2Fhome.treasury.gov %2Fsystem%2Ffiles%2F136%2FSBA-Paycheck-Protection-Program-Loan-Report-Round2.pdf&usg=AOvVaw2akxEL7ZPRUHImfO52y1vs .

The SBA makes much of the fact that Congress "placed" the PPP within the SBA's section 7(a) loan program.  A few raw numbers help put this fact in perspective.   In 2019, the SBA guaranteed a total of almost $21 billion in section 7(a) loans to 47,104 borrowers.[9] The average yearly totals from 2015 to 2019, inclusive, are $21,863,715,568.60 in SBA loan guarantees to 54,506 borrowers.[10]  It is important to keep in mind that these non-PPP, section 7(a) loans were not structured to be forgiven.  And Federal dollars go out to the issuing banks only if and when borrowers default and efforts to collect are unsuccessful.  In sharp contract: PPP loans are structured to be forgiven; Congress appropriated $659 billion for the program; and--in the less than four months since the President signed into law the PPP to July 10, 2020--the SBA approved $517,417,286,175 in PPP loans to 4,907,655 small business.  Thus, the court is not convinced by the argument that Congress intended the tail to wag the dog here.

We address now the argument that even if the PPP is a grant, it is not a grant "similar" to a license, permit, charter, or franchise protected by section 525(a).

The SBA cites to case law, mostly decided prior to the Covid-19 pandemic, narrowly construing the "other similar grant" language of section 525(a).  For example, in <u>Ayes v. U.S. Dep't of Veterans Affairs</u>, 473 F.3d 104 (4th Cir. 2006), the court of appeals held that a state's refusal to extend a home loan guarantee to veterans after a bankruptcy discharge did not violate section 525(a). The <u>Ayes</u> court reasoned that a home loan guarantee bore no "family resemblance" to the items listed in section 525(a), which are "are all governmental

---

[9] SBA Lending Statistics for Major Programs as of 8-16-2019:
https://www.sba.gov/sites/default/files/aboutsbaarticle/WebsiteReport_asof_20190830.pdf

[10] <u>Id</u>.

13

authorizations that typically permit an individual to pursue some occupation or endeavor aimed at economic betterment." Ayes, 473 F.3d at 108; see also, Watts v. Pennsylvania Hous. Fin. Co., 876 F.2d 1090, 1094 (3d Cir. 1989) (suspension of benefits under state's mortgage assistance program to debtors did not violate section 525(a)); In re Exquisito Servs., Inc., 823 F.2d 151, 153 (5th Cir. 1987) (section 525(a) interpreted narrowly and limited to situations "analogous to those enumerated in the statute").

The SBA also cites to a recent bankruptcy decision from Maine on the PPP which reasoned similarly that "[e]ach of the enumerated items [in section 525(a)] is a type of grant from a governmental actor that involves some permission for the holder of the grant to act in a particular way." In re Penobscot, 2020 WL 3032939, at *10 (Bankr. D. Me. June 3, 2020) Although the Penobscot court initially entered a temporary restraining order against the SBA, it then reversed course.  Compare, Id. and Penobscot, 2020 WL 2201943 (Bankr. D. Me. May 1, 2020) (a decision this court relied upon in entering its temporary restraining order against the SBA on May 8, 2020).

Organic Power rejects this narrow reading section 525(a). It argues that the enumerated items in section 525(a) are illustrative rather than exhaustive, relying on Stoltz v. Brattleboro Housing Auth. (In re Stoltz), 315 F.3d 80, 90 (2d Cir. 2002), which held that a public housing lease fell under section 525(a) as an "other similar grant."  In reaching its conclusion, the Stoltz court reasoned that "[t]he common qualities of the property interests protected under section 525(a), i.e., 'license[s], permit[s], charter[s], franchise[s], and other similar grants,' are that these property interests are unobtainable from the private sector and essential to a debtor's fresh start."  In re Stoltz, 315 F.3d at 90.

14

The SBA counters, arguing that Stoltz found that a public housing lease was a grant because it was a "property interest." Id. at 89-90. But, that Stoltz did not depart from In re Goldrich, 771 F.2d 28 (2d Cir. 1985) which held that student loan guarantees were outside the protection of section 525(a) because they were, just like the PPP, extensions of credit.

In the Springfield case Judge Brown (who was also the bankruptcy judge in the Stoltz case) dissected the Goldrich and Stolz decisions. In re Springfield Hosp., Inc., 2020 WL 3422335, at *14-15. She concluded that "Stoltz clearly denotes the Second Circuit's departure from – and disapproval of – its earlier narrow construction of § 525(a) in Goldrich" and that the "PPP is only superficially similar to the commercial extension of credit at issue in Goldrich, and is in fact much more akin to the public housing lease in Stoltz." Id. Judge Brown reasoned:

> 'Public housing leases are, by definition, obtainable only from governmental entities.' Stoltz, 315 F.3d at 90. Similarly, the CARES Act establishes the PPP under § 7(a) of the Small Business Act, codified in 15 U.S.C. § 636, a program administered only by the SBA[.] While public housing leases and the PPP are superficially similar to private sector activity – a residential lease and an extension of credit, respectively – they confer unique benefits impossible to obtain from the private sector. Just as private lessors do not offer subsidized or free housing, private lenders do not offer free money.

In re Springfield Hosp., 2020 WL 3422335, at *17.

We agree.

At the start we alluded to the enormity of the of the economic damage inflicted by the Covid-19 pandemic. And that although the dollar amount of the government's response to this economic crisis is historic, it pales in comparison to the economic damage caused by the pandemic. Under these circumstances, our ruling today satisfies even the narrower reading of section 525(a) in Ayes. Much of the economy has been shut down by governmental guidelines and lockdown directives. This has made it very

15

difficult for many, perhaps most, small businesses to access private capital. The SBA

acknowledged as much when it created a "safe harbor" for the forgiveness of PPP loans under

$2 million. See, Paycheck Protection Program Frequently Asked Questions (FAQs) as of June

25, 2020, Q&A, 46 (stating that these borrowers "are generally less likely to have had access

to adequate sources of liquidity in the current economic environment than borrowers that

obtained larger loans.")[11]  It goes without saying that capital is the lifeblood of businesses,

small or large, in a capitalist, free-market economy.   Thus the PPP, under these

circumstances, is in effect a government authorization, to millions of small businesses

without access to adequate sources of liquidity, which it is hoped will permit them to

continue to pursue an endeavor aimed at economic betterment.

### c.  Irreparable harm and injunctive relief

Irreparable harm is the second prong of the test for injunctive relief.  The issue was

hotly contested by both sides in this adversary proceeding.  At the hearing on the temporary

restraining order, Organic Power had to show only a "mere likelihood of success" on the

merits of its claims.  See, Caroline T. v. Hudson School Dist., 915 F.2d 752, 755 (1st Cir. 1990)

(quoting K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 914-15 (1st Cir. 1989)).  Now, at

the permanent-injunction stage, Organic Power "must show actual success on the merits" of

its claims.  Id.  Initially the court determined, when it entered the temporary restraining

order against the SBA, that Organic Power showed a mere likelihood of success on the merits.

---

[11] https://www.sba.gov/document/support--faq-lenders-borrowers?fbclid=IwAR0grGa9wseRQD-4VEWr7mqcSga2ITyk52EJV-FPwOA3cy4aiCU4d8x7ud8.  We note that the SBA's "safe harbor" makes PPP loans under $2 million easier to forgive.

We last extended the temporary restraining order on July 2, 2020 until "any further decision from this court." [Adv. Dkt. No. 73].

Again, because the facts relevant to the request for injunctive relief have evolved since the entry of the temporary restraining order, there no longer is any need to further extend the temporary order or make it permanent. And thus the controversy over irreparable harm is moot.

### d. Mandamus

Organic Power included in the complaint a request for writ of mandamus to compel the SBA to remove the bankruptcy exclusion from all PPP applications. The federal mandamus statute allows district courts "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A mandamus is an extraordinary remedy. Mallard v. United States Dist. Court for S. Dist., 490 U.S. 296, 309 (1989). To obtain a mandamus, "petitioners must show that they lack adequate alternative means to obtain the relief they seek." Id. Because Organic Power obtained the relief it sought by an adequate alternative means and did not actively prosecute this count of the complaint, its request for mandamus is denied

### e. Administrative Procedures Act

Two counts of the complaint assert claims under the APA. The first alleges that, under section 706(2)(C) of the APA, the SBA unlawfully exceeded its statutory authority when it excluded "applicant[s] involved in any bankruptcy" from the PPP. 5 U.S.C. § 706(2)(C). The second alleges that, even if the SBA did not exceed its statutory authority, the bankruptcy exclusion was "arbitrary, capricious, [or] an abuse of discretion" in violation of section 706(2)(A) of the APA. 5 U.S.C. § 706(2)(A).

17

Both parties contend that the two APA counts are non-core matters. And, the SBA does not consent to the entry of a final judgment on the APA counts of the complaint. Thus, if this opinion and order and ensuing final judgment are appealed, the court will issue a report and recommendation to the district court on the APA claims when the record for the appeal is transmitted to the district court.

## V. CONCLUSION

For all of the reasons stated above, the court finds that the SBA's exclusion of Organic Power from the PPP because it is in bankruptcy violates section 525(a) of the Bankruptcy Code. Organic Power's request for permanent injunction is denied as moot. Likewise, Organic Power's request for a mandamus is denied. The motion to dismiss is denied.

Accordingly, the court directs the entry of a separate final judgment on the third and fourth counts of the complaint because "the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b); Fed. R. Bankr. P. 7054(a).

In Ponce, Puerto Rico, this 24th of July, 2020.

Edward A. Godoy
U.S. Bankruptcy Judge

18